**UNITED STATES POSTAL SERVICE
EQUAL EMPLOYMENT OPPORTUNITY CASE
IN THE MATTER OF**

| | |
|---|---|
| Kevin D. West ) | |
|     Complainant, ) | Date: May 12, 2005 |
| ) | |
| v. ) | Agency Case No. 4K-200-0235-03 |
| ) | |
| John E. Potter, ) | |
| Postmaster General, ) | |
| U. S. Postal Service, ) | |
| (Capital Metro Operations), ) | |
|     Agency. ) | |

**FINAL AGENCY DECISION**

This is the Postal Service's **final agency decision** on the above-cited discrimination complaint. The Complainant claimed discrimination on the bases of race (African-American), color (Black) and retaliation (prior EEO activity) when:

1. on June 28, 2003, he was not promoted to the position of Supervisor, Vehicle Maintenance;

2. on July 31, 2003, he became aware that Manager Cook denied him before tour overtime opportunity at Largo II from April 1 through July 25, 2003;

3. On September 3, 2003, he was not promoted to the position of Lead Automotive Technician, Level 8, Vacancy #03-43.

**CASE CHRONOLOGY**

The Complainant requested counseling on August 7, 2003, regarding issues #1 and #2. The Complainant attended a mediation session with Postal management on September 17, 2003, but failed to reach an agreement. The Complainant received a Notice of Right to File Individual Complaint on September 24, 2003. The Complainant filed a timely formal EEO complaint on October 9, 2003.

EXHIBIT – 1

On October 17, 2003, the Complainant requested counseling for issue #3. On November 10, 2003, the Postal Service amended the complaint to include issue #3, and accepted the complaint for investigation.

On September 23, 2004, the Complainant was sent his first copy of the investigative file. However, the file was returned for a supplemental investigation to the agency's National EEO Investigation Services Office. On February 9, 2005, Complainant was sent a second copy of the investigative file and was notified of the opportunity to request either a hearing before an EEOC Administrative Judge or a final agency decision without a hearing.

On April 13, 2005, the Complainant requested a final agency decision which was received by the agency on April 14, 2005. Accordingly, the Postal Service is issuing its final agency decision pursuant to 29 C.F.R. § 1614.110(b).

## FACTUAL BACKGROUND

At the time the matters of this complaint arose, the Complainant was a full time Automotive Technician at the Largo I, Vehicle Maintenance Facility (VMF). (ROI, Exhibit 1)[1]

**Issue #1  On June 28, 2003, the Complainant was not promoted to the position of Supervisor, Vehicle Maintenance, Vacancy 14-03, 15-03, and 23-03.**

### Complainant's Testimony

The Complainant testified that he was discriminated against when he was informed that John P. Miller, III (Caucasian, white), Michael T. Scott (Caucasian, white) and, Anthony M. Shelton (race and color unknown) were awarded positions as EAS-17, Supervisor, Vehicle Maintenance in Vacancy 14-03, 15-03, and 23-03. The Complainant claimed that he met all the requirements for the position and that he exceeded the requirement for educational skills and knowledge of VMF rules and regulations.

The Complainant testified that his non-selection was based on race and color discrimination because he reported "Postal violations" of VMF Managers Timothy Currie and David Cook to their supervisors. The Complainant also stated that his non-selection was discriminatory on the basis of retaliation for prior EEO activity. He stated Mr. Currie told him on September 7, 2000, that the Complainant would, "no longer be used in any upper mobility opportunities."

The Complainant stated that candidates for the position included Henry M. Barnett (African American, black), Charles Brown (race and color unknown),

---

[1] ROI = Report of Investigation; Exh. = Exhibit; Aff. = Affidavit; p(p) = page(s).

Roland Johnson, Jr. (African American, black), John P. Miller, III (Caucasian, white), Anthony M. Sheldon (race and color unknown) and Napoleon Woodhouse (African American, black). The Complainant testified that John P. Miller, Michael T. Scott, and Anthony M. Sheldon were selected for the position. The Complainant claimed that the selecting officials, Timothy Currie and David Cook, were the responding management official (RMOs).

The Complainant claimed that he engaged in prior EEO activity, back on July 13, 2002. The Complainant stated that the complaint was filed against RMO's Timothy Currie and David Cook, so they were aware of his prior EEO activity.

**Management's testimony**

Timothy A. Currie, Vehicle Maintenance Methods Specialist at USPS Headquarters in Washington DC, identified himself as Caucasian and white. He testified that he was not on the Review Committee, he was not the selecting official, and he was not the concurring official for the position of Supervisor, Vehicle Maintenance. Mr. Currie testified that he had no knowledge regarding the position of Supervisor, Vehicle Maintenance. [Affidavit B]

David Cook, Manager at the Capital Heights Vehicle Maintenance Facility, identified himself as a Caucasian with a light complexion. He testified that he is the Complainant's Manager and that he was not involved in the selection process for the Supervisor, Vehicle Maintenance positions. [Affidavit C].

Timothy P. Dickerson, Manager at the Columbia Vehicle Maintenance Facility, identified himself as Caucasian and white. He testified that he was the Chairperson of the Review Committee for the Supervisor, Vehicle Maintenance positions. Manager Dickerson stated that Rose Barner and Harvey Banks served on the committees with him and that he never met either Ms. Barner or Mr. Banks. Manager Dickerson added that the only professional relationship he had with the Complainant was as a member of the Review Committee for the Supervisor, Vehicle Maintenance positions.

Manager Dickerson testified that the Review Committee reviewed PS Form 991 for the application pool. He testified that knowledge, skills, and abilities (KSAs) were rated for each candidate. He explained that a "3" was excellent, a "2" was strong, a "1" was minimum, and a "0" was no demonstration of the KSA being reviewed. Manager Dickerson testified that the KSAs were totaled for each applicant to determine the Review Committee's recommendation regarding which employees should receive an interview.

Regarding Vacancy 14-03, Manager Dickerson testified that the Complainant, Mr. Barnett, Mr. Brown, and Mr. Woodhouse were not offered an interview. He stated that Mr. Johnson, Mr. Miller, Mr. Morris, and Mr. Shelton were offered an interview.

Regarding Vacancy 15-03, Manager Dickerson testified that the Complainant, Mr. Barnett, Mr. Brown, Mr. Chase, Mr. Mansfield, and, Mr. Woodhouse were not offered an interview. He stated that Mr. Credle, Mr. Johnson, Mr. Miller, Mr. Morris, Mr. Scott, and Mr. Shelton were offered an interview.

Regarding Vacancy 23-03, Manager Dickerson testified that the Complainant, Mr. Barnett, Mr. Brown, and Mr. Woodhouse were not offered an interview. He stated that Mr. Credle, Mr. Johnson, Mr. Miller, Mr. Price, and Mr. Shelton were offered an interview.

Manager Dickerson testified that he worked at the Washington D.C. VMF and had no knowledge of the Complainant's race, color, or prior EEO activity while serving on the Review Committee. He testified that he never met any of the candidates and had no knowledge of their race, color, or prior EEO activity. Manager Dickerson testified that employees were selected for an interview for the Supervisor, Vehicle Maintenance positions solely upon their answers and scores on PS Form 991. [Affidavit D]

Rose M. Barner, Manager, Vehicle Maintenance Facility in Richmond, Virginia, identified her race and color as black. Manager Barner testified that she served as a member of the Review Committee for the Supervisor, Vehicle Maintenance positions. Manager Barner testified that candidates were selected for the interviews based upon their scores on KSAs and PS Form 991. Manager Barner testified that the Complainant's score was not high enough to receive an interview. She stated that the Review Committee conducted PS Form 991 score comparisons by telephone and the members never actually met. She also stated that she never met any of the candidates and could not offer information regarding race, color, and prior EEO activity of the candidate pool. She stated that she did not work at the facility where the Supervisor, Vehicle Maintenance vacancies existed. [Affidavit E]

Diane Hatfield, Supervisor of Vehicle Supplies at the Suburban VMF, Caucasian and white, testified that she had no knowledge of the criteria to determine interview selections, that she had no authority to make any decisions, and that she was invited to sit in on the interviews only for training purposes. Supervisor Hatfield stated that the interviews appeared professional. She testified that Manager King made the selection and did not include her in the decision making process. [Affidavit F]

Joseph King, Manager, Vehicle Maintenance at Gaithersburg VMF at the time of the alleged employment actions, identified himself as American and white. He testified that he was the selecting official for the Supervisor, Vehicle Maintenance positions. Manager King testified that he received the names of candidates to be offered an interview from the Review Committee. Manager King testified that the

Complainant's name was not on the list of interviewees presented by the Review Board, so he did not evaluate the Complainant. [Affidavit G].

**Record Evidence**

Complainant's PS Form 50 [Exhibit 1]

Comparators' PS Forms 50 [Exhibit 2]

EEO History is attached for the Complainant [Exhibit 3]

Posting of Vacancy 14-03, Supervisor, Vehicle Maintenance and the corresponding job description [Exhibit 4]

Applicants for Vacancy 14-03, were notified of the receipt of their applications. [Exhibit 5]

List of the applicants for Vacancy 14-03 [Exhibit 6]

PS Form 5938, Promotion Report for Vacancy 14-03, Supervisor, Vehicle Maintenance [Exhibit 7]

Complainant's PS Form 991 regarding Vacancy 14-03. [Exhibit 8]

John Miller's PS Form 991 regarding Vacancy 14-03. [Exhibit 9]

PS Form 991 for the remaining three (3) candidates interviewed for Vacancy 14-03. [Exhibit 10]

Manager King's letter selecting Mr. Miller for Vacancy 14-03 [Exhibit 11]

Memo to Mr. Miller re: selection [Exhibit 12]

Letter of non-selection for Vacancy 14-03 [Exhibit 13]

Posting of Vacancy 15-03 [Exhibit 14]

Applicants for Vacancy 15-03, were notified of the receipt of their applications. [Exhibit 15]

List of the applicants for Vacancy 15-03 [Exhibit 16]

PS Form 5938, Promotion Report for Vacancy 15-03, Supervisor, Vehicle Maintenance [Exhibit 17]

Complainant's PS Form 991 regarding Vacancy 15-03. [Exhibit 18]

Michael T. Scott's PS Form 991 regarding Vacancy 14-03. [Exhibit 19]

PS Form 991 for the remaining five (5) candidates interviewed for Vacancy 15-03. [Exhibit 20]

Manager King's letter selecting Mr. Scott for Vacancy 15-03 [Exhibit 21]

Memo to Mr. Scott re: selection [Exhibit 22]

Letter of non-selection for Vacancy 15-03 [Exhibit 23]

Posting of Vacancy 23-03 [Exhibit 24]

Applicants for Vacancy 23-03, were notified of the receipt of their applications. [Exhibit 25]

List of the applicants for Vacancy 23-03 [Exhibit 26]

PS Form 5938, Promotion Report for Vacancy 23-03, Supervisor, Vehicle Maintenance [Exhibit 27]

Complainant's PS Form 991 regarding Vacancy 23-03. [Exhibit 28]

Anthony M. Shelton's PS Form 991 regarding Vacancy 23-03. [Exhibit 29]

PS Form 991 for the remaining four (4) candidates interviewed for Vacancy 23-03. [Exhibit 30]

Manager King's letter selecting Mr. Shelton for Vacancy 23-03 [Exhibit 31]

Memo to Mr. Shelton re: selection [Exhibit 32]

Letter of non-selection for Vacancy 23-03 [Exhibit 33]

ELM Section 350 [Exhibit 43]

**Issue # 2   On July 31, 2003, the Complainant became aware that Manager Cook denied him an overtime opportunity at Largo II from April 1, 2003, through July 25, 2003.**

***Complainant's testimony***

The Complainant alleged that he was discriminated against when he was denied overtime from April 1, 2003, through July 25, 2003, at Largo II VMF. The

Complainant stated that he placed his name on the Overtime Desired List (OTDL) at Largo II, VMF for the beginning of his Tour. The Complainant testified that he works at Largo II.

The Complainant testified that Manager David Cook was the responsible management official that denied overtime opportunities. The Complainant testified that he filed a previous EEO complaint 4K-200-0108-02, on July 13, 2002 against Mr. Currie and Manager Cook, so they were aware of his prior EEO activity. The Complainant testified that Manager Cook told him on September 7, 2000, that he would "no longer be considered for the upper mobility opportunities."

The Complainant further claimed that he filed a grievance and a resolution was reached. It was resolved that any employee can sign up for the Overtime Desired List at any location, including Largo I, Largo II, or Riverdale VMF. [Affidavit A]

**Management's testimony**

Mr. Currie testified that he had no knowledge regarding overtime at Largo II. [Affidavit B]

Manager Cook testified that the Complainant worked in Largo I. He testified that the employees that signed up on the Overtime Desired List in Largo II provided management with enough employees to meet overtime needs. Manager Cook testified that Mr. Scott was the management official that determined the need for overtime at Largo II. Manager Cook stated that if Mr. Scott could not meet his overtime requirements with employees at Largo II, he would contact Manager Cook for additional employees.

Manager Cook testified that he and Mr. Scott relied upon a Local Memorandum of Understanding for this process. He stated that if overtime needs could not be met with employees that worked at the building (Largo I, Largo II, or Riverdale) where the overtime existed, then the Overtime Desired Lists would be offered the overtime. Manager Cook claimed that this process was outlined in the Local Memorandum of Understanding.

Manager Cook claimed that he has not been accused of withholding overtime as punitive measure. He stated that there were no similarly situated employees. Manager Cook also added that he was aware of the Complainant's prior EEO activity, but it played no role in distributing overtime. [Supplemental Affidavit C]

**Record Evidence**

Overtime Desired Lists [Exhibit 34]

Copy of Complainant's Grievance [Exhibit 35]
TACS reports [Exhibit 36]

Local Memorandum of Understanding [Exhibit 44]

**Issue # 3   On September 3, 2003, the Complainant was not promoted to the position of Lead Automotive Technician Level-8, Vacancy 03-43.**

*Complainant's testimony*

The Complainant alleged that he was discriminated against when he was denied a Level-8, Lead Automotive Technician position at Largo II as described in Posting 03-43. The Complainant claimed that he met the qualifications for the vacancy regarding education, labor relations, and VMF rules and regulations. The Complainant testified that he was granted an interview for the position and insisted that he was the best qualified candidate for Vacancy 03-43. The Complainant testified that Manager Cook conducted the interviews by himself. The Complainant claimed he was denied Vacancy 03-43 because he reported "Postal violations" to Manager Cook's supervisors. The Complainant claimed he was discriminated against when Mr. Clark was awarded Vacancy 03-43. Mr. Clark is Caucasian and white, while the Complainant is African-American and black. The Complainant stated that he filed previous EEO complaints against Manager Cook, so Manager Cook was aware of Complainant's previous EEO activity.

*Management's testimony*

Manager Cook testified that he served as the review committee, interviewed the candidates, and acted as the selecting official for Vacancy 03-43. He testified that there were four (4) applicants for Vacancy 03-43. He stated that he relied upon PS Form 991, and questions regarding mechanical trouble shooting, maintenance of records, report preparation, the ability to instruct, the ability to diagnose electrical and electronic problems, and the ability to work with others. Manager Cook testified that these questions were all weighted the same and there were no pre-requisite testing for Vacancy 03-43. Manager Cook stated that the Complainant indicated average ability and knowledge to perform the tasks described in these questions. He stated that all four (4) applicants had the same qualification rating based on the KSAs and all received an interview.

Manager Cook testified that Stephen Clark was selected for Vacancy 03-43 because he interviewed better than the other three (3) candidates. Mr. Clark received a score of 71.67, Mr. Lowe received a score of 70.0, Mr. Johnson received a score of 70.0, and the Complainant received a score of 70.0 as described in PS Form 1796-B, Qualifications Rating Sheet for Best Qualified Positions completed by Manager Cook on August 26, 2003. Manager Cook

stated that he did not promote any other employees in the past two (2) years. [Affidavit C]

Mr. Currie testified that he was not on the review committee, he was not the selecting official, and he was not the concurring official for Vacancy 03-43. He also added that he had no knowledge regarding Vacancy 03-43. [Affidavit B]

Manager Dickerson testified that he was not involved in the selection process for Vacancy 03-43, and did not know who applied or was selected for the position. [Affidavit D]. Manager Barner offered no testimony regarding Vacancy 03-43. [Affidavit E]. Manager King testified that he had no knowledge regarding Vacancy 03-43. [Affidavit G].

**Other Evidence**

Complainant's PS Form 50 [Exhibit 1]

Comparator's PS Form 50 [Exhibit 2]

Posting for Vacancy 03-43 [Exhibit 37]

Complainant's applications and forms for the Vacancy 03-43 position [Exhibit 38]

The selected candidate's (Stephen Clark) applications and forms for the Vacancy 03-43 position [Exhibit 39]

The two remaining candidates' applications and forms for the Vacancy 03-43 position [Exhibit 40]

Manager Cook's memorandum listing the candidates. [Exhibit 41]

General Assignment Order [Exhibit 42]

ELM section 350 [Exhibit 43]

Article 39.1.B.5.d from the National Agreement [Exhibit 45]

## ANALYSIS

The Complainant is alleging disparate treatment, *i.e.*, that he was treated less favorably because of his race, color and in retaliation for his prior protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et. seq., In the absence of direct evidence of discriminatory intent, a three-part analysis is applied. Initially, the Complainant has the burden of establishing, by a preponderance of the evidence, a *prima facie* case of

discrimination, which if unrebutted, would support an inference that the agency's actions resulted from discrimination. McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Furnace Construction Co. v. Waters, 438 U.S. 567, 576 (1978).

To establish a *prima facie* case of unlawful discrimination on the basis of race, or color, the Complainant must establish that: (1) he is a member of the protected classes; (2) he applied for and was found qualified for the position; (3) despite his qualifications, he was rejected; and (4) someone outside his protected group was selected for the position under circumstances, which if unexplained, would support an inference of discrimination. Keyes v. Secretary of the Navy, 853 F.2d 1016, 1023 (1st Cir. 1988); see also Weinstein v. U. S. Postal Service, EEOC No. 01830674 (1983). The Complainant may also meet this burden by presenting other evidence which raises an inference of discrimination. Potter v. Goodwill Industries of Cleveland, 518 F.2d 864 (6th Cir. 1976); Furnco, at 576; Alcala v. Department of the Treasury, EEOC Decision No. 01975949 (March 7, 2000).

In order to establish a *prima facie* case of discrimination on the basis of retaliation, the Complainant must show that (1) he engaged in a statutorily protected activity, *i.e.*, opposed unlawful discriminatory employment practices or participated in Title VII proceedings; (2) his employer was aware of his previous protected activity; (3) subsequently, his employer took adverse action against him; and (4) the adverse action followed the protected activity in such a time and manner as to raise an inference of retaliation. Wrenn v. Gould, 808 F.2d 493, 500 (6th Cir. 1987); Downing v. U.S. Postal Service, EEOC Decision No. 01822326 (1983); Cohen v. Fred Meyers, Inc., 686 F.2d 793, 796 (9th Cir. 1982).

If the Complainant is successful in establishing a *prima facie* case, the burden of production then shifts to the Agency to articulate legitimate and nondiscriminatory reasons for its actions. McDonnell-Douglas, at 792. The Agency's burden of production is not a heavy one. The Agency need only produce evidence sufficient "to allow the trier-of-fact rationally to conclude" that the Agency's actions were not based on unlawful discrimination. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-253 (1981). The Agency must, however, "frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." Should the employer meet its "burden of production," the presumption created by the *prima facie* case "drops from the case." Id.

If the Agency articulates its legitimate, nondiscriminatory reasons for its actions, the Complainant must then prove by a preponderance of the evidence that the reasons proffered by the Agency were not the true reasons, but were a pretext for discrimination, either because the Agency more likely had a discriminatory motive, or because the stated reasons lacked credibility. Burdine, at 256.

Allegations of pretext may be supported by evidence of discriminatory statements, past dissimilar treatment, statistical evidence, or unequal applications of agency policy. McDonnell-Douglas, supra. While the presence of errors, mistakes or questionable credibility permit a finding of discrimination, such a finding is not required if evidence is insufficient to show discriminatory motive or intent. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 519 (1993). A *prima facie* case of discrimination, combined with sufficient evidence for a reasonable fact finder to reject the agency's nondiscriminatory explanation for its decision, is adequate to sustain a finding of liability for intentional discrimination. Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097 (June 12, 2000).

## AGENCY'S FINDINGS

*Issue #.1*

The Complainant met the first element of his *prima facie* case for race (African American), and color (Black). He did not meet the second element in that he was not selected for an interview for any of the three vacancies. The record evidence shows that he did not past the initial review of applications by the Review Board. He met the third element in that John P. Miller (Caucasian, white), Michael T. Scott (Caucasian, white) and Anthony M. Shelton (race and color unknown) were selected. As the Complainant did not meet all three elements, he has not established a *prima facie* case of race and color discrimination with respect to Issue # 1.

The Complainant met the first element of his *prima facie* case of retaliation in that he engaged in prior EEO activity when he filed prior EEO complaints, the most recent of which was filed in July of 2002. The Complainant did not satisfy the second element in that the members of the Review Committee were not aware of Complainant's prior EEO Activity. The Complainant named Mr. Currie and Manager Cook as the officials responsible for retaliating against him, however, they had nothing to do with the selection process for the three vacancies. The Complainant met the third element in that he was not selected for the interview for the vacancies. He also failed to meet the fourth element in that his nonselection for an interview did not follow his protected activity in such a time and manner as to raise an inference of discrimination.

Assuming that the Complainant established a *prima facie* case of race and color discrimination, the analysis will continue. The Postal Service must now articulate its legitimate nondiscriminatory reason for selecting Mr. Miller, Mr. Scott and Mr. Shelton and not selecting the Complainant.

Manager Dickerson testified that the Review Committee reviewed PS Form 991 and the applicant's KSAs and then rated the applicants. The KSA's totals determined the Review Committee's recommendation regarding which

applicant should receive an interview. Complainant was not offered an interview. Manager Barner, a member of the Review Committee testified that the Complainant's score was not high enough to receive an interview. The Postal Service has articulated a legitimate nondiscriminatory reason for its actions.

To prevail in his claims of discriminatory treatment, the Complainant must now present evidence to prove that the Postal Service's stated reasons for its actions were not the true reasons, but merely a pretext for intentional discrimination.

The Complainant claimed he qualified for the vacancies. He claims that he had the educational training and possessed labor relations skills and knowledge of VMF rules and regulations. He also claimed that the reason he was not chosen was because of his race and color and that he reported that two managers for postal violations. These facts alone would not show that his nonselection was motivated by discrimination. An Agency has the discretion to determine how best to manage its operations and may make decisions on any basis except a basis that is unlawful under discrimination statutes. Furnco Construction Corp. v. Waters, 438 U.S. 567 (1978); Nix v. ULCY Radio/Rayhall Communications, 738 F.2d 1181 (11th Cir. 1984); Funkhouser v. Ann M. Veneman, Secretary, Department of Agriculture EEOC No. 01994453 (October 4, 2001). An employer is entitled to make its own business judgments, and it has the discretion to choose among equally qualified candidates. Canham v. Oberlin College, 666 F.2d 1057, 1061 (6th Cir. 1981). Manager King, the selecting official, testified that he received the names of the candidates to be offered an interview from the Review Committee. Complainant's name was not on that list. Nothing in the record suggests that the Review Committee was motivated by race, color or any protected activity.

Based on the foregoing analysis, the Postal Service concludes that the Complainant was not a victim of intentional discrimination with respect to Issue # 1.

*Issue # 2*

The Complainant met the first element of his *prima facie* case for race (African American) and color (Black). He met the second element in that he was on the Overtime Desired List at Largo II, VMF for the beginning of his tour. He met the third element in that he was not selected for overtime at Largo II from April 1, 2003, through July 25, 2003. As the Complainant satisfied all three elements, he has established a *prima facie* case of race and color discrimination with respect to Issue # 2.

The Complainant met the first element of his *prima facie* case of retaliation in that he engaged in prior EEO activity when he filed prior EEO complaints, the

most recent of which was filed in July of 2002. The Complainant satisfied the second element in that Manager Cook testified that he was aware of the Complainant's prior EEO activity. The Complainant met the third element in that he did not receive overtime. The Complainant failed to meet the fourth element because the fact that he did not receive overtime did not follow his protected activity in such a time and manner as to raise an inference of discrimination. The Complainant's most recent EEO activity occurred in July 2002. The denial of overtime occurred from April 1, 2003 through July 25, 2003, some months after the Complainant's most recent EEO case. Therefore, no inference of retaliation has been raised.

The Complainant claimed retaliation for prior EEO complaints, the most recent of which was filed in July of 2002. The Complainant's denial of overtime occurred between April 1, 2003 through July 25, 2003. The lapse of time between the Complainant's EEO complaints and the Postal Service's actions negates any inference of a causal connection. See Richmond v. Oklahoma Univ. Bd. Of Regents, 1998 U.S. App. LEXIS 26600 (10th Cir.1998) (one-year time lapse too great to draw a causal connection between protected activity and the alleged adverse action); Kline v. City of Kansas City, 175 F.3d 660 (8th Cir. 1999); Filipovic v. K & R Express Sys., 176 F.3d 390 (7th Cir. 1999) (four-month time lapse too great to draw a causal connection between the plaintiff's prior EEO activity and his termination); Shabica v. Engineering Sales Assocs. of the Southeast, 1999 U.S. App. LEXIS 599 (4th Cir. 1999) (seven-month time lapse negates any inference that a causal connection exists between the prior EEO activity and the plaintiff's termination). Because of the time lapse, the Complainant has failed to establish a *prima facie* case of retaliation with respect to his prior EEO activity.

The Complainant established a *prima facie* case of race and color discrimination therefore the analysis will continue. The Postal Service must now articulate a legitimate business reason for its actions.

Manager Cook testified that the Complainant worked at the Largo I VMF. Mr. Scott was the management official who determined the need of overtime at Largo II. Manager Cook stated that if Mr. Scott could not meet his overtime requirements with employees at Largo II, he would contact Manager Cook for additional employees. Manager Cook testified that he and Mr. Scott relied upon a Local Memorandum of Understanding for this process. He stated that if overtime needs could not be met with employees that worked at the building where the overtime existed (Largo I, Largo II, or Riverdale), then the Overtime Desired Lists employees from other buildings would be offered the overtime. Manager Cook claimed that this process was outlined in the Local Memorandum of Understanding.

It is clear that the Complainant worked at the Largo I VMF. The overtime need was at the Largo II VMF. Consistent with the Collective Bargaining Agreement,

the Complainant was allowed to sign the overtime desired list for his facility and the Largo II VMF. However, management relied upon the employees domiciled at the Largo I VMF to meet the overtime needs of that facility. When the Largo I employees could not meet the need, then management went to the overtime desired list and recruited employees in other facilities. The Postal Service has articulated a nondiscriminatory reason for its actions.

The burden now shifts to the Complainant to provide evidence that the Postal Service's stated reasons for its actions were not the true reasons, but were a mere pretext for intentional discrimination. The Complainant failed to produce such evidence. He failed to prove that race, color or prior EEO activity were the reasons he was denied overtime. Therefore, the Complainant failed to prove a violation of employment discrimination statutes with respect to Issue # 2.

*Issue # 3*

The Complainant met the first element of his *prima facie* case for race (African American) and color (Black). He met the second element in that he was chosen for an interview for the Lead Automotive Technician position. He met the third element in that Stephen Clark (Caucasian and white) was selected for the position. As the Complainant satisfied all three elements, he has established a *prima facie* case of race and color discrimination with respect to Issue # 3.

The Complainant met the first element of his *prima facie* case of retaliation in that he engaged in prior EEO activity when he filed prior EEO complaints, the most recent of which was filed in 2002. The Complainant satisfied the second element in that Manager Cook stated that he was aware of the Complainant's prior EEO complaints. The Complainant met the third element in that he was not selected for the position of Lead Automotive Technician. However, he failed to meet the fourth element in that his nonselection to the position in question did not follow his protected activity in such a time and manner as to raise an inference of discrimination. The Complainant's most recent EEO activity occurred on July 13, 2002. The selection at issue here occurred in July 31, 2003, more than one year after the Complainant's most recent EEO case. Therefore, no inference of retaliation has been raised.

As the Complainant established a *prima facie* of race and color discrimination, the analysis will continue. The Postal Service must now articulate a legitimate business reason for its actions.

Manager Cook testified that there were four (4) applicants for Vacancy 03-43. He stated that he relied upon PS Form 991, and questions regarding mechanical trouble shooting, maintenance of records, report preparation, the ability to instruct, the ability to diagnose electrical and electronic problems, and the ability to work with others. He testified that these questions were all weighted the same

and there were no pre-requisite testing for Vacancy 03-43. Manager Cook stated that the Complainant indicated average ability and knowledge to perform the tasks described in these questions. He stated that all four (4) applicants had the same qualification rating based on the KSAs and all received an interview.

Manager Cook testified that Stephen Clark was selected for Vacancy 03-43 because he interviewed better than the other three (3) candidates. Mr. Clark received a score of 71.67, Mr. Lowe received a score of 70.0, Mr. Johnson received a score of 70.0, and the Complainant received a score of 70.0 as described in PS Form 1796-B, Qualifications Rating Sheet for Best Qualified Positions completed by Manager Cook on August 26, 2003. The Postal Service has articulated a nondiscriminatory reason for not selecting the Complainant for the position.

The burden now shifts to the Complainant to provide evidence that the Postal Service's stated reasons for its actions were not the true reasons, but were a mere pretext for intentional discrimination. The Complainant failed to produce such evidence. The Complainant's contention that he was better qualified than Mr. Clark is not supported by the record and the file contains no evidence that Mr. Clark was selected for unlawful reasons. The Complainant has produced nothing to suggest that the Postal Service's stated reasons for its selection decision were pretext for intentional discrimination. Therefore, the Complainant failed to prove a violation of employment discrimination statutes with respect to Issue # 3.

## CONCLUSION

After a review of the entire record, the Postal Service is closing this case with a finding of no discrimination based on race, color and/or retaliation for prior protected activity.

## COMPLAINANT'S APPEAL RIGHTS

### Right to file a civil action

If you are dissatisfied with this final decision, you may file a civil action in an appropriate U.S. District Court **within 90 calendar days** of your receipt of this decision. If you choose to file a civil action, that action should be captioned **Kevin D. West v. John E. Potter, Postmaster General, U. S. Postal Service**. You may also request the court to appoint an attorney for you and to authorize the commencement of that action without the payment of fees, costs, or security in such circumstances as the court deems just. Your application must be filed within the same 90-day time period for filing the civil action.

## Appeal to the Equal Employment Opportunity Commission

In lieu of filing a civil action, you may appeal to the Equal Employment Opportunity Commission **within 30 calendar days** of the date of your receipt of this decision, or, if you are represented by an attorney, **within 30 calendar days** of your attorney's receipt of the decision. The appeal must be in writing and filed with the Director, Office of Federal Operations, Equal Employment Opportunity Commission. P.O. Box 19848, Washington, D.C. 20036-0848, or by personal delivery or facsimile.

You should use PS Form 3573, Notice of Appeal/Petition, (attached to the agency's decision) and should indicate what you are appealing. Any supporting statement or brief must be submitted to the EEOC within 30 calendar days of filing the appeal. A copy of the appeal and any supporting documentation must also be submitted to the agency's designated office at: Office of EEO Compliance and Appeals, United States Postal Service, Capital Metro Operations, P. O. Box 1730, Ashburn, VA 20146-1730. In or attached to the appeal to the EEOC, you must certify the date and method by which service of the appeal was made on the agency's office.

Failure to file within the 30-day period could result in the EEOC's dismissal of the appeal unless you explain, in writing, extenuating circumstances which prevented filing within the prescribed time limit. In this event, extending the time limit and accepting the appeal will be discretionary with the EEOC.

If you file an appeal with the EEOC' Office of Federal Operations, you may thereafter file a civil action in an appropriate U.S. District Court **within 90 calendar days** of your receipt of the Office of Federal Operations' decision. A civil action may also be filed after 180 calendar days of your appeal to the EEOC, if you have not received a final decision on your appeal.

Kathleen M. Eley
Manager, EEO Compliance & Appeals
Capital Metro Operations

Attachments:
1. Certificate of Service
2. PS Form 3573, "Notice of Appeal/Petition" (Complainant and Complainant's Representative, if an attorney)

**UNITED STATES POSTAL SERVICE
EQUAL EMPLOYMENT OPPORTUNITY CASE
IN THE MATTER OF**

*KEVIN D. WEST, COMPLAINANT*

Agency Case No. 4K-200-0235-03

**CERTIFICATE OF SERVICE**

*For timeliness purposes, it is presumed that the Final Agency Decision was received by the following individuals within five (5) calendar days after it was mailed on the date indicated below.*

**COMPLAINANT: (PRO SE)**
KEVIN D. WEST
831 CHATSWORTH DRIVE
ACCOKEEK, MD 20607-2032

**MANAGER, HUMAN RESOURCES:**
CAPITAL DISTRICT – USPS
900 BRENTWOOD ROAD NE
WASHINGTON DC 20066-9994

**MANAGER, EEO DISPUTE RESOLUTION:**
CAPITAL DISTRICT – USPS
9201 EDGEWORTH DRIVE
CAPITOL HEIGHTS MD 20790-7606


*May 12, 2005*
Date

*Mary Ana Swint*
OFFICE OF EEO COMPLIANCE & APPEALS
U. S. POSTAL SERVICE
CAPITAL METRO OPERATIONS
P O BOX 1730
ASHBURN VA 20146-1730