## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

**KEVIN D. WEST,**                                )
831 Chatsworth Drive                         )
Accokeek, MD 20607                         )
                                                          )
                    Plaintiff,                        )
                                                          )
            v.                                          )          Civil Action No.  05-1339 (JR)
                                                          )
**JOHN E. POTTER,**                          )
**POSTMASTER GENERAL**              )
**U.S. POSTAL SERVICE**                   )
475 L'Enfant Plaza, SW                     )
Washington, DC 20260                      )
                                                          )
                    Defendant.                     )
_____)

## FIRST AMENDED COMPLAINT
(EMPLOYMENT DISCRIMINATION: 442 CIVIL RIGHTS-EMPLOYMENT)

Comes now Plaintiff, Kevin D. West, and by way of <u>Amended</u> Complaint against

the Defendant, say as follows:

### NATURE OF THE ACTION

1.      This action is brought under Title VII of the Civil Rights Act of 1964, as amended,

        42 U.S.C. § 2000e <u>et</u> <u>seq.</u>, for race and color discrimination and retaliation in

        federal employment.

## JURISDICTION

### SUBJECT MATTER JURISDICTION

2.      The Court enjoys subject matter jurisdiction over this dispute as it exclusively

concerns a federal question, and claims presented under federal law.   28 U.S.C §

1331.

3.      The Court has been granted jurisdiction over this matter pursuant to 42 U.S.C §

2000e-5(f)(3) and 29 CFR § 1614.407.

4.      Plaintiff's claims are properly before this Court, as he has exhausted his

administrative remedies through the federal sector EEO complaint process as

follows:

    a.  Mr. West filed a formal complaint of discrimination with the Defendant

        U.S. Postal Service, on or about October 9, 2003, Agency Case No. 4K-

        200-0235-03.  The U.S. Postal Service issued its Final Agency Decision on

        this EEO complaint, on May 12, 2005.  Plaintiff filed the instant action

        concerning the EEO complaint on July 5, 2005.

    b.  Mr. West filed approximately seven formal complaints of discrimination

        with the Defendant U. S. Postal Service between the years 2001 and 2003

        (4K-200-0220-01, 4K-200-0031-02, 4K-200-0048-02, 4K-200-0108-02,

        4K-200-0074-02, 4K-200-0177-02, 4K-200-0016-03), which were

        consolidated and adjudicated before an Administrative Judge of the U.S.

        Equal Employment Opportunity Commission (EEOC Case No. 120-2004-

        00080X).  The Administrative Judge issued her decision in favor of the

Defendant on these consolidated complaints on May 10, 2005 and the U. S. Postal Service took Final Agency Action implementing the Administrative Judge's decision, on June 20, 2005, (received by Plaintiff on June 22, 2005).

c.  Mr. West filed a formal complaint of discrimination on April 18, 2005, Agency Case No. 4K-200-0099-05.  The Postal Service issued its Final Agency Decision on this complaint, on September 9, 2005, (received by Plaintiff on September 12, 2005).

### PERSONAL JURISDICTION AND VENUE

5.  This Court has jurisdiction over the Defendant pursuant to 42 U.S.C. §§ 2000e-5(f)(3), 2000e-16(c).

6.  The United States District Court for the District of Columbia is the proper venue for this action since the Defendant U.S. Postal Service is headquartered in the District of Columbia and has substantial and continuous contacts with the District of Columbia.  Moreover, a substantial part of the events giving rise to the claims occurred in this judicial district, 28 U.S.C. § 1391(e).

## PARTIES

7.  The Plaintiff, Kevin David West is an individual who is, and all times relevant herein, was a resident of the State of Maryland.  He is, and at all times relevant herein, was an employee of the Defendant U.S. Postal Service within the meaning of 42 U.S.C. § 2000e(f).

8.      John E. Potter is the Postmaster General of the U.S. Postal Service and is named

here as Defendant in his official capacity as head of the U.S. Postal Service

Agency.  The U.S. Postal Service is an independently-established, federal

governmental agency and an employer, as defined by 42 U.S.C. §§ 2000e(b),

2000e-16 with over 500 employees.  The U.S. Postal Service is headquartered at

475 L'Enfant Plaza, S.W., Washington, D.C. 20260.

## FACTUAL ALLEGATIONS

9.      Plaintiff Kevin D. West is an African-American male who, during most time

periods covered herein and currently, works as a Level 7 Automotive Mechanic

for the U.S. Postal Service ("USPS" or "Postal Service") in its Vehicle

Maintenance Facility ("VMF").

10.     At all times relevant to this action, David Cook served as Manager over the VMF

facility in Largo, Maryland (or "Southern Maryland") where Mr. West is

employed.

11.     Working under Cook in the 1990s, West believed some of Postal Service

management's actions violated federal anti-discrimination laws, and, as a result,

filed EEO complaints against the Agency between 1992 and 1999.

12.     In May 1999, West wrote to Cook requesting "training as acting lead mechanic …

and the acting supervisor or 204B in a supervisor's absence."  VMF managers

customarily provided available supervisory training and 204B temporary

promotion to employees upon their written or verbal request.

13.    During the years 1999 and 2000, Timothy Currie served as Manager Vehicle

Maintenance for the USPS VMF in Bedford Park, Illinois.  During his tenure

there, he managed numerous USPS employees, many of whom are African-

American.  In the years 1999 and 2000, over 20 African-American employees

filed EEO complaints against the USPS alleging that Currie discriminated against

them.  Several VMF employees gave statements under oath that they personally

observed Currie make racist statements regarding African-Americans, such as

"lazy," "stupid," and stating that he "[didn't] know why **[Black] people** are so

hard-headed."  Currie admits that the U.S. Equal Employment Opportunity

Commission has found that he committed intentional race discrimination in

violation of Title VII.  Upon information and belief, the USPS officially

designated the Bedford Park VMF as a "hot spot" for volatile management-

employee relations necessitating monthly meetings to cool racial tensions.  Shortly

thereafter, Currie came to Washington D.C., after being promoted to Manager

Vehicle Maintenance in the Capital District.

14.    After arriving in the Washington D.C. area, Currie summoned West to his office

located on T Street, N.E., Washington, D.C.  During the meeting, Currie told West

that he had been "brought" to Washington, D.C. to take care of "VMF problems,"

and that West was "one of those problems that he will solve."  Mr. West requested

union representation but Currie denied him a union representative.  Currie

admitted to West that "he was informed by his supervisor about [West's] prior

EEO history."  He repeatedly asked West if "he liked his job," and gave him a

resignation slip.  When West responded that he "love[s his] job" and refused to resign, Currie told him he "would never be used as acting Lead Mechanic or [in] any other upper mobility positions" in the VMF.  Since his conversation with Currie in September 2000, five years ago, Kevin West has been offered no details to Acting 204B Supervisor jobs and has consistently been rejected for permanent promotions.

15.    On September 22, 2000, Cook issued a Letter of Warning to West for failing to attend voluntary craft (non-supervisory) training when West provided a health-based reason for not attending.

16.    As manager, Cook selects craft mechanics to temporarily serve in higher-level craft positions.  On many occasions between the year 2001 and the present day, Cook temporarily promoted junior White mechanics over West.  Currie instructed Cook not to select West for these opportunities.

17.    In early 2001, Currie formulated an ad-hoc, unofficial program entitled the "204B Supervisory Training Program," which was in effect from approximately March 2001 to December 2002.  This program did not replace or limit customary supervisory details or training within the USPS or selection therefore.  West did not wish to participate in this special voluntary program, but remained interested in upward mobility opportunities that co-existed with the program; consequently, by a letter to Currie dated March 8, 2001, West communicated his continued interest in receiving supervisory training and 204B acting-supervisor, temporary promotions.  Although at least 17 other craft employees, who had not been

selected for Currie's program, had been offered temporary promotion to Acting

Supervisor, at no time did Currie offer West a supervisor detail.  Among the 17

selected for these opportunities were Caucasian employees junior to West like

Thomas Buchanan, John Bowser and John Miller.

18.    On June 8, 2001, Cook issued West another Letter of Warning for failing to report

for scheduled overtime during the Memorial Day Holiday period, although Cook

had previously granted West leave for that period and informed him that he was

excused for the holiday.  Cook issued the discipline without following progressive

discipline procedures outlined in the governing collective bargaining agreement.

19.    On June 18, 2001, Cook physically harassed West for not medically documenting

an absence necessitated by his infant daughter's fever.  The absence was

authorized under dependant care sick leave policies.

20.    Each workday from June 19 – 25, 2001, Cook took West's timecard, refused to

allow him to work, denied him copies of his June leave slips, and ordered him off

of USPS property. Cook then verbally suspended West for approximately two

weeks without following USPS policies and procedures for immediate suspensions

(i.e. "Emergency Placement").  Like Cook, Currie engaged in these same activities

in Bedford Park, Illinois with two other African-American VMF employees.

21.    On July 17, 2001, Cook issued a 7-Day suspension to West for failing to maintain

a regular work schedule, during the days Cook suspended West from work.

22.    On August 24, 2001, Cook again issued West a 7-Day suspension for failing to

maintain a regular work schedule, despite West's solid attendance and leave

records.  Cook supervised Caucasian VMF employees with poor attendance

records, i.e. David Lowe, John Miller and David Wood, but did not discipline

them, as he did West.

23.    On October 27 and 28, 2001, Cook denied West overtime opportunities while

granting these opportunities to Caucasian junior employees like Thomas Buchanan

and Thomas Sponaugle, and to Robert Smith who was not on the overtime desired

list.

24.    Cook denied West's request for leave on the Veteran's Day Holiday 2001, while

granting another craft employee who worked at the same facility leave for that

period.

25.    In November 2001 and at other times, West was required to take 24 hours of

annual leave to be excused from working, while other employees were permitted

to take only eight hours of leave to be excused.

26.    On January 28, 2002, Acting Supervisor Frank Green issued a 7-Day suspension

to West for failure to maintain a regular work schedule and charging him with

AWOL for the Martin Luther King Holiday; yet, West had been granted a leave of

absence for that holiday period on December 12, 2001.  Caucasian employee

David Lowe failed to report the same day, but was not disciplined.

27.    On February 11, 2002, Acting Supervisor Green denied West's request for a

revised schedule, due to his late arrival.  Revised schedules are routinely given to

other VMF employees.

28.    On February 28, 2002 and twice more in May 2002, Green denied West's vacation leave requests for the July 4th holiday.

29.    On July 17, 2002, Green issued a 14-Day suspension to West for failure to maintain a regular work schedule, although West sufficiently documented his absences from work and had ample leave at his disposal.

30.    On August 22, 2002, Green placed West on Emergency Placement (immediate suspension) for failing to perform work, which West reasonably believed posed a severe safety hazard—a hazard West had reported to Postal management just 1-2 weeks prior.

31.    In late summer 2002, West applied and was qualified for two Supervisor positions in the VMF.  A member of the Review Committee who reviewed and evaluated the applications (Form 991's), Dianne Hatfield assisted several applicants in the preparation of their applications and personally prepared a Caucasian candidate, John P. Miller's 991 application for him.  The selecting officials were David Cook (for Supervisor position no. 31-02) and Timothy Currie (for Supervisor position no. 33-02). Ultimately, the USPS failed to select West for either position but selected Frank Green (African-American/No EEO history) and Stamatos Karoutsos (Caucasian/No EEO history) for the Supervisor positions.

32.    On March 14, 2003, West applied for two advertised Supervisor, EAS-17 positions (nos. 14-03 and 15-03) and on April 2, 2003 applied for a third advertised Supervisor, EAS-17 position (no. 23-03).   Although West was among the best qualified, the Postal Service denied him promotion to these positions and

9

awarded the Supervisor positions to John Miller (no. 14-03) and Michael Scott (no. 15-03) – both of whom are Caucasian – and Anthony Shelton (no. 23-03). John Miller was not qualified for the promotion.

33.    From April 1, 2003 through July 25, 2003, West was denied overtime opportunities that were available at the Southern Maryland facility, despite his compliance with overtime procedures (i.e. signing overtime desired list) and being qualified to work.

34.    On August 6, 2003, West applied for the position of Lead Automotive Technician, PS-08, vacancy no. 03-43 for which he was best qualified among applicants.  The Postal Service did not, however, select West, but rather selected Stephen Clark (Caucasian) for the position.

35.    On or about January 25, 2005, Acting Supervisor, Stephen Clark, as directed by Cook, denied West's request for a revised schedule to accommodate his late arrival to work.  For many years, VMF employees have been granted revised schedules when they are tardy, except Mr. West.

36.    Throughout the time periods described above, West filed and prosecuted several EEO discrimination complaints to contest the frequent and persistent unlawful activities of the Postal Service's Vehicle Maintenance Facility and its management officials.

37.    For this, Currie has referred to West as "the boy who cried wolf" and a "troublemaker."

38.   Cook also called West a "troublemaker" who "keeps things stirred up all the time"
      – referring to his protected activities.  Cook has also stated that West is "evil" and
      referred to him and another African-American employee as "worthless."

## COUNT I
### DISPARATE TREATMENT BASED ON RACE AND COLOR

39.   Plaintiff repeats and realleges the allegations of paragraphs 1  through 38,
      inclusive, and incorporates the same by reference as though set forth fully herein.

40.   Mr. West is an African American of a brown complexion and color.

41.   Mr. West was eligible for training, overtime in October 2001 and April 2003, and
      for temporary promotion to lead mechanic and supervisor.  He also applied for
      permanent promotion to five vacant Supervisor positions (position nos. 31-02, 33-
      02, 14-03, 15-03, and 23-03), and Lead Automotive Technician, PS-08. Mr. West
      was qualified, and at times best qualified, for temporary and permanent promotion
      to lead mechanic and supervisor, and for overtime opportunities.

42.   Mr. West suffered the following adverse employment actions: continual denial of
      temporary detail to 204B acting supervisor; continual denial of supervisory
      training with higher-level pay, since his May 1999 request; denial of temporary
      promotions to higher-level, higher-paying lead mechanic positions; denial of
      permanent promotions to Supervisor on at least five separate occasions; denial of
      promotion to Lead Automotive Technician, PS-08; denial of overtime
      opportunities and pay in October 2001 and April – July 2003; denial of revised

schedules and forced use of annual leave on February 11, 2002 and January 25, 2005; and six or more unjust and excessive disciplinary actions.

43. The USPS awarded at least three of the permanent supervisor positions and the Lead Automotive Technician position to Caucasians.  For the majority of temporary promotions to lead or supervisory mechanic the USPS selected Caucasians—some of whom are junior to Mr. West. The USPS also afforded overtime opportunities to Caucasian mechanics who are junior to Mr. West and at least one Caucasian employee who was ineligible to receive the opportunity.

44. The reasons offered by the Defendant for taking the adverse employment actions against Mr. West are pretextual.

45. Caucasian employees at the VMF were not subjected to the same adverse employment actions that Mr. West experienced, but were afforded supervisory training,  upward mobility opportunities to include promotions, liberal approval of leave and revised-schedule requests, and leniency for attendance violations.

46. Defendant's officials made remarks that evince a racial bias or bigotry.

47. Mr. West's race and/or color motivated USPS officials to take the adverse employment actions described herein.

48. Defendant, at all times relevant hereto, had actual and constructive knowledge of the conduct of its managerial employees.

49. Defendant discriminated against Mr. West due to his race in violation of Title VII, 42 U.S.C. § 2000e-16(a).

50.    The acts alleged in paragraphs 39-49 constitute continuing violations under Title
       VII.

51.    Plaintiff is informed and believes, and based thereon alleges, that in addition to the
       practices enumerated above, Defendant, and its agents, have engaged in
       discriminatory practices against him which are not yet fully known.  At such time
       as said discriminatory practices become known to him, Plaintiff will seek leave of
       court to amend this Complaint in that regard.

                                    **COUNT II**
                **Racial Harassment/Hostile Work Environment**

52.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 51,
       inclusive, and incorporates the same by reference as though set forth fully herein.

53.    Defendant, through its managerial officials, systematically harassed Mr. West
       when it issued six corrective actions against him (in addition to two "emergency"
       suspensions), denied Mr. West's leave requests at least 14 times, subjected him to
       physical harassment and intimidation, refused to grant two of his requests for
       revised schedules, failed to offer him overtime, rejected him for five Supervisor
       positions, a Lead Mechanic position, and continually barred him from higher-level
       craft and supervisory details and supervisory training.

54.    The conduct of the Defendant's managers and supervisors toward Mr. West was
       sufficiently severe or pervasive to create an abusive, hostile work environment.

55.    Some African-American VMF employees' believe that USPS VMF management
       disciplined them more frequently than their Caucasian counterparts.  For example,

Mr. West was disciplined, in or around August 2001, for using a few days of approved sick leave, while a Caucasian employee who missed several days of work while incarcerated for driving while intoxicated received no discipline.

56. At least one African-American VMF employee stated under oath that members of VMF management would refuse to speak to African-American employees, and walk past them to speak to Caucasian employees.

57. Defendant's agents, particularly Currie and Cook (who at times acted on Currie's instructions) bullied and intimidated African-American VMF employees.

58. Defendant's officials have made remarks that evince a racial bias or bigotry.

59. The hostility and harassment Mr. West suffered was motivated by his race.

60. Caucasian employees were not subject to the pattern of harassing activities as was Mr. West.

61. Defendant, at all times relevant hereto, had actual and constructive knowledge of the conduct of its managerial employees described herein.

62. Defendant did not exercise reasonable care to prevent or correct race-based harassing behavior on the part of USPS responsible management officials, despite employee complaints.

63. Defendant Postal Service violated Title VII's prohibition against racial discrimination by fostering and maintaining a racially hostile work environment. 42 U.S.C. § 2000e-16(a).

64. The acts alleged in paragraphs 52-63 constitute continuing violations under Title VII.

65.    Plaintiff is informed and believes, and based thereon alleges, that in addition to the

practices enumerated above, Defendant, and its agents, have engaged in

discriminatory practices against him which are not yet fully known.  At such time

as said discriminatory practices become known to him, Plaintiff will seek leave of

court to amend this Complaint in that regard.

**COUNT III**
**DISPARATE TREATMENT BASED ON ACTIVITY PROTECTED BY TITLE VII**

66.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 65,

inclusive, and incorporates the same by reference as though set forth fully herein.

67.    Mr. West engaged in activity protected by § 704 of Title VII when on April 19, 1999,

September 8, 2000, February 6, 2001, in May 2001, August 29, 2001, July 13, 2002,

October 9, 2003 and April 18, 2005 he filed formal EEO complaints with the USPS

and prosecuted same.  He also filed a civil action in U.S. District Court in April 2001

regarding the Postal Service's discriminatory acts.

68.    Mr. West engaged in activity protected by § 704 by opposing practices he

reasonably believed violated Title VII.  His activity included, but was not limited

to, voicing questions and concerns about biased practices to management officials

at employee meetings or "talks," writing on disciplinary actions he received that

he opposed such actions because they were discriminatory and retaliatory, sending

complaints to the Postmaster General, contacting the Postal Inspectors in or

around June 2001 regarding unlawful activity, reporting violations of Title VII to

the Postal Police in or around June 2001, and forwarding EEO concerns to his Congressional representatives.

69. Defendant, through Timothy Currie, Diane Hatfield, David Cook, Frank Green, Joseph King and others, was aware of Mr. West's prior protected activity.

70. Mr. West was eligible for training, overtime in October 2001 and April 2003, and for temporary promotion to lead mechanic and supervisor. He also applied for permanent promotion to five vacant Supervisor positions (position nos. 31-02, 33-02, 14-03, 15-03, and 23-03), and Lead Automotive Technician, PS-08. Mr. West was qualified, and at times was best qualified, for temporary and permanent promotion to lead mechanic and supervisor, and for overtime opportunities.

71. Mr. West suffered the following adverse personnel actions: continual denial of temporary detail to 204B acting supervisor; continual denial of supervisory training with higher-level pay, since his May 1999 request; denial of temporary promotions to higher-level, higher-paying lead mechanic positions; denial of permanent promotion to Supervisor on at least five separate occasions; denial of promotion to Lead Automotive Technician, PS-08; denial of overtime opportunities and pay in October 2001 and April – July 2003; denial of revised schedules and forced use of annual leave on February 11, 2002 and January 25, 2005; and six or more unjust and excessive disciplinary actions.

72. There is a causal nexus between the adverse personnel actions alleged above and Mr. West's participation in the EEO process and protected oppositional conduct.

73.    The reasons offered by the Defendant for taking the adverse personnel actions against Mr. West are pretextual.

74.    Cook and Currie made statements to and about Mr. West that reflect their animus toward him for engaging in protected activity.

75.    The Defendant did not treat Mr. West as it had treated similarly-situated employees who had not engaged in protected activity.

76.    Defendant, at all times relevant hereto, had actual and constructive knowledge of the conduct of its managerial employees as described above.

77.    The Defendant retaliated against Mr. West in violation of Title VII, 42 U.S.C. § 2000e-3(a) and 29 CFR § 1614.101(b).

78.    The acts alleged in paragraphs 66-77 constitute continuing violations under Title VII.

79.    Plaintiff is informed and believes, and based thereon alleges, that in addition to the practices enumerated above, Defendant, and its agents, have engaged in retaliatory practices against him which are not yet fully known.  At such time as said retaliatory practices become known to him, Plaintiff will seek leave of court to amend this Complaint in that regard.

## COUNT IV
### RETALIATORY HARASSMENT/HOSTILE WORK ENVIRONMENT

80.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 79, inclusive, and incorporates the same by reference as though set forth fully herein.

81.    Mr. West engaged in activity protected by § 704 of Title VII, see ¶¶ 67 and 68, and Defendant and its agents were aware of his protected activities.

82.    Defendant, through its managerial officials, systematically harassed Mr. West when it issued six corrective actions against him (in addition to two "emergency" suspensions), denied his leave requests at least 14 times, subjected him to physical harassment and intimidation, refused to grant two of his requests for revised schedules, failed to offer him overtime, rejected him for five Supervisor positions, and a Lead Mechanic position, and continually barred him from higher-level craft and supervisory details and supervisory training.

83.    The conduct of the Defendant's managers and supervisors toward Mr. West was sufficiently severe or pervasive to create an abusive, hostile work environment.

84.    Mr. West's work environment was objectively hostile toward him and Mr. West believes he was harassed.

85.    Currie's and his subordinates' pattern of activities, as described herein, constitute unwelcomed harassment.

86.    Because of the protected activities undertaken by Mr. West, the Defendant and its agents subjected him to harassment and created a hostile work environment.

87.    Defendant, at all times relevant hereto, had actual and constructive knowledge of the conduct of its management employees described herein.

88.    Defendant did not exercise reasonable care to prevent or correct retaliatory harassment, despite Mr. West's complaints.

89.    Defendant violated Title VII's prohibition against retaliation by fostering and

maintaining a retaliatory hostile work environment. 42 U.S.C. § 2000e-3(a).

90.    The acts alleged in paragraphs 80-89 constitute continuing violations under Title

VII.

91.    Plaintiff is informed and believes, and based thereon alleges, that in addition to the

practices enumerated above, Defendant, and its agents, have engaged in retaliatory

practices against him which are not yet fully known.  At such time as said

retaliatory practices become known to him, Plaintiff will seek leave of court to

amend this Complaint in that regard.

### PRAYER FOR RELIEF

92.    As a direct and proximate result of Defendant's actions, Mr. West has experienced

and will continue to experience pain and suffering, and extreme and severe mental

anguish and emotional distress.  He has incurred and will continue to incur

medical expenses for treatment by a psychologist and other health professionals

and for other incidental expenses.  Therefore, for each Count alleged in this

Complaint, Mr. West is entitled to medical expenses and compensatory damages.

93.    As a further direct and proximate result of Defendant's violations of law, Mr.

West has been compelled to retain the services of counsel and has thereby incurred

and will continue to incur, legal fees and costs.  Therefore, for each Count alleged

in this Complaint, Mr. West requests that attorneys' fees be awarded, pursuant to

42 U.S.C.§ 2000e-5(k).

WHEREFORE, Plaintiff prays for the following relief:

1.      An order declaring the acts and practices complained of herein violate Title VII of the Civil Rights Act of 1964;

2.      An order restraining and permanently enjoining Defendant's illegal acts and practices;

3.      Back wages and salary, bonuses, and benefits;

4.      Plaintiff's costs;

5.      General, special, and compensatory damages for all claims;

6.      Pre-judgment and post-judgment interest;

7.      Plaintiff's attorney's fees and expert witness fees;

8.      Equitable and restorative relief, including but not limited to leave restoration, front pay and retroactive promotion;

9.      All other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury for all claims and issues triable by jury.

Respectfully submitted,

Dated: September 20, 2005                    By:    _____/S/_____
                                             Teresa W. Murray
                                             Bar No. 460430

                                             THE LAW OFFICES OF T.W. MURRAY, LLC
                                             1111 Bonifant Street
                                             Silver Spring, Maryland 20910
                                             Phone: 301-585-1870
                                             Fax: 301-585-1871

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing FIRST AMENDED COMPLAINT was sent via certified mail, this 20th day of September 2005 to:

John E. Potter,
Postmaster General
United States Postal Service
475 L'Enfant Plaza, S.W.
Washington, D.C. 20260

United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20001

United States Attorney General
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

_____/s/_____
Teresa W. Murray
THE LAW OFFICES OF T.W. MURRAY, LLC
1111 Bonifant Street
Silver Spring, Maryland 20910
Phone: 301-585-1870