UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KEVIN D. WEST,                          )
                                        )
        Plaintiff,                      )
                                        )          Civil Action No. 05-1339 (RMU)
        v.                              )
                                        )
JOHN E. POTTER,                         )
POSTMASTER GENERAL,                     )

### DEFENDANT'S MOTION TO DISMISS

Defendant respectfully requests that the Court dismiss all claims and allegations of discrimination, retaliation and hostile work environment based on events in paragraphs 12 through 30 of plaintiff's Amended Complaint.  Litigation of the issues and claims relating to those events is precluded due to res judicata and collateral estoppel.

This motion is accompanied by a memorandum of points and authorities and proposed order.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN D.C. Bar # 451058
United States Attorney

_____
R. CRAIG LAWRENCE, D.C.  BAR #171538
Assistant United States Attorney

_____
RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KEVIN D. WEST,                          )
                                        )
        Plaintiff,                      )
                                        )        Civil Action No. 05-1339 (RMU)
        v.                              )
                                        )
JOHN E. POTTER,                         )
POSTMASTER GENERAL,                     )

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Defendant respectfully requests that the Court dismiss all claims and allegations of discrimination, retaliation and hostile work environment based on events in paragraphs 12 through 30 of plaintiff's Amended Complaint.  Plaintiff litigated the facts and issues in those paragraphs in *West v. Potter*, and is precluded from relitigating them in the present case.[1]

## Procedural History

Plaintiff Kevin D. West was an African-American employed as a Vehicle Mechanic for the United States Postal Service (USPS) at the Largo I Vehicle Maintenance Facility in Capitol Heights, Maryland.  On April 6, 2001, he filed Civil Action 01-0746 (JR)(*West I* Complaint) against Timothy Currie, a USPS manager, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.

---

[1] The defendant is not claiming res judicata or collateral estoppel as to plaintiff's claims relating to acts described in paragraphs 31- 35 of the amended complaint.

§ 2000e-16, claiming race discrimination and retaliation in his employment.  Specifically, plaintiff alleged:

• that on September 7, 2000, Mr. Currie told plaintiff he would "no longer be acting lead mechanic or Vehicle analyst from this point."  *West I* Complaint at pp. 2-3 (App. F2-3)

• that on September 22, 2000, Mr. Currie had David Cook issue to plaintiff a letter of warning for failure to attend training. *Id* at p. 3 (App. F3).

By Order dated December 17, 2001, Postmaster General John E. Potter was substituted as the only defendant in the action.  *West I* docket entry #12.

On February 7, 2002, the court issued an order granting defendant's motion to stay discovery and to transfer the case to the District of Maryland.  *West I* Docket entry No. 16.  That order was vacated on February 19, 2002 and the case was re-opened.  *Id*.  All proceedings in the matter were stayed until April 5, 2002, allowing plaintiff time to dismiss his Maryland action.  *West I* Docket entry dated 3/5/02.

On June 18, 2002, plaintiff filed a "Motion to  Amend Complaint for Inclusion of Prior History of Retaliation and Discrimination." (Motion to Amend).  The motion was denied in open court on June 18, 2002.  June 18, 2002 Transcript at pp. 5-7.

On November 2, 2002, defendant moved for summary judgment.

2

On January 30, 2003, after full briefing, the District Court granted summary judgment for defendant as to the factual allegations in plaintiff's Complaint, and as to the additional factual allegations in Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Opposition).

Plaintiff appealed.  The parties have briefed the matter, and *West I* is pending in the District Of Columbia Circuit  *West v. Potter*, No. 03-5058 (D.C. Cir.).

On May 10, 2005, the Administrative Judge in plaintiff's EEO action, EEO Case No. 120-2004-00080X (EEO action)issued its decision on plaintiff's retaliation/discrimination claims[2], granting summary judgement to the Postmaster General.  EEO Decision.  The allegations in the EEO action mirror most of the allegations raised by plaintiff in his Opposition. Plaintiff claimed discrimination and retaliation during the period May 2001 through June 2002.  EEO Decision at pp 4-6. Those allegations, as is detailed below, were litigated and decided in *West I.*

On May 12, 2005 the Agency issued a final decision on plaintiff's claims of discrimination/retaliation in 2003 relating to non-selections to permanent supervisory positions.  Attachment to plaintiff's Complaint in Civil Action No. 05-1339

Plaintiff thereafter filed Civil Action No. 05-1339 and

---

[2]  This EEOC case consolidated the seven complaints cited in the Amended complaint at paragraph 4b.

later filed the amended complaint. (*West II*)

**FACTUAL BACKGROUND**

Plaintiff West served as a Vehicle Mechanic for the USPS at the Largo I Vehicle Maintenance Facility (VMF) in Capitol Heights, Maryland. *West II* at ¶¶9-10.  Plaintiff has filed numerous EEO complaints. *Id* at ¶4.   The most recent EEO complaints filed prior to the facts at issue in *West I* were on October 27, 1998 and April 19, 1999.  Defendant's Statement of Material Facts in *West I* SMF at ¶3.

**Notification that plaintiff would not be placed in Acting Supervisory Position**

In the approximately one-year period before September 7, 2000 (September 25, 1999 through September 7, 2000), plaintiff had been appointed on several occasions to serve as Acting Lead Mechanic in the temporary absence of his team leader at the USPS Vehicle Maintenance Facility located in Largo (Capitol Heights), Maryland. Cook Dec. at ¶3; Currie Dec. at ¶3.[3]

On September 6, 2000, Timothy Currie, who became the Capital District Manager for the VMF in approximately June 2000 (SMF at ¶6), conducted interviews of several co-workers of plaintiff West. Currie Dec. at ¶5. His inquiry was prompted by a sexual harassment complaint that had been filed against plaintiff West by a female co-worker. Currie Dec. at ¶¶4, 5, 6 and at Ex. 3-7.

---

[3]  Unless otherwise noted, all exhibits referenced are part of the record in *West I*.

In Manager Currie's view, substantial grounds did not exist to
support the sexual harassment complaint but he did determine that
several colleagues and co-workers of plaintiff West had trouble
communicating and relating to him when he acted in a supervisory
capacity. Currie Dec.at ¶¶ 5,6. *West I* Complaint at Exhibits 2
and 4; Currie Dec. at ¶5.

On September 6, 2000, District Manager Currie also consulted
with David Cook, the VMF Manager and plaintiff's immediate
supervisor, regarding the results of District Manager Currie's
interviews with plaintiff West's co-workers. Cook Dec.at ¶4.
Cook also had concluded that plaintiff West was not able to
properly discharge his supervisory responsibilities when acting
in the temporary Acting Lead Mechanic and Vehicle Analyst
positions.  Cook's conclusion was based on plaintiff's own
correspondence and office memoranda, Manager Cook's discussions
with plaintiff West's co-workers, and Cook's own observations.
Cook Dec. at ¶5.

District Manager Currie determined that plaintiff West was
not qualified to serve as Acting Lead Mechanic or Vehicle
Analyst, in the absence of his team leader. Currie Dec. at ¶7.

The next day, on September 7, 2000, plaintiff West reported
to District Manager Currie's office. Currie Dec. at ¶8.  During
that meeting Currie told plaintiff that he would no longer be
Acting Lead Mechanic or Vehicle Analyst for VMF in the absence of

the lead mechanic until he could improve his ability to communicate with his fellow workers.  Currie Dec. at ¶10; Complaint at Exhibit 2A.  He also told plaintiff, *inter alia*, that if he could not do his job he could resign. Currie Dec. at ¶8; *West I* Complaint at 2(App.F2).

Thereafter, plaintiff served as Vehicle Analyst on a temporary basis in the absence of the regular team leader for approximately nine weeks from January 5-March 16, 2001.  Cook Dec. at ¶3, Currie Dec. at ¶3.

Allegations concerning this same fact pattern appear in paragraph 14 of *West II*.

**Letter of Warning**

On August 28, 2000, Mr. Cook, Manager VMF, had asked plaintiff if he would take the lead mechanic's place in Norman, Oklahoma for a Mack Diesel training class.  Opposition at p. 2 ¶1.  Plaintiff responded "yes, but I have to see my traveling orders first." *Id.* at ¶2.  On September 1, plaintiff was given his Travel Request Advance Itinerary Schedule and on September 5, 2000 he was given his traveling orders.  *Id. at* ¶¶3,4.

After returning to work on September 7, 2000, plaintiff gave Manager Cook a letter dated September 6, 2000, requesting a change in his travel schedule for the Mack Diesel class he was scheduled to attend September 11-22, 2000, in Norman, Oklahoma. Complaint Exhibit 2B. The letter requested that Manager Cook

6

authorize a change in the air travel return date scheduled on the final day of class, September 22, 2000. Opposition Ex. 2 Plaintiff West claimed that this change was necessary because the schedule created an "unsafe environment" for him to attend four hours of class in the morning, and then fly back home that same day. *Id*.

Mr. Cook had approved a similar request made by plaintiff West 7 months earlier, for a previous training assignment. Because that request had been made at the last minute, the Southern Maryland Plant Safety Office did not have time to fully evaluate it, and advised Cook to approve the request for the sake of expediency. Cook Dec. at ¶10. However, in September 2000, Mr. Cook had not received any such approval from the Safety Office. Cook Dec.at ¶9. On September 8, 2000, Manager Cook informed plaintiff West that in the absence of a doctor's note stating that he could not travel, he was required to attend the training as scheduled. Cook Dec. at ¶8. Manager Cook explained that arrangements had already been made and that the Postal Service would lose approximately $1,100.00 in previously-allocated training program funds, if plaintiff failed to attend. Cook Dec. at ¶11. As an alternative, Manager Cook suggested that plaintiff West could stay at the hotel an extra day at his own expense of approximately $50.00.  Cook Dec.at  ¶11. Plaintiff West responded that he already had a doctor's note on file with the USPS Medical

7

Unit, excusing him from travel on September 22, 2000. Cook Dec.
at ¶8.  Manager Cook checked with the USPS Medical Unit on
September 8, 2000 and ascertained that plaintiff West had no such
medical authorization on file with the USPS Medical Unit. *Id*.

Plaintiff West failed to report to the training course as
directed. Cook Dec. at ¶12.  On September 22, 2000, he was issued
a letter of warning ("LOW") for his failure to attend.
Defendant's SJM Exhibit 1.   However, pursuant to a final
settlement of his Step 2 grievance of the LOW,  Manager Currie
agreed to retain the LOW in plaintiff West's disciplinary file,
for only 6 months.  The LOW was removed from plaintiff's file on
March 21, 2001. Currie Dec. at ¶11. *West I* Complaint at 3 (App.
F3).

Allegations concerning this fact pattern appear at paragraph
15 of *West II.*

**OTHER ALLEGED ACTS OF CONTINUING DISCRIMINATION AND/OR
RETALIATION**

**Training Program and Acting Supervisory Positions after March
2001**

By memorandum dated February 26, 2001, Mr. Curry announced a
new in-house training program for those interested in becoming
supervisors.  Def. Reply at Ex. 7.  There was a staff meeting
introducing the program on March 1, 2001.  Opposition to SJM at
p. 9 ¶58.  The program was to consist of 8 weeks of on-the-job
and classroom training.  Upon successful completion of the

8

training, a trainee's name would be placed on a list of replacement supervisors in rated order.  They then would be selected from the list when a supervisor or manager was absent for 5 to 119 days. Def. Reply at Ex. 7; Currie EEO affidavit, Opposition to SJM at Ex. 70A.

In order to be accepted into the training program, completed forms 991x and 991, addressing requirements for the position of supervisor of VMF, were to be submitted between March 10 and April 13, 2001.  The applications were to be reviewed by a review panel and qualified applicants were to be interviewed. The top 3-6 applicants then would be eligible for the eight week training program.  Def. Reply at Ex7; Currie affidavit, Opposition to SJM at Ex. 70A.

On March 8, 2001, plaintiff sent Mr. Currie an e-mail concerning the training program stating:

> I am not interested in the program itself only the classroom training that the program offers. . .and all of the Oklahoma training courses as I have requested before.  I am also requesting all Acting Supervisor (204B) opportunities in the absence of the supervisor at Largo I, Largo II, and Riverdale VMF's in the absence of the supervisor, as previously requested to Mr. David Cook. . . .

Def. Reply at Ex. 8.  Mr. Currie responded by letter dated March 19, 2001 encouraging plaintiff to apply for the in-house training program, advising him that:  "As successful candidates complete the training program, their names will be listed for use when any

supervisor or manager is absent for a minimum of five days, up to a maximum of 199 days." Def. Reply at Ex. 9.

Plaintiff never submitted the required forms 991 to apply for the program. Opposition to SJM at p. 33 ¶8, and at Ex. 70A, Currie affidavit("Mr. West was the sole person, who choose not to participate in the process to improve his knowledge or skills through the in-house training program * * * . . .Mr. West failed to submit a PS form 991 for consideration.")

Plaintiff alleged in his Opposition at ¶¶55-64, various acts of alleged discrimination pertaining to the above described training and selection of others to temporary Acting Supervisory assignments following March 2001. He termed these acts "denials of upward mobility opportunities." *See e.g.* Opposition at p. 33 ¶6.

The same allegations appear in *West II* at paragraphs 16 - 17.

**Leave Slips, Rescinded Suspensions, Alleged Assault**

In his opposition to defendant's motion for summary judgement in *West I* plaintiff alleged the following acts of discrimination/retaliation.

- denial of called in sick leave on June 17, 2001 for failure to report for unscheduled over time. Opposition at ¶¶68-71 and Ex. 29. This concerns the same fact pattern as in *West II* paragraph 19.

10

- Alleged assault on June 18, 2001 when Mr. Cook placed his hand on plaintiff's shoulders.   Opposition at ¶73 and Ex. 30. Cook allegedly "starting harassing [plaintiff] concerning a leave slip request that [he] had called in on June 17, 2001. . . .[Plaintiff] informed Mr. Cook that [he] "had nothing to say to management . . . ." Opposition at ¶73. The same allegation appears in *West II* at paragraph 19.

- June 19-20, 2001, Cook would not give plaintiff his time card because Plaintiff would not address what Cook was talking about on Monday, i.e. the leave request for June 17, 2001.  Opposition at ¶74-76. The same allegation appears in *West II* at paragraph 20.

- June 25, 2001 plaintiff allegedly was given a verbal suspension to July 9, 2001.  Opposition at ¶76.  The same allegation appears in *West II* at paragraph 20.

- July 18, 2001 plaintiff was given a notice of 7-day suspension for failure to maintain a regular work schedule. Opposition at ¶77.  On August 3, 2001 the suspension was rescinded. Opposition at ¶78.   The same allegation appears in *West II* at paragraph 21.

- August 24, 2001 plaintiff received a notice of 7-day suspension.  Opposition at ¶79.  The suspension was rescinded on September 12, 2001.  Opposition at ¶80.  The same allegation appears in *West II* at paragraph 22.

11

- On August 8, 2001 plaintiff's request that leave be canceled for September 4, 2002 was denied.  Opposition at ¶81. Plaintiff filed a grievance and was reimbursed 8 hours of leave for September 4.  *Id.* at ¶82.

- Plaintiff requested leave cancellation for October 9, 2001. *Id.* at ¶83.  Eight hours of annual leave for October 9, 2001 was reimbursed. *Id.* at ¶84.

- Plaintiff requested leave for his regular days off. Opposition at ¶¶86 and 87.  The requests were not approved. *Id.*

- On October 10, 2001, Acting Supervisor Franklin Green denied plaintiff's request for 16 hours of annual leave for November 22-26, 2001.  *Id.* at ¶ 88.  The same allegation appears in *West II* at paragraph 25.

- On December 10, 2001 Mr. Green denied plaintiff's requests for leave January 19-22, 2002, and January 19-24. Opposition at ¶90.  On December 14, 2001 the disapproval for January 19-24 was changed to "approved" *Id.* at ¶93 and Ex. 48.  The issue concerning the Martin Luther King Holiday leave in January 2002 is revisited in *West II* at paragraph 26.  *See* EEO Decision at p. 11 ¶¶34-35.

- On January 2, 2002, plaintiff gave Mr. Cook a leave cancellation request for January 22-24, 2002 and received no response.  Opposition at ¶94.  This also relates to the

12

issue in paragraph 26 of West II.

- On January 28, 2002, plaintiff received a notice of 7-days suspension from Mr. Green. Opposition at ¶95. The same allegation appears in *West II* at paragraph 26.

- On May 14, 2002, plaintiff received a notice of 14-day suspension from Mr. Green.  Opposition at ¶ 97 and Ex. 51-52.   A grievance was filed and the matter was in arbitration.  *Id.* at ¶98.

- On July 17, 2002, plaintiff received a notice of suspension. *Id.* at ¶99 and Ex 52-52A.  A grievance was filed and the matter was in arbitration.  *Id. See West II* at ¶29.

- On August 22, 2002 Mr. Green sent plaintiff home after working only 15 minutes after plaintiff informed Green of alleged unsafe working conditions.  *Id.* at ¶100.  Plaintiff filed a grievance and received backpay for 7.82 hours and make-up of two hours overtime.  *Id.* at ¶ 101.  The same allegation appears in *West II* at paragraph 30.

- Plaintiff was denied requests for revised schedules by acting supervisors Green and Mansfield on forms dated 2/11/02, 5/20/02, 6/14/02 and 7/22/02.  Opposition at ¶ 102.   The same allegation appears in *West II* at paragraph 27.

- On June 28, 2002, plaintiff requested 40 hours of annual leave from July 1-5, 2002. Opposition at ¶104 and Ex. 57-59*.* The same allegation appears in *West II* at paragraph 28.

13

**ARGUMENT**

**Plaintiff's Claims Are Barred by Res Judicata and Collateral Estoppel.**

"The doctrines of res judicata and collateral estoppel are designed to 'preclude parties from contesting matters that they have had a full and fair opportunity to litigate.'" *Carter v. Rubin*, 14 F. Supp.2d 22, 33 (D.D.C. 1998) (citing *Montana v. United States*, 440 U.S. 147, 15354 (1979)). "These doctrines protect parties from the expense and burdens associated with multiple lawsuits, conserve judicial resources, and reduce the possibility of inconsistent decisions." *Carter*, 14 F. Supp. 2d at 33-34 (citing *United States v. Mendoza*. 464 U.S. 154, 158-59 (1984)).  Plaintiff litigated in *West I* his claims of alleged discrimination by defendant from 2000 through August 2002.  In the current action he should only be allowed to litigate his claims of discrimination relating to the non-selections to permanent positions in 2003 and other alleged acts in 2003.

Plaintiff's initial complaint in *West I* pertained to the September 7, 2000 meeting during which he was told he would not be acting supervisor and a letter of warning which he received from Mr. Cooke on September 22, 2000 for failure to report to training.  See Complaint in *West I*.  Paragraphs 14 and 15 of the amended complaint in *West II* deal with the same facts and issues. In his Memorandum Opinion in *West I*, Judge Robertson addressed

14

the September 7, 2000 meeting and ruled that plaintiff had failed
to show that no longer being given the "acting lead mechanic
assignment", a change in assignment without a decrease in salary
or work hour change, was a material adverse employment action.
Memorandum at pp 3-4.  The Court also ruled that the letter of
warning for failure to attend a training course, issued to
plaintiff in a September 22, 2000  meeting, was not an adverse
employment action.  *Id.* at pp 4-5.

Although the Court had denied his motion to amend his
complaint, plaintiff raised the same issues that appeared in his
proposed amended complaint in his opposition to defendant's
motion for Summary Judgment (*West I* Opposition).  He raised facts
and issues pertaining to and arising from the September 7 and 22,
2000 meetings.   *West* I Opposition at ¶¶ 1-54.  As is detailed
above, Plaintiff also raised additional facts and issues
pertaining to training, *id* at ¶¶55-63, 64; the detail of Mr.
Miller, rather than plaintiff, to a temporary supervisory
position from May 2001 to through Dec. 2002, *id.* at ¶ 63, 65-67,
107-108; and various acts of alleged retaliation or
discrimination relating to leave, time cards, threats, and
rescinded suspensions, *id*. at ¶¶ 68-119 and ¶¶120-145.   As to
the additional allegations, the *West I* court ruled:

> Plaintiff complains of many other slights, insults, and
> unfair incidents that were visited upon him at his
> place of work, but none is actionable.

15

*West I* Memorandum at p. 5 (citing *Taylor v. FDIC*, 132 F.3d 753,
764 (D.C.Cir. 1997). [4]    The District Court's ruling on these
issues is presently before the D.C. Circuit.  *See*  Appellee's
Brief at pp. 13-16,18-29.

**Res Judicata - Claim Preclusion**

Res judicata principles prevent Plaintiff from bringing
claims decided by *West I*. The United States Supreme Court has
reaffirmed use of and applied res judicata in numerous cases. *See
e.g. Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979) (res
judicata "has the dual purpose of protecting litigants from the
burden of relitigating an identical issue with the same party or
his privy and of promoting judicial economy by preventing
needless litigation"); *Allen v. McCurry*, 449 U.S. 90, 94 (1980)
("[R]es judicata ... relieves parties of the cost and vexation of
multiple lawsuits, conserves judicial resources, and, by
preventing inconsistent decisions, encourages reliance on
adjudication");  *Brown v. Felsen*, 442 U.S. 127, 131 (1979) ("Res
judicata thus encourages reliance on judicial decisions, bars
vexatious litigation, and frees the courts to resolve other

---

[4] Like plaintiff West, the plaintiff in *Taylor*, among other
issues, claimed discrimination because of not being placed in a
temporary supervisory position.  The *Taylor* court stated: "we do
not believe that temporary designation as acting section chief is
one of the 'terms, conditions, or privileges of employment'
compassed by the Act."  *Taylor*, 132 F.3d at 764.

16

disputes").

In this regard, "[u]nder res judicata, or claim preclusion, `a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Carter v. Rubin,* 14 F. Supp.2d 22,34 (D.D.C. 1998) (citing *Allen v. McCurry*, 449 U.S. 90,94(1980).

In order for res judicata to apply, there must be the existence of: (a) an identity of the cause of action in both suits; (b) an identity of parties in both suits; (c) a final judgment on the merits; and (d) a judgment rendered by a court of competent jurisdiction. *Paley v. Estate of Ogus*, 20 F. Supp.2d 83, 86 (D.D.C. 1998) (citing *Brannock Assocs.. Inc. v. Capitol 801 Corp.*, 807 F. Supp. 127, 134 (D.D.C. 1992)).

A transactional approach is used to identify whether causes of action are the same *Polsby v. Thompson*, 201 F.Supp.2d 45, 48-49 (D.D.C. 2002), *affirmed*, 2003 WL 22305090 (D.C.Cir. Sep 30, 2003). As *Polsby* stated:

> To determine whether cases involve the same cause of action, the D.C. Circuit has adopted the "pragmatic, transactional" approach found in the Restatement (Second) of Judgments § 23(2) (1982).[] Under the transactional approach, the court considers "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."[]

*Id.* 201 F.Supp.2d at 50(internal citations omitted).  In the instant matter the facts are exactly the same as those litigated in *West I*.  Therefore, res judicata prevents their relitigation here.

For the same reason, plaintiff is precluded from bringing the same claims under the guise of different theories of relief such as a hostile work environment claim.

> Finally, it is an established principle of res judicata that "even though one group of facts may give rise to different claims for relief, upon different theories of recovery, there remains a single cause of action." *Prochotsky v. Baker & McKenzie*, 966 F.2d 333, 335 (7th Cir.1992) (internal citations omitted); see also Charles Alan Wright, Arthur Miller & Edward H. Cooper, Federal Practice and Procedure § 4411 (3d ed.2001) ("[a] second action may be precluded on the ground that the same claim or cause of action was advanced in the first action even though a different source of law is involved").

*Id.* 201 F.Supp.2d at 50-51.  *See also id. at 51, citing  Car Carriers, Inc. v. Ford Motor Co.,* 789 F.2d 589, 593 (7th Cir.1986)("[T]he doctrine of res judicata dictates that "once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or be lost. . . .").  Thus plaintiff's previous complaint precludes relitigating the facts addressed in *West I* under a different legal theory*.*

### Collateral Estoppel - Issue Preclusion

"The doctrine of collateral estoppel prohibits relitigation of an issue of fact or law that has been decided in an earlier

litigation." *SEC v. Bilzerian*, 29 F.3d 689, 693 (D.C. Cir. 1994). "The objective of the doctrine of issue preclusion ... is judicial finality; it fulfills `the purpose for which civil courts had been established, the conclusive resolution of disputes within their jurisdiction."' *Yamaha Corp. of America v. U.S.*, 961 F.2d 245, 254 (D.C. Cir. 1992) (citing *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 467 n.6 (1982)). Moreover, "once an issue is raised and determined, it is the entire issue that is precluded, not just the particular arguments raised in support of it in the first case." *Yamaha*, 961 F.2d at 254.

Three standards must be met to establish the preclusive effect of a prior holding. First, the issue being raised must have been contested by the parties and submitted for judicial determination in the prior case. *Id*. Second, the issue must have been actually and necessarily determined by a court of competent jurisdiction in the prior case. *Id*. And, third, preclusion must not work a basic unfairness to the party bound by the first determination, such as where the losing party clearly lacked any incentive to litigate the point in the first matter, but the stakes are sufficiently greater in the second. *Id*.

### Identity of Claims and Issues

Comparison between a) the alleged acts of discrimination claimed by plaintiff in the *West I* complaint and Opposition and b) those alleged in the present Amended Complaint and in

19

plaintiff's EEO Action clearly shows that the same claims and
facts are alleged in both, and that the same issues -- i.e.
discrimination and retaliation by defendant during 2000 through
2002 -- were litigated.  The plaintiff in *West I* litigated
alleged employment discrimination pertaining to the September 7
meeting relating to "upward mobility" and his assignment to
temporary supervisory positions and the September 22 letter of
warning. Opposition at p. 2-9 ¶¶1-54, p. 22-25 ¶¶120-130.
Therefore, plaintiff is precluded from relitigating any claim
pertaining to those matters.  Paragraphs 12,14,15 of the present
complaint should be dismissed pursuant to the doctrine of res
judicata.

Plaintiff litigated placement of Mr. Miller into an acting
supervisory position versus him.  Opposition at p. 11-12 ¶63-67;
p. 24-31 ¶124-140.  Therefore res judicata requires dismissal of
all claims rising from the facts in paragraphs 16, 17 of *West II*.

Plaintiff litigated not receiving supervisory training.
Opposition at p. 9-12 ¶55-62, 64; p. 33-34 ¶7-10.  Therefore
rejudicata precludes relitigation of the issue.  *See West II* at
¶17.

The *West I* court ruled that plaintiff had failed to show
that no longer being given the "acting lead mechanic assignment",
a change in assignment without a decrease in salary or work hour
change was a material adverse employment action.  Therefore,

under the doctrine of collateral estoppel plaintiff is precluded from relitigating the issue of not being placed in any acting supervisory positions. Collateral Estoppel requires dismissal of any claims pertaining to not being placed in a temporary acting supervisory position. *West II* ¶14 last sentence, ¶16, ¶17 last sentence should be dismissed.

Additionally, plaintiff should be precluded from relitigating the leave, suspension and other related issues in plaintiff's EEO Action which were litigated in *West I*. The paragraphs of the allegation in *West II* and the same set of facts in the opposition are set forth below:

| Paragraph in *West II* | Paragraph in Opposition |
| --- | --- |
| 19 | 73 |
| 20 | 74-76 |
| 21 | 77-78 |
| 22 | 79-80 |
| 25 | 88 |
| 26 | 90-93 |
| 27 | 102 |
| 28 | 99 |
| 29 | 99 |
| 30 | 100-101 |

The specific facts of paragraph 18 of West II were not alleged in the Opposition. However, paragraph 18 should be dismissed under the doctrine of collateral estoppel. In *West I*

the Court ruled on plaintiff's allegations concerning a letter of warning given to him on September 22, 2000. The Court ruled as a matter of law that a letter of warning is not an adverse employment action unless accompanied by an action such as job loss or demotion. Memorandum at p. 4. Paragraph 18 concerns another letter of warning which Cook issued to plaintiff on June 8, 2001 concerning taking leave over the Memorial Day Holiday period. The Court's ruling that such a letter of warning, standing alone, is not a adverse employment action should collaterally estopp plaintiff from relitigating the issue as to paragraph 18.

Finally, *West II* paragraphs 18, 23 and 24 also should be dismissed under the doctrine of res judicata. These are alleged acts of discrimination by Mr. Cooke in 2001. These acts could have been alleged in plaintiff's initial complaint and could have been raised in plaintiff's opposition along with the other year 2000, 2001 and 2002 allegations of discrimination, retaliation and harassment made by plaintiff. *See Polsby,* 201 F.Supp.2d at 48. Thus all claims as to paragraphs 18, 23 and 24 should be dismissed.

**Identity of Parties**

The parties in both cases are the same, plaintiff West and the Postmaster General.

**Final Judgment on the Merits**

22

The District Court's order granting summary judgment to defendant was a final judgment and determination that plaintiff had failed to met his burden of proving discrimination as to all claims raised in his complaint and opposition.

### Court of Competent Jurisdiction

Federal district courts clearly are courts of competent jurisdiction for purposes of making final decisions. *See Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1193 (D.C. Cir. 1983).

**The Issues Raised by Plaintiff in the Current Litigation Were Actually Contested and Submitted for Determination in His Prior Lawsuit.**

As discussed *supra,* the allegations raised by Plaintiff in this Complaint are the same claims that were actually contested by Plaintiff in *West I.*  Plaintiff had a full and fair opportunity to and did present his numerous allegations against defendant.  Plaintiff submitted them to the Court in his complaint and opposition, and the Court ruled on them.

**Issue preclusion would not be fundamentally unfair to Plaintiff.**

Finally, there is no unfairness in precluding Plaintiff from bringing the same discrimination claims since he has already litigated them in District Court, and is litigating them before the Court of Appeals.  *See McLaughlin v. Bradlee*, 803 F.2d 1197, 1202 n. 1 (D.C. Cir. 1986) ("unfairness" factor has no bearing where party to be bound was plaintiff who had brought essentially

23

the same claims and thus had the same incentive and opportunity to litigate the issues).

Indeed, under the circumstances, it would be highly unfair to cause defendant to have to relitigate any of these issues. Due to the Court's Order denying plaintiff's motion to amend his complaint, defendant's motion for summary judgment was limited to the issues in the initial complaint – the September 7 notification that plaintiff would not be given the temporary acting supervisor position when his team leader was away and the September 22 letter of warning.  All of the other issues were raised in plaintiff's Opposition, causing defendant to respond to them, the Court to rule on them, and the subsequent appeal to which defendant responded.

Applying collateral estoppel or issue preclusion in the instant case furthers both policies upon which the doctrine is based: judicial economy, sparing the trier of fact from spending its scarce resources resolving issues already resolved; and repose, protecting the parties from having to relitigate issues litigated already.

## CONCLUSION

Plaintiff's claims in paragraphs 12 through 30 of his amended complaint (and references to them in each count of the amended complaint) must be dismissed based on the principles of res judicata and/or collateral estoppel.

Respectfully submitted,

_____

KENNETH L. WAINSTEIN D.C. Bar # 451058
United States Attorney

_____

R. CRAIG LAWRENCE, D.C.  BAR #171538
Assistant United States Attorney

_____

RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970