**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

No. 03-5058

---

KEVIN D. WEST,                                                    Appellant,

    v.

JOHN E. POTTER,
 Postmaster General,                                         Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

**BRIEF FOR APPELLEE**

---

<u>STATEMENT OF JURISDICTION</u>

The District Court had jurisdiction under Title VII of the Civil
Rights Act of 1964, 42 U.S.C. § 2000e-16. This Court has
jurisdiction under 28 U.S.C. § 1291.

<u>COUNTERSTATEMENT OF THE CASE</u>

**Procedural History**

On April 6, 2001, appellant Kevin D. West, an African-
American employed as a Vehicle Mechanic for the United States
Postal Service (USPS) at the Largo I Vehicle Maintenance Facility
in Capitol Heights, Maryland, commenced this action against
Timothy Currie, a USPS manager, pursuant to Title VII of the
Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, claiming race
discrimination and retaliation in his employment.  Specifically,

appellant alleged:

• that on September 7, 2000, Mr. Currie told appellant he would "no longer be acting lead mechanic or Vehicle analyst from this point."   Complaint at pp. 2-3 (App. F2-3)

• that on September 22, 2000, Mr. Currie had David Cook issue to appellant a letter of warning for failure to attend training. Complaint at p. 3 (App. F3)

Appellant sought $3 million in compensatory damages plus miscellaneous expenses. *Id.* at p. 4 (App. F4)

By Order dated December 17, 2001, Postmaster General John E. Potter was substituted as the only defendant in the action. Appendix G-1.

On February 7, 2002, the court issued an order granting appellee's motion to stay discovery and to transfer the case to the District of Maryland.   Docket entry No. 16.   That order was vacated on February 19, 2002 and the case was re-opened.   *Id.* All proceedings in the matter were stayed until April 5, 2002, allowing appellant time to dismiss his Maryland action.   Docket entry dated 3/5/02.

On June 18, 2002, appellant filed a "Motion to  Amend Complaint for Inclusion of Prior History of Retaliation and Discrimination." (Motion to Amend) Appendix C.   The motion was denied in open court on June 18, 2002.   June 18, 2002 Transcript at pp. 5-7. This denial is the first order on appeal.

On November 2, 2002, appellee moved for summary judgment. By Order of January 30, 2003, after full briefing, the District Court entered the second order on appeal, granting summary judgment for appellee as to the factual allegations in appellant's Complaint, and as to the additional factual allegations in Appellant's Opposition to Appellee's Motion for Summary Judgment (Opposition).

This appeal followed.

## Factual Background

At all relevant times, appellant West served as a Vehicle Mechanic for the USPS at the Largo I Vehicle Maintenance Facility (VMF) in Capitol Heights, Maryland. Currie Dec. at ¶3. Appellant has filed numerous EEO complaints. Cook Dec. at ¶7. The most recent EEO complaints filed prior to the facts at issue were on October 27, 1998 and April 19, 1999. Defendant's Statement of Material Facts (SMF) at ¶3.

**Notification that appellant would not be placed in Acting Supervisory Position**

In the approximately one-year period before September 7, 2000 (September 25, 1999 through September 7, 2000), appellant had been appointed on several occasions to serve as Acting Lead Mechanic in the temporary absence of his team leader at the USPS Vehicle Maintenance Facility located in Largo (Capitol Heights), Maryland. Cook Dec. at ¶3. Currie Dec. at ¶3.

On September 6, 2000, Timothy Currie, who became the Capital

3

District Manager for the VMF in approximately June 2000 (SMF at
¶6), conducted interviews of several co-workers of appellant
West. Currie Dec. at ¶5. His inquiry was prompted by a sexual
harassment complaint that had been filed against appellant West
by a female co-worker. Currie Dec. at ¶¶4, 5, 6 and at Ex. 3-7.
In Manager Currie's view, substantial grounds did not exist to
support the sexual harassment complaint but he did determine that
several colleagues and co-workers of appellant West had trouble
communicating and relating to him when he acted in a supervisory
capacity. Currie Dec.at ¶¶ 5,6. Complaint at Exhibits 2 and 4;
Currie Dec. at ¶5.

On September 6, 2000, District Manager Currie also consulted
with David Cook, the VMF Manager and appellant's immediate
supervisor, regarding the results of District Manager Currie's
interviews with appellant West's co-workers. Cook Dec.at ¶4.
Cook also had concluded that appellant West was not able to
properly discharge his supervisory responsibilities when acting
in the temporary Acting Lead Mechanic and Vehicle Analyst
positions.  Cook's conclusion was based on appellant's own
correspondence and office memoranda, Manager Cook's discussions
with appellant West's co-workers, and Cook's own observations.
Cook Dec. at ¶5.

District Manager Currie determined that appellant West was
not qualified to serve as Acting Lead Mechanic or Vehicle

4

Analyst, in the absence of his team leader. Currie Dec. at ¶7.

The next day, on September 7, 2000, appellant West reported to District Manager Currie's office. Currie Dec. at ¶8. During that meeting Currie told appellant that he would no longer be Acting Lead Mechanic or Vehicle Analyst for VMF in the absence of the lead mechanic until he could improve his ability to communicate with his fellow workers. Currie Dec. at ¶10; Complaint at Exhibit 2A. He also told appellant, *inter alia*, that if he could not do his job he could resign. Currie Dec. at ¶8; Complaint at 2 (App. F2).

Thereafter, appellant served as Vehicle Analyst on a temporary basis in the absence of the regular team leader for approximately nine weeks from January 5-March 16, 2001. Cook Dec. at ¶3, Currie Dec. at ¶3.

**Letter of Warning**

On August 28, 2000, Mr. Cook, Manager VMF, had asked appellant if he would take the lead mechanic's place in Norman, Oklahoma for a Mack Diesel training class. Opposition at p. 2 ¶1. Appellant responded "yes, but I have to see my traveling orders first." *Id.* at ¶2. On September 1, appellant was given his Travel Request Advance Itinerary Schedule and on September 5, 2000 he was given his traveling orders. *Id. at* ¶¶3,4.

After returning to work on September 7, 2000, appellant gave Manager Cook a letter dated September 6, 2000, requesting a

change in his travel schedule for the Mack Diesel class he was
scheduled to attend September 11-22, 2000, in Norman, Oklahoma.
Complaint Exhibit 2B. The letter requested that Manager Cook
authorize a change in the air travel return date scheduled on the
final day of class, September 22, 2000. Opposition Ex. 2.
Appellant West claimed that this change was necessary because the
schedule created an "unsafe environment" for him to attend four
hours of class in the morning, and then fly back home that same
day. *Id.*

Mr. Cook had approved a similar request made by appellant
West 7 months earlier, for a previous training assignment.
Because that request had been made at the last minute, the
Southern Maryland Plant Safety Office did not have time to fully
evaluate it, and advised Cook to approve the request for the sake
of expediency. Cook Dec. at ¶10. However, in September 2000, Mr.
Cook had not received any such approval from the Safety Office.
Cook Dec.at ¶9. On September 8, 2000, Manager Cook informed
appellant West that in the absence of a doctor's note stating
that he could not travel, he was required to attend the training
as scheduled. Cook Dec. at ¶8. Manager Cook explained that
arrangements had already been made and that the Postal Service
would lose approximately $1,100.00 in previously-allocated
training program funds, if appellant failed to attend. Cook Dec.
at ¶11. As an alternative, Manager Cook suggested that appellant

West could stay at the hotel an extra day at his own expense of
approximately $50.00. Cook Dec.at ¶11. Appellant West responded
that he already had a doctor's note on file with the USPS Medical
Unit, excusing him from travel on September 22, 2000. Cook Dec.
at ¶8. Manager Cook checked with the USPS Medical Unit on
September 8, 2000 and ascertained that appellant West had no such
medical authorization on file with the USPS Medical Unit. *Id.*

    Appellant West failed to report to the training course as
directed. Cook Dec. at ¶12. On September 22, 2000, he was issued
a letter of warning ("LOW") for his failure to attend.
Defendant's SJM Exhibit 1. However, pursuant to a final
settlement of his Step 2 grievance of the LOW, Manager Currie
agreed to retain the LOW in appellant West's disciplinary file,
for only 6 months. The LOW was removed from appellant's file on
March 21, 2001. Currie Dec. at ¶11. Complaint at 3(App.F3).

**OTHER ALLEGED ACTS OF CONTINUING DISCRIMINATION AND/OR
RETALIATION**

**Training Program and Acting Supervisory Positions after March
2001**
    By memorandum dated February 26, 2001, Mr. Curry announced a
new in-house training program for those interested in becoming
supervisors. Defendant's Reply at Ex. 7. There was a staff
meeting introducing the program on March 1, 2001. Opposition to
SJM at p. 9 ¶58. The program was to consist of 8 weeks of on-
the-job and classroom training. Upon successful completion of
the training, a trainee's name would be placed on a list of

replacement supervisors in rated order.  They then would be selected from the list when a supervisor or manager was absent for 5 to 119 days. Defendant's Reply at Ex. 7; Currie EEO affidavit, Opposition to SJM at Ex. 70A.

In order to be accepted into the training program, completed forms 991x and 991, addressing requirements for the position of supervisor of VMF, were to be submitted between March 10 and April 13, 2001.  The applications were to be reviewed by a review panel and qualified applicants were to be interviewed. The top 3-6 applicants then would be eligible for the eight week training program.  Defendant's Reply at Ex7; Currie affidavit, Opposition to SJM at Ex. 70A.

On March 8, 2001, appellant sent Mr. Currie an e-mail concerning the training program stating:

> I am not interested in the program itself only the
> classroom training that the program offers. . .and all
> of the Oklahoma training courses as I have requested
> before.  I am also requesting all Acting Supervisor
> (204B) opportunities in the absence of the supervisor
> at Largo I, Largo II, and Riverdale VMF's in the
> absence of the supervisor, as previously requested to
> Mr. David Cook. . . .

Defendant's Reply at Ex. 8.  Mr. Currie responded by letter dated March 19, 2001 encouraging appellant to apply for the in-house training program, advising him that:  "As successful candidates complete the training program, their names will be listed for use when any supervisor or manager is absent for a minimum of five days, up to a maximum of 199 days."  Defendant's Reply at Ex. 9.

Appellant never submitted the required forms 991 to apply for the program.  Opposition to SJM at p. 33 ¶8, and at Ex. 70A, Currie affidavit("Mr. West was the sole person, who choose not to participate in the process to improve his knowledge or skills through the in-house training program * * * . . .Mr. West failed to submit a PS form 991 for consideration.")

Appellant alleged in his Opposition at ¶¶55-64, various acts of alleged discrimination pertaining to training and selection to Acting Supervisory assignments following March 2001.  The same allegations were made in his proposed amended complaint at ¶¶26-28. (App. C12)

**Leave Slips, Rescinded Suspensions, Alleged Assault**

In his opposition to appellee's motion for summary judgement appellant alleged the following acts of discrimination/retaliation most of which were also alleged in his proposed amended complaint at ¶¶ 29-39 (App. C12-14):

- denial of called in sick leave on June 17, 2001 for failure to report for unscheduled over time.  Opposition at ¶¶68-71 and Ex. 29.  The leave slip shows that appellant refused to sign the leave slip; that decision on approval was deferred pending documentation and leave was subsequently disapproved because no documentation was submitted.  Opposition at Ex. 29.  Appellant did not submit an affidavit or even allege that he attempted to sign the leave slip or submit the

requested documentation.

- Alleged assault on June 18, 2001 when Mr. Cook placed his
  hand on appellant's shoulders.   Opposition at ¶73 and Ex.
  30. Cook allegedly "starting harassing [appellant]
  concerning a leave slip request that [he] had called in on
  June 17, 2001. . . .[Appellant] informed Mr. Cook that [he]
  "had nothing to say to management . . . ."  Opposition at
  Ex. 30.

- June 19-20, 2001, Cook would not give appellant his time
  card because Appellant would not address what Cook was
  talking about on Monday, i.e. the leave request for June 17,
  2001.  Opposition at ¶74-74 and Ex. 31-31B, 32.

- June 25, 2001 appellant allegedly was given a verbal
  suspension to July 9, 2001.  Oposition at ¶76.

- July 18, 2001 appellant was given a notice of 7-day
  suspension for failure to maintain a regular work schedule.
  Opposition at ¶77.  On August 3, 2001 the suspension was
  rescinded. Opposition at ¶78.

- August 24, 2001 appellant received a notice of 7-day
  suspension.  Opposition at ¶79.  The suspension was
  rescinded on September 12, 2001.  Opposition at ¶80.

- On August 8, 2001 appellant's request that leave be canceled
  for September 4, 2002 was denied.  Opposition at ¶81.
  Appellant filed a grievance and was reimbursed 8 hours of

10

leave for September 4.  *Id.* at ¶82.

- Appellant requested leave cancellation for October 9, 2001.
  *Id.* at ¶83.  Eight hours of annual leave for October 9, 2001
  was reimbursed. *Id.* at ¶84.

- Appellant requested leave for his regular days off.  *Id.* at
  ¶¶86 and 87.  The requests were not approved.  *Id.*

- On October 10, 2001, Acting Supervisor Franklin Green denied
  appellant's request for 16 hours of annual leave for
  November 22-26, 2001.  *Id.* at ¶ 88.

- On December 10, 2001 Mr. Green denied appellant's requests
  for leave January 19-22, 2002, and January 19-24. *Id.* at
  ¶90.  On December 14, 2001 the disapproval for January 19-24
  was changed to "approved" *Id.* at ¶93 and Ex. 48.

- On January 2, 2002, appellant gave Mr. Cook a leave
  cancellation request for January 22-24, 2002 and received no
  response.  *Id.* at ¶94.

- On January 28, 2002, appellant received a notice of 7-days
  suspension from Mr. Green. *Id.* at ¶95.  A grievance was
  filed and the matter was in arbitration.  Opposition at ¶96.
  Each notice of suspension advises that the Collective
  Bargaining Agreement had been revised in order to delay the
  effective date of suspensions.  Thus, timely filing of
  grievances stayed the suspension.  *See, e.g.* Opposition at
  Ex. 51-51A.

11

- On May 14, 2002, appellant received a notice of 14-day suspension from Mr. Green. *Id. at* ¶ 97 and Ex. 51-52. A grievance was filed and the matter was in arbitration. *Id.* at ¶98.

- On July 17, 2002, appellant received a notice of suspension. *Id.* at ¶99 and Ex 52-52A. A grievance was filed and the matter was in arbitration. *Id.*

- On August 22, 2002 Mr. Green sent appellant home after working only 15 minutes after appellant informed Green of alleged unsafe working conditions. *Id.* at ¶100. Appellant filed a grievance and received backpay for 7.82 hours and make-up of two hours overtime. *Id.* at ¶ 101.

- Appellant was denied requests for revised schedules by acting supervisors Green and Mansfield on forms dated 2/11/02, 5/20/02, 6/14/02 and 7/22/02. *Id.* at ¶ 102.

- On June 28, 2002, appellant requested 40 hours of annual leave from July 1-5, 2002. *Id.* at ¶104 and Ex. 57. Eight hours of leave were approved with the remarks: "Family emergency in Tenn. EAL, proper documentation required." *Id.* at Ex. 58. Thirty two hours were disapproved on July 10, 2002, with the reason given "AWOL, requested documentation not received." *Id.* at Ex. 59.

## SUMMARY OF ARGUMENT

The District Court properly granted summary judgment for appellee on the claims in appellant's Complaint alleging that he was discriminated and retaliated against when on September 7, 2000, he was told that he would no longer be made Acting Lead Mechanic and Vehicle Analyst when the lead Mechanic was absent, and on September 21, 2000, when he was given a letter of Warning for failure to attend training in Norman, Oklahoma.   As appellant has conceded, the District Court was correct in finding that the meetings, denial of acting supervisory duties  and Letter of Warning are not adverse employment actions under the law of this Circuit.   Appellant's Brief at p. 9.

The District Court also properly granted summary judgment on appellant's additional allegations of discrimination and retaliation because the subsequent actions of appellee, including not placing him in the supervisory training program, not making him an acting supervisor, rescinded suspensions, reimbursed leave, leave denials and alleged assault were not actionable. Appellant failed to allege or establish adverse employment actions.  Appellant also failed to establish that he had exhausted his administrative remedies as to any of the subsequent actions alleged.[1]  Additionally, there were legitimate non-

---

[1] Appellant presented evidence that he had exhausted concerning an alleged March 1, 2001 denial of 204-training and April 5, 2001 denial of sick leave.  Appendix D-1.  Neither

13

discriminatory reasons for appellee's actions.

For the same reasons, the District Court did not err in denying appellant's motion to amend the complaint. Appellant failed to demonstrate exhaustion of administrative remedies for any alleged additional subsequent acts of discrimination or retaliation. Also, on summary judgment, the District Court considered the allegations in the proposed amended complaint, since they were raised in appellant's opposition to appellee's motion for summary judgment. The Court properly found that appellant failed to meet his burden of establishing they were actionable:

1. In March 2001, appellant did not apply to be placed in the training program as was required; therefore he was not eligible for the supervisory training program.

2. After March 2001, to be eligible to be made an Acting Supervisor, one had to have successfully completed the supervisory training program. Appellant did not apply to the program and did not successfully complete it. Therefore, he was not eligible to be made acting supervisor.

3. That two lower level employees got training in February 2001 is not an adverse employment action as to plaintiff. It is also not evidence of discriminatory animus in light of the fact that

---

incident appears to be mentioned in appellant's motion to amend, Appendix C-1, or in appellant's Opposition.

in August 2000 Mr. Cook had asked appellant to take the lead
mechanic's place in Diesel Mack training in September 2000.
Additionally, the two employees were not required to submit PS
forms 991, because the training program requiring such forms was
not in place until March 2001.

4.   Assignment of Mr. Miller to be acting supervisor of the
Automotive Body and Fender repairmen was not an adverse
employment action as to appellant.  It is a legitimate non-
discriminatory reason that the USPS would want to assign a Body
and Fender Repairman with hands-on knowledge of their duties to
supervise his peers.  Prior to the assignment of Mr. Miller,
another Body and Fender Repairman who also had not been selected
for the new supervisory training program was made acting
supervisor.  That individual was an African American male.
Appellant, a mechanic, was not similarly situated to the two body
and fender repairmen.

5. Decisions such as proposed suspensions and denials of leave
which were rescinded or remedied by restoration of hours are not
adverse employment actions because there was no loss of wages.

6.   Proposed decisions such as suspensions which have not been
acted on are not adverse employment actions since there was no
loss of wages.

7.   Actions which impose no detriment to appellant, such as the
letter of warning, suspended suspensions, failure to grant leave

when no leave is required for absence (i.e. on regular days off) are not adverse employment actions.

Additionally, the appellant did not establish that the additional alleged discriminatory/retaliatory acts spanning from February 2001 through June 2002 were exhausted when he filed his motion to amend the complaint on June 18, 2002.

In sum, appellant has failed to establish actionable adverse employment actions, and cannot establish a prima facie case of discrimination or retaliation.

## ARGUMENT

### I.    Standard of Review

This Court reviews the District Court's grant of summary judgment in this case *de novo*. *Fort Sumter Tours, Inc. v. Babitt*, 202 F.3d 349, 354 (D.C. Cir. 2000).

### II.   The District Court properly entered summary judgment for appellee as to appellant's claims of discrimination and retaliation.

By Order of January 29, 2003, the District Court after discovery and full briefing granted summary judgment for appellee regarding appellant's claims that he was discriminated and retaliated against during a September 7, 2000 conversation in which appellant was informed that he would no longer be acting lead mechanic or vehicle analyst Complaint at p. 3 (App. F3), and during a September 22, 2000 meeting in which he was given a Letter of Warning for failing to attend a training program. *Id.*

The court also granted summary judgement on appellant's claims of subsequent discrimination and retaliation, as is more fully discussed below.

In order to prevail on his claims, appellant was required to meet the familiar burden-shifting paradigm for litigating such claims. Thus, he bore the initial burden of proving by a preponderance of the evidence that(1) he is a member of a protected class; (2) he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination. *Stella v. Mineta,* 284 F.3d 135, 145 (D.C.Cir.2002)(quoting *Brown v. Brody,* 199 F.3d 446, 452 (D.C.Cir.1999). If this prima facie case were established, the employer could rebut by presenting evidence of legitimate, nondiscriminatory reasons for the action. Appellant would then bear the ultimate burden of showing intentional discrimination by *inter alia* showing that defendant's proffered reasons were a pretext for unlawful discrimination or other evidence establishing unlawful discrimination. *McDonnell Douglas v. Green*, 411 U.S.792,802-805(1973); *Brown v. Brody*, 199 F.3d at 452.

For retaliation claims, the prima facie case required appellant to show that (1) he engaged in a statutorily protected activity, (2) he suffered an adverse action, and (3) a causal connection existed between the two. *Brown*, 199 F.3d at 452;

17

*Holbrook v. Reno*, 196 F.3d 255, 263 (D.C. Cir. 1999).

The District Court properly found that appellant failed to establish a prima facie case of discrimination or retaliation because he failed to establish that he suffered adverse employment actions. In both discrimination and retaliation claims against federal employers a required element is some form of legally cognizable adverse personnel action by the employer. *Brown v. Brody*, 199 F.3d 446, 453 (D.C.Cir. 1999); *Weigert v. Georgetown University*, 120 F.Supp.2d 1, 17-18 (D.D.C. 2000).

To establish an "adverse personnel action" there must be a significant change in the complainant's employment status--such as failing to hire, firing, failing to promote, or a decision causing a significant change in benefits. *Id.* "Reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims." *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 885 (6th Cir. 1996); *accord, Stewart v. Ashcroft*, 352 F.3d 422, 426 (D.C.Cir. 2003)(requiring materially adverse consequences affecting the terms, conditions, or privileges of employment.)

### Assignment to Temporary Acting Supervisory Duty

Appellant contended that he was discriminated and retaliated against because in September 2000 he was told that he would not be assigned Acting Lead Mechanic or Vehicle Analyst for VMF in the absence of the lead mechanic. Currie Dec. at ¶10, Complaint

18

at Ex. 2A. After that he was not assigned to such positions until

approximately four months later.   Appellant served as Vehicle

Analyst on a temporary basis in the absence of the regular team

leader for approximately nine weeks from January 5-March 16,

2001.    Cook Dec. at ¶3, Currie Dec. at ¶3.   Appellant also

complains that at other times three other employees were given

acting supervisory duties and he was not. Appellant's Brief at

p.7.

This Court has held that denial of temporary acting

designations is not an adverse employment action:

> Even if the three OGC members had succeeded in denying
> Ms. Stewart [the Acting Deputy Assistant Secretary for
> Administration] designation, the D.C. Circuit has held
> that this type of temporary designation is not one of
> the terms, conditions, or privileges of employment
> contemplated by Title VII. *See Taylor v. FDIC,* 132 F.3d
> 753, 764 (D.C.Cir.1997) (interpreting identical
> language in a Whistleblower Act in light of Title VII
> precedent). Because **denial of this type of temporary
> designation is not an adverse employment action,** mere
> interference with or delay of such a designation cannot
> be a cognizable harm under Title VII.

*Stewart v. Evans,* 275 F.3d 1126, 1135 (D.C. Cir.2002)(emphasis

added).

Therefore, appellant has failed to establish an adverse

employment or personnel action required to prove a prima facie

case of discrimination or retaliation.[2]

_____

  [2] Appellant alleges economic harm in his Brief at p. 10,
contending that acting supervisory positions pay at a higher

**204-B Training and Acting Supervisory Positions After March 2001**

After March 2001, to be eligible to be made an Acting Supervisor, one had to have successfully completed the newly established supervisory training program. Defendant's Reply at Ex. 7. To be accepted into the training program one had to submit an application (forms 991) and be interviewed by a selection committee. The top rated applicants then were selected for the training program. Upon successful completion of the training program, the selectees would be placed on a list for assignment to temporary acting supervisory position according to rank. *Id.*; Currie affidavit, Opposition at Ex. 70A. Appellant did not apply. *Id.*; Opposition at p.33, ¶8.

In a non-selection or non-promotion case, one of the essential elements which an appellant must establish is that he was qualified for the position. *See, e.g., Taylor v. Small*, 350 F.3d 1286, 1294 (D.C.Cir. 2003).

Appellant also must establish that he properly applied for the position. *See, e.g., Khan v. State of Maryland*, 903 F. Supp 881 (D. Md. 1995)(No discrimination when employee fails to complete application process); *Tagupa v. Board of Directors*, 633 F.2d 1309 (9th Cir. 1980)(employee must prove that he actually

_____

rate. However, appellant's citations to his proposed amended complaint in the appendix do not show that he alleged economic injury due to a pay differential, and appellee can find no evidence that he raised this argument in his Opposition.

applied for the position); *Teneyck v. Omni Shoreham Hotel*, 365
F.3d 1139, 1150 (D.C.Cir. 2004)(To state a prima facie case for
failure to hire, a plaintiff must show, *inter alia*, "that,
despite his qualifications, he was *rejected*.")

Appellant's March 8, 2002 memorandum shows that he never
applied for the new supervisory training program. Defendant's
Reply Exhibit 8. Manager Currie did not deny appellant training
or a position on the Acting Supervisor List. Indeed, Appellant
was encouraged to apply for the 204-B Training. Defendant's
Reply Exhibit 9; Plaintiff's Opposition at Ex. 70A. Appellant
knew the requirements for acceptance in the 204-B training
program. Since appellant failed to apply to the training program
he was not "rejected." Therefore, there was no adverse action
involved in him not receiving 204-B training. Similarly, since
appellant did not apply to or successfully complete the training
program, he was not eligible to be made acting supervisor after
March 2001.

In his Brief appellant claimed disparate treatment because
Mr. Bowser and Buchanan and Miller were "promoted" to acting
supervisor assignments and he was not. Brief at p. 7. However,
in his Opposition appellant did not contend or submit evidence
that Bowser and Buchanan were made acting supervisors. He only
contended that they got supervisory training before the new
training program was implemented in March 2001 and did not have

21

to submit PS forms 991.  Opposition to SJM at ¶¶ 59-60.  *See also* proposed amended complaint. Appendix C-12 at ¶27 (only alleging training).  Since they got training in February, before the new training program came into existence, their failure to submit forms 911 creates no inference of discrimination or retaliation since there was no requirement to submit forms 991 at that time.

Appellant also attempted to raise an inference of discrimination or retaliation by contending that Mr. Miller, a Caucasian,  was detailed to an acting supervisory assignment from May 2001 at 400 T Street in Washington, and did not submit a form 991.  Opposition at ¶¶62-63.

Mr. Currie explained that that particular acting supervisor would be "in charge of people who make body repair, fender repair, painting of our Postal-owned vehicles."  Opposition at Ex. 77a.  "[O]f the 148 employees who worked in the Capitol District, there were only about six people who actually performed those duties, so I have inquired among that group of six people to find someone who would want to oversee those duties." Opposition at Ex. 77A.  Robert Parker, an Automotive Body and Fender Repairman who is black, was asked to and he did perform the duty as acting supervisor for approximately six months. *Id.* at Ex. 77A-B.  Mr. Parker was replaced as Acting Supervisor by Mr. Miller in May 2001. Opposition Ex. 25A.  Mr. Miller also was a Body Fender Repairmen.  Opposition at p. 19 ¶61.  Mr. Parker,

22

like Mr. Miller, had not been selected for the 204-B Acting

Supervisor Training.  *Id.* at Ex. 25.

It is a legitimate non-discriminatory/retaliatory reason

that the appellee would want as an acting supervisor for body and

fender repairmen someone who did and knew about their duties in a

hands-on manner.  Also appellant specifically had asked to be

assigned in acting supervisory positions at "Largo I, Largo II

and Riverdale VMF's."  Defendant's Reply Ex. 8.  Appellant did not

request an acting supervisory position in Washington.

The assignment of these two body and fender repairmen as the

acting supervisor, even though they had not successfully

completed the new supervisory training program, is not evidence

of discrimination or retaliation.  *See,Johnson v. Lehman,* 679

F.2d 918, 922 (D.C.Cir. 1982):

> a finding of a failure on the part of the . . .
> employer to follow its own regulations and procedures,
> alone, may not be sufficient to support a finding of .
> . . discrimination. Surely, the adherence to or
> departure from internal hiring procedures is a factor
> that the trier of fact may deem probative and choose to
> consider in determining the true motivation behind the
> hiring decision of the prospective employer. But, as
> International Brotherhood of Teamsters made clear, it
> is essential that the claimant establish
> "discriminatory motive."

 *accord, Mungin v. Katten Muchin & Zavis,* 116 F.3d 1549, 1556

(D.C.Cir.1997):

> When an employer's " departure from the prescribed
> procedure" has become "the norm," that departure "lends
> no support at all to the plaintiff's inference that"

the employer's departure "is a pretext." *[citing Fischbach v. D.C. Dep't of Corrections,* 86 F.3d 1180, 1183 (D.C.Cir.1996)].  Mungin presented no evidence that the firm ever consistently abided by its policy.

Here appellant West presented no evidence that the USPS consistently abided by the procedure of the new supervisory training program.  Indeed, appellant's evidence concerning Mr. Parker established just the opposite, *i.e.* that even prior to the appointment of Mr. Miller an exception had been made in assigning an African American Body/Fender Repairman as acting supervisor for the body and fender repairmen, who had not attended or completed the training program.  Thus, this case is distinguishable from *Salazar v. Washington Metropolitan Transit Authority,* 401 F.3d 504, 509 (D.C.Cir.2005), where there was evidence that the defendant's stated legitimate reason was pretextual and the circumstances of a selection board were "fishy."

Appellant also has failed to raise an inference of discrimination by showing that similarly situated employees outside his protected class were treated more favorably. In order to satisfy this test, appellant must prove that all of the relevant aspects of his employment situation were "nearly identical" to those of the employees who he alleges were treated more favorably.  Moreover, the similarity between the compared employees must exist **in all relevant aspects** of their respective

employment circumstances. (emphasis added)    See *Barbour v. Browner*, 181 F.3d 1342, 1345 (D.C. Cir. 1999); *Mungin v. Katten, Muchin & Zavis*, 116 F.3d 1549, 1554 (D.C. Cir. 1997); *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995).    Appellant is not similarly situated to either Mr. Parker or Mr. Miller because he is not an Automotive Body and Fender Repairman; he is a Mechanic.    Opposition at Ex.19.

Finally, this Court and others have held that a presumption arises against any finding of discrimination or retaliation, when a supervisor has recently "promoted" the employee, prior to an alleged adverse employment action being taken.    *Waterhouse v. District of Columbia,* 298 F.3d 989, 996-997 (D.C.Cir. 2002); *accord Tyndall v. National Education Centers, Inc.*, 31 F.3d 209, 214- 215  (4th Cir. 1994), *citing LeBlanc v. Great American Insurance Co.*, 6 F.3d 836, 843 (10th Cir. 1993), *cert denied*, 511 U.S. 1018 (1994); *See also Lowe v. J.B. Hunt Stransport, Inc.*, 963 F.2d 173, 174-175 (8th Cir. 1992).    This presumption is sometimes called the "same actor" rule.

Appellant claims that Managers Currie and Cook discriminated and retaliated against him on September 7, 2000 by telling him he would no longer be assigned to be acting supervisor.    The last EEO claim that appellant filed prior to September 7, 2000, was on April 19, 1999. SMF ¶3.  On several occasions between April 19, 1999 and September 7, 2000, appellant was allowed to serve as

25

Acting Lead Mechanic and Vehicle Analyst for his team.  Cook Dec.
at ¶3; Currie Dec. at ¶3.  This was done purely at the discretion
of his supervisor.[3]  Nothing "required" Manager Cook to designate
appellant West for these positions. Appellant had been assigned
acting analyst and acting lead mechanic in December 1999 and
August 2000, <u>after</u> his April 1999 EEO filing; this militates
against any argument that in September 2000 he was denied
assignment to an acting supervisory position as a result of his
race or having engaged in protected activity.  *See* Defendant's
Reply Exhibits 1-2.  Moreover, from January 5, 2001 to March 16,
2001, appellant served as PS-7 Acting Vehicle Analyst.
Defendant's Reply Exhibit 3.  This militates against appellant's
argument that he was discriminated or retaliated against in May
2001 when he was not assigned to be the acting supervisor for the
body and fender repairmen.  Similarly, that two lower level
employees got training in February 2001 also is not evidence of
discriminatory animus or retaliation in light of the fact that in
August 2000 Mr. Cook had asked appellant to take the lead
mechanic's place in Diesel Mack training in September 2000.
Opposition at p.2 ¶1.  *See, e.g., Waterhouse v. District of*

---

[3] Since Article 39 §2A(11) of the APWU National Agreement
(Defendant's Reply Exhibit 4), <u>does not</u> designate the Acting Lead
Mechanic and Vehicle Analyst positions as being subject to the
Union seniority system, the position is filled under the "Best
Qualified" standard.  In the case of temporary reassignments, as
in appellant West's instance, details are filled in the
discretion of the supervisor. Section 312 of EL Handbook.

*Columbia,* 298 F.3d 989, 996-997 (D.C.Cir. 2002):

> [P]robative value was seriously undercut by the undisputed fact that Dong approved the decision to hire Waterhouse earlier that same year. . .  *See Grady v. Affiliated Cent., Inc.,* 130 F.3d 553, 560 (2d Cir.1997) (affirming summary judgment and noting that "when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire," especially "when the firing has occurred only a short time after the hiring"); *Buhrmaster v. Overnite Transp. Co.,* 61 F.3d 461, 464 (6th Cir.1995) ("An individual who is willing to hire and promote a person of a certain class is unlikely to fire them simply because they are a member of that class.").

Here, the individuals who allegedly discriminated against appellant concerning acting supervisory positions and training were the same individuals who within a short period had assigned him to acting supervisory positions and offered him training.

**Letter of Warning, Timecards, Leave Slips, Suspensions and Alleged Assault.**

The District Court also correctly found that none of appellant's other allegations were actionable claims.  As to the September 22, 2000 letter of warning for failure to attend training, the District Court found

> As a matter of law. . .a letter of warning or criticism is not an adverse employment action unless it is accompanied by some other action such as job loss or demotion.  *E.g. Brown*, 199 F.3d at 458; *Krause v. City of La Crosse,* 246 F.3d 995, 1000 (7th Cir. 2001 ); *Hill v. Children's Village*, 196 F.Supp.2d 389, 400(S.D.N.Y.2002).

Mem.Op. at 4-5.

Similarly the other acts alleged by appellant were not adverse employment actions. Several of the actions were intermediate decisions "having no immediate effect upon employment decisions." *Taylor v. FDIC,* 132 F.3d 753, 764 (D.C.Cir.1997). Additionally, appellant showed no "objectively tangible harm" *Brody,* 199 F.3d at 457. There was no tangible change in appellant's duties or working conditions constituting a material employment disadvantage. The alleged acts fall into the following categories:

- two notices of suspension which were rescinded. Opposition at ¶¶ 77-80, and two notices of suspension which were in arbitration, and thus stayed. *Id.* at ¶ 95, 96, 97, 98 and Ex. 51, 52

- two instances in which leave was denied and the hours were later reimbursed. *Id.* at ¶¶81, 82, 83, 84 and one instance in which leave was denied and then later approved. *Id.* at ¶¶ 90, 93

- one instance in which appellant was sent home but was later reimbursed back pay and overtime hours. *Id.* at ¶¶ 100, 101

- one instance in which appellant was **not** charged leave for his regular days off. *Id.* at ¶¶ 86-87. Indeed, it would appear that just the opposite should be an adverse action, that is charging someone with annual leave when he was legally off.

- one denial of request for leave in the future. *Id*. at ¶88. Appellant does not allege that he took the leave and was charged for it.

- one instance in which appellant allegedly was assaulted when Mr. Cook placed his hand on appellant's shoulders.  *Id*. at ¶73 and Ex. 30.

It is clear that none of the actions listed above caused a loss of wages or any material employment disadvantage to appellant.

Another alleged act was:

- denial of called in sick leave on June 17, 2001.  Appellant refused to sign the leave slip, did not submit required documentation, and refused to discuss the request with his supervisor.  *Id. at* ¶¶ 68-71, 73-74  and Ex. 29-30.

Appellant's refusal to sign the leave slip and submit documentation is a legitimate non-discriminatory reason for the action.

## Failure to Exhaust Administrative Remedies

Appellant contends that the District Court erred in denying his June 18, 2002 motion to amend his complaint because the Court found that he had failed to exhaust administrative remedies as to the new claims.  Brief at p. 2.   Appellant relies on a final agency decision issued on January 9, 2002 to support his contention.  Appendix D-1.  However, that decision indicates that appellant sought counseling on April 12, 2001 and only pertains

29

to an alleged March 1, 2001 denial of training and April 5, 2001 denial of use of sick leave. *Id.*

Appellant presented to the District Court no evidence that he had exhausted his administrative remedies as to the various alleged acts of discrimination/retaliation spanning from June, 2001 through May 2002.  Appendix C-12-14.  This Court has established that before bringing suit in federal court plaintiffs must exhaust their administrative remedies by filing an EEOC charge and giving that agency a chance to act on it. 42 U.S.C. § 12117(a); *Park v. Howard University,* 71 F.3d 904, 907-09 (D.C.Cir.1995). The substance of a Title VII claim must fall within the scope of "the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Marshall v. Federal Exp. Corp.*, 130 F.3d 1095, 1098 (D.C.Cir.1997).  The extensive claims of discrimination and retaliation in appellant's proposed amended complaint and repeated in his Opposition clearly are not fairly embraced by the two charges in the January 2, 2002 decision letter. Appendix D-1.[4]

---

[4] Since the District Court's decision, following hearings conducted in July and December 2004,  the EEOC in case no. 120-2004-00080X entered summary judgment on May 10, 2005 for the U.S.P.S. on the facts raised in appellant's proposed amended complaint and opposition to defendant's summary judgment motion.

## CONCLUSION

WHEREFORE, appellee respectfully submits that the judgment of the District Court should be affirmed.

KENNETH L. WAINSTEIN,
United States Attorney

MICHAEL J. RYAN,
Assistant Unites States Attorney

RHONDA C. FIELDS,
Assistant United States Attorney

31

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

I HEREBY CERTIFY that this brief complies with the type-volume limitation of Fed. R. App. P. 32 (a)(7) and contains 7284 words.

Rhonda C. Fields
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of July, 2005, a copy of the foregoing Appellee's Brief was mailed, postage prepaid to pro se appellee, Kevin D. West, 831 Chatsworth Drive, Accokeek, MD 20607.

Rhonda C. Fields
Assistant United States Attorney