IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KEVIN D. WEST, )
)
Plaintiff )
) Civil Action No. 01-0746
v. )
) Judge James Robertson
JOHN E. POTTER, )
POSTMASTER GENERAL )
UNITED STATES POSTAL SERVICE )
Headquarters )
475 L'Enfant Plaza, SW )
Washington, DC 20260 )
)
Defendant. )
_____)

## DECLARATION OF TIMOTHY A. CURRIE

I, Timothy A. Currie, being of sound mind and having attained the age of majority, hereby declare as follows:

1. The statements made herein are based upon my personal knowledge, upon information made available and obtained by me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith. I am a white male.

2. I am employed as a District Manager for the Vehicle Maintenance Facilities located in the Capital District. The Vehicle Maintenance Facility, Largo I, ("VMF"), located in Capitol Heights, Maryland, is one of the facilities under my management and control. I am the supervisor for David Cook, the Largo I VMF Manager. I have 12 years of management and supervisory experience with the U.S. Postal Service ("USPS" or "Postal

Service"). I have attended over 20 hours of formal EEO classroom training. I have also had extensive hours of informal EEO training consulting with Human Resources Managers.

3. Plaintiff Kevin West has been employed as a Level PS-06 Vehicle Mechanic at the VMF at least through the period 1999 through December, 2000. At no time prior to September 7, 2000, was Mr. West ever permanently promoted to the position of Level PS-07 Lead Automotive Mechanic at the VMF. In the year 2000, Mr. West served as Acting Lead Mechanic Level 07 on a temporary appointment basis only. He has since been promoted to a permanent Level 07 position under the terms of the Collective Bargaining Agreement. The temporary appointment decisions were made on an ad hoc basis as necessary to cover temporary absences of the regular Level 07 team leader in 1999, 2000 and 2001. Mr. West served as Lead Mechanic for a total of 15 days in 1999 and 2000; and as Vehicle Analyst for approximately 9 weeks from January 5 – March 16, 2001. Since March 16, 2001, he has remained eligible to serve in an acting group leader position but no opening has arisen.

4. On September 6, 2000 I received a report that the female shopkeeper at the VMF wanted to speak with me about being sexually harassed by Kevin West. I discussed the matter with her that day.

5. Pursuant to this discussion, I conducted an investigation into the legitimacy of the charges. I concluded that substantial grounds did not exist to support the sexual harassment complaint. I did determine, that

several of Mr. West's colleagues and co-workers had trouble communicating and relating to Mr. West, especially when he acted in a supervisory capacity.

6. After interviewing Mr. West's co-workers, I also determined that he had serious problems communicating effectively with them. Several of them reported to me that he was very argumentative with them, and he always found fault with their work behavior.

7. As a result of my investigation on September 6, 2000, I decided that Mr. West should no longer serve as Acting Lead Mechanic at the VMF or act in a team leader capacity. At the time I first met with Mr. West, on the morning of September 7, 2000, I was never informed and had no information regarding his prior EEO filing history.

8. I met with Mr. West on September 7, 2000 at approximately 10:00 a.m. I had not arrived in the office until approximately 7:30 a.m., which was my customary starting time. That morning, I had an emergency situation that required my full attention. The meeting lasted approximately an hour and a half, during which time, we discussed how Mr. West was performing at his job. I asked Mr. West how well he liked his work with the Postal Service and he told me that he loved his job. We also discussed his communication problems with his co-workers and he expressed certain frustrations in dealing with his co-workers. I told Mr. West that if his job was too much for him to handle, that resignation was certainly an option available to him. I did place a resignation form on the desk, but I never

requested or demanded that he sign it. I also told him that I had looked into his employment history prior to the meeting, but I never mentioned his EEO history. In fact, at the time of the meeting, I did not know whether he had filed any prior EEO complaints and as an experienced Manager trained in EEO procedures, I never inquired with anyone as to his prior EEO record.

9. Mr. West also asked to have a union representative present and to take notes at the meeting. I told him that I was only having a discussion with him and that he could take notes after the discussion was over. I read portions of Article 16 of the National Agreement to Mr. West.

10. I also informed Mr. West that he would not serve as Acting Lead Mechanic or Vehicle Analyst for the VMF until he could improve his ability to communicate with his fellow employees. He became upset about this and told me that he had filed numerous EEO complaints against other supervisors. This was the first time that I became aware of Mr. West's record of filing EEO complaints. I told Mr. West that his past EEO activity had nothing to do with our discussion.

11. At no time, did I suggest during the September 7, 2000 discussion with Mr. West, or at any other time, that I was taking any employment or personnel action toward him because of his EEO filings. The statements from Mr. West's co-workers that I considered, are attached hereto.

4

00000000!

12. It is my understanding that Kevin West was issued a Letter of Warning on or about September 22, 2000. The L.O.W. was issued due to Mr. West's failure to follow instructions given to him by his supervisor. This failure was related to attending a training class at an off-site facility. During the grievance process, which I was the management official, the Letter of Warning dated September 22, 2000 was found to be correct in the manner it was issued. However, due to the employment history of Mr. West, the probationary period for which the corrective action could have been retained in Mr. West's official files was reduced from a maximum of 2 years to a 6 month timeframe. This L.O.W. was removed from Mr. West's records on March 21, 2001. To the best of my knowledge and belief the L.O.W. had no impact on any higher level assignments or ad hoc duties which could or would have been assigned during the timeframe the corrective action was live in Mr. West's file.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed in Washington, D.C. this 8th day of November, 2002.

_____
Timothy A. Currie