UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Kevin D. West | ) | |
| | ) | |
| PLAINTIFF | ) | Civil Action No. 01-746 (JR) |
| | ) | |
| | ) | Judge James Robertson |
| v. | ) | |
| | ) | |
| John E. Potter | ) | |
| Postmaster General, U.S. Postal Service | ) | |
| Defendant. | ) | |

## PLAINTIFF'S OPPOSITION MOTION TO DEFENDANT'S MOTION FOR

## SUMMARY JUDGEMENT

The Plaintiff, Pro Se, Kevin D. West is presenting the following brief in opposition to the

Defendant's Motion for Summary Judgment due on November 25, 2002. The Plaintiff

received the Defendant's Motion for Summary Judgment on November 30, 2002, and

needed additional time of five business days to properly respond. The Plaintiff filed a

motion with the court on December 16, 2002 for enlargement of time to submit Plaintiff's

Opposition brief by December 23, 2002. The Plaintiff spoke with Special Assistant U.S.

Attorney Gail A. Perry on 12/16/02 to discuss the motion for enlargement of time and the

date the Defendant would need to reply. SAUSA Perry was not in opposition to the

motion if the date for the Defendant's response would be changed to January 8, 2003.

The Plaintiff modified the motion as agreed (01/08/03) and is submitting the following

Plaintiff's Opposition brief by December 23, 2002 in support of the enlargement of time motion.

## STATEMENT OF FACTS

Mr. West has worked for the Postal Service for twelve (12) years as an Automotive Technician. Mr. West has been at Largo I VMF since May of 1999.

1.  On August 28, 2000, Mr. David Cook, Manager VMF (Caucasian) asked Mr. West (African American) if he would take Mr. Cleveland Mansfield's (Caucasian), Lead Mechanic, place in Norman, Oklahoma for the Mack Diesel class.

2.  Mr. West responded "yes, but I have to see my traveling orders first". Mr. Cook responded, "O.K. Kevin".

3.  On September 1, 2000, Mr. Cook gave Mr. West a PS Form 1011 Travel Request Advance Itinerary Schedule. Mr. West asked, "What is this for?" Mr. Cook responded, "This is for your money."

4.  On September 5, 2000, Mr. Cook gave Mr. West his traveling orders (Confirmation Letter). See **Exhibit 1-1B**. This was at the end of Mr. West's tour around 1:30 pm.

5.  Mr. West took the travel orders home and read them for the first time. At that time Mr. West noticed that the return date was the same date as the class.

6.  Therefore, Mr. West then drafted a letter dated 9/6/00 (See **Exhibit 2** Subj: Unsafe Travel) to Mr. Cook concerning unsafe travel from Norman, Oklahoma on the last day of class (9/22/02).

7.  Mr. West was sick on September 6, 2000, and did not come to work.

00000000

8.  Upon his return to work on September 7, 2000 at 5:30 am, Mr. West was
    informed by Mr. Franklin Green (African American), Vehicle Analyst to
    report to Mr. Timothy Currie's (Caucasian), Manager VMF office.

9.  Mr. West reported to Mr. Currie's office in Washington, D.C. at 6:00 am as
    instructed.

10. Mr. Currie did not arrive at his office until 9:04 am. Mr. West called Mr.
    David Cook at 9:52 am and informed him that he had been waiting 4 hours
    and that Mr. Currie was not available.

11. Mr. Cook instructed Mr. West to wait while he called Mr. Currie's office.
    Five minutes later a Caucasian woman came to take Mr. West to Mr. Currie's
    office. Therefore, Mr. West did not see Mr. Currie until 10:00 am.

12. Mr. West sat down and Mr. Currie asked him, "How do you like working for
    the Postal Service?" Mr. Currie asked this same question several times (3
    times). Mr. West answered him each time, "I love working for the Post
    Office".

13. Mr. Currie then handed Mr. West a blank PS form 2574 Resignation From the
    Postal Service. Refer to **Exhibit 3.**

14. Mr. West looked at the form and asked Mr. Currie, "What is this?

15. Mr. Currie answered, that I could fill it out, because from his investigation
    yesterday and my Postal History, he came to the conclusion that I do not like
    my job. Refer to Exhibit 4-4C (EEO Investigation K.West Affidavit
    Case:#4K-200-0004-01 dated 3/7/01).

16.  Mr. West then asked Mr. Currie for Union Representation to be present because this meeting is in retaliation and harassment.

17.  Then Mr. Currie held up the Collective Bargaining Agreement book and recited Article 16 Section 2.

18.  Mr. West then informed Mr. Currie that he is not his immediate supervisor and this meeting is a violation of Article 16 Section 2 of the Collective Bargaining Agreement.

19.  Mr. Currie then commanded for Mr. West to put his pen away, because there will be no record keeping while he's having a discussion.

20.  Mr. Currie's then said, I am talking about "Sexual Harassment".

21.  Mr. West responded by saying, "You mean the Ms. Childs incident?" This was the first time that Mr. West knew what the meeting was about.

22.  Mr. West then said to Mr. Currie that he had submitted in writing to Mr. David Cook, Manager, the Postal Inspectors, the Postal Police and the Post Master General of all incidents concerning Ms. Childs.

23.  I then asked Mr. Currie if he had anything in writing from Ms. Childs? Mr. Currie's response was, "No".

24.  Mr. West then informed Mr. Currie that he had nothing more to say concerning Ms. Childs because he had said everything in writing.

25.  Mr. Currie then said to Mr. West that he will no longer be Acting Lead Mechanic at Largo I VMF or any other upward mobility positions.

26.  Mr. Currie also informed Mr. West that his Superior's are well aware of Mr. West's EEO activities.

27. He also said that he is not Mr. Samuel Stokes, he is a different Manager and that he was brought here to take care of problems at the VMF and that Mr. West appeared to be one of those problems.

28. Mr. Currie then began to inform Mr. West of an investigation that he was supposed to have conducted on September 6, 2000, with Mr. Child, concerning her sexual harassment allegations.

29. Mr. West's response was again, "Do you have anything in writing from Ms. Childs concerning this investigation that was conducted on 9/6/00?"

30. Mr. Currie again responded, "No". Therefore, Mr. West again informed Mr. Currie that he had nothing more to say concerning Ms. Childs.

31. Mr. West then informed Mr. Currie he is in violation of the labor law, because it was past 11:30 a.m. and 6 hours had past without a lunch break.

32. Mr. Currie responded, "I'll be finished in a minute."

33. Mr. Currie then informed Mr. West not to have any communication with Ms. Childs, but to use Mr. Green as an intermediary between the plaintiff and Ms. Childs.

34. The Plaintiff returned to Largo I VMF and gave Mr. Cook a routing slip (Refer to **Exhibit 5**) to see a union representative concerning the meeting he just had with Mr. Currie and a letter dated 9/6/00, Subj" Unsafe Travel. (Refer to Exhibit 2).

35. On September 8, 2000, Mr. Cook called Mr. West into his office and conducted an investigation concerning the unsafe travel. I informed Mr. Cook that I could not return from training on 9/22/00, because I had a class in the

morning. Refer to **Exhibit 6-6D** (EEO Investigation K. West Affidavit Case:#4K-200-0004-01 dated 3/27/01).

36. Mr. Cook started to harass and threatened Mr. West that if he did not go to Norman Oklahoma, he would have to pay for the cancellation of the trip (approx. $1500) $150 per day.

37. The Plaintiff asked Mr. Cook for that in writing. Mr. Cook responded "No". Mr. West then asked for a response to the 9/6/00 Unsafe Travel letter in writing.

38. Mr. Cook responded "No", there will be no response to your letter in writing.

39. Mr. West then told Mr. Cook that he needed to see a union rep and a safety representative concerning the Oklahoma Training, because it was a safety violation under Article 14 (Refer to Agreement between USPS and APWU AFL-CIO Article 14, **Exhibit 7-7F**). Mr. Cook did not respond to his requests for representation. The Plaintiff then left and went to work.

40. At 8:45 a.m. Mr. West gave Mr. Cook the routing slip requesting to see a union and safety representative concerning the Oklahoma training (Refer to **Exhibit 8**, Routing Slip dated 9/8/00). Mr. Cook again, did not respond to my requests for representation. The Plaintiff was not allowed union representation until September 13, 2000.

41. On September 13, 2000, Mr. Cook conducted another investigation with the union reps invited and in attendance. Mr. West met with Mr. Cook, Ms. Melinda Hunt, Vice-President APWU local APWU and Mr. Alonzo Wade, Former MVS Craft Director APWU.

42. In this investigation Mr. Cook informed Mr. West that his unsafe travel letter dated 9/6/00, was not sufficient and that he need to submit a PS form 1767 Report of Hazards, Unsafe Condition or Practice, and a doctor's statement stating his condition.

43. The Plaintiff gave Mr. Cook a PS form 1767 on 9/14/00 (Refer to **Exhibit 9**, PS form 1767 Report of Hazards, Unsafe Condition or Practice) stating that a doctor's statement is forthcoming on 9/20/00.

44. On 9/21/00, Mr. West informed Mr. Cook that the U.S.P.S. Health unit has a doctor statement with my health condition regarding Air Travel. Refer to **Exhibit 10**, Dr. Statement dated 9/19/00, stamped received by USPS Health Unit 9/21/00.

45. On 09/21/00, Mr. Cook called me in his office and read a Letter of Warning for failure to follow instructions concerning the Oklahoma Training class scheduled for 9/11/00 through 9/22/00. I refused to sign the letter without union representation.

46. Mr. Cook then released me to return to work, and approximately an hour and a half letter he returned with a witness, Mr. Michael Hill Supervisor Largo II VMF.

47. Mr. Cook hollered in a loud voice to come in his office and receive this letter of warning.

48. I told Mr. Cook that without union representation, I do not have anything to say to him and that he is in violation of the zero violence policy, and I would not be harassed or threatened.

49.    Mr. Cook then told me to leave the work floor and return to work as scheduled tomorrow.  I left as I was told.

50.    On September 22, 2000, as I returned to work at 5:30 am.  Mr. Cook again ordered me to his office.

51.    Where Mr. Hill was waiting, Mr. Cook read a Letter of Warning with Mr. Hill as his witness.  I received the letter of warning. Refer to **Exhibit 11-11A**, Letter of Warning dated 9/22/00.

52.    I do not understand why I received a Letter of Warning because just 7 months prior on February 3, 2000, I gave Mr. Cook an Unsafe Travel Request (refer to **Exhibit 12** dated 2/3/00), concerning Airline Travel from Norman, Oklahoma for an Air Brake class that Mr. Cook had no problem on changing my departure date to a non-work date (refer to **Exhibit 13** Mr. Cook's response dated 2/3/00).  Whereas, Mr. Cook changed Mr. West's return flight from Oklahoma from 2/11/00 to 2/12/00, so that the Plaintiff did not have a class on the same date that he departed.

53.    It was also found that Mr. Cook was in violation of the court order by the National Labor Relation Board (NLRB) (Refer to Notice of NLRB Order Case# 32-CA-10209 (P), **Exhibit 14**) by denying Mr. West union representation when conducting his investigation on 9/8/00 concerning the Oklahoma Training event which led to discipline in the form of a Letter of Warning dated 9/22/00.

54.    The Letter of Warning was rescinded on 3/22/01 because it was unjustly given. Refer to **Exhibit 15**, Grievance #SM2KV-510T Settlement between Mr.

000000007

Timothy Currie, Mgr. VMF and Mr. Ray Williams, APWU Union Designee dated 11/17/00.

55.    In February 2001, Mr. Currie had a training class for "Process Management", that he invited Mr. Thomas Buchanan, Caucasian, and Mr. John Bowser, Caucasian.  Both are automotive Mechanics, lower level 6's at Largo I VMF. Refer to **Exhibit 16-16C**, Declaration of Roland D. Johnson, Jr., ¶ 15, dated 12/17/02.

56.    This is the first time that Mr. West was passed over by lesser -qualified mechanics, with less seniority and less experience than Mr. West by Mr. David Cook and Timothy Currie.

57.    Mr. West requested for supervisor training on 5/10/99 (Refer to **Exhibit 17**, letter to Mr. Cook dated 5/10/99).  Mr. Cook responded on May 11, 1999 (Refer to **Exhibit 18** dated 5/10/99).  In Mr. Cook's response he stated that the Associates Supervisor Program (ASP) is the only Postal Supervisor's training available at this time, other than courses offered by the PEDC.

58.    On March 1, 2001, Mr. Currie introduced an Acting Supervisor/204B Training Program.  Mr. Currie stated that the employee must have a good attendance record and submit a PS form 991, by closing date April 13, 2001. Refer to the following Declarations:

**Exhibit 16-16C**, Decl. of Roland D. Johnson, Jr., ¶ 6,7, dated 12/17/02.

**Exhibit 19-19B**, Decl. of Sandra M. Childs, ¶ 6,7, dated 12/9/02.

**Exhibit 20-20B**, Decl. of Leroy T. Cowan, Jr. ¶ 8,9, dated 12/2/02.

**Exhibit 21-21B**, Decl. of Warren V. Plater. ¶ 6,7, dated 12/17/02.

Exhibit 22-22B, Decl. of Chris E. Simmons ¶ 11,12, dated 12/12/02.

Exhibit 23-23B, Decl. of James G. Thompson, Jr. ¶ 6,7, dated 12/12/02.

Exhibit 24-24A, Decl. of Henry M. Barnett ¶ 5, dated 12/2/02.

Exhibit 25-25A, Decl. of Robert M. Parker ¶ 5, dated 12/5/02.

Exhibit 26-26A, Decl. of Virgil Chase ¶ 5, dated 12/7/02.

59.  Mr. Currie had given two Caucasian employees at Largo I VMF, Mr. Thomas

Buchanan and John Bowser, Supervisor Training before he had even

introduced his program on March 1, 2001 to Largo I VMF employees.

60.  Neither Mr. Buchanan, nor Bowser had to submit a PS Form 991 to get this

Supervisor training that Mr. West had requested for on May 10, 1999 to Mr.

David Cook in writing. (See **Exhibit 17** and **Exhibit 18**).

61.  Mr. John P. Miller, III (Caucasian) Body Fender repairman assigned to Largo I

VMF was attending the meeting on March 1, 2001, that Mr. Currie introduced

his Supervisor /204B training program. See **Exhibit 19-19B**, Decl. of Sandra

M. Childs, ¶ 8, dated 12/9/02, **Exhibit 20-20B**, Decl. of Leroy T. Cowan, Jr. ¶

10, dated 12/2/02, and **Exhibit 22-22B**, Decl. of Chris E. Simmons ¶ 13,

dated 12/12/02.

62.  Mr. Miller did not submit a PS form 991, nor did he have a good attendance

record.  Mr. Miller also had several DWI's and no valid drivers license.

See the following Declarations:

Exhibit 16-16C, Decl. of Roland D. Johnson, Jr., ¶ 10-12, dated 12/17/02.

Exhibit 19-19B, Decl. of Sandra M. Childs, ¶ 9,14-15, dated 12/9/02.

Exhibit 20-20B, Decl. of Leroy T. Cowan, Jr. ¶ 10, dated 12/2/02.

Exhibit 21-21B, Decl. of Warren V. Plater. ¶ 8,9,11 dated 12/17/02.

Exhibit 22-22B, Decl. of Chris E. Simmons ¶ 13,14, dated 12/12/02.

Exhibit 23-23B, Decl. of James G. Thompson, Jr. ¶ 8,9, dated 12/12/02.

Exhibit 24-24A, Decl. of Henry M. Barnett ¶ 6-8, dated 12/2/02.

Exhibit 25-25A, Decl. of Robert M. Parker ¶ 8, dated 12/5/02.

Exhibit 26-26A, Decl. of Virgil Chase ¶ 7, dated 12/7/02.

Exhibit 27-27A, Decl. of James W. Perry ¶ 10, dated 12/4/02.

63.  Mr. Currie detailed Mr. Miller to a 204B Acting Supervisor Assignment in

     May 2001 to present, at 400 T Street Washington, DC. See the following

     Declarations:

     Exhibit 16-16C, Decl. of Roland D. Johnson, Jr., ¶ 13, dated 12/17/02.

     Exhibit 19-19B, Decl. of Sandra M. Childs, ¶ 9, dated 12/9/02.

     Exhibit 20-20B, Decl. of Leroy T. Cowan, Jr. ¶ 10, dated 12/2/02.

     Exhibit 21-21B, Decl. of Warren V. Plater. ¶ 10 , dated 12/17/02.

     Exhibit 22-22B, Decl. of Chris E. Simmons ¶ 14, dated 12/12/02.

     Exhibit 23-23B, Decl. of James G. Thompson, Jr. ¶ 9 dated 12/12/02.

     Exhibit 24-24A, Decl. of Henry M. Barnett ¶ 9, dated 12/2/02.

     Exhibit 25-25A, Decl. of Robert M. Parker ¶ 4,8, dated 12/5/02.

     Exhibit 26-26A, Decl. of Virgil Chase ¶ 7, dated 12/7/02.

     Exhibit 27-27A, Decl. of James W. Perry ¶ 9, dated 12/4/02.

64.  Mr. West requested for 204B Supervisor Training in the absence of the

     supervisor in his letter dated 3/8/01 to Mr. Currie. (See **Exhibit 28**, Letter to

Currie dated 3/8/01). Mr. West also requested for any training/classes that are listed in Mr. Currie's 204B training program.

65. Mr. West did not get a Detail, as Mr. Miller received. Nor did Mr. West receive any of the class training as Mr. Miller received from Mr. Currie's in-house 204B training program.

66. Mr. Miller did not submit a PS Form 991, just as Mr. West did not submit a PS Form 991.

67. Mr. Miller was treated different than Mr. West because he is a Caucasian, and Mr. West is an African American that has filed several EEO's against the USPS VMF Management for racial discrimination and reprisal.

68. Mr. West continued to receive retaliatory actions from VMF Management in various forms as described below. The first such act was in the form of leave slips PS form 3971 Request for or Notification of Absence being denied. See **Exhibit 29**, PS form 3971 dated 06/17/01. Mr. West called his reporting supervisor, Mr. Greg Absher to inform him that he would not be reporting and was requesting for dependant care because his daughter was not feeling well.

69. Mr. Absher told Mr. West "O.K. , I will take care of it". The reporting Supervisor, Mr. Greg Absher, approved Mr. West's sick leave. **Exhibit 29** shows Mr. Absher's signature on 6/17/01 in the "Signature of Supervisor and Date Notified" section of form.

70. The section under Mr. Absher's signature in the "Signature of Supervisor and Date" was signed by Mr. Cook on 6/25/01. Mr. Cook also has an "x" in the

"Disapproved box" and the "Pending Documentation Noted on Reverse" with his initials "D.C." dated 6/18/01.

71.    In the bottom far left of form section for "Employee's Signature and Date", Mr. Cook wrote "Employee Refused to Sign"

72.    Note on the bottom left corner of the form, the Mr. West wrote and initialed when he finally received the document by notating "Received July 12, 2001 K.D.W"

73.    On June 18, 2001, Mr. West was confronted by Mr. David Cook at approximately 1:17 pm, whereas Mr. Cook was threatening and harassing Mr. West, such that the Plaintiff had to report the physical assault to the WDC Postal Inspectors. See attached **Exhibit 30** letter dated 6/18/01 to Postal Inspector Hoke.

74.    On June 19-21, 2001. Mr. David Cook would not give Mr. West his timecard to punch on for work, as he reported to work at 5:30 a.m.

75.    Mr. West reported the event to the Postal Police. See **Exhibit 31-31B**, Postal Police Statements dated June 19-21,2001.

76.    On June 25, 2001 Mr. Cook gave Mr. West a verbal suspension that lasted until July 9, 2001. See **Exhibit 32**, Postal Police Statements dated June 25,2001.

77.    On July 18, 2001, Mr. David Cook gave Mr. West a 7-day Suspension for failure to maintain a regular work schedule. See Exhibit 33-33A, 7-day Suspension dated July 17,2001.

78. The 7-day suspension was rescinded on August 3, 2001, because it was unjustly given. See **Exhibit 34** grievance #RW-89-01 Notification signed by Mr. David Cook, 8/3/01.

79. On August 24, 2001, Mr. West received another 7-day suspension concerning Attendance violations for failure to maintain a regular work schedule. See **Exhibit 35-35A**, 7-day Suspension dated August 24, 2001.

80. The 7-day Suspension given on 8/24/01 was rescinded on September 12, 2001 because it was unjustly given. See **Exhibit 36** grievance #RW-106-01 Settlement signed by Mr. Timothy Currie, VMF Manager and Ray Williams, APWU Designee 9/18/01.

81. Mr. West requested a leave cancellation on August 30, 2001, for a leave to be cancelled for September 4, 2001. Mr. David Cook denied Mr. West's request. This was a strange action by Mr. Cook, because he had requested for volunteers to work that day (day after a holiday). See request **Exhibit 37** dated 8/30/01.

82. Mr. West filed a grievance to the APWU and was reimbursed 8 hours of annual leave for September 4, 2001. See **Exhibit 38** grievance #RW-108-01 Settlement 8/01/02.

83. Mr. West requested a leave cancellation on October 2, 2001, for a leave to be cancelled for October 9, 2001. Mr. David Cook denied Mr. West's request. See request Exhibit 39 dated 10/02/01.

84.   Yet, again Mr. West filed a grievance to the APWU and was reimbursed 8
      hours of annual leave for October 9, 2001. See **Exhibit 40** grievance #RW-
      134-01 Settlement 8/01/02.

85.   This was the first time that Mr. Cook denied a person to cancel leave to come
      to work, even though he requested for volunteers to work on those days.

86.   The Plaintiff also requested on June 11, 2001 to be off on June 23-24, 2001,
      which are his regular days off (Saturday and Sunday) by giving Mr. Cook a PS
      Form 3971 leave slip. Mr. Cook disapproved Mr. West's request with no
      given reason. See **Exhibit 41** Leave Slip dated 6/11/01.

87.   Mr. West also requested on June 11, 2001 to be off on June 30, 2001 and July
      1, 2001, which were also his regular days off (Saturday and Sunday) by giving
      Mr. Cook a PS Form 3971 leave slip. Mr. Cook also disapproved Mr. West's
      request with no given reason. See **Exhibit 42** Leave Slip dated 6/11/01.

88.   On October 10, 2001, Mr. West requested for 16 hours of annual leave for
      November 22-26, 2001. Mr. West's request was denied by Mr. Franklin
      Green, Acting Supervisor Largo I VMF detailed by Mr. David Cook. . See
      **Exhibit 43** Leave Slip dated 10/10/01.

89.   On November 16, 2001 (after Mr. West), Mr. Cleveland Mansfield
      (Caucasian) had requested for 8 hours annual leave for November 23, 2001,
      the same time period that Mr. West had requested. But Mr. Mansfield's leave
      was granted. See **Exhibit 44** Leave slip dated 11/16/01.

90.   On December 10, 2001, the Plaintiff had requested for 8 hours of annual leave
      for January 19-22, 2002 (Martin Luther King, Jr. Birthday Holiday). This

leave was also denied by Mr. Franklin Green. On the same day, Mr. West gave Mr. Green another request for 24 hours annual leave for January 19-24, 2002, which was denied as well. Mr. Green's reason for disapproval for both requests were "Date/Time Requested in violation of Local Memo". See **Exhibit 45- 45A** Leave slips dated 12/10/01.

91. The Local Memorandum of Understanding (See **Exhibit 46** Local Memo of Understanding) that Mr. Green was referring to is under Item 13 Section 2.B, which states "Employees in the Motor Vehicle Craft who take twenty-four (24) hours or more of annual leave will be so excused." This addresses the method of selection for leave for a Holiday period. Mr. Green clearly was in violation of the very memo that he cited.

92. Mr. Cook was informed of the harassment by Mr. Green concerning his wrongful disapproval of Mr. West's leave slips on December 12, 2001 verbally, then through a letter from Mr. West on December 13, 2001 (See **Exhibit 47** letter to Mr. Cook dated 12/13/01).

93. After Mr. West contacted the APWU Union Vice-President Mr. Ray Williams to file a grievance and Mr. Cook was informed of the harassment by Mr. Green. Therefore, on December 14, 2001, Mr. Cook gave Mr. West a copy of the second leave slip that Mr. West had given Mr. Green, except the Disapproved and reason was "whited-out" and changed to "Approved". See **Exhibit 48** Approved Leave slip dated 12/10/01.

00000008

94.    On January 2, 2002, Mr. West gave Mr. Cook a leave cancellation request for January 22-24, 2002. Mr. West requested for a response in writing but none was given. See Exhibit 49 Letter dated 1/2/02.

95.    On January 28, 2002, Mr. West received a 7-day Suspension from Mr. Franklin Greene for AWOL- Absent from Scheduled Overtime and Holiday Work Exhibit 50-50A Suspension Letter dated 1/28/02.

96.    A grievance was filed with the APWU for the suspension. It is in arbitration.

97.    On May 14, 2002, Mr. West received a 14-day suspension from Mr. Franklin Greene for Unsatisfactory Work Performance as required by Section 666.1 of the Employee and Labor Relations Manual. See Exhibit 51-51A Suspension Letter dated 5/13/02.

98.    The 14-day suspension was unjustly given and Mr. West filed a grievance with the APWU Union. This also pending arbitration between the APWU and USPS.

99.    On July 17, 2002, Mr. West was given another 14-day Suspension for Failure to be regular in attendance. See Exhibit 52-52A Suspension Letter dated 7/17/02. The 14-day suspension was unjustly given and Mr. West filed a grievance with the APWU Union. This also pending arbitration between the APWU and USPS.

100.    On August 22, 2002, Mr. Franklin Greene sent Mr. West home after working only 15 minutes in the morning, when Mr. West informed Mr. Greene of unsafe work conditions. Mr. West requested Union and Safety representation concerning the unsafe engine work that Mr. Greene attempted to assign him,

but was denied representation. Mr. West was told to leave the VMF by USPS Police and he complied after reporting the incident with the Police (See Exhibit 53 Mr. West USPS Police Statement dated 8/22/02.

101.   Mr. West filed a grievance with the APWU Union, which was grieved and rescinded. Mr. West received backpay for 7.82 hours and make-up of two hours overtime lost when he was unjustly sent home. See **Exhibit 54** grievance #SM2C-472-VP Resolution dated 11/04/02.

102.   Mr. West has submitted several other Requests for Revised Schedule that were denied by (Acting Supervisors under Mr. David Cook and Mr. Timothy Currie) Mr. Franklin Greene and Mr. Cleveland Mansfield. See **Exhibit 55-55C** PS Forms 3971 dated 2/11/02 (55), 05/20/02(55A), 06/14/02(55B), and 07/22/02(55C).

103.   On July 22, 2002, Mr. Cook had charged Mr. West with .30 units of Unscheduled leave. Mr. West filed grievance with the APWU on July 26, 2002. A Settlement was Resolved by changing Mr. West's Annual leave from "Unscheduled" to "Scheduled".   See attached **Exhibit 56** Grievance Resolution signed by Mr. Cook and APWU Representative dated 07/26/02.

104.   On June 28, 2002, Mr. West requested 40 hours of annual leave from July 1-5, 2002 on PS Form 3971 for a call in concerning Emergency Annual Leave. See Exhibit 57 PS Form 3971 dated 6/28/02. Mr. Cook initialed unscheduled on four different days, from Monday through Friday.

*for approval*

105.    Mr. Greene changed Mr. West's leave slip from 40 hours to 8 hours and

"whited-out four days (Tuesday through Friday)/ See Exhibit 58 modified PS

Form 3971 dated 6/28/02. Mr. West received his copy on July 11, 2002.

106.    Mr. Greene also produced a new form 3971 with 40 hours changed to 32

hours, with the section for "Signature of Person Recording Absence and Date"

left blank. Whereas the original submitted by Mr. West was signed by Mr.

Lawrence E. Hobson. Mr. Greene marked this new "doctored" form as

Disapproved with reason given as "AWOL, Requested Documentation Not

Received. This form was not signed by Mr. West. See **Exhibit 59** falsified

PS Form 3971 dated 6/28/02. A copy was received by Mr. West on 07/11/02.

*Required document not received*

107.    These are the numerous retaliations that Mr. West has received from the VMF

Management since Mr. West's meeting with Mr. Currie on September 7,

2000. Mr. West has no longer been detailed at higher level since his meeting

with Mr. Currie.

108.    Whereas, Mr. John P. Miller, III (Caucasian) Body and Fender Repairman,

Largo I VMF has been detailed at higher level Acting Supervisor in

Washington, D.C. as of May 2001 to Present.

109.    Mr. Miller has the worst attendance at Largo I VMF and has not received any

discipline from Mr. David Cook, as Mr. West has received.

110.    See **Exhibit 60-60A** Absence Analysis PS form 3972 dated Leave Year 1999.

Note that Mr. Miller has 10 "Leave Without Pay" (LWOP) entries and 11

"Late" entries, and 10 "Revised Schedule Entries" (REV). These entries were

entered by Mr. David Cook, who entered Mr. Miller's time.

111.    Mr. West whom had access to Mr. Miller's Official Time "Clock Rings" from

the Discovery Documentation submitted by the Defendant, discovered total of

48 "Late" and 11 additional Revised Schedule (REV) entries on the official

clock rings that were not recorded by Mr. Cook.   See **Exhibit 61-61A**

Corrected Absence Analysis PS form 3972 dated Leave Year 1999.

112.     See **Exhibit 62-62A** Absence Analysis PS form 3972 dated Leave Year 2000

for Mr. Miller completed by Mr. Cook.   Note that the forms show 0 "Leave

Without Pay" (LWOP) entries and 15 "Late" entries, and 13 "Revised

Schedule Entries" (REV).   These are the entries by Mr. David Cook.

113.    Mr. West account of the 2000 time, using Mr. Miller's Official Time "Clock

Rings", discovered an additional **16 "Late"** and **129** additional Revised

Schedule (REV) entries on the official clock rings that were not recorded by

Mr. Cook.   See **Exhibit 63-63A** Corrected Absence Analysis PS form 3972

dated Leave Year 2000.

114.     Therefore, according to the Official Clock Rings and Hours of Mr. Miller

submitted by the USPS in response to the Discovery Documentation required

for the Leave Year of 1999 (See **Exhibit 64-64Y** P. Miller 1999 Clock Rings

and History) a grand total of **10 "Leave Without Pay"** (LWOP) entries and

**59 "Late"** entries, and **21 "Revised Schedule Entries"** (REV).

115.    Likewise, according to the Official Clock Rings and Hours of Mr. Miller

submitted for the Leave Year of 2000 (See **Exhibit 65-65Y** P. Miller 2000

Clock Rings and Hours History, also Exhibit 8 of Depositions) a grand total of

0 "Leave Without Pay" (LWOP) entries and 31 "Late" entries, and 142
"Revised Schedule Entries" (REV).

116.    See Exhibit 66-66B Mr. Cook's Deposition, Cover sheet, page 13 line 24-25
and page 14 lines 1 through 11. This confirms (page 14 line 6) that Mr.
Miller's reporting time at Largo I VMF (during 1999 and 2000) was 0750
(7:30 am).

117.    Refer to **Exhibit 67-67D** Mr. Cook's Declaration dated November 13, 2002, ¶
13 pages 4 and 5, where Mr. Cook states that Mr. Miller was a White
employee under his supervision during 1999 and 2000. He further states that
he did not discipline Mr. Miller for numerous absences during this time
period.  He confirms that Mr. Miller also reported late on numerous occasions
where he did not discipline him.  Mr. Cook further divulges that it was a
regular practice for the employees to stay late or make up any missed time.

118.    Mr. West was never given the numerous opportunities as Mr. Miller was given
by Mr. Cook to revise schedules (142 + 21 times, see Exhibits 64-65).  Mr.
West requested revised schedules as shown in Exhibits 55-55C but were all
denied under Mr. Cook.  In fact, Mr. West was given several Letter of
Warning, and Suspensions for attendance violations, whereas Mr. Miller
(Caucasian) was given none.

119.    Mr. Miller was treated different than Mr. West because he is a Caucasian, and
Mr. West is an African American that has filed several EEO's against the
USPS VMF Management including Mr. Cook and Mr. Currie for racial
discrimination and reprisal. In addition to reporting Mr. Cook and Mr. Currie

for Safety Violations threatening both employee and public safety, Violations

of the Code of Ethics and the USPS Standard of Conduct reported to U.S

Congressman Steny Hoyer, U.S. Senator Barbara Mikulski, U.S. Postal

Service Inspector General, U.S. Postmaster General , U.S. Inspection Service

and U.S. Postal Police.


## ARGUMENT

The following undisputable and genuine issues are detailed below to show that the

USPS Management Unfairly with Discrimination and Retaliation treated similarly

situated employee Mr. John Preston Miller, III  (Caucasian) differently than Mr. Kevin

West (African American) by denying Mr. West upward mobility opportunities, unjustly

giving Mr. West discipline actions of Letter of Warnings, 7-day suspensions, 14-day

suspensions, submitting him to a Hostile Stressful Work Environment.

120.    The admitted actions of Mr. Timothy Currie to deny Mr. West to continue to

serve as Acting Lead Mechanic at the VMF or to act in **upward mobility**

**positions** capacity after his September 7, 2000 meeting in Mr. Currie's

Washington, D.C. office is documented in Mr. Currie's own Declaration¶ 7

pages 3, dated November 8, 2002, **Exhibit 68.**

121.    In this meeting where Mr. West was harassed and threatened by Mr. Currie, he

initiates his threatening harassment by giving Mr. West a Resignation form to

sign Exhibit 3 (Refer to T. Currie's Deposition to line 16-18 page 18, **Exhibit**

**69**) and by lets Mr. West know that he is the new Manager in charge, not like

the previous VMF manager Mr. Stokes.  He further states that His superiors

000000008

informed him about Mr. West's EEO activity and that he was brought here to "take care of" the VMF problems, which he called Mr. West one of those problems. He continued to harass Mr. West by not allowing his repeated request for Union representation and denial of his note taking to record the disciplinary discussion. Mr. Currie was well aware of Mr. West's prior EEO history against the USPS. In Mr. Currie's most current Declaration dated 11/8/02 he claims that he was not aware of Mr. West's prior EEO activity at the September 7, 2000 meeting, and was **"never informed and had no information regarding his (Plaintiff's) prior EEO filing history"**. Refer to ¶ 7 page 3 of **Exhibit 68**.

122. Whereas, by Mr. Currie's own admission in his previous Affidavits, he states the opposite in dispute of his recent claim that he did not know of Mr. West's EEO Activity at the 9/7/00 meeting. See **Exhibit 70** Timothy Currie's Affidavit for EEO case #4K-200-0145-01 dated 8/30/01, ¶ 1 page 2, where Mr. Currie states "I came to the Capital District on **June 3, 2000 and I became aware of Mr. West's EEO Activity from my manager** in a discussion." (prior to 9/7/00 meeting). In another Affidavit by T. Currie for EEO case #4K-200-0004-01 **Exhibit 71** he also confirms his knowledge of Mr. West's EEO history during a discussion with his Manager when he came to the VMF on June 3, 2000.

123. After the September 7, 2000 meeting Mr. West was subjected to numerous and often retaliatory and discriminatory actions by the VMF Management including Mr. Currie, Mr. David Cook and other VMF management under

00000008

their Authority: These actions included Letters of Warning, 7-day and 14-day Suspensions for alleged attendance violations, denied use of leave and denied requests for revised schedule changes, whereas Mr. Miller a Caucasian, Body and Fender Repairman was treated differently with a great deal of preferential treatment, given amazing numbers of revised schedules (142 + 21 see Exhibits 64-65), in spite of his poor attendance and leave records (also documented in Official Clock Rings **Exhibits 64-65**, Declarations of Co-workers **Exhibits 16, 19-27,** Declarations of Mr. Cook **Exhibit 67** and DWI's causing suspension of his license. .

124.   Unlike Mr. West, Mr. Miller was promoted and never received any disciplinary actions (confirmed by Mr. Cook's Declaration, **Exhibit 67**). Whereas, Mr. West whom has a good attendance and leave record was punished severely and often by the VMF management.

125.   Mr. Currie claims the reason for denying Mr. West further upward mobility positions was a result of an investigation conducted by him on September 6, 2001concerning an accusation by Ms. Sandra Childs alleging sexual harassment by Mr. West. This alleged investigation by Mr. Currie about sexual harassment was denied to have taken place by Ms. Childs in her Deposition, **Exhibit 72A-72B** dated 8/13/02 page 10 lines 20-22 and page 11 lines 1-8.

126.   Furthermore, in Mr. Currie's Affidavit dated 3/07/ 01Exhibit 71 he stated that other Largo I VMF employees were also included in his investigation, he

00000000

specified, "Chip" Cleveland Mansfield, Mr. Perry, Mr. Smitty (James Smith), Leroy Cowans and Chris Simmons.

127.  Mr. Cleveland Mansfield "Chip" never gave a report on the incident for Ms. Childs, as Mr. Currie alleged, because Mr. Mansfield **was not there** that day, since Mr. West was replacing Mr. Mansfield as the Acting Lead Mechanic. Mr. Mansfield is the Lead Mechanic at Largo I VMF, and would never therefore, witness Mr. West as Lead Mechanic.

128.  Mr. Perry disputes Mr. Currie's claims in his Declaration dated 12/04/02 **Exhibit 27 in**, ¶ 3-6. Mr. Perry states "I did not speak to Mr. Timothy Currie on September 6, 2000 concerning Mr. Kevin West's conduct. Nor have I ever spoken to Mr. David Cook or Timothy Currie about Mr. Kevin West at any time." He continues to say "Mr. West has always conducted himself in a professional manner. I have never heard Mr. West talk to any employee in a loud tone or use profanity."

129.  Mr. James Smith did submit a report to the U.S. Postal Police, but his statement does not claim that Mr. West used profanity at anyone.

130.  Mr. Leroy Cowan in his Declaration **Exhibit 20 in**, ¶ 5-6 Mr.. Cowan stated, at no time had I informed Mr. Cook or Mr. Currie that Mr. West's conduct ever being argumentative or unable to communicate with me, when at higher level as lead mechanic or vehicle analyst." He also states that Mr. West is professional and shows respect to all of his co-workers as long as he has known him (12 years).

131.    Mr. Chris Simmons in his Declaration **Exhibit 22** in, ¶ 5-8 Mr. Simmons

stated that he did speak with Mr. Currie on September 6, 2000, but that Mr.

Currie was conducting an investigation about Mr. West's conduct when he

was the Acting Lead Mechanic, not anything about Ms. Sandra Childs.  But

instead Mr. Currie asked about when Mr. West was Acting Lead Mechanic in

August of 1999.  Mr. Currie referred to Mr. West as a "troublemaker" to Mr.

Simmons (¶ 7).  Mr. Simmons confirms that Mr. West treats him as a

professional and that he has never heard Mr. West use profanity or refer to

anyone outside his or her name.

132.    To clarify for the record (not discussed with Mr. Currie), Mr. Simmons states

in his Declaration that on August 14, 2000, he gave a statement to the U.S.

Postal Police concerning an incident that happened on 8/11/00 between Mr.

West and Ms. Childs.  He states that his report was not accurate, because if

Ms. Childs were found guilty for the second offense of the "zero violence

policy", she would have been fired.

133.    Mr. Childs also admits that she falsely accused Mr. West to save her job.  As

stated in her Declaration, **Exhibit 19**, line 4, all charges concerning the EEO

of Sexual Harassment concerning Mr. West was withdrawn by Ms. Childs on

March 6, 2001.

134.    Mr. Currie admits that there was no merit in Ms. Childs Sexual Harassment

charge, yet he continued to attempt to come up with an unfounded reason to

excuse his decision to prevent Mr. West from upward mobility opportunities.

Even to the point of falsely claiming that he obtained derogatory information

about Mr. West's actions from his Co-workers.   The declarations and facts

prove otherwise, as noted in ¶ 125 – 133 above of this document.

135.   Furthermore, Mr. West was never given the opportunity for Acting Supervisor

204B training despite his written requests to the VMF management, including

Mr. Currie and Mr. Cook.

136.   The U.S. Attorney refers to Mr. Currie's declaration where he incorrectly

states Mr. West's acted in a detail as Lead Mechanic or Analyst as

"Supervisory Capacity".   Again by his own account in his Deposition, Mr.

Currie states that a "Supervisory Capacity" is a 204 B, Acting Supervisor and

that **Mr. West had never worked in a "Supervisory Capacity"** (See

**Exhibit 73** Deposition for T. Currie dated 10/29/02, lines 13-18 page 139).

137.   Yet, Mr. Miller (Caucasian) with known multiple Driving While Under the

Influence  (DWI) of Alcohol leading to his revoked and suspended drivers

License was known by Postal Authorities, yet they still promoted him to a

204B Supervisory Capacity acting position.  See **Exhibit 74** (or Exhibit 3 of

Deposition dated 10/29/02), Maryland Motor Vehicle Administration (MVA)

records for Mr. John Preston Miller, III issued as of 9/05/02 Document

Control #'s 4151128, 4151129 and 4151130.

138.   These documents show from 05/08/99 through 08/09/00 that Mr. Miller had

no valid driver's license with a 3 year suspension imposed on 05/30/00 caused

by multiple DUI and that the "Postal Authority returned the Suspension letter

on 07/05/00" on document control #4151130 of Exhibit 73.  Ms. Childs also

confirms the Postal Authority's knowledge, namely Mr. David Cook, in her

Deposition dated August 13, 2002 (**Exhibit 75-75A**, page 13¶ 15-22 and page 14¶ 1-18). Ms. Childs states that Mr. Miller informed her that he has received DWI's. In addition, she states that she witnessed the Sheriff come to Largo I VMF discussing with Mr. Cook a job release for Mr. Miller (Exhibit 75A. page14 ¶14-18). Mr. Cook and Currie were Mr. Miller's Managers during this time period and still are. They were aware of Mr. Miller's DUI problems then, yet he was assigned higher 204B, and still is Acting 204B Supervisor to this date with their knowledge.

139.   In Mr. Cook's Deposition (Exhibit **76-76B**. pages 56-57 ¶1-25) he states that he is responsible for checking the driver's license of the employees under his supervision quarterly. He states that he "don't recall" if he was visited by the Sheriff concerning Mr. Miller's driving record.

140.   Mr. Curry in his Deposition (Exhibit **77-77B** page 134-135 ¶1-25) he stated that in selection of the 204B Acting Supervisor detail that he gave to Mr. John Preston Miller, he offered six people the opportunity for the job prior to Mr. Miller. He stated that Mr. Mike Jones (White) from the Gaithersburg, Maryland office was offered the position first and turned him down. He then stated (77A page 134 ¶16-19) that his "second offer was to Mr. Elwood Cuffey, and he turned me down." Mr. Cuffey is Black. In Mr. Elwood Cuffey's Declaration (Exhibit 78-78A ¶4 page 1) dated November 7, 2002, he refutes Mr. Currie's statement and states, "I have never spoken with Mr. Timothy Currie. Neither have I been asked by Mr. Currie to be an acting supervisor of 204B at his location at Washington, D.C."

000000009

Ms. Child's Declaration (**Exhibit 19** ¶11), Mr. Currie told her he didn't like a co-worker, an employee of whom he was in charge of in Illinois. Mr. Currie went on to describe to them how he thought out a plan to destroy and have this person fired. From the way he told the story, his plan worked.

148.    The following are several EEO complaints filed against Mr. Currie for acts of racial, age, handicap and sex discrimination and retaliation: Note these EEO's are to show the history of Mr. Currie pattern of discrimination:

| NAME | EEO# | DATE | EXHIBIT |
|------|------|------|---------|
| Mr. Reginald D. Trice | 4J-604-0197-99 | 6/29/99 | **82-82C** |
| Ms. Cora J. Sisk | 4J-604-0076-00 | 01/31/00 | **83-83B** |
| Melvin James | 4J-604-0103-99 | 11/08/99 | **84-84B** |
| Melvin James | 4J-604-0170-98 | 6/28/98 | **85-85B** |
| Mr. Edward L. Clark | 4J-604-0008-00 | 09/27/99 | **86-86B** |
| Mr. Miguel R. Hidalgo | 4J-604-0211-99 | 10/4/99 | **87** |
| Mr. Miguel R. Hidalgo | 4J-604-0043-99 | 02/9/99 | **88-88C** |

## CONCLUSION

1.    The U.S. Postmaster General was aware and is fully responsible for allowing the racial discriminatory and retaliatory acts of it's Vehicle Maintenance Facility (VMF) Management, Mr. Timothy Currie and Mr. David Cook (Caucasian) against the Plaintiff, Kevin D. West, Pro Se (African American).

141.  Mr. Cuffey also noted that another African American Auto and body
      Fenderman at Gaithersburg, second most senior, Mr. Eric Web was also
      passed over by Mr. Currie and was not asked if he was interested in the job as
      acting supervisor or 204B for Washington, D.C. (Exhibit 78-78A ¶6).

142.  Yet another African American, Mr. Henry Barnett in his declaration (**Exhibit
      24-24A**, Decl. of Henry M. Barnett ¶ 1-11, dated 12/2/02) was discriminated
      against and passed over by Mr. Currie by removing him from an Acting 204B
      Supervisor he served as for **9 years** at the USPS VMF in Washington, D.C
      that was given to less senior White employees with bad attendance record like
      Mr. John Preston Miller, III. Mr. Barnett submitted his 991 form and
      application to Mr. Currie's newly created Supervisor 204B Program but was
      unfairly denied to participate in the program.

143.  Mr. Barnett states in his declaration that Mr. Cook used an all White Selection
      committee for the 204B program, which overlooked and denied many Blacks
      with good experience and seniority for equal upper mobility opportunities.

144.  Mr. Currie has a well-defined pattern of discrimination, wherever he is
      assigned.  In Mr. Currie's own  admission he has had several EEO's filed
      against him from all nationalities and women.  Refer to T. Currie Deposition
      dated 10/29/02 (Exhibit 77C page 138 ¶1-6) where questioned about the
      description of other minorities filing EEO's against him he agreed flippantly
      that, Black Males and Females, White Males and Females, and responded
      "Asian and Latinos.  That's about the bulk of it."

145.  There are numerous people from his previous assignment in Illinois, where his
      location was deemed a "Hot Spot" by the USPS due to his racial practices and
      preferential treatment that he granted to Caucasians over African Americans.
      In the Declaration dated 09/25/02 (Exhibit 79-79B ¶3-5) of Mr. Alonzo J.
      Taylor, a 23 -year tenure Postal Mechanic at the South Suburban Processing &
      Distribution Center VMF where Mr. Currie left from in June 2000.  Mr.
      Taylor also filed an EEO against Mr. Currie for racial discrimination (**79C-
      79E** EEO#4J-604-0030-00).

146.  Also from Bedford Park, Illinois, Mr. Williams R. Miles (African American)
      see Declaration dated 12/12/02 (Exhibit **80-80B** ¶1-8) filed an EEO against
      Mr. Currie for racial discrimination (**80C-80E** EEO#4J-604-0169-99).

147.  Ms. Gwendolyn A. Sims-Hearn from Bedford Park, Illinois, (African
      American) see Declaration dated 12/13/02 (Exhibit **81-81G** ¶1-8) also filed an
      EEO against Mr. Currie for racial discrimination (Exhibit **81H-8K** EEO#4J-
      604-0035-00).  In her Declaration ¶5, she states that Mr. Currie responded to
      her inquiry if the reason for his harassment of her on February 14, 2000, was
      because she was Black? And Mr. Currie responded  "I don't have to like Black
      people just work with them." Then he yelled and "I don't know why You
      people are so hard-headed!"  She also reported his bragging of getting rid of
      two Black employees and stated that he would get rid of her too if he could.
      This same behavior from Mr. Currie was witnessed by Ms. Sandra Childs in
      front of Ms. Diane Hatfield, (Caucasian)  Supv Vehicle Supply (One of the
      four Selection Committee members on Currie's 204B Training program).  In

000000009

Ms. Child's Declaration (**Exhibit 19** ¶11), Mr. Currie told her he didn't like a

co-worker, an employee of whom he was in charge of in Illinois. Mr. Currie

went on to describe to them how he thought out a plan to destroy and have this

person fired. From the way he told the story, his plan worked.

148.    The following are several EEO complaints filed against Mr. Currie for acts of

racial, age, handicap and sex discrimination and retaliation: Note these EEO's

are to show the history of Mr. Currie pattern of discrimination:

| NAME | EEO# | DATE | EXHIBIT |
|------|------|------|---------|
| Mr. Reginald D. Trice | 4J-604-0197-99 | 6/29/99 | **82-82C** |
| Ms. Cora J. Sisk | 4J-604-0076-00 | 01/31/00 | **83-83B** |
| Melvin James | 4J-604-0103-99 | 11/08/99 | **84-84B** |
| Melvin James | 4J-604-0170-98 | 6/28/98 | **85-85B** |
| Mr. Edward L. Clark | 4J-604-0008-00 | 09/27/99 | **86-86B** |
| Mr. Miguel R. Hidalgo | 4J-604-0211-99 | 10/4/99 | **87** |
| Mr. Miguel R. Hidalgo | 4J-604-0043-99 | 02/9/99 | **88-88C** |

## CONCLUSION

1.    The U.S. Postmaster General was aware and is fully responsible for allowing

the racial discriminatory and retaliatory acts of it's Vehicle Maintenance

Facility (VMF) Management, Mr. Timothy Currie and Mr. David Cook

(Caucasian) against the Plaintiff, Kevin D. West, Pro Se (African American).

2.  These acts have been meticulously detailed and documented over the years by Mr. West with the Postmaster General and upper management ignoring, simply moving the offending manager or Supervisor from one location to the next (very often with promotions/increases).  This refusal to hold it's management accountable with discipline is negligence by the U.S.P.S. and fosters an unsafe stressful workplace with unqualified or not the best qualified employees in positions of authority.

3.  Mr. West in particular has suffered undue mental anguish and stress disorder, loss of wages, loss of upward mobility opportunities, marital problems, harassment, physical assault, racial discrimination and retaliation for his prior EEO history at the hands of the U.S.P.S. management.

4.  As a result of the September 7, 2000, harassing meeting with Mr. Currie, where he threatens Mr. West with retaliatory actions due to Mr. West's EEO History.  Mr. Currie admits in his affidavits that his upper management has briefed him on Mr. West's prior EEO history.

5.  He deliberately, goes to Mr. West's workplace on September 6, 2002 to attempt to obtain any negative feedback of the "opinions" of his co-worker's. Mr. West has proved by several declarations of his co-workers that his "at best" hasty decision on an alleged investigation, where the main person and reason for his visit, Ms. Sandra Childs refuted Mr. Currie's reasons and discussion (Sexual Harassment claim).  This claim had no merit and was dropped by Ms. Childs.

00000000

6. Yet Mr. Currie continued to deny Mr. West upward mobility opportunities, as he gave to Mr. Miller. Mr. Currie denied Mr. West's written request for 204B Supervisory Training and instead passed him up and countless other more qualified, senior, experienced African American employees with good leave records for the similarly situated Mr. John Preston Miller, III (Caucasian).

7. As well documented by most of Mr. Miller's coworkers, Mr. Cook (Miller's VMF supervisor for years), and Mr. Currie himself admits that Mr. Miller had a problem with attendance and driving privileges. The official clock rings obtained during the discovery period of this case shows an unprecedented number of Revised Schedules (163 between 1999-2000) to attempt to hide Mr. Miller's habitual lateness (69 in 99-00) and absences due to DWI charges, also documented by Maryland's MVA records causing him to have his driver's license revoked and suspended. Note that VMF Manager Mr. David Cook altered Mr. Miller's time sheets to not reflect the actual tardiness as denoted in the official clock ring records.

8. With all these proven and admitted problems, Mr. Miller still was promoted, and given upper mobility opportunities in the 204B Supervisory program by Mr. Currie. Whereas, Mr. West was disciplined and denied the same opportunity, even though Mr. West has a good leave balance/record. Mr. Miller did not submit a form 991 to apply for the program, nor did Mr. West, yet Mr. Miller was given a "3 hour opportunity" to discuss how he could change his problems, but Mr. West was disciplined and denied an opportunity for supervisory training.

9.  These actions taken against Mr. West were based on his race and his prior
    EEO history against VMF management, Mr. Cook and Mr. Currie. Mr. Currie
    has a history of numerous EEO's filed against him by employees under his
    supervision at every location he has worked at in the USPS. Mr. Currie's
    pattern of discrimination and retaliation against minorities was so oppressive
    in his previous location that the Illinois VMF he oversaw was declared a
    USPS "Hot Spot". Mr. Currie had only been reassigned to Washington, DC
    for less than three months before claims of discrimination and retaliation
    against minorities were being made against him again.

10. His unfair discriminatory selection process for his new 204B Supervisor
    Training program methodically eliminated most of the minorities presently in
    those positions/details for years. All of a sudden, these minority applicants
    were no longer adequate, as deemed by an all- Caucasian selection Committee
    assembled by Mr. Currie. Mr. Currie is retaliating against Mr. West because
    of prior EEO's and Mr. West's conviction to report corruption and violations
    wherever he sees it at the USPS.

11. The USPS Postmaster General through the actions of Mr. Timothy Currie and
    Mr. David Cook and other VMF management is in violation of the
    Code of Ethics for Government Service Violations

    1.  Put loyalty to the highest moral principles and to country.

    2.  Uphold the Constitution, laws and legal regulations of the United States
        and of all governments therein.

    3.  Never discriminate unfairly.

000000009

12. The Plaintiff is requesting that the court respectfully consider all of the

evidence, statement of facts and argument contained herein to deny the

Defendant's Motion for Summary Judgment and grant the Plaintiff the

opportunity for a fair trial by jury in the U.S. District Court, District of

Columbia

Respectfully submitted,

*Kevin D. West*

KEVIN D. WEST,
831 Chatsworth Drive
Accokeek, MD 20607
Telephone: (301) 292-7080

Dated: December 23, 2002