UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Kevin D. West )
)
PLAINTIFF )
)   Civil Action No. 01-746 (JR)
)
v. )
)
John E. Potter )
Postmaster General, U.S. Postal Service )
Defendant. )
)

## PLAINTIFF'S MOTION TO AMEND COMPLAINT FOR INCLUSION OF PRIOR HISTORY OF RETALIATION AND DISCRIMINATION

The Plaintiff, Pro Se, Kevin D. West submits this amendment to his original complaint filed on April 6, 2001, against Mr. Timothy Currie, Manager VMF U.S. Postal Service. The Defendant motioned to amend the case caption to name Postmaster General John E. Potter as the only Defendant on December 13, 2001. This motion was granted. The plaintiff's original complaint did not include the facts concerning prior history of retaliation and discrimination against the Plaintiff of the newly appointed Defendant, Postmaster General John E. Potter, which represents all of the U.S.P.S. management. These are crucial facts, which proves the Plaintiff's claim of racial discrimination and retaliation by the Defendant in violation of Title VII of the Civil Rights Act of 1964, which led up to this case. In support thereof, the Plaintiff states as follows:

APPENDIX C-1

1. An illustration of the pattern of discrimination and retaliation is when Mr. Michael Hill, Supervisor Largo II VMF and the VMF management enforce unfair rules in attendance and leave. They treated the plaintiff differently than Mr. Richard Ziehl, Caucasian. Mr. Hill allowed Mr. Ziehl the use of PS forms 1260 to change his reporting time and denied the plaintiff the same benefit. Note that Mr. Ziehl's wife is the executive secretary of the Postmaster General, Mr. Runyon and was therefore given preferential treatment. For example Mr. Ziehl was late on the following pay periods (pp) in 1993 and PS form 1260's were used to alter the times from late: pp#10 day 4, pp#11 day 7, pp#13 day 10, pp#14 day 5, pp#14 day 12, pp#14 day 14, pp#15 day 12, pp#16 day 7. Whereas Mr. West was late only twice in 1993 by 90 units on January 15, 1993 and .09 units on August 17, 1993 but was not granted annual leave or the use of a PS1260, but given an AWOL.

2. Mr. Hill made various racially harassing comments to Mr. West on February 3, 1993. He called him out of his name in front of witnesses. He called Mr. West "Malcolm X" in front of Mr. Robert Mason, Automotive Mechanic Largo II VMF. Mr. Hill also called him "Jamaican Mon" with a mocking accent to ridicule Mr. West in front of his coworkers, referring to his clothing and hat. Mr. West is from Washington, D.C., not from the Jamaica and does not talk with an accent.

3. Other such example of the VMF management's retaliation against the plaintiff was when he was denied acting lead mechanic training, level 7 at Largo II VMF on June 30, 1994. Plaintiff requested acting lead mechanic training from Mr. David Cook, Manager and was initially told by him after checking his schedule

2

APPENDIX C-2

for July 5, 1994 that no one was scheduled and that plaintiff could have the position, but he would have to talk to Mr. Hill on his arrival on July 5, 1994. Mr. West was not given the position. Instead it was given to Mr. Holliday. A routing slip requesting acting lead mechanic was allegedly given (after Mr. West's) on July 5, 1994 by Mr. Holliday, level 6 Automotive Mechanic, African American. Not only was this after Mr. West's request, but this is a strange and questionable request coming from Mr. Holliday, because he had been rotating with Mr. Stephen Clark, level 6 Automotive Mechanic, Caucasian, since 1991 until Mr. West request. Therefore, Mr. Holliday should not need to request for acting lead mechanic rotation. His request was completed later; after Mr. West filed a complaint. Mr. Hill created an excuse for not honoring plaintiff's request that was given to Mr. Cook on June 30, 1994, because or retaliation. In addition, Mr. Clark, Caucasian, never needed to request in writing for acting lead mechanic duties. The plaintiff was treated differently than Mr. Clark because he is African American and Mr. Clark is Caucasian. The fact is that Mr. Cook's decision not to use the plaintiff was because of his prior complaints of racial discrimination and reprisal against the VMF management.

4. Other patterns of retaliation by USPS management were demonstrated on March 24, 1995 when the plaintiff requested training for all vehicles that he had not been trained on. USPS Management response to request, dated March 24, 1995, claimed that all efforts would be made to grant plaintiff's request. Yet at the first opportunity on June 8, 1995, Ms. Nancy Muschette, acting manager Largo VMF, denied plaintiff training for June 26 through June 30, 1995. In fact, management

3

APPENDIX - C-3

did not grant this request for almost 5 years after plaintiff's request, until January 24, 2000.

5. Mr. Hill also denied Mr. West's request on a PS form 3971 (Request for or Notification of Absence) for one hour 46 units of unscheduled leave, when his car broke down on route to work on April 10, 1995. Mr. Hill claims that he denied it because it was not on a PS form 3189, even though he had approved other co-workers schedule change on the PS form 3971. The PS form 3971 can be used for revised schedule authorized by a supervisor up to 2 hours.

6. Ms. Nancy Muschette, Acting VMF manager, also denied plaintiff 1 hour of revised schedule on June 12, 1995. She denied plaintiff's request for temporary schedule change for personal convenience (PS form 3189). Her reason given on the request PS form 3189 was "insufficient". This is another form of reprisal because Ms. Muschette had approved other employee's request for schedule change for personal convenience (PS form 3189) Ms. Sandra M. Childs, Automotive Store Parts Keeper, Largo I VMF and Mr. Elbert Cuffey's (Body & Fender repairman, Largo I VMF) request also was approved.

7. Another illustration of management's pattern of reprisal is when on June 24, 1996, June 25, 1996 and July 1, 1996, Mr. Hill Supervisor, Largo II VMF, denied plaintiff equal opportunity to work overtime. Mr. Hill treated plaintiff different from Mr. Steve Clark, Caucasian, Automotive Level 6, by allowing him to work overtime and not informing plaintiff who is on the "Overtime Desired List". Mr. Hill continued to do so, even after APW union vice president, Ms. Melinda Hunt explained to Mr. Hill the correct rules of the Overtime Desired list. Mr. Hill is

4

APPENDIX C-4

of 1997, the VMF management added short sleeve shirts for hot weather conditions, but did not address the Plaintiff's request of protection for cold weather conditions until August of 1999, after the Plaintiff was punished with letters of Warning, Suspensions and Notice of Proposed Removal.

9. The VMF management has denied upper mobility training to the plaintiff for equal job advancement, when he had requested for acting supervisor detail (204B) on May 24, 1996. Management denied the plaintiff his request because of EEO discrimination and reprisal against plaintiff. Mr. Lawrence Fielder, Jr. (Caucasian) Junior Mechanic Riverdale VMF was treated differently than plaintiff by VMF management. Mr. Fiedler, a Jr. Mechanic, Level 5, Caucasian was given the acting supervisor assignment (204B) at the Riverdale VMF on 10/7/96 through 10/11/96 by Mr. David Cook, VMF Manager. Mr. Cook, knowing that the plaintiff (Level 6, Mechanic) was a higher level and more qualified by job experience and education. The plaintiff was only asking that he be treated the same and fairly by being given the same opportunity for on the job training as acting supervisor (204B) as other Caucasian employees have been given (such as, Mr. Michael Scott, Lead Mechanic Level 7 and Mr. Lawrence Fiedler, Junior Mechanic Level 5).

10. The Plaintiff was ordered by Mr. Hill to work in an unsafe stall since his arrival in March of 1992. The plaintiff brought this to the attention of Mr. Hill in March 18, 1994 during a safety talk. Mr. Hill response was that he would have to do a safety review analysis sheet on the stall. The analysis was not done by Mr. Hill until two years later on September 5, 1996, because Mr. Hill's intention was to

6

APPENDIX C-6

keep the plaintiff in an unsafe stall unreported until forced to remove him. Mr. Roland Johnson, shop steward had talked to Mr. Hill on January 18, 1996 concerning outdoor winter work clothing and concerns about plaintiff's unsafe stall that Ms. Susan Cogswell, Safety Specialist had cited in a safety deficiency report. Mr. Hill still did nothing to correct the unsafe environment for the plaintiff. On September 4, 1996, the plaintiff requested that he be moved from the unsafe stall to another bay that became available when another employee, Mr. Mason was detailed to Largo I VMF. Mr. Hill's refusal to do so prompted the plaintiff to write a letter of complaint on September 4, 1996 concerning this matter to Mr. David Cook, and submit a PS form 1767 Report of Hazard, Unsafe Condition. Upon Mr. Cook's receipt of plaintiff's letter and report, he ordered Mr. Hill to complete the on the job safety review analysis PS form 1783. As previously stated, this was the only reason that Mr. Hill addressed the unsafe stall issue.

11. On September 28, 1998, Plaintiff met with Mr. Allen, Shop Steward, concerning performing Lead Mechanic Level 7 job description since March 1992 through May 5, 1999. Mr. West had been following Mr. Hill's orders as given. Mr. Hill stated that preparing and performing PS form 4543 (Work Order) is well within Mr. West's job description and requirements for Automotive Mechanic. Contrary to Mr. Hill's claim, Mr. Greg Absher, Supervisor Riverdale VMF, stated that the PS form 4543 (Work Order) is a Level 7 Vehicle Analyst or Lead Mechanic's job. Therefore, Mr. Hill treated Mr. West differently than the similarly situated Level 6 mechanics at Riverdale VMF.

APPENDIX C-7

12. On November 3, 1998, Mr. Kevin West was threatened, harassed and physically assaulted by Mr. Michael Hill at Largo II VMF. This was witnessed by several employees at Largo VMF and reported to the WDC Postal Inspector Office on November 4, 1998.

13. In March 1999, Mr. Hill continued his retaliation against Mr. West by not allowing him to perform higher-level acting lead mechanic duties in the absence of the lead mechanic. Mr. Hill admitted that he stopped using Mr. West in February 1998, but he was not informing the employees who was assigned as the acting lead mechanic. Mr. West finally found out in March 1999, that Mr. Mason and Mr. Clarke were the only employees being rotated in the position, omitting Mr. West. In May of 1999, Mr. West bidded from his job location under Mr. Hill at Largo II VMF to Largo I VMF. Mr. West was then allowed to perform acting lead mechanic duties again at his new Largo I VMF location.

14. In the month of July 1999, the Plaintiff informed Mr. Cook, VMF Manager, of postal violations being conducted at Largo VMF by VMF employees. Mr. Cook did nothing. Therefore, Mr. West informed Mr. Samuel Stokes, VMF Manager located in Washington D.C. of these violations concerning the PS form 4546 Preventive Maintenance Inspection Guidelines (PMI) and other violations of misappropriation of funds by VMF management. A copy was also sent to the Postmaster General, Mr. William Henderson by certified mail.

APPENDIX C-8

Frederick Price Jr, Manager; Mr. Patrick R. Donahoe, Capitol District Manager; Mr. Marvin Runyon, Postmaster General and Mr. William Henderson, Postmaster General.

18. On September 7, 2000, after Mr. West returned from Mr. Currie's office in Washington, D. C., he gave Mr. Cook a letter dated 9/6/00, subject: Unsafe Travel and a routing slip requested to see a union concerning the meeting with Mr. Currie where he was harassed and threatened.

19. On September 8, 2000, Mr. Cook questioned Mr. West concerning the Unsafe Travel Letter that was given to him on September 7, 2000. Mr. West requested for a response in writing and for union representation to be present. Mr. Cook said no to both requests. He wrongfully continued on with the interrogation and threats, ordering the Plaintiff to attend the training. Mr. West again requested his response in writing and Mr. Cook continued to respond "No".

20. Mr. Cook violated the United States Court of Appeal Order of the National Labor Relation Board case # 32-CA-10209(P), which can be found in original complaint dated 4/6/01 Exhibit 3. This order states that employees will not be refused to union representation concerning an investigation that could result in disciplinary actions.

10

*APPENDIX C-10*

21. On September 21, 2000, Mr. Cook called Mr. West in his office and read a Letter of Warning to him. Mr. Cook asked Mr. West if he understood what he just read. The plaintiff responded "No" and requested for union representation. Mr. Cook then told Mr. West he can leave and he would get a witness.

22. Mr. Cook returned with Mr. Michael Hill, Supervisor Largo II VMF. Mr. Cook called to Mr. West on the work floor and said for him to come in his office and sign this letter. Mr. West response was that he had nothing to say to management without the union being present concerning this issue. Mr. Cook then told Mr. West to leave before the end of his tour and to return to work the next day at his regular scheduled time. Mr. West left as ordered.

23. On September 22, 2000, at 5:30 a.m. Mr. Cook and Mr. Hill were waiting for Mr. West to give him the Letter of Warning for Failure to Follow Instructions. Mr. West did not sign the letter because it was given unjustly.

24. Mr. West was no longer allowed to obtain upward mobility positions, since receiving the letter on September 22, 2000. This is exactly what was told will happen to him by Mr. Timothy Currie on the September 7, 2000 meeting.

APPENDIX C-11

25. The following items detail the continued retaliation and discrimination that has transpired since the filing of this case.

26. On March 8, 2001, Mr. West requested for training in the Supervisor's Training (204B) VMF Employees program that Mr. Currie and Mr. Cooke had just started in March 1, 2001, meeting at Largo I VMF. Mr. West was denied by VMF management based on the fact that Mr. West did not submit a PS form 991 by the end of closing date April 13, 2001.

27. Mr. West was treated differently than Mr. John A Bowser, Automotive Mechanic Largo I VMF, Caucasian and Mr. Thomas Buchanan, Automotive Mechanic Largo I VMF, Caucasian. They were given the chance for the Supervisor's Training (204B) in February 2001, which is before March 1, 2001, when Mr. Currie introduced his program. Neither employee submitted a PS form 991 for this training. Both employees have less seniority than Mr. West.

28. Mr. Currie has also given Mr. Lawrence Hobson, Automotive Technician Largo I VMF, the opportunity to be a 204B Acting Supervisor in July of 2001. Mr. Hobson has not submitted a PS form 991 as requested by Mr. Currie. Nor had Mr. Hobson requested for 204B training in writing as Mr. West has done.

29. On June 8, 2001, Mr. Cook gave Mr. West a Letter of Warning for Absence from Scheduled overtime. Mr. West would not sign this because it was unjustly given. The letter of warning was later rescinded.

30. On June 18, 2001, Mr. David Cook at Largo I VMF physically assaulted Mr. West. Mr. West was stalked on the work floor, threatened and harassed by Mr. Cooke. The incident was witnessed by several employees, which include Mr.

12

APPENDIX C-12

James Thompson, Lead Automotive Technician; Mr. Chris Simmons, Automotive Technician, and Mr. Cleveland Mansfield, Lead Automotive Technician, Largo I VMF. The incident was reported to the Postal Inspectors on June 19, 2001.

31. On June 19, 20 and 21, 2001, Mr. Cook would not give Mr. West his timecard to punch in at 0530 am. Mr. West again reported all events to U.S. Postal Police with Officer Graham Bannerman, Jr.

32. On June 25, 2001, Mr. Cook allowed Mr. West to clock in at 0530 a.m.. Thereafter Mr. Cooke gave Mr. West a verbal suspension, which resulted in Mr. West not reporting back to work until July 9, 2001.

33. On July 18, 2001, Mr. West was given a 7-day suspension in writing. Which includes the time he was verbally suspended on June 25, 2001.

34. On August 24, 2001, Mr. West was given a 14-day suspension in writing. Which includes the time he was verbally suspended on June 25, 2001.

35. The suspensions for June 25, 2001 that was verbally given and the written suspensions for July 17 and August 24, 2001 were all later rescinded because they were unjustly given.

36. On January 2, 2002, the Plaintiff informed Mr. Jerry D. Lane, District Manager of Capitol District of Mr. Franklin Green's actions on December 12, 2001 concerning his vulgar language as Acting Supervisor. This letter also detailed Mr. David Cook's action in a safety talk on December 14, 2001 concerning a response to the plaintiff's request for information where Mr. Cooke's response was "No!" loudly. The letter subject was conduct unbecoming a USPS employee. The letter was also copied to the Inspector General and Postmaster General by certified mail.

APPENDIX C-13

37. On January 28, 2002, Mr. West was given a 7-day suspension in writing from Acting Supervisor Franklin Greene for Absence of Scheduled Overtime and Holiday Work. Mr. West did not sign it because it was unjustly given.

38. On April 5, 2002, the VMF Management is not allowing Mr. West to attend the US District Court on USPS time, whereas, Mr. West has to use annual leave for court appearance. This is in violation of Federal Register Rules and Regulations, dated 4/10/92, Section 1614.605 (b) The complainant and representative, if employed by the agency and otherwise in a pay status, shall be on official time, regardless of their tour of duty, when there presence is authorized or required by the agency or the Commission during the investigation, informal adjustment, or hearing on the complaint.

39. On May 15, 2002, Mr. Franklin Greene for Unsatisfactory Work Performance gave Mr. West a 14-day suspension as Required by Section 666.1 of the Employee and Labor Relations Manual. Mr. West did not sign this because it was unjustly given.

40. These are the retaliations by USPS Management that has transpired as a result of this case in the U.S. District Court. Defendant through the actions of David Cook, Manager VMF, and Timothy Currie to include other such USPS Management detailed above in section #17 and #36.

41. These retaliations includes such acts against the Plaintiff in violation of his civil rights, threatened and harassed Plaintiff by issuing Letters of Warning, 7-day Suspensions, 14-day Suspensions, a Proposed Notice of Removal, a blank registration form to sign, denying Plaintiff union representation when requested,

denying Plaintiff upward mobility opportunities as acting Lead Mechanic, acting Vehicle Analyst and Acting Supervisor (204B), and Physically Assaulted.

42. Plaintiff previously engaged in protected activity by filing 14 formal equal opportunity complaints from 1992 to present. See attached Right to Sue letter dated July 20, 2000 (Correct date is July 20, **2001**) for this case.

43. Defendant, through Mr. Currie and Mr. Cook, was aware of Plaintiff's prior participation in the protected activity.

44. Defendant took adverse action against Plaintiff in response to Plaintiff's engagement in protected activity, namely among other things, Defendant issued Letters of Warnings, 7-day Suspensions, 14-day Suspensions, a Proposed Notice of Removal, a blank registration form to sign, denying Plaintiff union representation when requested, denying Plaintiff upward mobility opportunities as acting Lead Mechanic, acting Vehicle Analyst and Acting Supervisor (204B), and Physically Assaulted.

45. Other individuals, namely Mr. Mansfield, Mr. Ziehl, Mr. Buchanan, Mr. Bowser, and Mr. Clark, who were not engaged in protected activity, were not given adverse employment actions by Defendant.

46. Defendant's actions against Plaintiff occurred in enough proximity of time to the protected activity that a retaliatory motive may be inferred under the facts and circumstances.

47. Defendant's actions of racial discrimination and retaliation have caused Plaintiff extreme emotional distress and anguish.

APPENDIX C-15

48. Defendant's actions of racial discrimination and retaliation have caused Plaintiff economic injury, including, among other things, attorneys fees, annual leave, sick leave and loss of overtime.

49. Defendant's actions of against Plaintiff are malicious, pervasive and severe.

WHEREFORE, Plaintiff requests that his Honorable Court:

a) Grant Plaintiff a trial by jury;

b) Award Plaintiff Three Hundred Thousand Dollars and Zero Cents ($300,000.00) in compensatory damages for each instance of racial discrimination and for each instance of retaliation;

c) Award Plaintiff One Million Dollars and Zero Cents ($1,000,000.00) in punitive damages;

d) Award Plaintiff attorneys fees and related costs of litigation; and

e) Grant Plaintiff such other and further relief as the nature of his cause and the interests of justice may require.

In consideration of the reasons contained herein, the Plaintiff respectfully requests that the court grants this motion to amend the original complaint to include the historical facts of retaliation and discrimination by the USPS Management.

Respectfully submitted,

*Kevin D. West*

KEVIN D. WEST,
831 Chatsworth Drive
Accokeek, MD 20607
Telephone: (301) 292-7080

Dated: June 17, 2002

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing copy of <u>PLAINTIFF'S MOTION TO AMEND COMPLAINT FOR INCLUSION OF PRIOR HISTORY OF RETALIATION AND DISCRIMINATION</u> has been hand delivered and sent by facsimile, this 18th day of June, 2002 addressed to:

Roscoe C. Howard, Jr.
United States Attorney

Rolando N. Valdez
Special Assistant U.S. Attorney
Judiciary Center Building, 10th Floor
555 Fourth Street, N.W.
Washington, D.C. 20001

(202) 307-2332

_Kevin D. West_ (signature)
KEVIN D. WEST,
831 Chatsworth Drive
Accokeek, MD 20607
Telephone: (301) 292-7080

17   APPENDIX C-17