IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KEVIN D. WEST, )
)
    Pro Se Plaintiff, )
)
) Civil Action No. 01-0746
    v. )
) Judge James Robertson
JOHN E. POTTER, )
POSTMASTER GENERAL, )
UNITED STATES POSTAL SERVICE )
Headquarters )
475 L'Enfant Plaza, SW )
Washington, DC 20260 )
)
)
    Defendant. )
)
)

## STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

The United States Postal Service, by counsel, files this Statement of Material Facts Not in Genuine Dispute, in support of the Defendant Agency's Motion to Dismiss, or Alternatively for Summary Judgement, pursuant to LCvR 56.1 of the local rules of this Court.

1. Plaintiff, Kevin D. West, is an African-American male. Complaint at p. 1.

2. Plaintiff West has served as a Vehicle Mechanic for the USPS, Level 06, at the Largo I Vehicle Maintenance Facility in Capitol Heights, Maryland during the period 1999 through December, 2000. Currie Decl., ¶3.

3. Plaintiff had previously filed EEO Complaints on October 27, 1998 and April 19, 1999. July 19, 2001 Final Agency Decision at p. 5

4. From September 25, 1999 through September 7, 2000, Plaintiff West was on an upward

mobility track with the Postal Service, and was appointed on several occasions to serve as Acting Lead Mechanic and Vehicle Analyst, in the temporary absence of his team leader at the USPS Vehicle Maintenance Facility ("VMF"), located in Largo (Capitol Heights), Maryland. Cook Decl., ¶3. Currie Decl., ¶3.

5. During the year preceding September 7, 2000, and while Plaintiff West served as Acting Lead Mechanic and Vehicle Analyst, he became involved in several employment-related disputes with his co-workers. Currie Decl., ¶s 5, 6; Cook Decl., ¶5. Other postal mechanics, African-American and Caucasian alike, stated that Plaintiff West had trouble getting along with his co-workers. Cook Decl., ¶5; Currie Decl., ¶s 5, 6.

6. In or around June 2000, Timothy A. Currie ("Currie"), a Caucasian male, became the Capital District Manager for the VMF, located at 400 T Street, Washington, D.C. Currie Depo. at pp 12-13.

7. On August 14, 2000, Sandra M. "Monique" Childs ("Childs"), an African-American female, files a Voluntary Statement to the U.S. Postal Police regarding Plaintiff West. See Currie Decl., attachment Ex. 3a - 3f.

8. On August 14, 2000, Ms. Childs filed an EEO Complaint alleging discrimination on the basis of sex/gender against Plaintiff West. Currie Decl., attachment Ex. 4

9. On August 14, 2000, Chris E. Simmons, an African-American male, filed a Voluntary Statement to U.S. Postal Police regarding Plaintiff West. Currie Decl., attachment Ex. 5.

10. On August 14, 2000, Leroy T. Cowan, Jr., an African-American male, filed a Voluntary Statement to U.S. Postal Police regarding an August 7, 2000 incident between Monique Childs and Plaintiff West. Currie Decl. at attachment Ex. 6

00000000

11. On August 14, 2000, James R. Smith, a Caucasian male, filed a Voluntary Statement to U.S. Postal Police regarding an August 11, 2000 incident between Childs and Plaintiff West.

12. On August 17, 2000, Plaintiff West filed a Voluntary Statement to U.S. Postal Police regarding incidents, from October 19, 1999 through August 14, 2000, between Plaintiff and Childs. Complaint at Ex. 4 - 4h.

13. On September 6, 2000, Timothy Currie, Capital District Manager for the VMF, conducted interviews of several co-workers of Plaintiff West. Currie Decl., ¶5. This was prompted by a sexual harassment complaint that had been filed against Plaintiff West by Sandra "Monique Childs, an African-American female co-worker. Currie Decl., ¶s 4, 10 (and attached statement of Childs.)

14. Dist. Manager Currie conducted no investigatory interview of Plaintiff West, since Plaintiff West was out sick on September 6, 2000. Complaint, Exhibits 2 and 4; Currie Decl., ¶5.

15. Manager Currie determined substantial grounds did not exist to support the sexual harassment complaint but he did determine that several colleagues and co-workers of Plaintiff West had trouble communicating and relating to Plaintiff when he acted in a supervisory capacity. Currie Decl., ¶s 5, 6.

16. On September 6, 2000, Dist. Manager Currie also consulted with David Cook, the VMF Manager and Plaintiff's immediate supervisor, regarding the results of Dist. Manager Currie's interviews with Plaintiff West's peers and subordinates. Cook Decl., ¶4. Manager Cook confirmed that on the basis of Plaintiff West's own correspondence and office memoranda, Manager Cook's discussion with Plaintiff West's co-workers, and Cook's own observations, he had also concluded that Plaintiff West was not able to properly discharge his

3

supervisory responsibilities when acting in the temporary Acting Lead Mechanic and Vehicle Analyst positions. Cook Decl., ¶5.

17. Dist. Manager Currie determined that Plaintiff West was not qualified to serve as Acting Lead Mechanic or Vehicle Analyst, in the absence of his team leader. Currie Decl. ¶7. Dist. Manager Currie asked Manager Cook to instruct Plaintiff West to come to Currie's office on the morning of September 7, 2000, in order to inform Plaintiff West that he could no longer be serving as Acting Lead Mechanic in the absence of his team leader, Franklin Greene. Complaint, at 2.

18. On September 7, 2000, Plaintiff West arrived at the VMF in Largo, MD at approximately 0550 hours, whereupon he was instructed by Manager Cook, to report to Dist. Manager Currie's office, located just over the state boundary, in nearby Washington, DC.

19. Plaintiff West arrived at Currie's office in Washington at approximately 6:00 a.m. Complaint, at 2. Dist. Manager Currie was tied up with an emergency that morning, but Plaintiff West was brought in to see Currie at approximately 10:00 a.m. Currie Decl., ¶8.

20. The purpose of the September 7, 2000 meeting was to discuss the Childs complaint and Plaintiff's performance as Acting Lead Mechanic. Curie Decl., ¶¶ 5 -8.

21. Plaintiff was asked how well he liked his work with the Postal Service and Plaintiff replied that he loved his job. Currie discussed Plaintiff's communication problems with co-workers. Plaintiff expressed certain frustrations in dealing with his co-workers. Currie told Plaintiff that if his job was too much for him to handle, then resignation was an available option, Currie placed a blank resignation form on his desk. Currie states that he never requested nor demanded that Plaintiff sign the blank resignation form. Currie Decl., ¶8.

00000000

22. Although Currie had investigated Plaintiff's employment history, Currie did not know of and did not inquire into Plaintiff's prior EEO activity before the September 7, 2000 meeting. Currie Decl., ¶ 8.

23. At the September 7, 2000 meeting, Plaintiff told Currie about his prior EEO complaints filed against other supervisors. It was at this time, that Currie first became aware of Plaintiff's prior EEO activity. Currie Decl., ¶10, Currie Depo. 130:10 - 21.

24. Plaintiff West requested the presence of a union representative because "the meeting was retaliation and harassment." Complaint at 2. Currie Decl., ¶8. Currie informed Plaintiff, that pursuant to Article 16 of the National Agreement, Plaintiff was not entitled to Union representation at Step 1 discussion. Currie Decl., at ¶ 9.

25. Currie informed Plaintiff that would not serve as Acting Lead Mechanic at Largo I VMF until he could improve his ability to communicate with his fellow employees. Currie Decl., ¶ 10.

26. After returning to work on September 7, 2000, Plaintiff West gave Manager Cook a letter dated September 6, 2000, requesting a change in his travel schedule for a Mack Diesel class that Plaintiff West was scheduled to attend on September 11 through September 22, 2000, in Norman, Oklahoma. Complaint, Exhibit 2B.

27. The letter requested that Manager Cook authorize a change for the air travel return date on the final day of class, September 22, 2000. Id. Plaintiff West claimed that this change was necessary because it created an "unsafe environment" for him to attend four hours of class in the morning, and then fly back home that same day. Id. In his own words, Plaintiff West claims that "[t]he stress after working the same day as travel poses undue stress in dealing

5

with the airline and travel to and from the airport." Id.

28. Mr. Cook had approved a similar request made by Plaintiff West in February 3, 2000, for a previous training assignment, after being advised by the Southern Maryland Plant Safety Office, to approve the request. Cook Decl., ¶10. On or about September 5, 2000, Mr. Cook had not received any such approval from the Safety Office. Cook Decl., ¶9.

29. On September 8, 2000, Manager Cook informed Plaintiff West that in the absence of a doctor's note stating that he could not travel on September 22, 2000, that he was required to attend the training, as scheduled. Cook Decl., ¶8. Manager Cook explained that arrangements had already been made and that the Postal Service would lose approximately $1,100.00 in previously-allocated training program funds, if he failed to attend. Cook Decl., ¶11.

30. As an alternative, Manager Cook suggested that Plaintiff West could stay the extra hotel day at his own expense of approximately $50.00, if that would be more convenient for him. Cook Decl., ¶11. Plaintiff West responded that he already had a doctor's note on file with the USPS Medical Unit, excusing him from travel on September 22, 2000. Cook Decl., ¶8.

31. Manager Cook checked with the USPS Medical Unit on September 8, 2000 and ascertained that Plaintiff West had no such medical authorization on file with the USPS Medical Unit. Id.

32. On September 11, 2000, Plaintiff West failed to report to the training course as directed. Cook Decl., ¶12. On September 22, 2000, he was issued a letter of warning ("LOW") for his failure to attend. Id.

33. Pursuant to a final settlement of his Step 2 grievance of the LOW issuance, Manager Currie

00000000

agreed to retain the LOW in Plaintiff West's disciplinary file, for only 6 months, thereafter it would not be considered in future disciplinary action against Plaintiff West. Currie Decl., ¶12.

34. Plaintiff alleges that his settlement was "...approved by [Dist. Manager] Currie through a conspiracy with the APW Union..."; and that Plaintiff West was not informed of the settlement until December 7, 2000. Complaint at 3.

Respectfully submitted,

*/s/ Roscoe C. Howard, Jr.*
ROSCOE C. HOWARD, JR., D.C. Bar #246470
United States Attorney

*/s/ Mark E. Nagle*
MARK E. NAGLE, D.C. Bar #416364
Assistant United States Attorney

_____
GAIL PERRY, D.C. Bar #
Special Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W., Room 10-810
Washington, DC 20001
(202) 514-7224

Of Counsel:

H. Alexander Manual, D.C. Bar #391618
Attorney
United States Postal Service

7