## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

**KEVIN D. WEST**          )
                            )
        Plaintiff,      )
                            )
      v.                )     Civil Action No.  05-1339 (JR)
                            )
**JOHN E. POTTER,**     )
**POSTMASTER GENERAL**  )
**U.S. POSTAL SERVICE**    )
                            )
        Defendant.    )
_____)

## <u>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>

Before the Court is Defendant John Potter, Postmaster General's Motion to

Dismiss, under Federal Rule of Civil Procedure 12(b)(6), requesting a dismissal of

Plaintiff's First Amended Complaint allegations at paragraphs 12 through 30, on the basis

of claim and issue preclusion.  Plaintiff Kevin West hereby opposes Defendant's Motion

on three important grounds:

1. The doctrine of *res judicata* does not bar Mr. West's allegations because the Court did not adjudicate the allegations at issue, in a prior action.

2. Mr. West could not have alleged certain facts or theories in the prior action because the underlying events had not occurred until after the institution of the first action.

3. Mr. West is not collaterally estopped from raising the allegations in question, since he is not re-litigating factual or legal determinations rendered by the Court in a prior case.

For these reasons, and other fairness considerations, Mr. West respectfully requests that the Court deny Defendant's Motion to Dismiss.

## STANDARD OF REVIEW

A motion to dismiss should not be granted "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[1]  Although the court need not "accept legal conclusions cast in the form of factual allegations,"[2] in reviewing a motion under rule 12(b)(6), the court must accept the allegations in the non-movant's pleading as true and draw all reasonable inferences in the non-movant's favor.[3]

## FACTUAL ALLEGATIONS AT ISSUE

Because the Defendant rests its motion on specific allegations contained in Plaintiff's First Amended Complaint, Mr. West cites paragraphs 13 through 30 as set forth verbatim therein:

12.     In May 1999, West wrote to Cook requesting "training as acting lead mechanic … and the acting supervisor or 204B in a supervisor's absence."  VMF managers customarily provided available supervisory training and 204B temporary promotion to employees upon their written or verbal request.

13.     During the years 1999 and 2000, Timothy Currie served as Manager Vehicle Maintenance for the USPS VMF in Bedford Park, Illinois.  During his tenure there, he managed numerous USPS employees, many of whom are African-

---

[1] *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).
[2] *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).
[3] *Conley*, 355 U.S. at 45-46 (1957); *Sinclair v. Kleindienst*, 711 F.2d 291, 293 (D.C. Cir. 1983)

American.  In the years 1999 and 2000, over 20 African-American employees filed EEO complaints against the USPS alleging that Currie discriminated against them.  Several VMF employees gave statements under oath that they personally observed Currie make racist statements regarding African-Americans, such as "lazy," "stupid," and stating that he "[didn't] know why **[Black] people** are so hard-headed."  Currie admits that the U.S. Equal Employment Opportunity Commission has found that he committed intentional race discrimination in violation of Title VII.  Upon information and belief, the USPS officially designated the Bedford Park VMF as a "hot spot" for volatile management-employee relations necessitating monthly meetings to cool racial tensions.  Shortly thereafter, Currie came to Washington D.C., after being promoted to Manager Vehicle Maintenance in the Capital District.

14.  After arriving in the Washington D.C. area, Currie summoned West to his office located on T Street, N.E., Washington, D.C.  During the meeting, Currie told West that he had been "brought" to Washington, D.C. to take care of "VMF problems," and that West was "one of those problems that he will solve."  Mr. West requested union representation but Currie denied him a union representative.  Currie admitted to West that "he was informed by his supervisor about [West's] prior EEO history."  He repeatedly asked West if "he liked his job," and gave him a resignation slip.  When West responded that he "love[s his] job" and refused to resign, Currie told him he "would never be used as acting Lead Mechanic or [in] any other upper mobility positions" in the VMF.  Since his conversation with

Currie in September 2000, five years ago, Kevin West has been offered no details to Acting 204B Supervisor jobs and has consistently been rejected for permanent promotions.

15.    On September 22, 2000, Cook issued a Letter of Warning to West for failing to attend voluntary craft (non-supervisory) training when West provided a health-based reason for not attending.

16.    As manager, Cook selects craft mechanics to temporarily serve in higher-level craft positions.  On many occasions between the year 2001 and the present day, Cook temporarily promoted junior White mechanics over West.  Currie instructed Cook not to select West for these opportunities.

17.    In early 2001, Currie formulated an ad-hoc, unofficial program entitled the "204B Supervisory Training Program," which was in effect from approximately March 2001 to December 2002.  This program did not replace or limit customary supervisory details or training within the USPS or selection therefore.  West did not wish to participate in this special voluntary program, but remained interested in upward mobility opportunities that co-existed with the program; consequently, by a letter to Currie dated March 8, 2001, West communicated his continued interest in receiving supervisory training and 204B acting-supervisor, temporary promotions.  Although at least 17 other craft employees, who had not been selected for Currie's program, had been offered temporary promotion to Acting Supervisor, at no time did Currie offer West a supervisor detail.  Among the 17

selected for these opportunities were Caucasian employees junior to West like Thomas Buchanan, John Bowser and John Miller.

18.    On June 8, 2001, Cook issued West another Letter of Warning for failing to report for scheduled overtime during the Memorial Day Holiday period, although Cook had previously granted West leave for that period and informed him that he was excused for the holiday.  Cook issued the discipline without following progressive discipline procedures outlined in the governing collective bargaining agreement.

19.    On June 18, 2001, Cook physically harassed West for not medically documenting an absence necessitated by his infant daughter's fever.  The absence was authorized under dependant care sick leave policies.

20.    Each workday from June 19 – 25, 2001, Cook took West's timecard, refused to allow him to work, denied him copies of his June leave slips, and ordered him off of USPS property. Cook then verbally suspended West for approximately two weeks without following USPS policies and procedures for immediate suspensions (i.e. "Emergency Placement").  Like Cook, Currie engaged in these same activities in Bedford Park, Illinois with two other African-American VMF employees.

21.    On July 17, 2001, Cook issued a 7-Day suspension to West for failing to maintain a regular work schedule, during the days Cook suspended West from work.

22.    On August 24, 2001, Cook again issued West a 7-Day suspension for failing to maintain a regular work schedule, despite West's solid attendance and leave records.  Cook supervised Caucasian VMF employees with poor attendance

records, i.e. David Lowe, John Miller and David Wood, but did not discipline them, as he did West.

23.   On October 27 and 28, 2001, Cook denied West overtime opportunities while granting these opportunities to Caucasian junior employees like Thomas Buchanan and Thomas Sponaugle, and to Robert Smith who was not on the overtime desired list.

24.   Cook denied West's request for leave on the Veteran's Day Holiday 2001, while granting another craft employee who worked at the same facility leave for that period.

25.   In November 2001 and at other times, West was required to take 24 hours of annual leave to be excused from working, while other employees were permitted to take only eight hours of leave to be excused.

26.   On January 28, 2002, Acting Supervisor Frank Green issued a 7-Day suspension to West for failure to maintain a regular work schedule and charging him with AWOL for the Martin Luther King Holiday; yet, West had been granted a leave of absence for that holiday period on December 12, 2001.  Caucasian employee David Lowe failed to report the same day, but was not disciplined.

27.   On February 11, 2002, Acting Supervisor Green denied West's request for a revised schedule, due to his late arrival.  Revised schedules are routinely given to other VMF employees.

28.   On February 28, 2002 and twice more in May 2002, Green denied West's vacation leave requests for the July 4th holiday.

29.    On July 17, 2002, Green issued a 14-Day suspension to West for failure to maintain a regular work schedule, although West sufficiently documented his absences from work and had ample leave at his disposal.

30.    On August 22, 2002, Green placed West on Emergency Placement (immediate suspension) for failing to perform work, which West reasonably believed posed a severe safety hazard—a hazard West had reported to Postal management just 1-2 weeks prior.

## ARGUMENT

I.    THE DOCTRINE OF *RES JUDICATA* DOES NOT BAR MR. WEST'S ALLEGATIONS AND CLAIMS BASED THEREON, BECAUSE THE COURT HAD NOT ADJUDICATED THESE FACTS OR CLAIMS IN A PRIOR ACTION.

To determine whether the doctrine of *res judicata* arises, the court must decide:1) whether the parties are identical or in privity with each other in both suits; 2) whether the present claim is the same as the claim that was raised or could have been raised in the first proceeding; 3) whether a judgment was issued in the first action by a court of competent jurisdiction; and 4) whether the earlier decision was a final judgment on the merits.[4] Here, the defendants drive to block Mr. West's action stalls at the second element.

---

[4] *Hardison v. Alexande*r, 655 F.2d 1281, 1288 (D.C. Cir. 1981); *Polsby v. Thompson*, 201 F. Supp.2d 45, 48 (D.D.C. 2002); *Paley v. Estate of Ogus*, 20 F. Supp.2d 3, 87 (D.D.C. 1998)(citing *U.S. Indus., Inc. v. Black Contr. Co.*, 765 F.2d 195, 205 n. 21 (D.C. Cir. 1985)).

**A. Mr. West Has Not Previously Litigated The Facts Or Claims At Issue In The Instant Case.**

To advance its *res judicata* argument, the Defendant Postal Service contends that the court, in a prior action filed by Mr. West against the Postmaster General, made factual and legal determinations concerning the allegations and claims in the case at bar. Defendant is mistaken.

***1. Mr. West Raised Only Two Events In His April 2001 Civil Action.***

As the Defendant correctly states in its Motion, on April 6, 2001, Mr. West filed a civil action in the U.S. District Court for the District of Columbia, Civil Action No. 01-0746, alleging violations of Title VII of the Civil Rights Act of 1964.[5]  Defendant's Motion to Dismiss (hereinafter referred to as "Mot. To Dismiss") at 1.  In the prior action, Mr. West's complaint raised only two employment actions, which he believed were motivated by unlawful reasons.  Specifically, in his prior filing, Mr. West complained of the following events, which took place in September, 2001: 1) receiving notice from Timothy Currie, then newly-appointed Manager Vehicle Maintenance, that Mr. West would be banned from upward mobility positions; and 2) his receipt of a Letter of Warning for failing to attend out-of-town training.[6]  Based on these two events, Mr. West claimed that the U.S. Postal Service discriminated against him on the basis of his race and retaliated against him based on his prior protected, EEO activity.  In the complaint, Mr. West raised no other factual allegations and advanced no other claims.[7]

---

[5] Ex. 1, Complaint Case No. 01-0746.
[6] Ibid.
[7] Ibid.

**2. The Doctrine Of <u>Res Judicata</u> Does Not Preclude Events, Which Transpired After The Filing Of The Prior Case.**

Mr. West did not plead most of the allegations raised in the instance action, in the prior action, because the events had not occurred by the time he filed the case and, therefore, could not have been brought.  Mr. West filed his complaint in the prior action on April 6, 2001.  The majority of the events and occurrences in Plaintiff's First Amended Complaint at paragraphs16, 18-30 transpired after Mr. West's filing in April 2001 and therefore, as a practical matter, could not have been presented by him in the prior action.  More importantly, "*[r]es judicata* does not bar parties from bringing claims based on material facts that were not in existence when they brought the original suit."[8] Hence, Mr. West cannot be prohibited from raising these allegations here.

It is also important to note that Mr. West was not obligated to amend his complaint to include post-filing events.  In this jurisdiction, *res judicata* does not bar causes of action, which could have been, but were not, amended to an existing action.  In other words, plaintiffs are not required to amend their pleadings to set forth additional acts, which occurred after the filing of their actions.  As pronounced by this Court earlier this year in *Maria Velikonja v. John Ashcroft, Atty. General,* Civil Action No. 04-1001, "the D.C. Circuit has made clear that '*[r]es judicata* does not bar parties from bringing claims based on material facts that were not in existence when they brought the original suit."[9] The Court further stated that "[t]he law in this circuit does not require constant amendments each time plaintiff learns of a new action that can be claimed to be

---

[8] *Apotex , Inc. v. Food and Drug Admin.*, 2004 WL 29372457 at *6 (D.C. Cir. Dec. 21, 2004)
[9] *Velikonja* at 6, (D.D.C. January 6, 2005) (citing *Apotex ,* 2004 WL 29372457 at *7 (D.C. Cir. Dec. 21, 2004)).
The *Velikonja* case is attached here as Ex. 2 for the Court's convenience.

retaliatory or discriminate."[10]  Accordingly, the Court in *Velikonja* found that *res judicata* only barred events that occurred <u>before</u> the date that plaintiff filed her complaint.   Thus, Mr. West is not precluded from raising factual allegations, and claims based thereon, that occurred after the filing of his first action.  Therefore, the Defendant's request to dismiss allegations at paragraphs 16, 18-30 must be denied.

### 3.   *Mr. West Was Not Permitted To Include One Of The Events That Transpired Before The First Action's Filing.*[11]

The facts described at paragraph 17 of the First Amended Complaint took place before Mr. West filed his first case; however, Mr. West was not permitted to amend his complaint to include these allegations.  Paragraph 17 concern Timothy Currie's creation of a 204B Supervisory Training Program and Mr. West's denial of 204B acting supervisor training and temporary promotions.[12]  Although the denials of training and acting-supervisor promotions are continuing in nature, even to the present, the denial of the opportunities began prior to Mr. West's institution of his prior civil action.  Consequently, on or around June 17, 2002, Mr. West moved to amend his initial complaint to include various allegations, one of which concerned the 204B training program and his denial of 204B supervisor training and acting-supervisor opportunities.[13]  During a status call held June 18, 2002, the Court denied Mr. West's motion to amend after it concluded, with regard to events occurring after the case was filed, that Mr. West

---

[10] Id at 7.
[11] Plaintiff addresses paragraphs 14 and 15 of his First Amended Complaint below.
[12] *Supra* at 4-5.
[13] Ex. 3 Motion to Amend, Civil Action No. 01-0746.

had not exhausted his administrative remedies. [14]  Thus, these events never became part

of the prior case and Mr. West "never had a fair and full opportunity to litigate" this

claim.[15]  Without a fair and full opportunity to litigate a matter, *res judicata* cannot act as

a bar.[16]

## B.  The Court Has Not Previously Adjudicated The Facts Or Claims At Issue In The Instant Case.

The Court's final judgment in the first *West v. Potter* was clearly confined to the

two acts raised by Mr. West in his complaint.  Upon Defendant's motion, the Court

dismissed Mr. West's prior action under Federal Rule of Civil Procedure 56(c) for failing

to state actionable claims based on "materially adverse employment action[s]."[17]  The

Court stated that

> [t]he actual content of the lawsuit, however, involves two discrete incidents that occurred within a few days of each other in early September 2000.  First, on September 7, 2000, West was summoned to a meeting with Currie and told that he would no longer serve as acting lead mechanic.  And second, on September 22, 2002, he was issued a letter of warning because of his refusal to attend a training assignment that had previously been arranged for him.[18]

While, in its Opinion, the Court mentioned  that Mr.  West complained of other "slights,

insults, and other unfair incidents" and protested that "white men less qualified than he

(and perhaps completely unqualified) have been promoted over him . . ."; the Court

---

[14] Mr. West appealed this issue to the U.S. Court of Appeals for the District of Columbia Circuit, because his claims regarding the denial of 204B opportunities and sick leave had been exhausted administratively by the time he filed the Motion to Amend.

[15] *Wise v. Glickman*, 257 F.Supp.2d 123, 131 (D.D.C. 2003).

[16] *Id.*

[17] Ex. 4, Memorandum Opinion, at 4.

[18] Ibid at 2.

expressly determined, however, that these facts and claims were "not before this Court in this suit."[19]

Contrary to the Postal Service's assertion in its Motion, the Court did not render any determinations concerning the circumstances and events raised by Mr. West in his brief in Opposition to the Defendant's Motion for Summary Judgment either, since they were not plead. Not only did the Court state so explicitly in its Memorandum Opinion, but the Court is not permitted to do so. Rule 56(c) commands that summary judgment

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact in that the moving party is entitled to a judgment as a matter of law."

Nowhere in Rule 56 does it indicate that a court may take into account, for summary judgment purposes, factual allegations submitted for the first time in motions or responses thereto. Further, WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE states that a motion for summary judgment cannot " be defeated by factual assertions in a brief by the party opposing it."[20] Thus, the factual representations made by Mr. West in his brief in Opposition to the Defendant's Motion for Summary Judgment could not have been utilized by the Court to deny the Postal Service's Motion for Summary Judgment.

Ironically, in the prior action, the Postal Service repeatedly advocated for the exclusion of the very facts and claims it now contends were determined and adjudged by the Court. In its opposition to Mr. West's Motion to Amend, for instance, counsel for the

---

[19] Id at 5.
[20] WRIGHT & MILLER FEDERAL PRACTICE & PROCEDURE Civil 3d § 2723 at 389-390.

Defendant argued before the Court, "[y]our honor, we would like to remind the Court that this case focuses solely on the events that happened, that occurred allegedly in September of 2000."[21]  And again, in its summary judgment filings, the Defendant insisted that "Plaintiff's Opposition [which contained some of the same facts alleged at paragraphs 13-30 in the First Amended Complaint] is without merit as it addresses claims not addressed in his Complaint filed on April 6, 2001."[22]  Relying on the Court's previous denial of Mr. West's Motion to Amend, claiming that some of the "issues were raised in EEO Complaints" and "[c]ertain [denied] grievances," and contending that other claims had not been exhausted administratively, the Postal Service implored the Court to "strike[]" "all proffered evidence with respect to allegations made after the April 2001 Complaint . . ."[23]  The Postal Service's efforts to bar, under the doctrine of *res judicata*, the very same facts and claims it successfully persuaded the Court to previously exclude are conflicting and disingenuous.

## C.  Mr. West Could Not Have Previously Litigated Certain Claims Brought Here During The Prior Action Because The Claims Had Not Arisen.

As in the prior action, Mr. West avers in the instant case the two acts that occurred in September 2000.[24]   Unlike the first case, Mr. West now brings the claim of hostile work environment covering these events and several more acts in a series that comprise a pattern of harassment.

---

[21] Ex. 5, Transcript of June 18, 2002 Status Call at 6, lines. 13-16.
[22] Because the Defendant conspicuously omits from its moving papers the Postal Service's summary judgment filings, Plaintiff West submits the Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment here at Ex.6 .
[23] Ibid at 7.
[24] See ¶¶14,15 of the First Amended Complaint.

To be sure, Mr. West did not allege harassment or a hostile work environment claim in the preceding action.[25] His prior complaint was devoid of any reference to hostile work environment or even "harassment."

Indeed, Mr. West could not have brought a hostile work environment cause of action because, as of the time he filed the first action, this claim was not available. When Mr. West launched the first case, he had not suffered severe or pervasive harassment – only the two events in September, 2000. Mr. West, therefore, could not have brought a harassment claim unless or until, a pattern of unlawful harassment had emerged warranting the institution of such a cause of action. This did not occur until after he instituted the prior lawsuit. Put another way, the claim of hostile work environment did not arise until various abusive events occurred in a series that amounted to severe or pervasive. Given that, Mr. West could not have advanced the theory of hostile work environment in his April 2001 action. To do so would have been premature.

That being so, *res judicata* principles do not impede Mr. West's efforts to bring hostile work environment claims in the instance case. These principles only preclude claims that have or *could have been* brought in a prior action.[26] As this Court held in *Velikonja*, "res judicata 'does not prevent parties from later bringing claims that would have been utterly impracticable to join in an earlier suit."[27] Similarly, claims are not barred that "could not have been anticipated when the first suit was filed."[28] Like the plaintiff in *Velikonja*, Mr. West must be permitted to bring claims of harassment because

---

[25] See Ex. 1, Complaint in Civil Action No. 01-0746.
[26] *Paley*, 20 F.Supp.2d at 87
[27] Ex.2, *Velikonja* at 6 (quoting *Apotex*, 2004 WL 2937247, at *8 (internal citations omitted)).
[28] *Id.* at 6 (quoting *U.S. Indus.*, 765 F.2d at 205 n.21.)

he could not have possibly foreseen the series of events that followed his April 2001 filing. And for practical purposes, Mr. West could not have sustained such an action with only two events comprising the alleged harassment.[29] Hence, the doctrine of *res judicata* has no application to the instant action or to any of Mr. West's allegations or claims. Mr. West, therefore, respectfully requests that the Court reject the Defendant's claim-preclusion arguments.

## II. THE DOCTRINE OF COLLATERAL ESTOPPEL DOES NOT BLOCK MR. WEST FROM PRESENTING FACTUAL ALLEGATIONS OR CLAIMS OF UNLAWFUL DISCRIMINATION AND RETALIATION IN THIS LAWSUIT.

For the doctrine of collateral estoppel, or issue preclusion, to apply, a court must have decided issues of fact or law necessary to its judgment. When applicable, collateral estoppel precludes relitigation of the issue in a suit on a different cause of action involving a party to the first case.[30]

### A. There Has Been O Prior Judgment Deciding The Facts And Claims Challenged By The Postal Service's Motion To Dismiss.

Issue preclusion in no way hinders Mr. West's instant lawsuit because, here, he does not seek an additional judicial determination of the two events in September 2000, but rather presents fresh claims based on facts not previously considered or adjudicated. In the first action, consistent with Rule 56(c), the Court did not make any determinations regarding issues of fact. Rather the Court only determined, as a matter of law, that

---

[29] A plaintiff proves the existence of a hostile work environment by showing that (1) s/he is a member of a protected class, (2) s/he has been subjected to unwelcome harassment, (3) the harassment was based on membership in the protected class, and (4) that the harassment is severe or pervasive enough to affect a term, condition or privilege of her employment. *Burlington Industries v. Ellerth*, 524 U.S. 724, 753-54 (1998); *see also, Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986) (harassment must be severe <u>or</u> pervasive). The fact that the pattern of harassment alleged in the case at bar started with the September 2000 events, which had been ruled not to constitute discrete "adverse employment action," does not disqualify the entire hostile work environment claim.

[30] *Allen v. MCurry*, 449 U.S. 90, 94 (1980); *Novak v. World Bank*, 703 F.3d 1305, 1309 (D.C. Cir. 1983).

neither the notice of intent to deprive Mr. West of upward mobility, nor the letter of warning constituted adverse employment/ personnel actions.[31]

More importantly, the Court did not resolve any issues of fact or make any legal determinations regarding the unplead facts described by Mr. West in his opposition brief; thus, these facts were not "actually litigated."[32]  As discussed above, factual assertions presented in a brief in opposition to a motion for summary judgment can not implicitly amend a complaint or work to defeat the motion itself.  *Supra* at 12.  And as also discussed above, the Court's opinion leaves no doubt that the only facts adjudged in the prior action were the two events in September, 2000.  Hence the Court did not decide the issues of fact presented by Mr. West at paragraphs 13, 16, 18-30 in Mr. West's First Amended Complaint and he is not collaterally estopped from bringing causes of action based thereon.

To the extent that the Court did, in fact consider these events in the prior suit, they were not necessary to the Court's judgment. Assuming *arguendo*, that the court took into account the facts and circumstances raised by Mr. West in his Opposition brief, they were not germane to the Court's judgment.  If these factual assertions were "necessary to its judgment", surely the Court would have indicated this in its Memorandum Opinion. Instead, the Court wrote that the other "slights, insults, and other unfair incidents" and non-promotions were "not before this Court in this suit."[33]  The Court's judgment,

---

[31] Ex. 4, Memorandum Opinion.

[32] RESTATEMENT OF JUDGMENTS 2d § 27 (1982) (issue precluded "[w]hen an issue of fact or law is actually litigated and determined by a valid in final judgment, and the determination is essential to the judgment, the determination is conclusive and a subsequent action between the parties, whether on the same or different claim.")

[33] Ex. 4, Memorandum Opinion at 5.

therefore, did not a rest upon the allegations offered by Mr. West in his brief; thus, these facts cannot have preclusive effect on Mr. West in this case.

## B.  The First Amended Complaint's Inclusion Of The September 2000 Events Is Not An Attempt To Relitigate Issues Resolved In The First Lawsuit.

Mr. West does not include the September 2000 occurrences in his First Amended Complaint to relitigate matters decided in the prior action, but rather to provide background information regarding the genesis of his workplace harassment and to provide evidence of motive and intent. Mr. West is not attempting to disturb or rehash the Court's decision in the prior action.  He does not dispute, here or on appeal, that the two events in September, 2000 fail, as a matter of law in this jurisdiction, to rise to the level of actionable adverse employment actions.  He does not present the factual allegations at paragraphs 14 and 15 of the First Amended Complaint for the purposes of claiming discrete-act violations.

Instead, Mr. West challenges different practices of the Postal Service that constitute, in fact and in law, adverse employment/personnel actions.  At First Amended Complaint paragraphs 42 and 71, Mr. West plainly avers those adverse actions for which he seeks redress:

> Mr. West suffered the following adverse employment actions: continual denial of temporary detail to 204B acting supervisor; continual denial of supervisory training with higher-level pay, since his May 1999 request; denial of temporary promotions to higher-level, higher-paying lead mechanic positions; denial of permanent promotions to Supervisor on at least five separate occasions; denial of promotion to Lead Automotive Technician, PS-08; denial of overtime opportunities and pay in October 2001 and April – July 2003; denial of revised schedules and forced use of

annual leave on February 11, 2002 and January 25, 2005; and
six or more unjust and excessive disciplinary actions.[34]

Mr. West does not include the September 2000 Letter of Warning or threat of denial of

upward mobility among these adverse employment actions he is challenging in this

lawsuit.  Nor does he assert any direct legal claims arising from these facts.

Mr. West references the September 2000 actions in the factual allegations portion

of his First Amended Complaint because they comprise a segment of his harassment

claim.  Also, these facts provide background information and evidence of Postal Service

managerial agents' motive, knowledge, and intent.  Because plaintiffs who advance

discrimination claims have an arduous burden of proof and because motive and intent are

central to any employment discrimination action, courts have permitted procedurally-

barred facts to be introduced in these types of cases.[35]  If the Court determines that any of

his allegations are precluded, Mr. West must be permitted to offer them as motive

evidence.

III. FAIRNESS AND PRACTICAL CONSIDERATIONS PROVIDE ADDITIONAL
BASES TO DENY THE DEFENDANT'S MOTION TO DISMISS.

If the Court were to forbid Mr. West from advancing significant portions of his

case under preclusive doctrines, the result would be impractical and unfair.  As a practical

matter, the fragmentation caused by the Federal EEO complaint processes contributed to

Mr. West's multiple adjudications in various venues, over related events.  Under Federal

---

[34] First Amended Comp. ¶ 42.  Paragraph 71 of the First Amended Complaint contains an identical list of adverse personnel actions in connection with a retaliation claim.

[35] *See e.g., Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 102 (2002) (Title VII does not "bar an employee from using the prior acts as background evidence to support a timely claim").

Sector EEO Claims Processing regulations, a federal employee must initiate contact with an agency EEO counselor within 45 days of event giving rise to the claim.[36]  After pre-complaint counseling, a Notice of Final Interview is issued, after which the federal employee has 15 days of receipt of the Notice to file a formal complaint of discrimination.[37]  The employee must cooperate with the agency during its investigation providing all requested affidavits and documents within investigator-specified time-frames.[38]  Once the investigator transmits the Report of Investigation, an employee who wishes to have his or her case heard before an administrative judge at the U.S. Equal Employment Opportunity Commission must make a request for a hearing within 30 days.[39]  Or the employee may request a Final Agency Decision (FAD).  If an FAD is issued, the government employee has 90 days to file a civil action in U.S. District Court.  Or, at any time after 180 days of filing the formal complaint of discrimination, the public employee may file a civil action.[40]

    In addition to daunting nature of these numerous, procedural hurdles, any missed filing deadline or election can result in loss of the claim by the employee forever.  Thus, federal employees, like Mr. West, must initiate and maneuver these processes after each discriminatory act occurs.  This often times leads to some claims being brought prematurely and other claims being brought untimely.  And worse, as attempted here, prior actions that were required to be brought as soon as they arise have preclusive effect

---

[36] 29 CFR § 1614.105(a)(1).
[37] 29 CFR § 1614.106.
[38] 29 CFR § 1614.107.
[39] 29 CFR § 1614.108(f).
[40] 29  CFR § 1614.408.

on other actions covering related events, which occurred later in time.  Mr. West's diligent compliance with procedural regulations, which frequently cause claims and issues to split, cannot work to defeat his important and viable claims of unlawful discrimination.

Lastly, the convergence of the denial of complaint amendment to bring forth additional facts, on the one hand, and the preclusion of these facts under procedural doctrines, on the other hand, would undeniably extinguish any opportunity for a federal court to examine important violations of Mr. West's federally-protected rights. The amendment denial, which was based exhaustion requirements foreclosed Mr. West's presentation of his evidence and arguments to the court or jury for determination.  And if the Defendant's Motion to Dismiss were granted, Mr. West would again be prevented from having his claims heard, even after they have been administratively exhausted.  This would completely deprive Mr. West of judicial redress for legitimate grievances and would be procedurally unfair.

## CONCLUSION

The Defendant's Motion to Dismiss is factually and legally unsound in three critical respects:

1. The doctrine of *res judicata* does not apply to the current action because the Court did not adjudicate the facts or claims raised here, in the prior action.

2. The vast majority of facts and claims averred in the instant case could not have been brought in the former action because the underlying events had not occurred until after the lawsuit's filing.

3. The doctrine of collateral estoppel does not preclude Mr. West from raising the allegations in question in this suit, since he is not re-litigating factual or legal determinations rendered by the Court in the prior suit.

Because of these fatal weaknesses in the Motion to Dismiss and the impractical and unfair result it seeks, Mr. West respectfully requests that the Court deny Defendant's Motion in its entirety.

Respectfully submitted,

October 14, 2005                    By:_____/s/_____

                                   Teresa W. Murray
                                   THE LAW OFFICES OF T.W. MURRAY, LLC
                                   1111 Bonifant Street
                                   Silver Spring, Maryland 20910
                                   Phone: 301-585-1870
                                   Fax: 301-585-1871