IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KEVIN D. WEST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 01-0746 |
| v. ) | |
| ) | Judge James Robertson |
| JOHN E. POTTER, ) | |
| POSTMASTER GENERAL, ) | |
| UNITED STATES POSTAL SERVICE ) | |
| Headquarters ) | |
| 475 L'Enfant Plaza, SW ) | |
| Washington, DC 20260 ) | |
| ) | |
| Defendant. ) | |
| ) | |

## DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

On November 25, 2002, defendant filed a motion for summary judgment in this action. On December 23, 2002, plaintiff served on defendant his Opposition to Defendant's Motion for Summary Judgment, the accompanying exhibits, and his Statement of Facts. Defendant now files this reply memorandum to address plaintiff's opposition and in further support of his motion ("Defendant's Motion").

### II. ARGUMENT

#### A. Summary Judgment should be granted in Defendant's Favor.

In Celotex, the Supreme Court explained that "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). When the moving party meets this initial obligation, the nonmoving party may not rest

on mere allegations, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

The Supreme Court has also stated that some weighing of the evidence is appropriate at the summary judgment stage. Specifically, the Court noted that the "purpose of summary judgment is to 'pierce the pleadings, and to assess the proof in order to see whether there is a need for trial.'" Id. (quoting Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e)). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249-50 (citations omitted). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Plaintiff's Statement of Facts, with its accompanying affidavits, unsuccessfully attempts to deflect this Court's attention to the undisputed facts by proffering irrelevant information and misconstruing the undisputed facts in a manner favorable to plaintiff. Plaintiff's Opposition fails to demonstrate that there is any basis on which a reasonable jury could return a verdict in Plaintiff's favor.

Plaintiff appears to argue that Manager Currie's 9/7/00 meeting with plaintiff was for other reasons than to discuss plaintiff's West working relationships with his co-workers. It is assumed that this is plaintiff's attempt to show that defendant's actions were pretextual.

Plaintiff's mere allegations should not distract this Court from determining whether Plaintiff has met his burden for maintaining a Title VII action, or alternatively, whether Plaintiff has demonstrated that summary judgment is not warranted. Defendant has shown that summary

judgment is warranted in this matter because Plaintiff's allegations are not actionable under Title VII. Defendant's actions were not adverse personnel actions, the allegations do not raise any inference of discrimination, the allegations do not prove retaliation, and Plaintiff can not show that Defendant's legitimate non-discriminatory business reasons were pretextual.

### B. Plaintiff's Opposition Fails to Refute Defendant's Argument that the 9/7/00 Currie Meeting and the 9/22/00 Letter of Warning Claims Do Not Constitute Compensable Adverse Agency Actions Under Title VII.

Defendant's opposition simply fails to address whether he was subject to adverse agency action. Plaintiff's Opposition fails to specifically refute defendant's argument as to each of these claims; therefore, defendant's motion should be deemed conceded. See Opp. Argument at 22-35.

Plaintiff does not dispute that the D.C. Circuit's decisions in Brown v. Body, 199 F.3d 446 (D.C. Cir. 1999), and its progeny are controlling in this matter. Opp. at 16-20. Brown establishes that to state a discrimination or retaliation claim under Title VII, a plaintiff must demonstrate that he or she has suffered "materially adverse consequences affecting the terms, conditions, or privileges of his employment or his future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively "tangible harm." Brown, 199 F.3d at 457. To meet the "adverse personnel action" requirement, the plaintiff must make a "clear showing" of a "material adverse employment action" that involves "tangible economic effect" on plaintiff's employment, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Brown, 199 F.3d 454-57 (other citations omitted).

Plaintiff has not alleged an adverse employment action as that term has been clarified by the D.C. Circuit in Brown. Instead, plaintiff's claims are but the type of mundane, everyday

3

frustrations that cannot be the subject of federal court litigation. As the Court stated in Brown, "'[p]erhaps in recognition of the judicial micro-management of business practices that would result if [courts] ruled otherwise, other circuits have held that changes in assignments or work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes.'" Brown, 199 F.3d at 452 (quoting Mungin, 116 F.3d 1556-57). The Seventh Circuit has emphasized, "not everything that makes an employee unhappy is an actionable adverse action." Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996). Or, as this Court has put it, "the federal courts cannot be wheeled into action for every workplace slight, even one that was possibly based on protected conduct." Rowland v. Riley, 5 F.Supp.2d 1, 3 (D.D.C. 1998). Consequently, and because plaintiff's claims regarding his working conditions do not affect the terms of his employment in any tangible, economic way, they are not actionable and should be summarily dismissed.

Inquiries into adverse employment decisions have consistently focused on whether there has been discrimination in such ultimate decisions as hiring, granting leave, discharging, promoting, and compensation. Boone v. Goldin, 178 F.3d 253, 255-56 (4th Cir. 1999)(citing Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981). Title VII was not intended to provide redress for the trivial discomforts endemic to employment. Boone, 178 F.3d at 256.

The courts have readily recognized that an "adverse employment decision" does not include disciplinary action that does not adversely effect an employee's compensation or other terms or conditions. Plaintiff claims that he was discriminated against, by being made to suffer various "slights" such as: a) having his manager state that Plaintiff "could" sign a resignation form if he was unhappy with his job; b) not allowing a union representative to be present for the discussion; and c) being issued a letter of warning on September 22, 2000. This is simply not an

4

adverse action. See Rivers v. Baltimore Dep't of Recreation and Parks, 51 Fair Empl. Prac. Cas. (BNA) 1886, 53 Empl. Prac. Dec. (CCH) P40,016 (D. Md. 1990), (a letter of warning in the employee's personnel file did not amount to an adverse employment action); Bonk v. Pena, 1998 U.S. Dist. LEXIS 7769 (E.D.N.C. March 26, 1998), (letter of reprimand, which was placed in the plaintiff's file for two years, did not amount to an adverse employment action).

This Court's decisions in Rivers and Bonk make clear that the issuance of a letter of warning ("LOW"), itself, does not constitute an adverse employment decision; especially, where as here, the parties agreed to maintain the LOW in the Plaintiff's file for only 6 months. This can hardly be construed to constitute a "final" or "permanent" employment record. Similarly, telling an employee who has not been performing their job in a satisfactory manner, that if they were unhappy with their job, they "could" sign a resignation form, also does not constitute an "ultimate decision", within the meaning of Boone, at 256.

Denial of union representation during a "discussion" not only does not constitute an adverse employment decision, (to the extent that Plaintiff seeks to establish a violation of his so-called "Weingarten Rights,")[1] his claim also lacks merit. These rights apply to "investigative interviews", not to mere "discussions" between an employee and a manager. See NLRB v. Weingarten, Inc., 420 U.S. 251 (1975). Here, Dist. Manager Currie had already completed his investigation the day before the September 7, 2000 discussion with the Plaintiff and had already decided to reassign him. There was no investigative component to the discussion which could have triggered Plaintiff's Weingarten Rights. Id at 254.

---

[1] See Note infra at ¶ E.

5

### C. Defendant Cannot Be Found to Have Retaliated Against Plaintiff, since Plaintiff was Promoted Before and After the Alleged Discriminatory Action Taken.

Courts have held that a strong presumption arises against any finding of retaliation, when a supervisor has recently "promoted" the employee, prior to the alleged adverse employment action being taken. Tyndall v. National Education Centers, Inc., 31 F.3d 209, 214, 215 (4th Cir. 1994), citing LeBlanc v. Great American Insurance Co., 6 F.3d 836, 843 (10th Cir. 1993), cert denied, 511 U.S. 1018 (1994); See also Lowe v. J.B. Hunt Stransport, Inc., 963 F.2d 173, 174-175 (8th Cir. 1992).

Plaintiff claims that Dist. Manager Currie retaliated against him on September 7, 2000, but according to the Plaintiff, the last EEO claim that he filed prior to September 7, 2000, was on April 19, 1999, Complaint at ¶ 9. On several occasions between April 19, 1999 and September 7, 2000, Plaintiff was allowed to serve as Acting Lead Mechanic and Vehicle Analyst for his "team", purely at the discretion of his supervisor.² Nothing "required" Manager Cook to designate Plaintiff West for these positions. Thus, it is clear that Plaintiff had been "promoted" and placed on an upward mobility track after his April 1999 EEO filing; militating against any finding that he was reassigned as a result of his having engaged in a protected activity. See Defendant's Exhibits 1-2. Moreover, from January 5, 2001 to March 16, 2001, Plaintiff served as PS-7 Acting Vehicle Analyst. Defendant's Exhibit 3.

The operation of these two legal presumptions, coupled with the undisputed facts of record, demonstrate that Plaintiff's retaliation claim also cannot withstand scrutiny.

---

² Since Article 39 §2A(11) of the APWU National Agreement (Defendant's Exhibit 4), does not designate the Acting Lead Mechanic and Vehicle Analyst positions as being subject to the Union seniority system, the position is filled under the "Best Qualified" standard. In the case of temporary reassignments, as in Plaintiff West's instance, details are filled in the discretion of the supervisor. Section 312 of EL Handbook.

### D. Plaintiff's Argument that Defendant's Denial of 204B Training and Denial of Leave are Retaliatory Actions Adverse Actions Are Irrelevant.

Plaintiff's Opposition is without merit as it addresses claims not addressed in his Complaint filed on April 6, 2001.[3] On June 18, 2002, Plaintiff moved to amend his Complaint to allege additional discrimination and retaliation violations. See Motion to Amend. On June 18, 2002, this Court denied Plaintiff's motion to amend. Notably, Plaintiff devotes much of his Opposition arguing about issues that this Court specifically denied. Alternatively, Plaintiff argues that the denial of training and leave were further evidence of Defendant's alleged discrimination and retaliation. Plaintiff, however, fails to instruct the Court that many of these same issues were raised in EEO Complaints. Certain grievances were found to be non-actionable and were denied in the January 10, 2002 Final Agency Decision as untimely. Other claims are still in the process of being investigated by the EEO Office.[4] Thus, Plaintiff has failed to exhaust his administrative remedies. Therefore, all proffered evidence with respect to allegations made after the April 2001 Complaint, should be stricken.

---

[3] On June 18, 2002, Plaintiff moved to amend his complaint to include alleged additional acts of retaliation and discrimination. By Order dated June 18, 2002, this Court denied Plaintiff's motion to amend his complaint.

[4] On October 17, 2001, more than 6 months after filing the instant action, Plaintiff filed an EEO administrative complaint, No. 4K-200-0145-01, alleging, inter alia, the on March 1, 2001, Plaintiff was denied 204-B training by Manager Tim Currie, and on April 5, 2001, Plaintiff was denied sick leave. On January 9, 2002, a Final Agency Decision dismissed the administrative complaint as untimely. See Defendant's Exhibit 5.

Additionally, on August 29, 2001, in EEO administrative complaint No. 4K200-0220-01, Plaintiff filed another grievance alleging that he received a Letter of Warning, that he was assaulted by Supervisor Cook, the he was denied his timecard, denied leave slips, and received a seven-day suspension. No Final Agency Decision has been issued for complaint 4K200-0220-01. See Defendant's Exhibit 6.

Plaintiff's Opposition attempts to show improper intent, by Manager Currie, by attaching declarations from various VMF employees.[2] The declarations should be disregarded because the declarations reference EEO grievances that are too remote, in time and circumstances, from the 9/7/00 Currie Meeting. For instance, the declarations attached as Plaintiff's Exhibits 79-81, reference events that occurred 2 years prior to Currie's arrival in the District of Columbia. The other declarations reference EEO complaints filed subsequent to Currie's arrival in the District, but do not relate to the allegations in Plaintiff's complaint. Indeed, Plaintiff's Exhibits 16-27 reference the same events denied by this Court's June 18, 2002 Order. The post-complaint EEO grievances of alleged discriminatory actions are simply not probative of Manager Currie's intent or motives for the actions taken at the 9/7/00 discussion.

Even if Plaintiff's aim is to establish pretext, Plaintiff's evidence is not sufficient to accomplish his goal. Mere conclusory statements of alleged discriminatory acts, without more, has no probative value. This court is not required to accept plaintiff's conclusions. Kowal v. MCA Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994); Browning v. Clinton 292 F.3d 235, 242 (D.C. Cir. 2002); Taylor v. Federal Deposit Insurance Corp., 132 F.3d 753, 762 (D.C. Cir. 1997); National Treasury Employees Union v. United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996).

The unrelated EEO complaints are legally irrelevant. See McWhorter v. City of Birmingham, 906 F.2d 674 (11th Cir. 1990) (admission of testimony of other grievances could have resulted in a series of mini-trials centering on each employee's employment history.) In order to grant summary

---

[2] Declarations of: Roland D. Johnson, Jr. (Plaintiff's Ex. 16); Sandra M. Childs (Ex. 19); Leroy T. Cowan, Jr. (Ex. 20); Warren V. Plater (Ex. 21); Chris E. Simmons (Ex. 22); James G. Thompson, Jr. (Ex. 23); Henry M. Barnett (Ex. 24); Robert M. Parker (Ex. 25); Virgil Chase (Ex. 26); James W. Perry (Ex. 27); Alonzo J. Taylor (Ex. 79); William R. Miles (Ex. 80); and Gwendolyn A. Sims-Hearn (Ex. 81).

judgment, it is not necessary for this Court to take on the fruitless task of delving into the employment history of each declarant.

### E. Plaintiff Failed to Exhaust His Administrative Remedies

As a preliminary matter, Plaintiff is barred from raising any Title VII claim in this case that was not raised in the related administrative proceeding below. 29 CFR §1614.407; Baldwin County Welcome Center v. Brown, 466 U.S. 147, 150-152 (1984); Watts-Means v. Prince George's Family Crisis Center, 7 F.3d 40, 42 (4th Cir. 1993). And Title VII is the exclusive remedy for claims sounding in employment discrimination by federal employees. See Brown v. GSA, 425 U.S. 820, 835 (1976). Plaintiff's claims of hostile work environment, violation of his so-called Weingarten rights[6], his claim that he was given a blank resignation form to sign, and that he was threatened or harassed, were not raised below. See Defendant's Exhibit 5 (Final Agency Decision).

Thus, without reaching the "merits" of these claims, Plaintiff's claims are barred for failure to exhaust administrative remedies.

### F. Plaintiff's Opposition Also Fails to Show Other Alleged Acts Were Adverse Agency Actions Under Title VII.

Even if this Court were to decide to consider all of Plaintiff's evidence, including Plaintiff's declarations and Plaintiff's post-complaint allegations of discrimination and retaliation, Plaintiff still has failed to show that he was subject to adverse employment actions.

#### 1. Plaintiff was not denied 204-B Training

Plaintiff would have this Court believe that he was denied an opportunity for training, when Plaintiff concedes that he never applied for the training. Defendant's Exhibits 7-8. Manager Currie

---

[6] Referring to plaintiff's right have a union representative present during "investigative interviews". See NLRB v. Weingarten Inc., 420 U.S. 251 (1975). However, the defendant maintains that the plaintiff's discussion with District Manager Currie, was just that, and was not an investigative interview since the decision to reassign the Plaintiff had already been made.

did not deny Plaintiff training or a promotion. Indeed, Plaintiff was encourage to apply for the 204_B Training. Defendant's Exhibit 9. Plaintiff knew the requirements for acceptance in the 204-B training program, but once again, Plaintiff insisted on that he should receive special treatment. Since Plaintiff failed to apply for the training, the denial was by his own actions and therefore said denial is not an adverse action.

### 2. Plaintiff's alleged denial of timecard, leave slips and suspensions.

Finally, Plaintiff has raised other issues that were not made a part of the instant administrative record below and are barred from consideration. See Plaintiff Failed to Exhaust His Administrative Remedies, *supra*. These issues involve the alleged denial of leave and two seven-day suspensions. Importantly, Plaintiff concedes that these actions were rescinded during a grievance procedure with the American Postal Workers Union. See Opposition at ¶77 -78, 79-80, 81-84. Plaintiff can not show any instance for loss of pay where the action was not rescinded and all benefits were restored. Even taking these allegations as true, for summary judgment purposes only, they do not constitute "adverse employment decisions", and are therefore not cognizable under Title VII. See 42 U.S.C. §2000e(16).

### III. CONCLUSION

Plaintiff can produce no credible facts to support his unsubstantiated allegations. Defendant respectfully maintains that the Postal Service is entitled to summary judgment as a matter of law and that Plaintiff's claims should be dismissed in their entirety, with prejudice.

Dated: January , 2003

Respectfully submitted,

*[signature]*
ROSCOE C. HOWARD, JR., DC BAR #246470
United States Attorney

*[signature]*
MARK E. NAGLE, DC BAR #416364
Assistant United States Attorney

*[signature]*
GAIL A. PERRY
Special Assistant United States Attorney
Judiciary Center Building, Tenth Floor
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 353-3874

Agency Counsel:
H. Alexander Manuel, Esquire
U.S. Postal Service Law Department
400 Virginia Ave., Suite 650
Washington, DC 20024-2730