UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KEVIN D. WEST,                              )
                                            )
        Plaintiff,                          )
                                            )        Civil Action No. 05-1339 (RMU)
        v.                                  )
                                            )
JOHN E. POTTER,                             )
POSTMASTER GENERAL,                         )

**REPLY**

**Introduction**

    Plaintiff contends that the doctrines of res judicata and collateral estoppel should not

apply to the claims at issue because:

    1. The "Court did not adjudicate the allegations at issue in the prior action;"

    2. Plaintiff "could not have alleged certain facts or theories. . .because the
    underlying events had not occurred until after the initiation of the first action, and

    3. Plaintiff is "not re-litigating factual or legal determinations rendered by the
    Court in the prior case."

Plaintiff's Opposition to Defendant's Motion to Dismiss ("Opposition") at p. 1.

    The gravamen of defendant's contention that res judicata bars claims presented by

defendant West is not that he "could have" litigated those claims in his prior case, but that he in

fact did litigate those claims and that a judgement on the merits was made by the District Court.

    In his prior case defendant West filed a complaint alleging racial discrimination and

retaliation, *West I* complaint at p. 1; plaintiff also claimed:

    Mr. Currie by the meeting he conducted on September 7, 200, the events and
    unjust discipline following the meeting has caused Mr. West undue stress by
    creating a hostile and stressful working environment.

*West I* complaint at p. 4.

In the complaint plaintiff set forth factual allegation concerning his meeting with Curry on September 7, 2000 and his meeting with Cooke on September 22, 2000.  *West I* Complaint.

He attempted to amend the complaint to add numerous allegations of discriminatory conduct.  The Court denied his request to amend his complaint.

The defendant filed a motion for summary judgment limited to issues concerning the two incidents described in plaintiff's complaint.  Defendant's Motion for Summary Judgment in *West I.*

Plaintiff filed a response in opposition alleging discrimination, retaliation and hostile work environment based on the two September 2000 meetings and additional facts which mirrored those contained in his proposed amended complaint.   See defendant's Motion to Dismiss at pp. 8-13.   Plaintiff's response contained extensive documents and affidavits concerning those additional allegations.  *See generally West I* Plaintiff's Response in Opposition to Defendant's Summary Judgment Motion and *id.* at p. 31¶ 148 (plaintiff submitted approximately 88 exhibits with his response).

The defendant replied 1) contending that plaintiff had not exhausted his administrative remedies as to the additional allegations *see e.g. West I* Reply at p. 9,  and 2) on the merits arguing that the allegations were not adverse employment actions.  *Id.* at pp.2-10.    .

As is discussed in detail below, the Court ruled on the merits that the additional allegations were not actionable.  That decision currently is on appeal subject to de novo review .

The question now before this Court is whether plaintiff, having forced the new allegations into issue by his response and having received a decision on the merits, can relitigate the same issues in a new complaint.

**Res Judicata applies to matters actually litigated and adjudicated**

Plaintiff contends that res judicata cannot apply to preclude events which transpired after he filed the previous complaint. However, the cases plaintiff has cited deal with the situation where the defendant contended that although plaintiff did not raise the claims in the prior case, plaintiff "could have" raised them. *See e.g. Velikonja v. Ashcroft,* C.A. No. 04-1001 (D.D.C. Jan. 6, 2005), Memorandum Opinion at p. 5 ("In contrast to issue preclusion, new claims need not have actually been adjudicated in an earlier action to be barred by res judicata. It is sufficient if the claims "could have been raised" at an earlier juncture."). In those cases the courts have ruled that if the events alleged in the new complaint had not taken place when the original complaint was filed, the plaintiff is not required to continually amend his complaint**.** Rather he may bring a new suit on the later-arising claims. *Id*. at p. 8. However, quoting *Manning v. City of Auburn*, 953 F.2d 1355, 1360 (11th Cir. 1992) the Court further explained:

> We do not believe that the res judicata preclusion of claims that "could have been brought" in earlier litigation includes claims which arise after the original pleading is filed in the earlier litigation. Instead, we believe that, for res judicata purposes, claims that 'could have been brought' are claims in existence at the time the original complaint is filed **or claims actually asserted by supplemental pleadings or otherwise in the earlier action.**

*Velikonja* at pp. 8-9 (emphasis added).

Here, the plaintiff asserted the new claims "by supplemental pleading or otherwise" in his response to defendant's motion for summary judgment. For example, in addition to his extensive statement of facts accompanied by exhibits and affidavits, the argument portion of plaintiff's response stated:

3

ARGUMENT

The following undisputable and genuine issues are detailed below to show that the USPS Management Unfairly with Discrimination and Retaliation treated similarly situated employee Mr. John Preston Miller, III (Caucasian) differently than Mr. Kevin West (African American) by denying Mr. West upward mobility opportunities, unjustly giving Mr. West discipline actions of Letter of Warnings, 7-day suspensions, 14-day suspensions, submitting him to a Hostile Stressful Work Environment.

120. The admitted actions of Mr. Timothy Currie to deny Mr. West to continue to serve as Acting Lead Mechanic at the VMF or to act in upward mobility positions capacity after his September 7, 2000 meeting in Mr. Currie's Washington, D.C. office is documented in Mr. Currie's own Declaration¶ 7 pages 3, dated November 8, 2002, Exhibit 68.

* **

123. After the September 7, 2000 meeting Mr. West was subjected to numerous and often retaliatory and discriminatory actions by the VMF Management including Mr. Currie, Mr. David Cook and other VMF management under their Authority. These actions included Letters of Warning, 7-day and 14-day Suspensions for alleged attendance violations, denied use of leave and denied requests for revised schedule changes, whereas-Mr. Miller a Caucasian, Body and Fender Repairman was treated differently with a great deal of preferential treatment, given amazing numbers of revised schedules (142 + 21 see Exhibits 64-65), in spite of his poor attendance and leave records (also documented in Official Clock Rings Exhibits 64-65, Declarations of Co-workers Exhibits 16, 19-27, Declarations of Mr. Cook Exhibit 67 and DWI's causing suspension of his license. .

*West 1* Opposition to Defendant's Summary Judgement Motion at pp 22-24.

It is clear from the record that the additional claims were raised not by defendant, but by plaintiff in plaintiff's response and supported by the submission of documents and affidavits. Some of the additional claims, those relating to others being selected for temporary acting positions instead of plaintiff, related to the claim in the original complaint that plaintiff was discriminated against because he was told he would no longer be placed in an acting supervisory position. *West I* complaint at pp2-3. Although the original complaint primarily appeared to

4

focus on two meetings, it also made general claims of retaliation and hostile work environment. The first paragraph asserted "This case is concerning retaliation and discrimination against Mr. West for prior EEO's since 1992. . . ." The complaint also alleged that plaintiff had been subjected to "a hostile and stressful working environment." *West I* complaint at p. 4.

   Defendant responded both procedurally and on the merits to plaintiff's allegations. Defendant's reply in *West I* at pp. 9-10 and generally.    In light of the general claims in the original complaint, if defendant had failed to address the additional claims in plaintiff's response, defendant would have been at peril, because the pleadings of pro se plaintiffs are liberally construed by the courts. *See, e.g. Logan v. Department of Veterans Affairs,* 357 F.Supp.2d 149, 153 (D.D.C.2004)(discussing duty of the Court to liberally construe pleading of pro se litigants); *Richardson v. U.S.,* 193 F.3d 545, 548 (D.C.Cir.1999)(discussing need to liberally construe pro se filings as amendments to complaints).

   Indeed, this plaintiff's response was tantamount to a supplemental pleading under F.R.Civ P. 15(d), setting forth transactions, occurrences and events which happened after the filing of the original complaint.  The Court has wide discretion to allow supplemental pleadings. *See, e.g. Wright v. Herman,* 230 F.R.D. 1, 4 fn3 (D.D.C.2005)( "the court has broad discretion in determining whether to allow supplemental pleadings in the interests of judicial economy and convenience."); *Judicial Watch, Inc. v. U.S. Dept. of Energy,* 191 F.Supp.2d 138, 139 (D.D.C.2002)("Permitting a supplemental pleading here will "promote the economic and speedy disposition of the controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any other party."); *Miller v. Air Line Pilots Ass'n Intern.,* 2000 WL 362042, *1 (D.D.C.) (D.D.C.2000)("as a general rule plaintiffs should

5

be liberally allowed to set up new facts which really are a part of the original case.").  Since defendant was able to reply to the claims in plaintiff's response on the merits, there was no prejudice to the defendant in the Court considering the new claims rather than striking them.

Therefore, whether the claims post dated the filing of plaintiff's original complaint or were not administratively exhausted is irrelevant.  Plaintiff actually placed the claims at issue by placing them in his response, submitting documents and affidavits in support of them and contending they were genuine issues of material fact pertinent to his suit.  The defendant replied both procedurally and on the merits.  Thus, the parties actually litigated the claims.

**The Claims at Issue Were Adjudicated by the Court.**

**Non-selection of plaintiff for acting supervisory positions/ Collateral Estoppel**

Plaintiff alleged and presented evidence in his Opposition at ¶¶55-64, concerning various acts of alleged discrimination pertaining to selection of others to temporary Acting Supervisory assignments following March 2001.  He termed these acts "denials of upward mobility opportunities."  *See e.g.* Opposition at p. 33 ¶6.

The same allegations appear in *West II* at paragraphs 16 - 17.

In the *West I*  Opinion concerning the September 7 meeting, the Court specifically addressed the issue of whether plaintiff's non-assignment to the acting lead mechanic and vehicle analyst positions was an adverse employment action.  The Court noted that plaintiff previously had been appointed to serve in the acting positions and he was told that he would no longer act in that capacity.  Mem.Op. at p.3.   The Court then found that plaintiff had failed to show a "'material adverse employment action' involving a 'tangible economic effect' on his

6

employment" in being told that he would no longer be given the "acting lead mechanic"

assignment from time to time. *Id.* at pp3-4. The Court quoted *Brown v. Brody*, 199 F.3d 446,

454-57 (D.C.Cir. 1999) stating

> The *Brown* decision follows the decisions of other circuits, holding that "changes in assignments or work- related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes." Because what West is complaining about was not a "materially adverse employment action," its history, and its motivation, are simply immaterial.

*Id*. at p. 4.

Since the *West I* Court found that the change in assignment to an acting supervisory

position was not an adverse employment action, under the collateral estoppel doctrine, that

determination has preclusive effect on the issue in plaintiff's claim in West II concerning not

being selected to the acting supervisory position.

"The doctrine of collateral estoppel prohibits relitigation of an issue of fact or law that

has been decided in an earlier litigation." *SEC v. Bilzerian*, 29 F.3d 689, 693 (D.C. Cir. 1994).

"The objective of the doctrine of issue preclusion ... is judicial finality; it fulfills `the purpose for

which civil courts had been established, the conclusive resolution of disputes within their

jurisdiction.'" *Yamaha Corp. of America v. U.S.*, 961 F.2d 245, 254 (D.C. Cir. 1992) (citing

*Kremer v. Chemical Constr. Corp*., 456 U.S. 461, 467 n.6 (1982)). Moreover, "once an issue is

raised and determined, it is the entire issue that is precluded, not just the particular arguments

raised in support of it in the first case." *Yamaha*, 961 F.2d at 254. Here *West I* ruled as a matter

of law that plaintiff not being placed in an acting supervisory position was not an adverse

material act.

**New Claims/Res Judicata**

Plaintiff attempts to parse the *West I* opinion to show that the Court did not rule on any of the new claims raised in plaintiff's response. However, the Court clearly ruled that the additional claims were not adverse employment actions:

> Plaintiff complains of many other slights, insults, and unfair incidents that were visited upon him at his place of work, but none is actionable, *Taylor v. FDIC*, 132 F.3d 753, 764 (D.C.Cir. 1997) – although many might be evidence of unlawful intent if he had brought an actionable claim.

Mem.Op. at p.5.

Plaintiff contends that the next sentences in the opinion show that the Court did not rule on the additional claims in plaintiff's response:

> Plaintiff insists that white men less qualified than he (and perhaps completely unqualified) **have been promoted** over him at the Largo Vehicle Maintenance Facility, but that claim is not before this Court in this suit. Whether it still can be properly pleaded in another case, either for its own sake or as evidence supporting a different claim of failure to promote, is not for this Court to say.

*Id.*(emphasis added). These sentences can not refer to the allegations in plaintiff's response. The Court was being quite literal when it said that a non-promotion claim "is not before this Court in this suit." There simply is no allegation in plaintiff's response that he was not selected for a promotion, a classic adverse action. In the response plaintiff only complains about non-selection to temporary acting supervisory positions – these are not adverse actions.

The Court's comment in the last sentences harkens back to the judge's conversation with plaintiff during an April 5, 2002 status call. Plaintiff summarized for the Court issues about which he wanted to depose witnesses, including false accusations, suspensions, letters of warning, union grievances, picking on plaintiff. Transcript of April 5, 2002 Status Call ("Tr 2")

at pp. 26-31.  The Court commented:

> I have to tell you, though, Mr. West, if this case were purely about the failure of the postal service to promote blacks. . .and not about these grievances and these language things and these warning letters and all this stuff you are fixated on, it would be a lot more interesting Title VII case.

Tr2 at p. 31.  Plaintiff then stated that his case was about not promoting him.  *See id.* at pp. 32-

35.  The Court then summarized:

> Your complaint, your basic complaint, as I understand it, is that because of your race you have been hampered in getting the promotions that you deserve while men and women with substantially less qualifications and with more bad stuff on their records are getting promoted.
> That is a case that needs – you need to find a lawyer to help you frame that case up and give it a decent hearing.  But you have got to stop getting fixated on these little insults.

*Id.* at pp 36-37.  It is those alleged claims of failure to **promote** which did not appear in

plaintiff's response and which were not before the Court.[1]

Therefore, the *West I* opinion did rule on the "many other slights, insults, and unfair

incidents" raised in plaintiff's response.  The Court found "none is actionable", citing *Taylor v.*

*FDIC*, 132 F.3d 753, 764 (D.C.Cir. 1997) (The plaintiff in *Taylor*, among other issues, claimed

discrimination because of not being placed in a temporary supervisory position. The *Taylor*

court stated: "we do not believe that temporary designation as acting section chief is one of the

'terms, conditions, or privileges of employment' compassed by the Act." *Taylor*, 132 F.3d at

---

[1]  Plainitff's only allegations of failure to promote were first raised in the instant case where plaintiff alleged that he applied for certain advertised supervisory positions and was not selected for them. Complaint in CA 05-1339 at ¶¶31, 32, 34.

764.)[2]

**Fairness**

    Plaintiff finally argues that the application of res judicata and collateral estoppel would be unfair because "The amendment denial. . .foreclosed Mr. West's presentation of his evidence and arguments to the court or jury for determination." Opposition at p. 20.    The amendment denial did no such thing.  Plaintiff actually presented his evidence, some 88 exhibits, and his arguments to the *West 1* court in his response to defendant's motion for summary judgment. Construed liberally, that document properly could be considered a supplemental pleading under F.R.Civ. P. 15.  Plaintiff was not forced by the defendant or the Court to litigate his additional claims in *West I.*  Indeed, the Court told plaintiff that he had not exhausted his administrative remedies, i.e. that his claims were not ripe.  The defendant and the Court responded appropriately to the pleading of the plaintiff.  There is no unfairness in precluding plaintiff from relitigating matters previously adjudicated in *West I.*

---

    [2] Plaintiff contends that he did not have a fair opportunity to litigate paragraph 17 of his amended complaint.  Opposition at p.10-11.  As detailed above, selection to acting supervisory positions was ruled on by the *West I* court as was the denial of training.  Plaintiff litigated placement of Mr. Miller into an acting supervisory position versus him.  *West I* Opposition at p. 11-12 ¶63-67; p. 24-31 ¶124-140. Plaintiff litigated not receiving supervisory training.  *West 1* Opposition at p. 9-12 ¶55-62, 64; p. 33-34 ¶7-10.

**CONCLUSION**

Plaintiff's claims in paragraphs 12 through 30 of his amended complaint (and references to them in each count of the amended complaint) must be dismissed based on the principles of res judicata and/or collateral estoppel.

Respectfully submitted,

_____

KENNETH L. WAINSTEIN D.C. Bar # 451058
United States Attorney

_____

R. CRAIG LAWRENCE, D.C.  BAR #171538
Assistant United States Attorney

_____

RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970