## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KEVIN WEST                                    :
      Plaintiff                     :
v.                                            :          Civil Action No.  5-1339 (JR)
JOHN E. POTTER                                :
      Defendant.                    :
                            :

## STATEMENT OF MATERIAL FACTS

Defendant respectfully submits the statement of material facts as to which there is no genuine dispute.

1.  The selections for Vacancies 14-03, 15-03, and 23-03 were made by Joseph King based on applicants referred to him for interview by a review committee.  The applicants were referred by memoranda dated May 20, 2003. Dickerson Dec. at Ex.2-4.   Plaintiff's name was not among those referred.  *Id.* and King aff.

2.  On about August 26, 2003,  Stephen Clark, was selected for Vacancy 03-43. Memorandum dated August 26, 2003, Ex. 41.

3.  Plaintiff's name was not among the applicants recommended for interview by the review committee for Vacancies 31-02 & 33-02.  ROI 108-02 at pp 264-266, 329-331.  Stamatios Karoutsios was selected for vacancy 31-02 and Franklin Green was selected for vacancy number 33-02. *Id.*

4.  The plaintiff did not submit an application to the in-house supervisory training program created by Mr. Curry.  West Ex. 71, 145-01 ROI Currie Aff.

5.  Plaintiff was not given overtime at the Largo II facility from April 1, 2003 through July 25, 2003.  235-03 West Aff. at p. 10.

1

6.  Body and Fender Repairman Robert Parker (black male) was given an acting supervisor assignment at the T Street location.  Parker:Admin Tr. at p. 2727-43

7.  After Mr. Parker's detail was ended another body and fender repairman, "J. M.," was detailed  into the acting supervisory position at T Street. Currie Dec. at ¶ 10.

8.  On May 16, 2001, Mr. West requested and was approved 8 hours of annual leave for May 29, 2001, the Tuesday after Memorial Day.  EEOC-80X Cook Dec. at t ¶13 and  West Ex. 1.

9.  Mr. Cook posted the holiday work schedule for Largo I, Largo II and Riverdale employees.  *Id*. at ¶14.   The notice specifically stated:

> This memo is posted to notify **all employees** that they are scheduled to work Sunday (5/27/01) and Monday (5/28/01). **The exception to this are those employees who have 24 hrs. of preapproved leave before or after the three day holiday period.**

*Id.* at ¶14, West Ex. 2. (Emphasis added.)

10.  Plaintiff did not report to work on the May 27th and 28th.  Cook Dec.at ¶ 16.

11.  Mr. Cook, the vehicle maintenance manager over Largo One, issued Plaintiff a letter of warning.  *Id*. at ¶ 17 and West Ex. 4.

12.  Plaintiff's regular work schedule was Monday through Friday.  EEOC-80X Cook Dec. at ¶ 18.

13.  On Sunday June 17, 2001, plaintiff was scheduled to work overtime on his day off commencing at 6 am.  *Id*.  He was assigned to work at the Riverdale operation under the direction of supervisor Greg Absher.  *Id*.  On that day, plaintiff called in requesting to be excused from working overtime, claiming that his daughter was sick.  *Id*.  Mr. Absher took the call but

2

forwarded the leave request to Mr. Cook.  Mr. Cook initially granted the request for dependant care pending documentation.  *Id*. and   ROI '220-01 at p. 55.

    14.  On Monday June 18th, plaintiff reported to work.  Cook Dec. ¶ 19.  On that day, Mr. Cook attempted to discuss with Plaintiff his need to provide documentation to justify his absence on June 17th.   Cook:Admin Tr. at p. 1094-1098.

    15.  The next day, June 19th, Mr. Cook retained Plaintiff's time card.  EEOC-80X at Cook Dec. at ¶ 20.  Mr. Cook informed Plaintiff  that he, Mr. Cook, would not allow Plaintiff to clock in until plaintiff acknowledged his instruction.  *Id*. Plaintiff left the building.  *Id*. and West Ex. 13.

    16.  The next day, June 20th, Mr. Cook again retained Plaintiff's time card.  EEOC-80X Cook Dec at ¶ 21.  Plaintiff admitted in a report to the Postal Police that "Mr. Cook stated that he has my time card and if I do not address what he was talking about on Monday that I would not be getting my time card.  I informed him that I do not know what he is talking about."  West Ex. 14.

    17.  Plaintiff admitted toPostal Police that on Thursday, June 21st,.: "Mr. Cook said if I address what he asked me on Monday June 18, 2001, he would give me my time card.  I responded to Mr. Cook by telling him that I do not understand what he is talking about."  West Ex. 16.

    18.  On Monday, June 25th, plaintiff reported back to work.  EEOC-80X Cook Dec. at  ¶ 23.  Mr. Cook sent Plaintiff home in a non-pay, non-duty status pursuant to Article 16.7 of the collective bargaining agreement. *Id.*

    19.  The next day, on June 26th, management had delivered to Plaintiff's home a letter,

instructing him "to report for duty at [his] regularly scheduled time (0550) the day after you received this letter."  EEOC-80X Cook Dec. at ¶ 24 and Ex. 3..  The carrier who delivered the letter to Plaintiff's home confirmed delivery of this letter on June 26.  *Id*

20.  Plaintiff did not report back to work on the 27th.  Cook Dec. at ¶ 25.

21.  By letter dated July 6th, Cook advised Plaintiff that he had been absent from work from June 26th and that he needed to provide documentation to support his absence.  *Id*.

22.  Mr. Cook designated plaintiff as AWOL on June 17th, 27th and 28th as well as July 6th.  EEOC-80X Cook Dec. at ¶ 26.

23.  Mr. Cook issued to plaintiff a 7 day suspension letter.  *Id*.  The suspension letter, dated July 17, 2001,  states that "if a timely grievance is initiated, the effective date of the suspension will be delayed until disposition of the Grievance, either by settlement or an arbitrator's final binding decision." West Ex. 28.

24.  Plaintiff grieved the suspension.   EEOC-80X Cook Dec. ¶ 26 and West ex. 29.

25.  The suspension was never placed in effect and ultimately was rescinded through a grievance resolution.  Cook Dec. ¶ 26 and West Ex 30, 31.

26.  Plaintiff did not work overtime on October 27 and 28, 2001. ROI 31-02 at p. 85, 96.

27.   After management posted a request for employees to work the Veterans Day holiday weekend, plaintiff wrote Mr. Cook, stating:

> I am informing you that I will not be available for the Veteran's Day holiday period from September [sic] 10-12, 2001, concerning the volunteer list that you posted on October 22, 2001 at Largo I VMF.  I am a veteran and I will be spending that time in celebration with my fellow comrades and the Department of Defense.

EEOC-80X Cook Dec. at ¶32 and its Ex. 5.

28. Mr. Cook responded to Plaintiff's letter. EEO-80X Cook Dec. at ¶ 33. By memo dated November 1, 2001, Mr. Cook advised:

> I am informing you that to be excused from the holiday period, you must have a preapproved leave request for 24 hours prior to or subsequent to the holiday period.

*Id.* at ¶ 33.

29. On November 6, 2001, Mr. Cook posted a holiday work schedule. The schedule provided:

> This notice is to inform you that all employees are scheduled to work Saturday (11/10/01) and Monday (11/12/01). The exception to this notice are employees who have 24 hours preapproved leave prior to or subsequent to the holiday period.

*Id.*

30. Plaintiff reported to work as required. *Id*. at ¶ 35.

31. In 2001, Thanksgiving Day was November 22, 2001. Green Dec. at ¶2. On October 10, 2001, Plaintiff submitted a leave slip for the Thanksgiving holiday weekend. *Id*. His leave slip requested 16 hours of leave for the period Thursday, November 22, 2001 through Monday, November 26, 2001. *Id*. at its Ex. 1. Mr. Green disapproved the leave slip. *Id*. at. ¶2.

32. Plaintiff submitted another leave slip on October 10, requesting 24 hours of leave from November 22 through November 27. *Id*. at ¶ 3. This leave slip was approved by Mr. Green. *Id*. and *Id*. at Ex. 1 (bottom slip).

33. Plaintiff canceled his leave for November 26th and 27th and requested 8 hours of leave on November 23rd. *Id.* at ¶ 3. Plaintiff testified that he got the leave that he wanted. West: Admin Tr. at p. 504.

34. Plaintiff submitted a leave slip requesting January 19th through the 24th 2002off and

requested 24 hours of leave. *Green Dec at ¶6.* This request was initially denied; however Mr. Green whited out the denial and approved the leave. *Id.* and West Ex. 46.

35.  By letter dated January 2, 2002,  plaintiff submitted a note stating that he wanted to cancel his leave for January 22nd through the 24th.  Green Dec. at ¶ 7;West Ex. 48.

36.  By notice dated January 15, 2002, all VMF employees were notified that they were scheduled to work on Saturday January 19th and Monday January 21st.  Green Dec.at ¶ 8 and West Ex. 49.   The notice stated that only those employees with requisite preapproved leave would be exempt from the overtime.  *Id.*

37.  Plaintiff failed to report to work on January 19 and 21, 2002.  Green Dec. at  ¶ 9.

38.  Mr. Green determined that plaintiff was AWOL and issued him a 7-day suspension by letter dated January 28, 2002.  *Id.* and West Ex. 51.

39.  "Article 16.4 of the collective bargaining agreement was revised in order to delay the effective date of suspensions."  West Ex. 51.  It sets forth provisions to stay the execution of a suspension.  For example "If no timely grievance is filed at Step 1, you will be suspended ten (10) calendar days from the expiration of Step 1 time limits."  *Id.* at p. 2.

40.  Plaintiff grieved the suspension and it was later rescinded.  West Depo. at p. 34 and its Ex. 3.

41.  According to plaintiff, all of the letters of warning issued to plaintiff were rescinded. West Depo at p. 322.

42.  According to plaintiff, all of the suspensions issued to plaintiff were rescinded except one which was reduced to a letter of warning.  *Id.*

43.  On February 11, 2002,  Plaintiff arrived to work more than ½ hour after his

scheduled reporting time.  Green Dec. at  ¶ 12.  He requested a change in schedule so that his

start and end times would be adjusted, thereby enabling him to work a full 8 hour day.  *Id*.  Mr.

Green denied the schedule change request.  *Id.*

    44.  The local agreement specifically provides:

> Employees reporting up to thirty minutes late at the beginning of tour or late from
> lunch may be permitted to work their full eight (8) hour tour of duty by mutual
> agreement with the supervisor, or the supervisor may approve the employees [sic]
> request for leave.

Memorandum of Understanding, Cook Dec. Ex. 2 at p. 13 ¶24.

    45.  In June 2002, the level 7 employees on Tour 3 performed both preventive

maintenance inspections ("PMI") and mechanical work on vehicles.  EEO-80X Cook Dec *at* ¶¶7-

8.  Thus, the level 7 employees on tour 3 were assigned both level 7 and level 8 work.

Consequently, under the collective bargaining agreement, those Tour 3 Level 7 employees who

performed level 8 work were entitled to receive level 8 pay.  *Id.*

    46.  The two level 7 employees on tour 3 were Thomas Buchanan (White Male) and

George Spenser (Black Male).  *Id.*

    47.  Plaintiff was assigned to Tour 2.  *Id.* at  ¶ 9.  At all relevant times, he was not

assigned to work on Tour 3.  *Id.*   Plaintiff was not assigned to perform level 8 work on Tour 3 in

June 2002.  *Id*.

    48.  In 2002, Management solicited the employees' requests for choice vacation time.  *Id.*

at. ¶ 16 and West Ex. 54.  Mr. Green prepared the vacation calendar for employees at Largo One.

Green Dec. ¶ 16.  Green solicited employees'  requests for vacation time.  *Id*.  He then prepared a

calendar based on the maintenance employees' vacation schedules based on their workshift and

seniority. *Id.* and West Ex. 55.

49.  Both Cleveland Mansfield and plaintiff requested to be off for the week that encompassed the Fourth of July.  Green Dec. at ¶ 17.  Believing that only one employee could be off during that week and because Mr. Mansfield was the senior employee, Mr. Green granted Mr. Mansfield's request for time off and denied plaintiff's request.  *Id.* and West leave slip submitted Feb. 28, 2002, West Ex. 56.

50.  On May 20, 2002, plaintiff submitted a leave slip for time off from June 29 through July 7, 2002. Green Dec. at ¶18,. and West Ex. 56.  Plaintiff's renewed request was denied. Green Dec. at ¶18 and West Ex. 56.

51.  On that same day, May 20, 2002,  plaintiff resubmitted another leave slip this time requesting July 1 through July 5, 2002 off.  Green Dec. ¶ 18; West Ex. 56 second page (top slip) Again, Mr. Green denied the request because the "leave calendar was closed, quota met IAW contract/LMOU."  Green Dec. at ¶ 18.

52.  On May 22, 2002, Plaintiff submitted a third request seeking to have time off from July 1 through July 3, 2002.  This request was again denied for the same reasons.  Green Dec. ¶ 18; West Ex. 56 second page (bottom slip).

53.  On June 28, 2002, Plaintiff called into work and requested emergency annual leave, stating that his mother who lived in Tennessee had an accident and was seriously injured. Green Dec. at ¶ 19.  On June 29th, he called work leaving a voice mail message providing similar information and indicating that he was going to Tennessee.  *Id*.  On June 30, Plaintiff called work and left a voice mail, stating that his mother's injury was not that serious but that he was now having car trouble.  *Id*.  On July 1st, he contacted Mr. Cook to tell him that he could not return for the remainder of the week because he was having car trouble and had to wait for an ordered

part. *Id*.

54. Plaintiff returned to work on about July 8th. *Id. at* ¶ 20. As documentation for his absence he brought an unverified note from his mother. *Id*. and West Ex. 57. Mr. Green determined that the letter was adequate documentation to justify his absence from work on July 1; Mr. Green, however, advised plaintiff that he needed to produce some form of receipt or other document to prove that he had in fact needed to purchase a car part and the date of the purchase. Green Dec. at ¶ 20.

55. Plaintiff failed to produce the required documentation. Green Dec. at ¶ 21. Accordingly, he was charged AWOL for July 2 through 5, 2002. *Id*. Consequently, Mr. Green issued plaintiff a 14 day suspension for being AWOL. *Id*. .

56. Plaintiff grieved the denial of leave and the AWOL designation. The grievance went to arbitration. Plaintiff, the grievant, was present and testified at the arbitration hearing. Green Dec. Ex. 2 at p. 2. The arbitrator upheld management's actions in an award decision dated January 8, 2003. *Id*.

57. By a settlement agreement dated February 26, 2003, the suspension was "reduced to a 7-day - no time off suspension, to be removed from grievant's official personnel file on July 17, 2003." West Ex. 60.

58. On August 22, 2002, Mr. Green instructed plaintiff to perform an R&R on a vehicle. Green Dec. at ¶ 25. Plaintiff refused. *Id*. Mr. Green placed plaintiff in a non-pay, non-duty status for insubordination for failure to follow his work instruction. *Id*.

59. At the Step 2- grievance phase, the matter was settled by an agreement to compensate plaintiff for all hours lost and to allow him to makeup over time. King Depo. at p. 109-12 and

its Ex. 2.

60.  On January 25, 2005, plaintiff requested a revised schedule.  Plaintiff's request was denied because he was more than thirty minutes late.  Annual leave was approved. ROI 99-05 at Ex. 3.

Respectfully submitted,

_____

JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

_____

RUDOLPH  CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

_____

RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970