UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
KEVIN D. WEST                              )
                                           )
        Plaintiff,                       )
                                           )
v.                                         )   Civil Action No.  05-1339 (JR)
                                           )
JOHN E. POTTER,                            )
POSTMASTER GENERAL                         )
U.S. POSTAL SERVICE                        )
                                           )
        Defendant.                       )
_____)


**PLAINTIFF'S MOTION FOR PARTIAL DEFAULT JUDGMENT**

    COMES NOW, Plaintiff Kevin D. West, by and through undersigned counsel, moving for an order from the Court finding the Defendant John Potter, Postmaster General in partial default for failing to file an Answer to significant portions of Mr. West's First Amended Complaint (hereinafter "Complaint").  Pursuant to Federal Rule of Civil Procedure 55(b) and cases interpreting the Rule, Mr. West respectfully requests that the Court: 1) deem all facts and allegations set forth in paragraphs 12 through 30 of the Complaint to be admitted by Defendant; 2) enter a partial default judgment against the Defendant; and 3) issue a partial judgment in favor of Mr. West.

**STANDARD OF REVIEW**

    Under Rule 55(b), a plaintiff may apply to the court for a default judgment in all cases where the requirements for an entry by default cannot be entered by the clerk. F.R.C.P. 55(b).  To obtain a default judgment, a plaintiff must show that: 1) the

defendant's lack of response was willful; 2) not entering a default judgment would prejudice the plaintiff; and 3) the defendant will not likely assert a meritorious defense. *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980).

## FACTUAL ALLEGATIONS AT ISSUE AND PROCEDURAL HISTORY

Plaintiff's First Amended Complaint sets forth, in relevant part, the following allegations:

12. In May 1999, West wrote to Cook requesting "training as acting lead mechanic … and the acting supervisor or 204B in a supervisor's absence." VMF managers customarily provided available supervisory training and 204B temporary promotion to employees upon their written or verbal request.

13. During the years 1999 and 2000, Timothy Currie served as Manager Vehicle Maintenance for the USPS VMF in Bedford Park, Illinois. During his tenure there, he managed numerous USPS employees, many of whom are African-American. In the years 1999 and 2000, over 20 African-American employees filed EEO complaints against the USPS alleging that Currie discriminated against them. Several VMF employees gave statements under oath that they personally observed Currie make racist statements regarding African-Americans, such as "lazy," "stupid," and stating that he "[didn't] know why **[Black] people** are so hard-headed." Currie admits that the U.S. Equal Employment Opportunity Commission has found that he committed intentional race discrimination in violation of Title VII. Upon information and belief, the USPS officially designated the Bedford Park VMF as a "hot spot" for volatile management-

employee relations necessitating monthly meetings to cool racial tensions. Shortly thereafter, Currie came to Washington D.C., after being promoted to Manager Vehicle Maintenance in the Capital District.

14. After arriving in the Washington D.C. area, Currie summoned West to his office located on T Street, N.E., Washington, D.C. During the meeting, Currie told West that he had been "brought" to Washington, D.C. to take care of "VMF problems," and that West was "one of those problems that he will solve." Mr. West requested union representation but Currie denied him a union representative. Currie admitted to West that "he was informed by his supervisor about [West's] prior EEO history." He repeatedly asked West if "he liked his job," and gave him a resignation slip. When West responded that he "love[s his] job" and refused to resign, Currie told him he "would never be used as acting Lead Mechanic or [in] any other upper mobility positions" in the VMF. Since his conversation with Currie in September 2000, five years ago, Kevin West has been offered no details to Acting 204B Supervisor jobs and has consistently been rejected for permanent promotions.

15. On September 22, 2000, Cook issued a Letter of Warning to West for failing to attend voluntary craft (non-supervisory) training when West provided a health-based reason for not attending.

16. As manager, Cook selects craft mechanics to temporarily serve in higher-level craft positions. On many occasions between the year 2001 and the present day,

   Cook temporarily promoted junior White mechanics over West. Currie instructed Cook not to select West for these opportunities.

17. In early 2001, Currie formulated an ad-hoc, unofficial program entitled the "204B Supervisory Training Program," which was in effect from approximately March 2001 to December 2002. This program did not replace or limit customary supervisory details or training within the USPS or selection therefore. West did not wish to participate in this special voluntary program, but remained interested in upward mobility opportunities that co-existed with the program; consequently, by a letter to Currie dated March 8, 2001, West communicated his continued interest in receiving supervisory training and 204B acting-supervisor, temporary promotions. Although at least 17 other craft employees, who had not been selected for Currie's program, had been offered temporary promotion to Acting Supervisor, at no time did Currie offer West a supervisor detail. Among the 17 selected for these opportunities were Caucasian employees junior to West like Thomas Buchanan, John Bowser and John Miller.

18. On June 8, 2001, Cook issued West another Letter of Warning for failing to report for scheduled overtime during the Memorial Day Holiday period, although Cook had previously granted West leave for that period and informed him that he was excused for the holiday. Cook issued the discipline without following progressive discipline procedures outlined in the governing collective bargaining agreement.

19. On June 18, 2001, Cook physically harassed West for not medically documenting an absence necessitated by his infant daughter's fever. The absence was authorized under dependant care sick leave policies.

20. Each workday from June 19 – 25, 2001, Cook took West's timecard, refused to allow him to work, denied him copies of his June leave slips, and ordered him off of USPS property. Cook then verbally suspended West for approximately two weeks without following USPS policies and procedures for immediate suspensions (i.e. "Emergency Placement"). Like Cook, Currie engaged in these same activities in Bedford Park, Illinois with two other African-American VMF employees.

21. On July 17, 2001, Cook issued a 7-Day suspension to West for failing to maintain a regular work schedule, during the days Cook suspended West from work.

22. On August 24, 2001, Cook again issued West a 7-Day suspension for failing to maintain a regular work schedule, despite West's solid attendance and leave records. Cook supervised Caucasian VMF employees with poor attendance records, i.e. David Lowe, John Miller and David Wood, but did not discipline them, as he did West.

23. On October 27 and 28, 2001, Cook denied West overtime opportunities while granting these opportunities to Caucasian junior employees like Thomas Buchanan and Thomas Sponaugle, and to Robert Smith who was not on the overtime desired list.

24. Cook denied West's request for leave on the Veteran's Day Holiday 2001, while granting another craft employee who worked at the same facility leave for that period.

25. In November 2001 and at other times, West was required to take 24 hours of annual leave to be excused from working, while other employees were permitted to take only eight hours of leave to be excused.

26. On January 28, 2002, Acting Supervisor Frank Green issued a 7-Day suspension to West for failure to maintain a regular work schedule and charging him with AWOL for the Martin Luther King Holiday; yet, West had been granted a leave of absence for that holiday period on December 12, 2001.  Caucasian employee David Lowe failed to report the same day, but was not disciplined.

27. On February 11, 2002, Acting Supervisor Green denied West's request for a revised schedule, due to his late arrival.  Revised schedules are routinely given to other VMF employees.

28. On February 28, 2002 and twice more in May 2002, Green denied West's vacation leave requests for the July 4th holiday.

29. On July 17, 2002, Green issued a 14-Day suspension to West for failure to maintain a regular work schedule, although West sufficiently documented his absences from work and had ample leave at his disposal.

30. On August 22, 2002, Green placed West on Emergency Placement (immediate suspension) for failing to perform work, which West reasonably believed posed a

6

> severe safety hazard—a hazard West had reported to Postal management just 1-2 weeks prior.

On October 17, 2005, Defendant filed its Answer to the First Amended Complaint. In response to paragraphs 12-30, the Defendant answered:

> Defendant has moved to dismiss these allegations on the grounds of res judicata and collateral estoppel. Defendant will provide supplemental responses to said allegations following resolution of the motion to dismiss, if needed.

The Court subsequently denied Defendant's Motion to Dismiss on June 28, 2006. Nonetheless, Defendant never filed an answer to these paragraphs of the Amended Complaint.

## ARGUMENT

I. **THE DEFENDANT VIOLATED THE FEDERAL RULES OF CIVIL PROCEDURE WHEN IT WILLFULLY FAILED TO ANSWER THE AMENDED COMPLAINT IN ITS ENTIRETY AND WHEN IT FAILED TO LATER AMEND ITS ANSWER AFTER THE COURT'S DENIAL OF ITS MOTION TO DISMISS.**

Federal Rules of Civil Procedure 8 and 12 require a government defendant in a civil lawsuit to serve an Answer within 60 days that "admit[s] or den[ies] the averments upon which the adverse party relies." F.R.C.P.8(b) and 12(a)(3)(A). Rule 8 mandates that a failure to answer the "averments in a pleading to which a responsive pleading is required . . . are admitted when not denied in the responsive pleading." F.R.C.P. 8(d). Here, the Defendant filed an Answer to the Amended Complaint, but chose not to file responses to paragraphs 12-30. This is wholly inadequate under Rule 8, since Defendant did not admit or deny the allegations. Further, Defendant is not empowered to

7

unilaterally extend the time to file an answer to a complaint. The Court had not granted Defendant permission to forgo compliance with the Federal Rule or permitted the Postal Service to file an answer to the allegations after the Court's decision on the Motion to Dismiss. In complete disregard for Rule 8, the Defendant did not admit or deny the Complaint allegations, but answered with a promise to answer later. And this promise, it did not keep.

Even after the Court denied the Defendants' Motion to Dismiss, the Defendant still did not answer these allegations. Five and a half months later, the Defendant has never filed an answer to these allegations. By any objective measure, the Defendant's decision to not answer or amend its answer is willful. Thus, under Rule 8(d), the allegations are admitted and the Defendant has defaulted.

II. THE COURT SHOULD ENTER A DEFAULT JUDGMENT AGAINST THE DEFENDANT BECAUSE MR. WEST WOULD SUFFER PREJUDICE IF JUDGMENT IS NOT ENTERED AND DEFENDANT CANNOT OTHERWISE ASSERT A MERITORIOUS DEFENSE.

**A.    Mr. West Would Suffer Prejudice**

Mr. West would suffer prejudice if default judgment is not entered and Defendant were allowed to belatedly file an amendment to its Answer, since he would be required to prosecute claims and allegations without knowing the Defendant's position on said allegations. Since Defendant has never answered Complaint ¶¶ 12-30, Mr. West cannot present to the Court, for purposes of responding to Defendant's dispositve motion, factual allegations that are genuinely in dispute.

And absent this knowledge, Mr. West would expend limited time and resources on matters, which may not be contested. This would cause the cost of this litigation to

increase for Mr. West. He would have to prepare and file an Opposition to Defendant's Motion for Summary Judgment addressing <u>all</u> of his factual contentions, out of an abundance of caution. Parties to an action should not be required to guess which facts are in dispute and which are admitted – this is the very purpose of the initial pleadings. For it is simply unclear whether many of the facts are disputed or not.

In addition, Defendant's willful inaction runs contrary to the policy underlying the time limit for filing an Answer under the Federal Rules. This time limit allows plaintiffs to be placed on notice, early on in the action, which facts the defendant contests. This notice helps inform plaintiff's decisions and strategy during the course of the litigation. More, the time limit serves to streamline issues in the case for the efficient adjudication of the dispute. Here, Defendant has contravened both the purpose and letter of Federal Rules 8 and 12 and has significantly hampered Mr. West's prosecution of his claims.

### B.   Defendant Has No Meritorious Defense

As an initial matter, the length of time that has passed since the filing of the Amended Complaint indicates that the Defendant will most likely not be able to advance a meritorious defense. *Jackson*, 636 F.2d at 836. If Defendant had a valid defense, it would have eagerly presented it by now.

Further, as best as can gleaned from Defendant's Motion for Summary Judgment, Defendant does not deny most if not all of the facts alleged in Complaint ¶¶12-30, but rather attempts to explain them away. For instance, Defendant admits that Mr. West was not offered the overtime opportunity in October 2001 because his manager, David Cook "attempted to contact Mr. West using the telephone number in [Cook's] day planner and

9

was unable to reach him." (Defendant's Motion for Summary Judgment, hereinafter "MSJ" at 34). This defense lacks merit. It is, however, a question of fact – a fact Mr. West contests since he had no record of Mr. Cook's call on his telephone and received no voicemail message from him. Yet, Defendant cannot deny that Mr. West was not afforded the overtime opportunity.

     Another example of Defendant's inability to establish a meritorious defense is its position on the events of June 18-25, 2001, when Mr. Cook refused for several days to allow Mr. West to work by withholding his timecard. Having no ability to deny these events, Defendant tries to recast these harassing events as "out of the ordinary measures to deal with plaintiff's extraordinary conduct." MSJ at 29-30. Mr. West agrees that these acts were "out of ordinary" and indeed, contrary to law. Defendant cannot deny these shameful events happened.

     Defendant is also without the ability to meritoriously defend against Mr. West's allegations of discriminatory and retaliatory denial of temporary supervisor promotions/assignments (204B). On the one hand, in its Motion, Defendant explains that Timothy Currie instituted a 204B supervisory training program, which required interested mechanics to apply for the program. Defendant admits that while Mr. West did not apply to the program, he expressed, in writing, his interest in 204B training and temporary promotions. MSJ at 17. Defendant attempts to use Mr. West's decision not to apply to the program as the rationale behind the Postal Service's failure to select Mr. West for supervisory opportunities. Yet, on the other hand, Defendant admits that Currie's program was not the exclusive means by which Manager Cook selected individuals for

204B jobs.  MSJ at 23.  Thus the Defendant has not and indeed cannot offer a defense as to why Mr. West has continuously been denied 204B opportunities, irrespective of his election not to enter Currie's program, while at the same time, junior mechanics who were not admitted to the program were offered these opportunities.

In all, the Postal Service cannot put forth a complete defense to the allegations at issue.  Try as it might to explain, spin, and dodge the facts of this case, Defendant is unable to defend against the facts supporting Mr. West's claims of discrimination and retaliation.  As with most employment discrimination cases, this case boils down to motive.  But for purposes of determining a motion for default, the Court should only examine the Defendant's ability to defend against <u>the facts and occurrences</u> as alleged in ¶¶ 12-30.  Defendant Postal Service can in no way disclaim the accuracy of these facts.

## CONCLUSION

Mr. West respectfully requests that the Court enter a partial default judgment against the Defendant Postal Service because:

1. The Defendant has willfully chosen not to answer several paragraphs of the Amended Complaint for over 14 months.

2. Mr. West would suffer prejudice, without the default judgment, by way of increased length and cost of litigation, particularly if Defendant were allowed to amend its answer at this late date.

3. Defendant is unable to establish a complete meritorious defense to the factual allegations at hand.

                                              Respectfully submitted,

December 19, 2006                    By:_____/s/_____
                                                    Teresa W. Murray
                                                     THE LAW OFFICE OF T.W. MURRAY
                                                     1025 Connecticut Avenue, N.W.
                                                     Suite 1000
                                                     Washington, D.C. 20036
                                                     Phone: 202-327-5477
                                                     Fax: 202-327-5451