UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
BALTIMORE DISTRICT OFFICE

| | |
|---|---|
| Kevin D. West )<br><br>Complainant )<br> )<br>v. )<br> )<br>John E. Potter )<br>Postmaster General, U.S. Postal Service )<br>    Agency ) | EEOC Case No.: 120-2004-00080X |

## DECLARATION OF KEVIN D. WEST

I, Kevin D. West, make the following declaration pursuant to 28 U.S.C. section 1746:

1. I have been a Automotive Technician (level 7) in the United States Postal Service for 14 years. I have been at the USPS Largo I & II VMF in Capital Heights, MD since 1990.

2. I am African American and am suing the United States Postal Service for violations of Title VII Discrimination and Reprisal.

3. Between 1992 and 1997, I filed eight EEO complaints against David Cook and his subordinate supervisor Michael Hill for discriminatory and retaliatory conduct, #4D-200-2752-93 filed 09/03/93, #4D-200-1296-94 filed 11/18/94, #4D-200-1306-95 filed 11/15/95, #4D-200-1309-95 filed 11/15/95, #1K-206-1020-96 filed 07/09/96, #4K-200-1052-96 filed 03/12/96, #4K-200-0052-97 filed 05/05/97, #4K-200-0207-97 filed 08/01/97.

   The complaints involved attendance disparities, denial of revised schedule, upward mobility, training, and overtime, and failure to provide appropriate work clothes.

4. To preserve my mental health and alleviate the stress they caused, I filed EEO complaints against the Postal Service when they subjected me to discrimination.

5.  I filed EEO case #4K-200-0123-99 claiming racial discrimination and reprisal, when Mr. Michael Hill, VMF Supervisor stopped utilizing me as acting Lead Mechanic as of July 10, 1998.  Whereas, Mr. Hill violated the settlement that was agreed upon in case # 4D-200-1296-94, to use me in rotation, as the acting Lead Mechanic in the absence of the Lead Mechanic.

6.  I did not file with EEOC or pursue the EEO, instead I transferred to Largo I VMF in May 1999 and continued to attempt resolution of equity there.

7.  On May 10, 1999, I again gave in writing a request to the VMF Manager, Mr. Cook a request for training as the acting Lead Mechanic in the absence of the Lead Mechanic and as acting Supervisor (204B) in the absence of the Supervisor.  See **Exhibit 1**, letter dated /10/99.

8.  In January 2000, I requested to Mr. Cook to work overtime at Largo II or Riverdale VMF's.  Mr. Cook denied my request to work overtime at these locations. A grievance (SM2KV043-W) settlement was agreed upon in March 2000 that states that I can put my name on the Overtime Desired List to work overtime at Largo II or Riverdale VMF's.  See **Exhibit 2** letter dated 3/01/00.  The VMF management still did not fully abide by this agreement.

9.  On April 12, 2000, I wrote a certified letter to Postmaster General William J. Henderson, subject: Conduct Unbecoming A Postal Employee against Mr. David Cook for not allowing Postal Mechanics to work overtime at other locations where the work is behind on services.  See **Exhibit 3** letter dated 4/12/00.  I was retaliated against for reporting Mr. Cook's dereliction of duties.

10. On August 14, 2000, I again informed the Postmaster General about Mr. Cook's ongoing discrimination and retaliation conduct because of prior EEO history. See **Exhibit 4** letter dated 8/14/00.

11. I filed EEO complaint #4K-200-0004-01 on September 8, 2000, against Mr. Timothy Currie, VMF Manager. Mr. Currie had called me on September 7, 2000, to his office in Washington, D.C. and informed me that I would never be used as acting Lead Mechanic or any other upper mobility positions in the VMF.

12. During this meeting, Mr. Currie also asked me how do I like my job. Mr. Currie harassingly asked this question several times, even though I replied that I love my job. Mr. Currie then handed me a blank PS Form 2574 *Resignation From The Postal Service*. Mr. Currie stated that I can fill this form out and submit it. Mr. Currie also denied me union representation and opportunity to take notes.

13. Mr. Currie told me that he was informed by his superiors of my prior EEO history against the USPS VMF management. He then stated, "I am not Mr. Stokes". Mr. Stokes was the previous VMF manager that Mr. Currie had replaced. He also said that I would not be filing EEO's against him, as I had done while Mr. Stokes was manager, because he was brought here for the VMF problems and that I am one of those problems that he will solve. As of this day, I have never been used as a 204B Acting Supervisor.

14. Upon returning to Largo I VMF on September 7th, I was harassed and threatened by Mr. David Cook, VMF Manager after giving him a letter, Subject: *Unsafe Travel*. See **Exhibit 5** letter dated 9/06/00.

15. On September 21, 2000, Mr. Cook attempted to issue me a Letter of Warning for failure to follow instructions regarding **voluntary** training travel to Norman, Oklahoma. I was sent home, because I refused to sign the letter.

16. On September 22, 2000, Mr. Cook issued me the Letter Warning of with his witness, Mr. Michael Hill, Supervisor Largo II VMF. This Letter of Warning was later rescinded. I was the only person that has obtained a Letter of Warning for not attending a voluntary training. There have been other employees that Mr. Cook have allowed to cancel their voluntary training trips, i.e. Richard Ziehl Automotive Parts Storekeeper Largo II VMF and Cleveland Mansfield, Lead Automotive Technician, Largo I VMF.

17. On November 16, 2000, I sent a letter to the Postmaster General, subject: *Conduct Unbecoming A Postal Employee*, reiterating the ongoing violations at Largo I VMF concerning Mr. David Cook and Mr. Timothy Currie allowing postal employees to falsify attendance by hitting in late and working over to adjust their times without using the appropriate postal forms (**PS 3971** *Request For Or Notification of Absence* or **PS 3189** *Request For Temporary Schedule Change For Personal Convenience*). See **Exhibit 6**, letter dated 11/16/00.

18. On March 1, 2001, Mr. Timothy Currie conducted a meeting at Largo I VMF for all the employees of Largo I and Largo II VMF concerning a 204B Acting Supervisor in-house training program. This program required that all employees submit a PS form 991 by closing date April 13, 2001.

19. Prior to March 2001, the only method that has been used by the VMF for training is a verbal or written notification from a craft employee to management requesting higher-

4

level training.  The VMF management would then give the training when it is available or detail the employee to a higher level.  I did not submit a PS Form 991 because it is used to apply for and aid in the selection process for an actual **job vacancy**, but Mr. Currie's "204B Supervisory Training Program" is a **training** opportunity only; therefore a 991 is not needed.  In Mr. Currie's own words contained in his February 26, 2001, Supervisory Training VMF Employee Notice (see pg 136 of EEO case file #4K-200-0220-01) his training program **does not award job positions**, only training opportunities *to develop and train VMF craft employees and help increase the experiences of the most qualified candidates to improve their own "Knowledge, Skills and Abilities"*.

20.  I filed EEO 4-K-200-0145-01 on April 12, 2001 alleging disparate treatment concerning an on-the-job injury and illegal use of the PS form 991 by the VMF management.  I was treated differently than Mr. David Lowe (Caucasian), Automotive Mechanic Level 6, Largo II VMF.   Mr. Lowe had an off-the-job injury and was given limited duty by Mr. Cook, whereas my on-the-job injury was denied limited duty.

21.  I filed a lawsuit in the U.S. District Court for the District of Columbia civil case no. 01-0746(JR) against Mr. Currie on April 6, 2001.  Mr. Currie was served with a copy of the complaint on April 10, 2001.

22.  A letter was sent to the Postmaster General on April 11, 2001, for VMF Management violations. See **Exhibit 7**, dated 4/11/01.  Employees were falsifying PS form 4543 Vehicle Work Order, whereas they were supposed to be repairing Postal Vehicles, but

were out shopping and taking care of personal affairs instead.  Mr. Cook the VMF
manager was aware of these activities.

23.  On May 16, 2001, I requested for 8 hours annual leave for May 28-29, 2001 on a PS
form 3971 that was approved by Mr. Cook on May 16, 2001.  After Mr. Cook
approved my annual leave he informed me that I was excused for the Memorial Day
holiday period.   See **Exhibit 3,** pg. 37 case file #4K-200-0220-01.

24.  Then on May 22, 2001, Mr. Cook posted a memo on a USPS Routing Slip, stating
that Sunday, May 27, 2001 and Monday, May 28, 2001 will be scheduled workdays
for the holiday period.  The exception to this are those employees who have 24 hours
of preapproved leave before or after the three day holiday period. See **Exhibit 4,** pg
38 case file #4K-200-0220-01. This was the first time that Mr. Cook has stated that 24
hours of preapproved leave was required.  It also was the first time that a Sunday was
required as a workday.  This did not apply to me because I was told on May 16th that I
was excused for the holiday period by Mr. Cook.

25.  On June 8, 2001, I received a letter of warning for AWOL absence from scheduled
overtime from Mr. David Cook for not reporting to work on Sunday, May 27, 2001.
This letter was rescinded in a prearbitration settlement agreement dated Nov 7, 2001.
See **Exhibit 2,** pg 36 case file #4K-200-0220-01.

26.  I filed a formal complaint (EEO case # 4-K-200-0220-01) on August 29, 2001, as a
result of discriminatory and retaliatory actions by the VMF management as a result of
the following events.  This EEO is currently before the EEOC.  On June 17, 2001, I
informed Mr. Greg Absher, Supervisor Riverdale VMF by phone that I was

requesting for dependant care for my daughter.  Mr. Absher stated O.K. on the telephone.

27.  On June 18, 2001, at approximately 1:15 pm I was harassed and threatened by Mr. David Cook about what type of leave I requested for June 17, 2001.  I informed Mr. Cook that I had requested for dependant care because my daughter was sick.  Mr. Cook then began to raise his voice at me concerning my request for dependant care.  I then informed him that I needed a union representative and for him to put whatever he has to say in writing.  Mr. Cook then put his hands on my shoulders, I then hollered out "Do not touch me".  Mr. Cook then backed up and said that he was not touching me.  I then was able to walk out of the hall from the water fountain.  Mr. Cook continued to follow me onto the work floor.  I then turned and informed Mr. Cook that he was stalking me and to put whatever he had to say in writing and I would respond. Mr. Cook continued to harass me, therefore I then called and left a message for US Postal inspector Hokes.  Mr. Cook then ran to his office.

28.  On June 18, 2001, I also reported in writing the physical assault to Inspector Hoke concerning Mr. David Cook's action when he put his hands on me and harassed me on June 17, 2001.  See **Exhibit 5,** pg 39 case file #4K-200-0220-01.

29.  Upon returning to work on June 19, 2001, at 5:30 am, Mr. Cook was standing at the time clock with my timecard in his hand.  I asked Mr. Cook for my timecard.  He then stated," If you don't address what I said to you yesterday, I will not give you your timecard".  I then informed Mr. Cook that I did not know what he was talking about. I then requested for a union representative and for him to put in writing whatever concerns he had. I was not permitted to work, so I left the jobsite and reported the incident to the USPS Police immediately.

7

30. On June 20, 2001, the same thing occurred again with Mr. Cook in denying my timecard and union representative, so I again reported the incident to the USPS Police.

31. On the third day, June 21, 2001, I was on revised schedule when Mr. Cook once again denied me my timecard and union representative, so I again reported the incident to the USPS Police again. See **Exhibit 8-8b** Police Report Statement.

32. On the fourth day, Friday, June 22, 2001, I called in and requested for 8 hours sick leave because of undue stress from the continued harassment from Mr. Cook on the events occurring from June 19-21[st].

33. On Monday, June 25, 2001, I was allowed to punch in on my timecard and was then told by Mr. Cook to punch on a form 4543 open Work order control # 2023 account code 91 to see Mr. Cook in his office. I was again harassed and threatened by Mr. Cook in his office concerning my sick leave request for dependant care on Sunday, June 17, 2001. I informed Mr. Cook that I did not know what he was talking about in his accusations and that I needed a Union representative to be present. Mr. Cook then said "no" to my request and that I was now suspended and he would have the USPS Police remove me from the Postal Property. I went to change my clothes, as I was leaving, the Postal Police arrived. Mr. Cook then told the Postal Police to take my Postal ID card. I willingly gave it to the Postal Police. I then went to file a complaint concerning these events with the USPS Police after I left. See **Exhibit 9,** dated 6/25/01.

34. Mr. Cook gave me a verbal suspension on June 25, 2001. I then received a certified letter from Mr. Cook on July 6, 2001, to return to duty the next workday, which was Monday, July 9, 2001. I returned to work as requested. I was put on leave without

pay for 72 hours by Mr. Cook and denied 32 hours overtime. I am the only employee at Southern Md that received a verbal suspension by VMF management for a nonviolent act.

35. On July 18, 2001, I received a letter of suspension for 7-days dated July 17, 2001 from Mr. Cook for failure to maintain a regular work schedule. The Reviewing and Concurring Official was Mr. Timothy Currie. See **Exhibit 18-1 through 18-2,** pg 64-65 case file #4K-200-0220-01. This was later rescinded on August 3, 2001.

36. On August 24, 2001, I received another letter of suspension for 7-days dated 8/24/01, from Mr. Cook for failure to maintain a regular work schedule. The Reviewing and Concurring Official was Mr. Timothy Currie. See EEO case file #4K-200-0220-01, pg 147-148. This suspension also was later rescinded on September 18, 2001 because these suspensions were unjustly given.

37. All of the suspensions that I received were concerning the June 25, 2001 through July 6, 2001 verbal suspension and to include the June 17, 2001, AWOL for not reporting to Riverdale VMF.

38. On August 30, 2001, I gave Mr. David Cook a written request to cancel my annual leave for September 4, 2001 that was submitted and approved on August 21, 2001 via form 3971 (see **Exhibit 10**, dated 8/30/01).

39. Mr. Cook responded verbally that he would not allow me to cancel my preapproved leave, even though he was requesting for volunteers to work on that day. Therefore, I was forced to take the annual leave.

40. I filed a grievance with the APWU union and was awarded 8 hours annual leave for the September 4, 2001, through a settlement agreement dated August 1, 2002 (see **Exhibit** 11, dated 8/01/02).

41. On October 2, 2001, I submitted to Mr. David Cook a written request to cancel my annual leave for October 9, 2001 that was submitted and approved on September 7, 2001 via form 3971 (see **Exhibit 12,** dated 10/02/01).

42. On October 3, 2001, Mr. Cook responded in writing that my request to cancel my preapproved leave was denied (see **Exhibit 13,** dated 10/03/01). Therefore, I was forced to take the annual leave.

43. On October 10, 2001, I filed a grievance with the APWU union and was awarded 8 hours annual leave for the October 9, 2001, through a settlement agreement dated August 1, 2002 (see **Exhibit 14,** dated 8/01/02).

44. I am the only person who has been denied a request for leave to be cancelled in advance of more than 20 hours notice of the date of leave. Even though Mr. Cook had requested for volunteers to work on the days that I was requesting to work. I am the only person that Mr. Cook has denied leave cancellation to work for any reason, whether it is a holiday or non-holiday schedule.

45. I then filed a formal complaint on or around February 11, 2002 (EEO case # 4-K-200-0031-02) which is part of this case. On October 10, 2001, I requested **16** hours annual leave for the Thanksgiving holiday period of November 22-26, 2001. This request was submitted on a PS form 3971 to David Cook (see **Exhibit 15,** dated 10/10/01).This request was disapproved.

46. Mr. Cook's written response on November 1, 2001, was that an employee has to have 24 hours of preapproved annual leave in order to be excused for the holiday period. (See **Exhibit** 17 of case file # 4-K-200-0031-02, pg. 36).

47. Therefore on October 10, 2001, I submitted a second request on a PS form 3971 to Mr. David Cook for **24** hours annual leave for the Thanksgiving holiday period of November 22-27, 2001 (see **Exhibit** 15 of case file # 4-K-200-0031-02, bottom of pg. 34). This request was approved.

48. On November 16, 2001, Mr. Cleveland Mansfield (Caucasian) submitted a request on a PS form 3971 to Mr. Franklin Green, Acting Supervisor, for **8** hours annual leave for the Thanksgiving holiday period of November 23, 2001. His request was approved. (See **Exhibit** 15 of case file # 4-K-200-0031-02, top of pg. 34).

49. On December 10, 2001, I submitted a request on a PS form 3971 to Mr. David Cook for **8** hours annual leave for the Martin Luther King, Jr. holiday period of January 19-22, 2002 (see **Exhibit 16,** dated 12/10/01 top of pg). Mr. Franklin Green denied this request on December 10, 2001 with reason as "Date, Time in violation of local Memorandum of Understanding".

50. On December 10, 2001, I then submitted a second request on a PS form 3971 to Mr. David Cook for **24** hours annual leave for the Martin Luther King, Jr. holiday period of January 19-24, 2002 (see **Exhibit 16,** dated 12/10/01 bottom of pg). Mr. Cook did not sign it as "received" as he usually did, but forwarded it to Mr. Green. Mr. Franklin Green also denied this request on December 12, 2001.

51. Mr. Green denied this request on December 12, 2001during a conversation that he had with me in Mr. Quick's office, Supervisor Largo I Tour 3. Mr. Green in

explaining why he was going to disapprove my leave request, he verbally harassed me. See letter dated December 13, 2001, Subject: Conduct Unbecoming a Postal Employee, which was given to Mr. David Cook as a complaint. See **Exhibit 17**, letter dated 12/13/01 to Mr. David Cook.

52. On December 14, 2001, Mr. Cook changed my leave request dated December 10, 2001 for January 19-24, 2002 to approved status, that Mr. Green had previously disapproved.

53. On January 2, 2002, I submitted to Mr. David Cook a written request to cancel my annual leave for January 22-24, 2001 that was submitted and approved on December 10, 2001 via PS form 3971. I also requested a response in writing. (See **Exhibit** 22 of case file # 4-K-200-0031-02, pg. 42). Mr. Cook did not respond verbally or in writing.

54. Since I did not get a response in writing to my request from Mr. Cook, I returned to work on January 22, 2002 (the Tuesday after the Martin Luther King, Jr. holiday).

55. On January 28, 2002, Mr. Franklin Green gave me a 7-day Suspension for AWOL Absence from Scheduled Overtime and Holiday work. (See case file # 4-K-200-0031-02, top of pg. 68-69) for the Martin Luther King, Jr. holiday.

56. I filed a grievance with the APWU union concerning the 7-day Suspension that I received on January 28, 2002. This suspension was rescinded on November 14, 2002. But I never received my 8 hours holiday pay for January 21, 2002.

57. There were other African Americans (Sandra Childs and Chris Simmons) that did not work on Martin Luther King, Jr. Birthday and did not have 24 hours preapproved leave for January 21, 2002. Although they lost their 8 hours holiday pay for January 21, 2002, they were not given a 7-day suspension.

58. Mr. David Lowe (Caucasian) Automotive Mechanic Largo II VMF did not work the Martin Luther King, Jr. Birthday Holiday period for Saturday, January 19 and Monday, January 21, 2002. Mr. Lowe did not have any preapproved leave prior to or subsequent to the holiday period. Mr. Lowe (Caucasian) received his holiday pay for January 21, 2002 and did not receive any discipline from the VMF management for not working this holiday period.

59. Mr. Lowe often does not report for scheduled overtime during holiday periods. He has a history of utilizing sick leave during holiday and regular workdays. And has never been charged with failure to maintain a regular work schedule, as I have been charged by Mr. David Cook. (See **Exhibit 18** clock rings pay period 2002-03-1, 2002-03-2) For example Mr. Lowe did not work the Veteran's Day holiday schedule Saturday, November 10, 2001 or Monday, November 12, 2001. Mr. Lowe was using sick leave for November 6, 2001 through November 13, 2001, then worked on November 14, 2001 and was off sick again for November 15, 2001.

60. Mr. David Wood (Caucasian), Automotive Mechanic Largo II VMF has failed to show for scheduled overtime on nonworkdays at Largo II VMF through the calendar year for 2002 and 2003. He would not show, nor call on scheduled overtime days. The VMF management has not punished Mr. Wood, as they have punished Mr. West. Mr. Wood has not received any suspensions verbally or in writing from Mr. Cook from his actions, as I have. Mr. Robert Mason and Mr. Stephen Clarke, Auto Automotive Technicians Largo II VMF have witnessed Mr. Wood's attendance and actions.

61. I contacted the EEO on August 2, 2002 about EEO Case #4K-200-0108-02, currently before the EEOC, protesting that I had been denied a revised schedule on a PS form

13

3971. On February 11, 2002; I called in to work prior to my 0600 reporting time and requested a revised schedule. My request was denied by Mr. Green (See **Exhibit 2,** pg. 73 of case file #4K-200-0108-02).

62. I was treated differently then Mr. Thomas Sponaugle (Caucasian) when on 02/11/02, Mr. Sponaugle reported to work at 07:30 am and requested for a revised schedule on a PS form 3971, just as I had requested. Mr. David Cook granted Mr. Sponaugle's request (See **Exhibit 5**, pg. 78 of case file #4K-200-0108-02).

63. Mr. Leroy Cowan assisted Mr. Sponaugle on how to prepare his PS form 3971 for revised schedule on Feb. 11, 2002.

64. The VMF management has never disapproved a revised schedule prior to reporting to work or in advance over the telephone with a 1-hour notice, except for me.

65. Mr. David Cook did not inform me that Level 8 job positions were available at Largo II VMF or Largo I VMF. Employees at Largo II and Largo I, Tour 3 received high-level pay by Mr. David Cook secretly without Mr. West 's knowledge. The employees at these two locations were less senior than Mr. West in experience and job knowledge.

66. On Feb. 28, 2002, I gave Mr. Franklin Green two PS forms 3971 with two vacation choices 1 and 2. Option #2 was approved, and option #1 was disapproved with no just cause. See **Exhibit 19**, choice #1 and See **Exhibit 20**, choice #2.

67. I submitted a 3rd vacation choice on March 1, 2002, to Mr. Green. I did not receive a response from him until June 18, 2002. See **Exhibit 21**, choice #3.

68. The employees at Largo II VMF were treated differently than the employees at Largo I VMF regarding vacation periods. Both locations had the same amount of employees

on tour 2, but Mr. Cook treat Largo I (Mr. West's location) different. At Largo I,
Cook would only allow one person off for vacation at a time. Largo II could have up
to three people off at one time. This is the first time that Largo I was put under these
conditions. I feel that was a form of retaliation and discrimination because of my
filing of prior EEO's against the VMF management, Mr. Cook and Mr. Currie.

69. Mr. Cook did not post a vacation list until June 20, 2002 for employees at Largo I
VMF only. See **Exhibit 22**. The vacation lists at Largo II and Riverdale VMF were
posted timely.

70. On May 14, 2002, Mr. Franklin Green gave me an unjust 14-day Suspension for
Unsatisfactory Work Performance that was later reduced to a letter of warning in Jan.
2003. See **Exhibit 23**, dated 5/13/02.

71. On Aug. 22, 2002, Mr. Franklin Green sent me home unjustly, because I had
previously reported a safety hazard on August 9, 2002, to Mr. David Cook concerning
an engine exchange. I requested for an engine stand to perform the task correctly and
safely, See **Exhibit 24**, PS Form 1767, dated 8/09/02. Mr. Warren Plater, Safety
Captain, Mr. Chris Simmons and Mr. James Thompson, mechanics at Largo I VMF
witnessed these actions.

72. Mr. Green ordered an engine transport stand, instead of an engine stand. The
transport stand cannot hold a complete engine, which is a safety hazard if not properly
secured. An engine stand could hold the engine and allow me to complete the task
safely (See page 379 of EEO Case file #4K-200-0108-02, dated Aug. 22, 2002 to Mr.
David Cook).

73. I reported a hostile work environment on Aug. 23, 2002, after returning to work. (See page 378 of EEO Case file #4K-200-0108-02, dated Aug. 23, 2002 to Mr. David Cook). Mr. Cook gave me a response on Sept. 4 2002, stating that no hostile work environment was found. (See page 377 of EEO Case file #4K-200-0108-02, dated 9/3/02 from Mr. David Cook).

74. On July 30, 2002, I applied for two vacant jobs, Position numbers 31-02 and 33-02; Title: Supervisor Vehicle Maintenance E.A.S.16. See Exhibits 60 through 61-9, pgs 205-215 of EEO case file ##4K-200-0108-02. I feel I was at a disadvantage to compete because I had not received any 204B Acting Supervisor details or given any training because I had filed prior EEO's for discrimination and reprisal against the VMF management.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 3, 2004.

*Kevin W. West*

Kevin D. West