**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| KEVIN WEST | : | |
| Plaintiff | : | |
| v. | : | Civil Action No. 05-1339  (JR) |
| | | |
| JOHN E. POTTER | : | |
| Defendant. | : | |

**REPLY**

Defendant respectfully submits this reply to plaintiff's opposition to defendant's motion for summary judgment.

**The Material Facts Submitted by Defendant Should Be Deemed Admitted.**

In the attached Reply to Plaintiff's Statement of Material Facts in Dispute in Support of Opposition to Motion for Summary Judgment ( "Plaintiff's Disputed Facts"), defendant demonstrates that plaintiff has failed to establish any genuine issues of material fact.

**Summary Judgment Should Be Granted in Defendant's Favor.**

In *Celotex*, the Supreme Court explained that "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  When the moving party meets this initial obligation, the nonmoving party may not rest on mere allegations, but "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)(quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

The Supreme Court has also stated that some weighing of the evidence is appropriate at the summary judgment stage.  Specifically, the Court noted that the "purpose of summary

judgment is to 'pierce the pleadings, and to assess the proof in order to see whether there is a need for trial.'" *Id*. (quoting Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e)). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby*, 477 U.S. 242 , 249-50 (1986)(citations omitted).  The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

Plaintiff's Opposition and Disputed Facts have not pointed to specific facts demonstrating that there is a genuine issue for trial.  Assessing the evidence at this stage of the proceedings yields the inescapable conclusion that there is a total absence of evidence, aside from plaintiff's mere allegations, to support plaintiff's argument that he was the subject of discrimination, retaliation/reprisal, or hostile work environment.

**Discrete Acts of Discrimination/Retaliation**

Plaintiff West attempts to insert several unexhausted claims into this case arguing that he is alleging a continuing violation.  His argument fails as a matter of law as all of the claims at issue in this case, except for his hostile work environment claim, constitute "discrete acts of discrimination" for which the continuing violation doctrine is not applicable. *See Pleasants v. Allbaugh*, 2002 U.S. Dist. LEXIS  21777 (D.D.C. November 12, 2002) (*citing National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002);  *See also Jarmon v. Powell*, 208 F. Supp. 2d 21 (D.D.C. 2002).   Each act of discrimination/retaliation about which plaintiff complains is a discrete act which he was required properly to exhaust administratively.

In *Morgan,* the Supreme Court rejected the "continuing violation" theory that would permit plaintiffs to recover for discrete acts of discrimination and retaliation that were not exhausted but were "sufficiently related" to exhausted claims. *Id*. 536 U.S. at 105. *See also*, *Keeley v. Small*, 2005 U.S. Dist. LEXIS 18871, *16-21 (D.D.C. August 30, 2005); *Blackmon-Malloy v. Capital Police Bd.*, 338 F. Supp. 2d 97 (D.D.C. 2004).

**Conceded Arguments**

It is well settled in this Circuit that when a plaintiff files an opposition addressing only certain arguments raised by the defendant, "a court may treat those arguments that the plaintiff failed to address as conceded." *Hopkins v. Women's Div., General Bd. Of Global Ministries*, 238 F.Supp.2d 174, 178 (D.D.C. 2002) (*citing FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997); *see also* Local Rule LCvR 7(b); *Bancouldt v. McNamara*, 227 F.Supp.2d 144, 149 (D.D.C. 2002); *Hornbeck Offshore Transp., LLC v. U.S. Coast Guard,* 2006 WL 696053, *23 (D.D.C.2006)*; *Hooker-Robinson v. Rice,* 2006 WL 508343, *3 (D.D.C. 2006); *Matta v. Snow*, 2005 WL 3454334, *23 (D.D.C.2005).

**ALLEGATIONS**

**Non-selection: vacancies 14-03, 15-03, and 23-03**

Defendant's Memorandum of Points and Authorities in Support of Summary Judgment Motion ("SJM")  established that the review board for the captioned vacancies did not forward plaintiff's name to the selecting official.  SJM at p. 7.  None of the three review board members had knowledge of the applicants' race, color, or prior EEO activity.  *Id. at p. 7-8.*

Plaintiff does not dispute, and therefore concedes,  that the review board members had no

knowledge of his race, color or prior EEO activity.  Plaintiff's Opposition at p. 33-35. [1]

Therefore, plaintiff has shown no causal connection between his race, color or prior EEO activity

and the Review Board's decision not to send his name forward to the selecting official.

**Vacancy 31-02 & 33-02**

A review panel did not forward plaintiff's name to the selecting official for vacancies 31-

02 and 33-02.  SJM at p. 9.   The legitimate  non-discriminatory reason for plaintiff's name not

being forwarded to the selecting official was that his application did not compare favorably to

those of the other applicants.  SJM at p. 10.  Specifically, the board members  gave the

recommended applicants superior ratings because their applications reflected that each had

substantial supervisory experience working either as a level 8 lead mechanic or as an acting

supervisor.  *Id.*  Plaintiff does not dispute, and thus concedes, this legitimate non-discriminatory

reason for the review board's action.  *See* Plaintiff's Opposition at p. 35-37.  Indeed, plaintiff's

argument is that: "[I]f West had received higher-level details and training similar to the details

and training Caucasian mechanics received, he would have been rated 'Superior', interviewed for

the supervisor positions and possibly, selected."  Plaintiff's Opposition at p. 36.

However, as this Court has ruled:

> it is well-settled that in assessing whether a Title VII violation has occurred the
> "proper focus is upon the time of the **discriminatory acts**, not upon the time at
> which the **consequences** of the acts became most painful." *Delaware State
> College v. Ricks*, 449 U.S. 250, 258. . .(1980). . .. "The emphasis is not upon the
> effects of earlier employment decisions; rather it 'is [upon] whether any present

---

[1]  In response to the unfounded speculation in plaintiff's Rule 56(f) motion that Mr.
Currie or Mr. Cook attempted to influence the committee members, defendant also has submitted
declarations  from the three review board members for vacancies 14-03, 15-03, and 23-03 as well
as for Vacancy 31-02 & 33-02.  The declarations attest that no one attempted to influence the
committee members' selections.  Rule 56 (f) Response at Declarations of Ames, Hatfield, Banks,
Barner and King.

**violation exists**.' " *Id*. (emphasis in original) (quoting *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558. . .(1977)).

*Jarmon v. Powell,* 208 F.Supp.2d 21, 30 (D.D.C.2002). Thus, in assessing whether plaintiff has met his burden concerning this particular claim of discrimination due to non-selection, the consequence of alleged prior acts concerning details and training is not relevant. In this particular alleged act of discriminatory non-selection, plaintiff agreed with, rather that rebutting, defendant's legitimate non-discriminatory reason for the review board's actions.

**Vacancy 03-43**

Plaintiff applied and was one of four individuals considered "Best Qualified" for Vacancy 03-43, for Lead Automotive Technician Ex 41. Another individual, Stephen Clark, was selected by Mr. Cook. Ex. 41 and Cook affidavit at pp.8-9.

Mr. Cook rated the applicants to be about equally qualified. Cook aff. at p. 9; Ex 38 at p. 2 and ex. 39 at p. 2. The legitimate non-discriminatory reason for Cook's selection was that the selectee interviewed better than plaintiff. Cook aff. at p. 9.

Plaintiff does not contend that he has "direct" evidence of retaliation on the part of Mr. Cook, and concedes that his claims of retaliation concerning Mr. Cook should be examined under the *McDonald Douglass* model. Opposition at p. 22, 24.

Plaintiff's Opposition alludes generally to circumstantial evidence that Mr. Cook retaliated because of his knowledge of plaintiff's EEO activity. Opposition at p. 24. However, plaintiff did not address and did not dispute, defendant's argument that plaintiff cannot establish causality for this non-selection based on mere knowledge because there was insufficient temporal proximity between the identified prior EEO activity and the alleged retaliatory act. SJM at p. 9

and 4.   The selection in question occurred in August/September, 2003.  Plaintiff identified the

prior EEO activity which led to the alleged retaliation as EEO case 4K-200-0108-2 filed on July

13, 2002.  West Aff at p. 5 ¶24, p. 15 ¶36.  He also pointed to Mr. Currie's statement on

September 7, 2000 "that I would no longer be used in any upper mobility opportunities."  West

Aff at p. 14¶24.  Here, the identified prior EEO activity occurred approximately one year before

the alleged retaliatory act and Mr. Currie's statement was made three years before.   Thus,

causality cannot be established by temporal proximity .   *Chambliss v. National Railroad*

*Passenger Corp*.,  2007 WL 581900, *23 (D.D.C.2007); *Willingham v. Gonzales,*  391 F.Supp.2d

52, 61-62 (D.D.C. 2005).

        Additionally, this Court and others have held that a presumption arises against any

finding of retaliation, when a supervisor has recently "promoted" the employee, prior to an

alleged adverse employment action being taken.  *Waterhouse v. District of Columbia,*  298 F.3d

989, 996-997 (D.C.Cir. 2002); *accord Tyndall v. National Education Centers, Inc.*, 31 F.3d 209,

214- 215  (4th Cir. 1994), *citing LeBlanc v. Great American Insurance Co.*, 6 F.3d 836, 843 (10th

Cir. 1993), *cert denied*, 511 U.S. 1018 (1994); *See also Lowe v. J.B. Hunt Stransport, Inc.*, 963

F.2d 173, 174-175 (8th Cir. 1992).

        Plaintiff claimed that Currie and Cook retaliated against him on September 7, 2000 by

telling him he would no longer be assigned to be acting supervisor.  However, according to the

plaintiff, the last EEO claim that he filed prior to September 7, 2000, was on April 19, 1999,

West I Complaint at ¶ 9.  On several occasions between April 19, 1999 and September 7, 2000,

appellant was allowed to serve as Acting Lead Mechanic and Vehicle Analyst for his team,

purely at the discretion of his supervisor[2].   Nothing "required" Manager Cook to designate

Plaintiff West for these positions.[3]   These assignments,  <u>after</u> his April 1999 EEO filing; militate

against any argument that he was denied assignment to lead mechanic positions as a result of his

race or having engaged in protected activity.  See Defendant's Exhibits 1-2.  Moreover, from

January 5, 2001 to March 16, 2001, plaintiff served as PS-7 Acting Vehicle Analyst.

Defendant's Exhibit 3.  This militates against plaintiff's argument that  based on Mr. Currie's

statement in 2000, he was retaliated against when not selected for Lead Mechanic/Vehicle

Analyst positions after the Currie statement was made.   *See, e.g.  Waterhouse v. District of*

*Columbia,* 298 F.3d 989, 996-997 (D.C.Cir. 2002) and cases cited therein.  Here, the individuals

who allegedly retaliated against appellant concerning lead mechanic positions were the same

individuals who within a short period had assigned him to acting positions.

　　　　Plaintiff also contends that Mr. Cook made the following retaliatory statements regarding

plaintiff's EEO history:

*   When Cook used to get letters from senators,  from Congressmen, from Postmaster
    General, etc. that Cook said that plaintiff "keeps something stirred up all the time."
    Opposition at Ex 26 pp.80-81.

*   That Mr. Cook expressed displeasure over requests for information from the EEO or a
    mediator because Cook "had to look through so many files to find this stuff because there
    were 80 or 90 questions that you had to answer. * * * we both voiced displeasure in

---

　　[2]  See Nov. 13, 2002 Dec. of David Cook at ¶ 3(West "served as a Lead Automotive
Mechanic, Level PS-07 from July 12-16, 1999; August 16-20, 1999; August 27-31, 1999 and
August 7-11, 2000.  He also served as a Vehicle Analyst, Level PS-07 from January 5 through
March 16, 2001.").

[3] Since Article 39 §2A(11) of the APWU National Agreement (Defendant's Exhibit 4), <u>does not</u>
designate the Acting Lead Mechanic and Vehicle Analyst positions as being subject to the Union
seniority system, the position is filled under the "Best Qualified" standard.  In the case of
temporary reassignments, as in Plaintiff West's instance, details are filled in the discretion of the
supervisor.

having to go through that.  We had to stay late hours at night and have to work to do.  *Id.* at p. 82.

•       That at an unknown time, in an unknown context, Mr. Cook referred to plaintiff as a troublemaker.  *Id.* at Ex. 58 p. 40-41, Ex. 64, ¶9.

•       That at an unknown time, in an unknown context, Mr. Cook referred to plaintiff as an "asshole."  *Id.* at Ex. 58 p. 120.

These statements are not evidence of retaliatory intent on the part of Mr. Cook.    Plaintiff has presented no evidence that any of these statements was made in relation to or close in time to any particular alleged retaliatory act on the part of Mr. Cook.  *See Lucas v. Paige,*  435 F.Supp.2d 165, 171 -172 (D.D.C.2006).  Also the statements do not "bespeak a discriminatory intention." *See Hanan v. Corso  WL 320858*, *15 -16  (D.D.C.1999) and cases cited therein.  The statements attributed to Mr. Cook  are far from statements which can be construed to demonstrate retaliatory or discriminatory intent.  *See e.g. Treglia v. Town of Manlius*, 313 F.3d 713, 721-22 (2d Cir.2002) (when told that plaintiff has filed discrimination charges, statement  that "we can ... play hard ball too" could be construed as evidence of retaliatory intent.).  Therefore, plaintiff has not established a prima facie case of retaliation based on his non-selection for Vacancy 03-43.

Similarly, plaintiff's allegations that Mr. Currie allegedly made  three "derogatory statements to African Americans" in Bedford Park,  Opposition at p. 25, are insufficient to create a triable issue of discrimination concerning Mr. Currie's actions since they are unrelated to an employment decision involving the plaintiff.  *Simms v. U.S. Government Printing Office,*  87 F.Supp.2d 7, 9 fn 2 (D.D.C.2000);  *Hussain v. Principi,*  344 F.Supp.2d 86, 100 (D.D.C.2004), affirmed by 435 F.3d 359 (D.C.Cir.2006), cert. denied by 127 S.Ct. 494 (2006).  Additionally, plaintiff does not to cite to any record support for the alleged statements to Mr. Trice and Clark.. Opposition footnote 151 refers to Opposition Ex. 23 which contains leave requests and

suspension notices, but nothing pertaining to Mr. Trice. The statement to Ms Simms-Hearn does not show discriminatory intention..

Plaintiff also fails to establish evidence of discriminatory intent based on race/color by his allegation that Mr. Cook has referred to West and another African American employee as "worthless." Opposition at p. 25. In support of this allegation, plaintiff proffers hearsay from the deposition of Ms. Childs about an alleged comment. She did not hear Cook make the comment; she could not remember exactly what was related to her; and she did not even know if the alleged remark was about plaintiff. Plaintiff's Opposition at Ex. 58, Childs 12/8/2003 Depo. at p. 80. This inadmissible hearsay is insufficient to establish that any such statement was made and has no earmarks of reliability which would make it admissible. *See Hanan v. Corso ,* 1999 WL 320858, *12 at fn 7 (D.D.C.1999) (*citing Waldridge v. American Hoechst Corp*., 24 F.3d 918, 920 & n. 2 (7th Cir.1994) (in ruling on summary judgment motions federal courts can consider only evidence that would be admissible)).

In his EEO affidavit, plaintiff had claimed that he was better qualified than the selectees for advertised positions because "I exceed with my educational training with college education, labor relations knowledge and knowledge of VMF rules and regulations." West Aff. at p. 11¶2b, p. 14 ¶26b. Defendant's summary judgement motion argued that those factors did not demonstrate that plaintiff's qualifications were far superior to those of the successful candidates for any of the vacancies at issue and thus did not raise an inference of discrimination. SJM at p. 12-15. Plaintiff did not address or rebut defendant's argument, and thus has conceded that issue.

In his Opposition, plaintiff abandons his original contention concerning his college

education, etc. discussed above, concerning the relative qualification of himself and Mr. Clark for Vacancy 03-43, Lead Automotive Technician, Level 8. Plaintiff submits a new argument that he was better qualified than Mr. Clark because of plaintiff's training and experience in servicing tractors and trailers. Opp. at p. 39-40. However, the vacancy was for a position in the Postal Service Delivery Shop located at the Largo II, Vehicle Maintenance Facility. Small delivery vehicles are serviced in the Delivery Shop. The position required experience in the maintenance and repair of small delivery vehicles. See the attached Cook April 17, 2007 Dec. at ¶ 3. Larger Postal vehicles, such as tractors and trailers are not serviced in the Delivery Shop, and therefore training and experience in servicing tractors or trailers and air brakes for such heavy vehicles was not a specific requirement of the job. *Id.* Therefore, the training and experience that plaintiff cites did not make him better qualified than Mr. Clark for the position. *Id*. at ¶4. "[C]omparing qualifications is insufficient to establish discriminatory intent unless the plaintiff is "significantly better qualified" than the person who obtained the position." *Hussain v. Nicholson,* 435 F.3d 359, 365 (D.C.Cir. 2006).

An agency's decision not to consider certain qualifications while emphasizing other qualifications is within its discretion. *Madan v. Chow,* 2005 WL 555414, *6 (D.D.C.2005) *citing Fischbach v. District of Columbia Dept. of Corrections,* 86 F.3d 1180, 1183 (D.C.Cir.1996); *accord Woodruff v. Peters ,* 2007 WL 1029041, *9 (D.C.Cir.2007), *see also George v. Leavitt,* 407 F.3d 405, 415 (D.C.Cir. 2005).

Plaintiff has not met his burden of proving discrimination or retaliation, and his claims should be dismissed.

**Supervisory Training Program**

10

Defendant's summary judgment motion argued that plaintiff was not discriminated or retaliated against when he was not selected into the 204-B training program developed by Mr. Currie, because plaintiff did not submit an application. SJM at p. 15-19. Plaintiff does not address or rebut, and thus concedes this point. Opposition at p. 27. Indeed, plaintiff has withdrawn any alleged claim that he was discriminated or retaliated against due to non-selection into the program: "Defendant misapprehends West's claims. West is not claiming that he was denied admittance to Currie's special program nor is he claiming that he was denied training or jobs under the program." *Id*.

Plaintiff continues "Rather, West is claiming that he was denied supervisory training and details that existed before, during and after, Currie's short-term program." Opposition at p. 27. However, plaintiff has failed to present any **evidence** that he was denied supervisory training outside of Mr. Currie's 204-B training program. See plaintiff's disputed facts at §I ¶4 (not disputing that plaintiff elected not to submit an application to the 204-B program, but failing to cite to any record evidence of any particular supervisory training opportunity denied to plaintiff); *Id*. at §II¶¶e, j, k (all failing to cite to any evidence of any denial of training).

Plaintiff's Opposition contends that Mr. Buchanan "received classroom supervisor training on February 21, 2001. . . ." Opposition at p. 30. However, this is not reflected in the record citation in footnote 176 or in plaintiff's disputed facts.

Plaintiff also alleged that "[John] Bowser has also received management training as recent at February 29, 2006, that was not afforded to West." Opp. at p. 30. Plaintiff's Opposition states that his allegation concerning Bowser and David Lowe being selected as acting supervisors in 2006 is the subject of a motion to amend the complaint, Opp. at p. 16 fn 104.

However, no such motion is reflected in the docket of this case. Approximately six months have elapsed since the issuance on September 15, 2006, of a final agency decision (FAD) pertaining to those and other 2006 allegations. FAD at p. 8. The filing of any civil action challenging the FAD would be untimely. 42 U.S.C. § 2000e-16(C).

The only other exhausted claim of denial of supervisory training, before Mr. Currie's program, of which defendant is aware, was addressed in a civil action decided against plaintiff in the Memorandum Opinion in *West v. Henderson*, C.A. WMN-99-840 (D.Md. August 10, 2000) ("Md. MemOp") attached hereto. In that case, plaintiff alleged that he was denied informal supervisor training opportunities when he was denied the opportunity to serve as the "acting supervisor" on several occasions when his actual supervisor was absent from the Largo II facility. Md. MemOp. at p. 3. The court held "The record does not support Plaintiff's contention that the position of acting supervisor was considered by the Postal Service to be a supervisory training opportunity." *Id.* at p. 3-4. The Court also held that plaintiff had failed to establish retaliation or discrimination due to the selection as acting supervisors of level 7 mechanics Michael Scott and Frank Green because plaintiff was a less qualified level 6 mechanic. *Id*. at p. 4, 6.

If plaintiff is attempting to reargue in this case the facts and contentions in the Maryland case, he is precluded from doing so under the doctrines of res judicata and collateral estoppel. *Carter v. Rubin*, 14 F. Supp.2d 22, 33 (D.D.C. 1998) (*citing Montana v. United States*, 440 U.S. 147, 15354 (1979)).

**235-03 OVERTIME**

Plaintiff claimed discrimination and retaliation because he was not given overtime at the Largo II facility from April 1, 2003 through July 25, 2003. 235-03 ROI West Aff. at p. 10.

Plaintiff was on the Largo II overtime desired list for "before tour duty"  235-03 ROI Ex.34 at p. 3-4.

Defendant's summary judgment motion advised that the legitimate non-discriminatory reason for plaintiff not being called for overtime is that the employees assigned to the Largo II building who signed the overtime desired list, gave management enough employees to accomplish the needs of the Largo II operation.   *Id.* at p. 3.

Plaintiff now submits the new argument  that Supervisor Michael Scott should have offered Mr. West overtime based on his seniority, without regard to his permanent duty station. Opposition at p. 52.  However, plaintiff does not cite to any evidence to support this contention. Plaintiff's citation is to his Exhibit 10, West Decl. at ¶8.  Opposition at p. 52 fn 264.  However, that paragraph only states that a March 2000 settlement of a grievance "states that I can put my name on the Overtime Desired List (ODL) to work overtime at Largo II or Riverdale's VMF's." Plaintiff's Opp at Ex 10 ¶8.  Plaintiff's declaration does not even allege that there was a requirement that the selection for overtime be solely based on seniority.  Plaintiff similarly  fails to offer any support for his contention concerning seniority in his Statement of Material Facts in Dispute at §1 ¶5 or in §II.   See the attached Exhibit 44, Local Memorandum of  Understanding pertaining to overtime desired lists for the Motor Vehicle Craft, and Declaration of USPO Labor Relations Specialist Norman D. Smith, showing that OLD is not assigned solely by seniority.

Therefore, plaintiff has failed to rebut defendant's legitimate non-discriminatory reason for plaintiff not getting overtime at Largo II.

**Acting Supervisors/204Bs**

Plaintiff's Opposition appears to attempt to set forth claims of race discrimination due to

the selection of Thomas Buchanan, John Bowser, David Lowe and John Miller for acting supervisory positions. Defendant's SJM submitted the following legitimate non-discriminatory reasons for the acting supervisory selections, SJM at p. 22-23.

At the Southern Maryland VMF, during May 2001 through June 2002 period, Mr. Cook, the installation head, had a particular order for selecting 204Bs. Cook: Admin Tr. at 1926-27. First, Cook awarded 204B opportunities to the top 6 candidates in the 204B program. *Id.* at 1927. If those six were not available and a 204B opportunity arose, then Mr. Cook would award the 204B opportunity to other 204B program applicants. *Id*. at 1927-28. If those persons were not available, then Cook awarded the 204B opportunity to his senior mechanics. *Id*. at 1927. He gave the senior mechanics the 204B opportunities because their regular duty assignment of senior mechanic already encompassed many of the job duties performed by the supervisor. *Id*. at 1925-26. Plaintiff did not fit into any of those categories.

In his Opposition, plaintiff offered no evidence which rebuts, and thus concedes that Mr. Cook followed the procedure outlined above for the selections of Misters Green, Mansfield, Harris and Thompson as acting supervisors. *Id.* at 1930-41.

Plaintiff submits information concerning a new complaint that David Lowe allegedly was made an acting supervisor in 2006. Opposition at p. 16. However, plaintiff has never amended his complaint to add this new allegation and, as discussed above, the time for filing any complaint in District Court concerning this new allegation has expired. See FAD.

**T Street body shop -- J.M. selection as acting supervisor**

Plaintiff failed to address or rebut the defendant's arguments concerning the selections for an acting supervisor assignment at T Street.

14

First, defendant stated that fender and body repair men, Mr. Parker and J.M., were selected to oversee setting up the paint shop since the duties and responsibilities of their position required familiarity with paint shop requirements.  Mechanics, such as plaintiff, do not work in a paint shop.  SJM at p. 20-21.   The record citation used by plaintiff in his opposition does not rebut defendant's contention.  See Opposition at p. 30, fn 180( citing to Ex 5, Cook Depo at 19. The Cook Deposition (January 29, 2004) states:

> A      No.  Mr. Currie was proposing to move all the body work within the
>        District to the T Street office and wanted someone in that position as a
>        supervisor to run the body shop.  That's what that was. . . .
> Q      Okay.  What do you understand to have transpired verbally with regard to
>        the body work being a part of the 204B program?
> A      That he wanted to mentor body men in that position.  In other words,
>        someone that's familiar with body, body shop, body work activities.
>        That's why he actually requested from the body men, not the other people
>        in the 204B program, the -- you know, the mechanic shop.

*Id.*  Additionally, plaintiff has conceded the defendant's argument that plaintiff was not qualified to set up the paint shop.  SJM at p. 20-21.  He has not alleged or submitted any evidence that he was a body and fender repairman or had the requisite skills to get a paint shop operative.  See Opposition at p. 30-31.

Second, plaintiff also does not address or rebut defendant's argument that plaintiff has not proven that he applied for an acting supervisor position at the T Street location.  SJM at p. 21. Plaintiff's letter to Mr. Currie stating that he did not want to participate in the training program also stated that he was interested in acting supervisory positions in three locations, none of which was T Street.  *See* ROI 108-2 at p. 83. Thus,  plaintiff also has conceded that he had not applied for an acting position at T Street.

Third, plaintiff does not rebut the reason that J.M. was assigned to supervise mechanics.

As with the previous acting body repairman, J.M was assigned to supervise the mechanics at the T Street location when their supervisor, Mr. Hall, was not available.  SJM at p. 22.  Mr. Currie assigned J.M. to also supervise the mechanics because J.M. was doing an adequate job in supervising the body and fender repair men, and he was skilled in managing people. Currie:Admin. Tr. at p. 2579-84.   Mr. Currie simply made a decision to expand Mr. Miller's acting supervisor responsibility to the T Street mechanics when Mr. Hall was not there, rather than adding a new acting supervisor at an additional expense to the agency.  This is the sort of personnel decision the courts have been cautioned against second guessing.  Plaintiff simply disagrees with the decision.

Plaintiff makes much of the fact that J.M. did not have a driver's license, but does not rebut the fact that Mr. Currie did not know J.M. did not have a license at the time he first was made an acting supervisor. SJM at p. 21; Opposition at Ex. 2 p. 62-64.  Moreover, plaintiff's assertion that a driver's license "is a minimum qualification of a body and fender repairman," Opposition at p. 32, is belied by his own record citation.  *Id*. at fn 189 (citing to Ex. 68, UPS/APWU Memorandum).  That memorandum states:

> All other employees (i.e., **body and fender repairman**, painters, etc) are **not required** to maintain a CDL [commercial drivers license] except in those situations where the installation has determined that . . .they will drive a commercial vehicle off postal property.

Opposition at Ex. 68 p.2.(emphasis added).

Plaintiff tries to raise an inference of impropriety by stating  Mr. Currie "advanced Miller to Acting 204B supervisor at the T Street facility from May 2001 to June 2003 - over two years." Opposition at p. 30.  However, from October 2001 until September 2002, when he was promoted, Mr. Currie did not perform the duties of manager of the VMF.  Currie: AdminTr. at  p.

2550.  He was assigned to the Brentwood post office, involved in supervising contractors in relation to the anthrax contamination.  *Id.* at p. 2545.  Thus, Mr. Currie, who went to a new position in September 2002,  was not responsible for the length of time J.M. remained in the acting supervisory position.

### Higher level Craft assignment for Tour Three Mechanics

Defendant submitted as its legitimate non-discriminatory reason that under the collective bargaining agreement plaintiff was not eligible for a higher level craft detail/assignment in Tour 3 because plaintiff was not assigned to Tour 3, but to Tour 2.  SJM at p. 24-25.

The collective bargaining agreement provides that "Detailing of employees to higher level bargaining unit work in each craft shall be from those eligible, qualified and available employees in each craft in the immediate work area in which the temporarily vacant higher level position exists.  West Ex. 110 at p. 131-132 at § 4.  The term "available in the immediate area" in the Postal Service means "tour and section."  Vedral: Admin Tr at p. 86.  Thus, an employee assigned to Tour Two at Largo 1 is not "available in the immediate area" for a higher level detail opportunity on Tour Three.  *Id*. at pp 87-88.

Plaintiff does not dispute the collective bargaining agreement provision.  He appears to try to raise an inference of discrimination by alleging the agreement was not followed.  *See* Opposition at p. 38-39.  However, in attempting to do so plaintiff is "mixing apples with oranges."  A review of the citations offered by plaintiff in support of his contention shows that the citations relate to details to supervisory 204B positions and not to higher craft details.  See fn. 208-209  referring to Ex.11, . . .at pp. 776-78 (asking who served as a 204B at another location than he or she was assigned);   See also fn 210 referring to Ex 4, Cook Vol 4 p. 1034 (asking

17

"What . . .led you to conclude he should act as a supervisor on that tour?"). Therefore, plaintiff has failed to rebut the legitimate non-discriminatory reason that plaintiff was not eligible for a higher craft detail pursuant to the collective bargaining agreement.

Plaintiff also makes additional allegations that he was discriminated against because mechanics Buchanan, Wood, Washington and Lowe were given higher level details. Opposition at p. 37-38. First, as is discussed above, plaintiff was only eligible for a higher level craft detail on the same tour he was working. Plaintiff's Ex. 21 (last 3 pages) shows that Mr. Buchanan was on tour 3 at Largo I and David Lowe, David Wood and James Washington were on Tour II at Largo II. Plaintiff worked a different tour. He was on tour II at Largo I. Therefore, he cannot rebut the legitimate non-discriminatory reason he was not selected for higher craft details on other tours.

Second, each failure temporarily to promote plaintiff to a higher level detail is a discrete act, and plaintiff was required to contact an EEO counselor within 45 days of each alleged denial. Further, plaintiff has no excuse for not contacting an EEO counselor within 45 days of each higher level detail on his tour. By plaintiff's own admission "lead Automotive Technician details involve the incumbent acting as "lead" mechanic over other shop mechanics." Opposition at p. 37. Therefore, if plaintiff was available on his tour for such a detail, he would have known that someone was acting as lead over him.

Plaintiff's exhibit 21 reflects craft details at Largo 1 Tour 2 for Mr. Green and Mr. Plater in 2001 and 2002. Plaintiff was required to exhaust his administrative remedies by contacting an EEO counselor within 45 days of each of the alleged detail dates in the chart -- that is 45 days from March 26, 2001 to December 31, 2002. That he failed to do. See attached Simmons

Declaration.  See also plaintiff's affidavit, Opposition at Ex. 10, (failing to reflect these details as complaints which he says he has brought pertinent to this matter).

Therefore, plaintiff cannot meet his burden of showing discrimination or retaliation concerning these other higher craft details.

### Letters of Warning and Suspensions

Defendant's motion for summary judgment  established that plaintiff never actually was suspended pursuant to any of the letters of suspension issued.  SMF 23-25, 37-40, 41-42, 56-57, 58-59.  Defendant argued that none of the "discipline"from the letter of warning and the letters of suspension was an adverse employment action for purposes of discrimination claims and not  a material adverse action for purposes of retaliation claims because all the suspensions were rescinded and plaintiff never missed a paycheck. See e.g. SJM at 5-6,  27, 32. Nor did he lose money when Mr. Cook had declared plaintiff AWOL, because the days in question, July 2-5 were keyed into the system as leave, which is a pay status.  West Depo at 98-100, 267-269 and its Ex. 17.

Plaintiff did not dispute the arguments that the "disciplinary actions were neither a material employment action nor a material adverse action.  See Opposition at p. 43-44; Plaintiff's Disputed Facts does not dispute defendant's SMF Nos. 23-25, 37-40, 41-42, 56-57, 58-59.   Plaintiff also has not presented evidence of any material adverse effect on him. Therefore, he has failed to establish a prima facie case of discrimination or retaliation from the so called disciplinary actions.

### Veterans Day Holiday-2001

Plaintiff contends that defendant's failure to discipline Ms. Childs, the storeroom clerk,

19

and its grant of her leave request is evidence of disparate treatment.  However, plaintiff does not

dispute defendant's legitimate non-discriminatory reason for its actions pertaining to Ms. Childs.

That is that her request for leave originally was denied and that after she reported for the holiday

weekend work she requested to leave early and her request was granted since there was little for

her to do at that time.  SJM at p. 36.   Defendant also granted her request for leave on November

12  because, unlike a mechanic,  other employees could do her work.  Additionally, she had

proper documentation to show that she had a doctor's appointment.  *Id*.  Plaintiff and Childs

were not similarly situated because he made no requests to be excused and did not have a

documented doctor's appointment.  SJM at 37.  Plaintiff did not rebut and thus has conceded

defendant's legitimate non-discriminatory/retaliatory reasons for its actions concerning Ms.

Childs.

### Thanksgiving 2001

Plaintiff's Opposition argues that there is evidence of discriminatory and retaliatory intent

because Mr. Cook denied his request for 16 hours of leave and West submitted a leave slip for 24

hours of leave.  Opposition at p. 48.  However, it is undisputed that  Mr. **Green** [4] disapproved the

leave slip on the grounds that it violated the local agreement for holiday leave.  Green believed

that in effect, plaintiff was looking to secure leave for the holiday period of November 22

through November 26.  Green Dec at. ¶2.  However, to assure that he would be exempt from a

mandatory holiday period, plaintiff needed to have 24 hours of approved leave. *Id*.  See West

Depo. at p. 152 (Q.  Mr. Green told you you had to take 24 hours off to do what? A.  To be off

---

[4]  Plaintiff's Opposition argues that this was an action by Mr. Cook and shows Mr.
Cook's retaliatory and discriminatory intent.  Opposition at p. 48.  However,  the undisputed
material fact is that Mr. Green disapproved the leave slip requesting only 16 hours of leave.  *See*
Plaintiff's Disputed Mat. Facts #31-33 (Not disputing that this was an action of Mr. Green.)

the holiday.  Q.  In other words, not to be required to come in on the holiday?  A. Correct.").  His leave request was denied because he only asked for 16 not 24 hours of leave. *Id* .

Plaintiff resubmitted his leave slip on October 10, requesting 24 hours of leave from November 22 through November 27. *Id*. at ¶ 3.  This leave slip was approved by Mr. Green.  *Id*. and *Id.* at Ex. 1 (bottom slip).   When Plaintiff learned that there was not going to be any mandatory holiday work, he canceled his leave for November 26th and 27th and requested  8 hours of leave on November 23rd. *Id.* at ¶ 3.

Plaintiff has not disputed the above facts.  This confirms that plaintiff cannot establish a material adverse action, because, as plaintiff admitted, he got the leave he wanted.  Mat. Fact 33.

Mr. Michael Mansfield (White Male) also submitted a leave slip which requested only 8 hours of leave for Friday, November 23, 2003.  *Id*. at ¶ 4.   Mr. Green granted his leave slip. *Id*. ROI 31-02 at p. 34.  Plaintiff alleges that he was "harassed" because he was required to complete a leave slip for 24 hours of leave while Mr. Mansfield was not.  However, plaintiff did not address, or rebut the fact that Mr. Mansfield only asked for 8 hours of leave on a particular day, and thus was not similarly situated to plaintiff because Mr. Mansfield did not appear to be attempting to block off the entire holiday period.   Although plaintiff argues that his leave slip was "a perfectly acceptable leave request,"  Opposition at p. 48, he does not cite to any record evidence supporting his contention or refuting Ms. Vedral's testimony. See SJM at p. 38, Vedral: Admin Tr. at p. 110-111 (not proper to include non-scheduled days on leave slip "Because you are not going to charge them with AL or sick leave on their days off.").  Moreover, although plaintiff argues that the mandatory holiday posting had not come out when he submitted his leave slip,  he does not claim that he ever told Mr. Green that he was not trying

21

to block off the entire holiday period as a prophylactic against a possible mandatory holiday. Therefore, plaintiff has not rebutted defendant's legitimate reason for its action.

### Denial of revised schedule February 11, 2002

Plaintiff does not dispute that he was more than 30 minutes late to work, nor does he deny the existence of the local agreement provision permitting revised schedules only for lateness of 30 minutes or less.  SJM at p. 41.  Instead, plaintiff alleges pretext claiming that Mr. Miller received revised schedules when he arrived more than 30 minutes late, and that Mr. Sponaugle received a revised schedule on February 11.  Opposition at p. 49.

First, plaintiff cites to no record evidence in his opposition, Opposition at p. 13 fn 88, and 49, or in his statement of disputed facts which shows that Mr. Green granted Mr. Miller a revised schedule as claimed.

Second, plaintiff has not addressed or rebutted, and thus has conceded,  defendant's argument that Mr. Sponaugle was not similarly situated to plaintiff because he was not late for work on February 11, 2002, but had submitted an advance request to revise his schedule so that he could begin work early.  SJM at p. 4; Opposition at p. 49.  Thus, there is no evidence of pretext.

### Denial of Vacation for July 4, 2002 Holiday

Defendant offered as its legitimate non-discriminatory reason for the denial of the vacation request that Mr. Green believed that under the LMOU  only one mechanic at a time could be off during choice vacation time. SJM at p. 41-44.  Defendant also argued that no inference of discrimination could be drawn because of plaintiff's allegation that Mr. Green's interpretation of the LMOU was wrong.  SJM at p. 45.  Plaintiff does not address and thus

conceded these arguments.     Plaintiff contends that there is evidence of pretext because  Spencer and Buchanan, mechanics on Tour 3, were allowed by Mr. Cook to take vacation together.  Opp. at p. 50.  However,  plaintiff does not address or rebut, and thus concedes defendant's argument that they were not similarly situated to plaintiff because their supervisors were different.  SJM at p. 46.  Therefore, plaintiff has not submitted evidence of pretext or discrimination.

**Denial of Revised Schedule on January 25, 2005**

Defendant argued that plaintiff failed to establish a prima facie case of retaliation or discrimination because there was no material adverse action;  since plaintiff was granted annual leave for his lateness he lost no salary.  At plaintiff's grievance he was restored annual leave and allowed to makeup overtime.  SJM at p. 47-48.  Plaintiff did not address or rebut this argument. Thus, plaintiff has conceded that the action was not a material adverse action or a material adverse employment action.

**Denial of Overtime October 2001**

Defendant offered the following as its legitimate non-discriminatory reason for Mr. West not getting overtime on October 27 and 28, 2001:  that an emergency situation had arisen and Mr. Currie directed Mr. Miller to contact Mr. Cook at home to call in as many people as possible to return rental trucks and do other tasks.  Mr. Cook did not have the overtime desired list at home, but he did call each person on his day planner and noted on the planner whether he was able to contact that person or left a message.  Cook called plaintiff but received no answer. SJM at p. 33-34.  James Smith was at Mr. Cook's house while Cook was making the calls to mechanics, and he heard Mr. Cook call plaintiff.  Smith: Admin Tr. at p. 1612-1613.  Plaintiff admits that although Mr. Cook had his home telephone number, he did not have plaintiff's emergency pager

number nor his cell phone number.  West Depo. at 112, 116-120.

Plaintiff does not cite to any evidence rebutting the facts set forth above.  Opposition at p 51.  Therefore, plaintiff has not rebutted defendant's legitimate non-discriminatory reason for plaintiff not getting overtime on the days in question in October.

### Hostile Work Environment

In his Opposition plaintiff limits his claim of hostile work environment to the period concerning Mr. Cook's request for documentation concerning plaintiff's claim for dependant care.  The period began on June18,  to June 21, 2001, and culminated on June 25, when Mr. Cook sent plaintiff home.  Opposition at p. 40-42.  Plaintiff contends that the hostile work environment was created by harassment which was racially motivated.  *Id.* at p. 42.   The incidents of those days are recounted in defendant's SJM at p. 28-32 and SMF 12-25.

To make out a case of hostile work environment based on racial discrimination,  plaintiff must show a workplace "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of employment and create an abusive environment.  *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993).   Here, plaintiff has shown no intimidation, ridicule or insult relating to his race.  Plaintiff has offered no proof of discriminatory overtones such as racial slurs or status slurs during the period in question.  See *Rowland v. Walker,*  245 F.Supp.2d 136, 143 (D.D.C. 2003); *Alfano v. Costello,* 294 F.3d 365, 377-378 (2nd Cir.2002).  The only alleged evidence of  racial animus on the part of Mr. Cook offered by plaintiff was the inadmissible hearsay statement of Ms. Childs discussed previously.

Plaintiff attempts to impute Mr. Currie's alleged racial remarks to Mr. Cook's actions. However, plaintiff's allegations that Mr. Currie had any involvement in the dispute between

plaintiff and Mr. Cook prior to June 25, is totally unsupported by the record.  Plaintiff claims that "Currie admits that he was well aware of Cook's 'technique' to 'instigate' West", (citing to fn 66) and that "Cook similarly admits that he discussed all of these activities with Currie and that Currie provided him advice" (citing to footnote 69).  Opposition at p. 10.  However, the citation in footnote 66:  Ex 17, Currie Vol. 9, p. 2533-34, deals with 204B selections and has nothing to do with the issue at hand.  Footnote 67 cites to Ex.4 [Cook tr] at p1126-28 and 1144-46.  Pages 1122-1128 attached hereto show that Mr. Currie's involvement included asking Cook if he had called labor and telling him to follow labor's instructions; that  Mr. Cook testified that the idea to take the employee's badge was his, not Mr. Currie's.  Pages 1144-1146 show only that Mr. Currie concurred in Cook's letter of suspension.  Footnote 67 also cites to Ex 17 [Currie Tr] at p. 2660-65.  That transcript shows that Mr. Currie concurred in the subsequent letters of suspension and that "My involvement with that time period is one phone call where I make reference to making sure he does what he's doing in writing and seek advice from the labor rep.  My understanding is this has already gone on for several days before I'm contacted, so I can't see how a scheme is developed after the fact."  *Id.* at p. 2665:16-21.

Plaintiff simply has presented no evidence of a hostile work environment based on race.  "In deciding whether there is a genuine issue of material fact, the court must assume the truth of all statements proffered by the non-movant except for conclusory allegations lacking any factual basis in the record." *Hussain v. Nicholson,* 435 F.3d 359 (.D.C.Cir.2006) (*citing Dist. Intown Props. Ltd. P'ship v. District of Columbia*, 198 F.3d 874, 878 (D.C.Cir.1999) .

### CONCLUSION

Therefore, defendant's motion for summary judgment should be granted.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


_____
RUDOLPH  CONTRERAS, D.C. Bar #  434122
Assistant United States Attorney


_____
RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970