FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2000 AUG 10  P 3: 06

CLERK'S OFFICE
AT BALTIMORE
BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KEVIN D. WEST          :

v.                     :      Civil Action WMN-99-840

                       :

WILLIAM J. HENDERSON, et al.    :

**MEMORANDUM**

Before the Court is Defendant's Motion for Summary Judgment, Paper No. 45. Plaintiff has opposed the motion. Upon review of the pleadings and applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Defendant's motion will be granted.

Plaintiff, an African American, is employed by the United States Postal Service as a level 6 automotive mechanic at the Largo II Vehicle Maintenence Facility (VMF). He brings this action against the Postmaster General[1] alleging that he was discriminated against because of his race and furthermore, was retaliated against on account of his filing charges with the EEOC. Plaintiff states that he has filed at least 10 EEOC charges, the first in September of 1993.

As a preliminary matter, the Court notes that there is some confusion as to the proper scope of this action. In his

---

[1] Plaintiff named 33 different employees of the Postal Service as defendants in this action. The Court dismissed the remaining defendants in an order dated August 12, 1999 concluding that the only proper party to this suit is the Postmaster General.

opposition to the motion, Plaintiff discusses a variety of actions on the part of his supervisors that he believes to be discriminatory or retaliatory. These actions were the subject of Plaintiff's 10 separate EEOC charges. From the record before the Court, it is not clear what the status of each of these various charges might be: which have been settled, which are still pending, and for which a right to sue letter may have been issued.

The Court construes the present action as limited to the allegations raised by Plaintiff in Agency Case No. 4K-200-1163-96. That is the only administrative proceeding from which Plaintiff has supplied a right to sue notice and, therefore, these are the only issues for which it is clear that they remain unresolved and for which Plaintiff has exhausted his adminstrative remedies. While Plaintiff has failed to provide the Court with a copy of his formal charging document that initiated that proceeding, the Court concludes from the final agency decision issued June 9, 1998 that this particular EEOC charge related to Plaintiff's belief that he was denied opportunities for "supervisory training." Plaintiff's summary of the substance of Agency Case No. 4K-200-1163-96 contained in his complaint, Complaint at 2-3, is consistent with this conclusion. The Court finds no support, however, for Plaintiff's claims.

Plaintiff does not dispute that when he inquired about supervisor training opportunities, his supervisor referred him to Postal Service's "Associate Supervisor's Program," a training program designed to provide qualified individuals within the Postal Service with the general skills required to obtain a supervisory position. Employees who successfully complete the program are given preferential consideration for future openings in supervisory positions. After inquiring about the Program, however, Plaintiff was informed that, at present, the program was not open to VMF employees, although it would be at some time in the near future.

Plaintiff does not allege that any other VMF employee was admitted into the Associate Supervisor's Program, or any other formal training program, to his exclusion. Instead, Plaintiff alleges that he was denied informal supervisor training opportunities when he was denied the opportunity to serve as the "acting supervisor" on several occasions when his actual supervisor was absent from the Largo II facility.

The record does not support Plaintiff's contention that the position of acting supervisor was considered by the Postal Service to be a supervisory training opportunity. Defendant has offered the affidavits of two VMF managers, David Cook and John Wintrich, in which they explain that the acting supervisor simply provides coverage to assure that a facility remains operational

in the absence of the regular supervisor. No training is offered in conjunction with the assignment. Wintrich Aff. at 1. Plaintiff offers no evidence that this is a "training assignment" other than his own subjective belief.

Even if the acting supervisor position were considered to be a training assignment, Plaintiff offers no evidence to support his conclusion that the position was assigned in a discriminatory fashion. Defendant explains that the most qualified individual at a given facility, typically a level seven mechanic, will be assigned the acting supervisor position. Plaintiff acknowledges that at the Largo II facility where he was employed, the assignment was rotated between Michael Scott and Frank Green, both level seven mechanics. Plaintiff is a level six, not a level seven mechanic. Further undermining Plaintiff's claim, Green is African American and Scott, who is white, is only chosen for the assignment when Green is unavailable.[2]

Under Rule 56 of the Federal Rules of Civil Procedure, a court must enter summary judgment against any party who fails to

---

[2] Plaintiff avers that the assignment of an African American to the acting supervisor position was "obviously . . . an attempt to cover up their reprisal against me." Complaint at 3. As Defendant observes, this argument is "nonsensical."

The Court notes in reviewing the material submitted by Plaintiff that in a previous EEOC charge, Agency Case No. 4-D-2001296-94, Plaintiff alleged that the placement of another African American, Jesse Holliday, into the acting supervisor position was another act of discrimination against Plaintiff.

4

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celetex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In the absence of any direct evidence of racial discrimination, Plaintiff bears the initial burden under McDonnell Douglas v. Green, 411 U.S. 792 (1973), and its progeny to establish a prima facie case by demonstrating that: 1) Plaintiff is a member of a protected class; 2) there was a position or employment opportunity for which Plaintiff applied; 3) he was qualified for the position; and 4) he was denied the position or opportunity under circumstances giving rise to an inference of unlawful discrimination. See Evans v. Technologies. Applications and Serv., Co., 80 F.3d 954, 959-60 (4th Cir. 1996). At the outset, there is no clear demonstration that there was a "training" position for which Plaintiff could apply. Regardless, given that the position that Plaintiff believes to be a training position is routinely given to an African American, the circumstances of denying it to Plaintiff do not give rise to an inference of discrimination.

To establish a claim of retaliation, Plaintiff bears the burden of showing that: 1) he engaged in protected activity; 2) that his employer took an adverse employment action against Plaintiff; and 3) a causal connection existed between the protected activity and the adverse action. Carter v. Ball, 33

5

F.3d 450, 460 (4th Cir. 1994). Here, Plaintiff fails to proffer any evidence to support a finding of the third element. Aside from Plaintiff's own subjective opinion that he was not selected for the acting supervisor's position because of prior EEOC activity, Plaintiff presents no evidence of same. In fact, the evidence shows that the temporary assignments were simply given to those better qualified than Plaintiff, consistent with Postal Service policy.

For these reasons, Defendant's motion will be granted. A separate order will issue.

William M. Nickerson
United States District Judge

Dated: August 10, 2000