UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**KEVIN D. WEST,**                  )
                                    )
    Plaintiff,          )
                                    )
  v.                           )   Civil Action No.  05-1339 (JR)
                                    )
**JOHN E. POTTER,**                 )
**POSTMASTER GENERAL**              )
**U.S. POSTAL SERVICE**             )
                                    )
    Defendant.          )
_____)

**PLAINTIFF KEVIN WEST'S SUPPLEMENTAL OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Teresa W. Murray
**THE LAW OFFICE OF T.W. MURRAY**
7474 Greenway Center Drive
Suite 820
Greenbelt, Maryland 20770
Phone: 301-982-2005
Fax: 301-982-0004

Counsel for the Plaintiff

Date: September 17, 2007

# TABLE OF CONTENTS
# FOR SUPPLEMENTAL OPPOSITION[1]

IV.    LEGAL ARGUMENT

  C.  ADVERSE TREATMENT, CAUSAL LINKS AND INFERENCES OF DISCRIMINATION
      1. CONTINUAL DENIAL OF ACTING 204B SUPERVISOR DETAILS AND SUPERVISORY TRAINING ................................................................................................................ 1
         a.  The USPS' Rationale for Denying West Supervisor Opportunities is Pretext.
         b.  Supervisor Opportunities: Retaliation - Causal Link
         c.  Supervisor Opportunities: Race Discrimination ........................................................ 4
            1)  *Mechanics* ................................................................................................................ 4
            2)  *John P. Miller, III* .................................................................................................. 5
            3)  *Continuing Violation*

      2. ALONG WITH DENYING WEST SUPERVISORY OPPORTUNITIES, THE USPS DENIED WEST HIGHER-LEVEL CRAFT TEMPORARY AND PERMANENT PROMOTIONS
         a.  Higher-Level Craft Details
         b.  Level 8 Duties
         c.  Denial of Permanent Level 8 Position, Vacancy 03-43 ............................................ 5
      3. HARASSMENT/HOSTILE WORK ENVIRONMENT ................................................................ 6

V.  CONCLUSION ............................................................................................................................ 7

---

[1] Those sections of Plaintiff's Opposition that are supplemented herein are listed in this Table of Contents for the Supplemental Opposition. The sections of the Table of Contents coincide with those set forth in Plaintiff's original Opposition.

i

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**KEVIN D. WEST,**                  )
                                    )
      Plaintiff,              )
                                    )
  v.                               )   Civil Action No.  05-1339 (JR)
                                    )
**JOHN E. POTTER,**                 )
**POSTMASTER GENERAL**              )
**U.S. POSTAL SERVICE**             )
                                    )
      Defendant.              )
_____)

**PLAINTIFF KEVIN WEST'S OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Kevin D. West, by and through undersigned counsel, hereby supplements his Opposition to the United States Postal Service (hereinafter "Defendant" "USPS" or "Agency")'s Motion for Summary Judgment. Based on additional evidence uncovered during the extended discovery period concerning the Agency's continual denial of supervisory temporary promotions and training as well as a higher-level craft promotion to Mr. West, a genuine dispute as to material facts preclude summary judgment and a jury must decide this case – once and for all.

          IV.    LEGAL ARGUMENT

C.  ADVERSE TREATMENT, CAUSAL LINKS AND INFERENCES OF DISCRIMINATION

**1. CONTINUAL DENIAL OF ACTING 204B SUPERVISOR DETAILS AND SUPERVISORY TRAINING**

At the Postal Service's Vehicle Maintenance Facility (VMF) automotive mechanics and technicians are periodically given opportunities to "act" as Supervisor in a temporary capacity, called a 204B Acting Supervisor. These opportunities provide on-the-job training and valuable work experience that the Postal Service considers determine one's qualification for permanent

Supervisor opportunities. More, when an employee serves as a 204B Acting Supervisor, s/he receives an increase in salary for the time s/he serves in the position. (Ex. 1, Deposition of David Cook, hereafter "Cook Deposition" at 7; Ex. 2, Deposition of Frank Green (hereafter "Green Deposition" at 5-7). At the Southern Maryland VMF, where Mr. West works, Manager David Cook selects the employees who serve as a 204B Acting Supervisor. (Ex. 1, Cook Depo. at 8). Although permanent supervisors may make recommendations for whom they believe should be granted the opportunity, during his absence, Cook ultimately makes the selection. (Ex. 2, Green Depo. at 6-7).

Cook testified during his recent deposition that he bases his selection decision "on the need in -- whichever building has the need for a 204B, [he] would select either an individual that has -- has had past performance in that position or select a senior tech to perform in that position." (Ex. 1, Cook Depo. at 8-9). Yet, Cook consistently deviates from this method of selecting a 204B candidate, when an opportunity comes open for Mr. West.

First, Cook routinely selects a junior Caucasian mechanic to fill a 204B vacancy, rather than offer the opportunity to Mr. West. Between February 2001 and July 2001, for instance, Cook temporarily promoted John Bowser to 204B. (Ex. 3, 204B Chart). And between February 2001 and June 2001, Cook selected Thomas Buchanan to serve as 204B supervisor. (Id.). Cook also selected David Lowe for a 204B Acting Supervisor temporary promotion for 1-2 years, despite his lack of skill and experience. (Ex. 2, Green Depo. at 40-45). More, from May 2001 until Fall 2003, the Postal Service retained John P. Miller in a 204B Acting Supervisor capacity. All of these individuals are junior to Mr. West and all of them are Caucasian. In stark contrast, at least two other African American mechanics, in addition to Mr. West, had been consistently rejected in their efforts to become 204B Acting Supervisor. Despite several recommendations by

2

their Supervisor, Frank Green, Cook has refused to permit Chris Simmons and Roland Johnson to act as supervisor. (Ex. 2, Green Depo. at 17-19). Mr. West has never been selected to act as a 204B supervisor, despite his qualifications, (Ex. 2, Green Depo. at 20). Cooks preferential treatment of Caucasian mechanics to the disadvantage of, more experienced African-American mechanics constitutes powerful and persuasive proof of race-based disparate treatment.

Second, USPS management may, and indeed, has in the past, temporarily promoted mechanics from one duty location to another duty location. During his deposition, Supervisor Green testified that Postal management frequently transfers a mechanic to a different garage to serve in a temporary, acting supervisory job. (Ex. 2, Green Depo. at 8-17). The USPS has steadfastly refused to transfer West to any other VMF location for a 204B detail.

Third, the USPS has admittedly instituted a policy to block Mr. West's advancement into Postal Service management. Timothy Currie directed his then subordinate, David Cook to prohibit Mr. West from receiving higher-level promotions. During David Cook's deposition, Cook initially failed to "recall" any such ban implemented by Mr. Currie. Interestingly, however, Cook changed his tune when confronted with Currie's sworn testimony. Currie testified at an administrative hearing that he informed Cook that he "did not want Mr. West put in charge of the shift until a further date" and expressly stated that he did not Mr. West to "represent[] management of the United States Postal Service." (Ex. 1, Cook Depo. at 13-15). After being read Currie's testimony during his deposition, Cook remarkably remembered Currie's directive to preclude Mr. West's upward mobility. (Id.) Currie, and now Cook's admission, that Currie instituted a ban on Mr. West's higher-level opportunities is consistent with Mr. West's account that Currie threatened him with no promotion potential, when West – a "problem" employee with an "EEO history" – refused to resign. Given the genuine disputes as

3

to credibility and the real motive behind the imposition of a glass ceiling for Mr. West, summary judgment cannot properly be granted and a jury must ultimately decide this issue.[2]

### c. Supervisor Opportunities: Race Discrimination

1) <u>Mechanics</u>

Over and above those temporary 204B promotions given to junior Caucasian mechanics that Plaintiff identified in his Opposition, Plaintiff has learned of additional 204B details that went to less-experienced, junior White mechanics. On February 21-24, 2006, February 28 – March 6, 2006, March 21, 2006, and April 20, 2006, the Agency granted John Bowser - a less-experienced, junior mechanic to Mr. West, acting supervisor details, without affording these opportunities to West. The USPS also detailed David Lowe, who is another Caucasian junior mechanic, rather than Mr. West, to acting 204B supervisor from January 2006 until some unknown time this year.[3]

2) <u>John P. Miller, III</u>

Recently, the Postal Service transferred now-Supervisor, John P. Miller to the position of Supervisor in charge of the Largo II facility. (Ex. 1, Cook Depo. at 74-75). Over the last five years, Mr. Miller has gone from a Level 7 body and fender repairman, to 204B Acting Supervisor, to permanent Supervisor, and presently serves as Largo II Supervisor where he manages automotive mechanics. All the while, Mr. Miller has had a deplorable attendance

---

[2] Cook similarly had difficulty "recalling" that Mr. West had been requesting supervisory training since May 1999. During his deposition, he admitted that the Agency has never afforded Mr. West this training, but claimed that he did not recall Mr. West ever requesting it. (Ex. 1, Cook Depo. at 27-29). Again, once Cook was confronted with a written memo from West requesting the classroom training dated May of 1999, and Cook's written response promising the training, amazingly Cook's memory was restored. (Id.)

[3] Plaintiff recently discovered that his Motion to Amend, filed on December 22, 2006, had not been electronically docketed in this matter. After Plaintiff's counsel's retraced the filing steps, she discovered an email error message that the December 22nd email that contained the Motion to Amend was not delivered to the clerk's office email. (Ex. 4, See Date of initial transmission 12/22/06). In the Motion to Amend, West sought to add the dates of Messrs. Bowser and Lowe's 204B promotions in 2006. Plaintiff therefore seeks leave of Court to re-file this Motion with a filing date of his initial effort, or in the alternative, seeks a determination by the Court that Mr. West's denial of supervisory opportunities claim is a continuing violation from 2001 to present.

4

record, documented alcohol abuse that has affected his job attendance, revocation of his driver's license and no mechanical skills or abilities to speak of. (Ex. 2, Green Depo. at 33-34). Comparing this to the Mr. West's work experience over this same period, the preferential treatment is evident. Mr. West possesses a stellar attendance record, exemplary performance history and superior mechanical abilities and work experience. Yet, he has remained a Level 7 automotive mechanic from 2002 to present. These glaring differences in treatment could lead a reasonable juror to conclude that the Postal Service VMF doles out its advancement opportunities in a racially discriminatory matter; thus, summary judgment should not be granted.

3) <u>Continuing Violation</u>

Mr. West's claims of denial of supervisory opportunities, however, do not solely rest on these discrete dates and times, of which Mr. West is currently aware. Since the Postal Service has instituted an ongoing prohibition against Mr. West receiving managerial promotions, Mr. West has maintained, since his initial pleadings, that the denial of acting supervisor (204B) temporary promotions and training has been a continuing violation.

**2. ALONG WITH DENYING WEST SUPERVISORY OPPORTUNITIES, THE USPS DENIED WEST HIGHER-LEVEL CRAFT TEMPORARY AND PERMANENT PROMOTIONS**

**c. Denial of Permanent Level 8 Position, Vacancy 03-43**

Both Cook and Green confirm that Level 8 Automotive Technicians must be able to perform preventative maintenance inspections and service all Postal Service vehicles, including tractors, trailers and 5-ton vehicles and their systems, including air-brake systems. (Ex. 1, Cook Depo. at 39-40; Ex. 2, Green Depo. at 30-31). The ability to inspect and service these vehicles and systems, particularly in complex repairs, is critical to one's performance of Level 8 duties and sets Level 8 mechanics apart from lower-level mechanics. (Id.) Yet, when Mr. West applied

5

for the Level 8 position under vacancy announcement 03-43, he was rejected in favor of a far less-experienced Caucasian mechanic, Stephen Clark.

According to Supervisor Green's deposition testimony, he and Mr. Cook reviewed each of the four applicant's 991 application for the Level 8 position. He testified that given the work experience and mechanical abilities of the applicants, Mr. West was ranked best qualified of all the candidates. (Ex. 2, Green Depo. at 22-29). Mr. Green stated that he and Cook made note that Mr. Clark lacked the necessary skills and experience on tractors, trailers, 5-ton and 9-ton engine vehicles to qualify for the Level 8 job. (Id. at 22-29 31; Ex. 5, 991 Applications of West and Clark). Nonetheless, Cook later changed his selection to Mr. Clark. Cook's selection is at odds with his own sworn deposition testimony that Clark lacked the knowledge and experience to service tractors, trailers and 5 and 9-ton engines with air-brake systems. (Ex. 1, Cook Depo. at 53). Further, and notably, Cook denies that Green ever assisted him in the review and rating of the 991 applications. (Ex. 1, Cook Depo. at 42). Hence, there is a dispute over the material fact whether West was initially rated best qualified but later eliminated for consideration in favor of a White employee. Summary judgment on the denial of Level 8 promotion, therefore, should not be granted.

### 3. HARASSMENT/HOSTILE WORK ENVIRONMENT

Finally, Supervisor Green offers additional evidence, which supports Mr. West's claims of a racially hostile work environment. Mr. Green testified that based on his vast experience as a USPS VMF employee that the Agency does not offer the same promotional opportunities to African Americans as they do Caucasians. Green revealed that "most African Americans are passed over" and provided examples of instances when acts occurred. (Ex. 2, Green Depo. at 32-

6

35).[4]  He further revealed that Postal Service management is well aware of these preferential practices, (Id.); yet, no action has been taken by the Agency to correct these unlawful disparities. Testimony from the Agency's own supervisor about its discriminatory practices is precisely the kind of evidence that must be offered and considered by the jury in determining if Title VII violations have occurred.

## V.  CONCLUSION

Due to the additional material-fact disputes presented here-many of which bear directly on credibility and the motive, the Agency's Motion for Summary Judgment must be denied in its entirety.

Respectfully submitted,

September 17, 2007                     By:_____/s/_____
                                       Teresa W. Murray
                                       **THE LAW OFFICE OF T.W. MURRAY**
                                       7474 Greenway Center Dr. Suite 820
                                       Greenbelt, MD 20770
                                       Phone: 301 982-2005
                                       Fax: 301 982-0004

---

[4] Green is not alone.  Chris Simmons similarly believes the Postal Service VMF offers preferential treatment in promotions to Caucasian employees, to the detriment of African Americans. Opp. Ex. 64 ¶ 2.

7