UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KEVIN D. WEST,                          :
                                        :
       Plaintiff,                       :
                                        :
     v.                                 :  Civil Action No. 05-1339 (JR)
                                        :
JOHN E. POTTER, Postmaster              :
General, U.S. Postal Service,           :
                                        :
       Defendant.                       :

**MEMORANDUM ORDER**

Plaintiff Kevin West claims that his employer, the United States Postal Service (USPS), violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., by discriminating against him on the basis of his race and then retaliating against him when he complained about this discrimination.  West also claims that he has been subjected to a hostile work environment on the basis of both his race and his protected activity.  Now before the court is the defendant's motion for summary judgment, which will be granted as to plaintiff's hostile work environment claims but must be denied as to the discrimination and retaliation claims.

**Background**

Kevin West is employed as a Level 7 automotive mechanic. He has had a contentious relationship with the management at the Largo I, Southern Maryland Vehicle Maintenance Facility, the garage where he works in Capitol Heights, Maryland.

This is the second time he has complained to this court. The first complaint, Civil Action No. 01-0746, ended in summary judgment for the defendant, an outcome that was upheld on appeal. West proceeded <u>pro se</u> in that suit, alleging, then as now, a wide-ranging campaign of racial discrimination and retaliation against him.  His 2001 case, however, was limited to two discrete incidents.  This time, his complaint encompasses a welter of allegations underlying nine separate EEO complaints he filed between 2001 and 2005.

    Counts II and IV of West's complaint allege that he has been subjected to a hostile work environment on the basis of his race and in retaliation for his protected activity.  In support of these claims, West alleges that his supervisors at the Vehicle Maintenance Facility have: 1) excessively and improperly disciplined him; 2) subjected him to physical harassment and intimidation; 3) repeatedly denied his leave requests and refused on two occasions to grant his requests for a revised schedule; and 4) refused to grant him job promotions in addition to denying him access to higher craft and supervisory details and supervisory training.

## **Analysis**

    "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and

create an abusive working environment, Title VII is violated." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted).  For a hostile work environment claim to lie, the plaintiff must put forward evidence of conduct that is both subjectively and objectively offensive. In other words, it is not enough that the conduct in question offends the plaintiff; the conduct must also be "severe or pervasive enough" to create "an environment that a reasonable person would find hostile or abusive." Id.  To determine whether a work environment is sufficiently hostile or abusive to support a claim, the court must look to "'all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998) (quoting Harris, 510 U.S. at 23).

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "While summary judgment must be approached with special caution in discrimination cases, a plaintiff is not relieved of [his] obligation to support [his] allegations by affidavits or other competent evidence showing that there is a genuine issue

for trial." Alexander v. Tomlinson, No. 05-0706, 2007 U.S. Dist. LEXIS 59641 at * 13 (D.D.C. Aug. 15, 2007) (citation omitted, alteration in original). Considering the totality of the evidence proffered, and drawing all inferences in favor of West as the non-movant for summary judgment, no reasonable jury could conclude that he has been subjected to an actionable hostile work environment.

West's hostile environment claims fail as a matter of law for two reasons.

First, many of the events that West complains of – the denied promotions, opportunities for supervisory training, and supervisory details – are the same discrete events pled under Counts I and III of West's complaint, respectively for race discrimination and retaliation. West cannot "bootstrap" these discrete incidents into his broader claims for hostile work environment. Keeley v. Small, 391 F. Supp. 2d 30, 52 (D.D.C. 2005). "[C]obbling together a number of discrete, disparate acts" does not create an actionable hostile work environment. Rattigan v. Gonzales, No. 04-2009, 2007 U.S. Dist. LEXIS 39227 (D.D.C. May 31, 2007). This is so because "[d]iscrete acts constituting discrimination or retaliation claims . . . are different in kind from a hostile work environment claim that must be based on severe and pervasive discriminatory intimidation or insult." Lester v. Natsios, 290 F. Supp. 2d 11, 33 (D.D.C.

2003). Instead, a hostile work environment claim under Title VII must be based on "'one unlawful employment practice' of pervasive, insulting, discriminatory conduct that makes the plaintiff's day-to-day work environment severely 'abusive.'" Rattigan, 2007 U.S. Dist. LEXIS 39227 at *67 (quoting AMTRAK v. Morgan, 536 U.S. 101, 117 (2002)).

Second, the remainder of the incidents that West complains of do not add up to a workplace environment permeated with actionable hostility. This is true with respect to the disciplinary actions, denials of leave and other schedule changes, and an incident that West describes as involving physical harassment and intimidation.

The relevant facts surrounding these events[1] are as follows:

- June 8, 2001, Letter of Warning. West received a letter of warning from a supervisor, David Cook, after West failed to report to work on May 28, 2001 (Memorial Day), and May 29, 2001. All employees who had not requested at least 24 hours of leave were notified in advance that they would be required to work over the holiday. West was aware of this policy and had not requested at least 24 hours of leave. [Dkt. # 22, Ex. 24].

- June 18, 2001, Alleged Harassment and Intimidation. On June 17, 2001, West was scheduled by the USPS to work overtime at another Vehicle Maintenance Facility. West's infant daughter had a high fever, however, so West called in to request dependent care leave. [Dkt. # 33, Ex. 11]. The next day, Cook requested documentation in support of West's absence. West told Cook that he had nothing to say to him

---

[1] Plaintiff's assertions of fact are taken as true for the purposes of this decision.

and stated that he would respond to any request that was made in writing. [Dkt. # 33, Ex. 30]. At some point during this brief conversation, Cook placed both of his hands on West's shoulders. At that point West yelled, "Don't touch me." Id. West has stated that this touching lasted for less than two seconds. [Dkt. # 22, Ex. 33, p. 571]. At this point, Cook backed up and West walked away. At the start of work the next day, Cook held on to West's timecard. Before Cook would allow West to clock in, Cook asked West to acknowledge the instruction he had given on the previous day regarding documentation for the dependent care leave. West said that he didn't know what Cook was talking about. West then voluntarily walked off the job. [Dkt. # 22, Ex. 28, Doc. 14]. This scenario repeated itself on the next day (June 21). On June 22, 2001, West called in sick and was given leave. West reported back to work on Monday, June 25. Cook allowed West to clock in but asked to speak to him in his office. Cook again asked for documentation regarding West's June 17 absence. The stand-off continued as West repeated his demand that Cook put this request into writing. At that point, Cook verbally suspended West, called the postal police and had them take West's badge and identification as they escorted him out of the building. On June 26, Cook had a letter delivered to West's home instructing him to report back to work. [Dkt # 22, Ex. 3]. West, however, had left town on June 25 and did not return to work for some time. On July 6, Cook again wrote to West, stating that he had been absent from work since June 26 and needed to provide documentation to support his absence. West returned to work on July 9, and provided a statement explaining that he had been taking care of personal business on June 27-29. [Dkt. # 22, Ex. 28, Docs. 25-26].

- July 17, 2001, 7-day suspension. West was suspended for failing to maintain a regular work schedule after his absences on June 17, June 22, June 27-29, and July 6. West contested the suspension through the union grievance process and it was never put into effect. [Dkt. # 22, Ex. 24; Dkt. # 22, Ex. 28, Doc. 29].

- August 24, 2001, 7-day suspension. West was again suspended for failure to maintain a regular work schedule. This suspension was also rescinded. [Dkt. # 22, Ex. 28, Docs. 28, 30-31].

- October 10, 2001, Denial of Leave Request. On this date, West submitted a leave request for the Thanksgiving holiday weekend. This request was denied because West was had only

requested 16 hours of leave. West's supervisor informed him that to be exempt from any mandatory holiday work, he would have to request at least 24 hours of leave. Later on the same day, West resubmitted a leave slip requesting 24 hours' leave. This request was approved. [Dkt. # 22, Ex. 18].

- November 2001, Denial of Leave Request. USPS management determined that all employees who had not requested more than 24 hours of leave would be required to work during the Veteran's Day holiday period. In advance of the holiday, West submitted a letter to his supervisor explaining that he is a veteran and stating that he did not plan to work over the holiday. West received a letter in response explaining that unless he had requested at least 24 hours of leave, he would be required to work. West reported to work as required. [Dkt. # 22, Ex. 24].

- January 28, 2002, 7-day suspension. West was suspended in response to his failure to report for work on January 19 and January 22, 2002. All employees who had not requested at least 24 hours of leave were informed that they would have to work over the Martin Luther King, Jr. holiday. West was notified of the policy and had not requested at least 24 hours of leave. [Dkt. # 22, Ex. 18; Dkt. # 33, Ex. 11].

- February 11, 2002, Denial of Revised Schedule. On this date, West was more than thirty minutes late to work. When an employee is less than thirty minutes late to work, his supervisor may grant a "revised schedule." When granted, a revised schedule changes the start time for the employee's work day, allowing him to put in a full eight-hour day instead of using annual leave to make up the time missed due to lateness. West was denied a revised schedule and had to use his leave time instead. [Dkt. # 22, Ex 24, Doc. 2; Dkt. # 33, Ex. 41].

- July 14, 2002, 14-day suspension. West had requested vacation time over the July 4th holiday but his request was denied because other mechanics had already been given time off during the same period. On June 28, 2002, West called into work and requested annual emergency leave, saying that his mother was ill and he was going to visit her in Tennessee. West called again on July 1 to explain that although his mother was feeling better, he would not be returning to work for the rest of the week because of car trouble and the need to wait for an ordered part. West returned to work on July 8, 2002, and presented to his supervisors a letter from his mother explaining that West

>   had visited her during her recent illness.  West's absence prior to July 1 was excused in light of this note.  West produced no receipt or other documentation regarding his car repairs and so was suspended for being absent without leave from July 2-5, 2002. [Dkt. # 22, Ex. 18].

- August 22, 2002, Emergency Suspension.  One of West's job duties, referred to as an "R & R," involves removing, repairing and replacing large truck engines.  On August 9, 2002, West raised a safety concern regarding the need for an engine stand to perform a particular R & R.  West's supervisor contacted outside contractors who perform similar work and inquired about what type of equipment they use.  After the contractor sent over an engine stand, USPS management was satisfied that it had the proper equipment on hand.  On August 22, 2002, West was instructed to go forward with the R & R.  West repeatedly refused, saying that he still felt that it was unsafe.  USPS management considered this to be insubordination and placed West in non-duty, non-pay status for the remainder of the day.  [Dkt. # 22, Ex. 18; Dkt. # 33, Ex. 46].

- January 25, 2005, Denial of Revised Schedule.  West was more than thirty minutes late to work.  He requested and was denied a revised schedule.  West grieved the denial and eventually had the annual leave that he had been forced to use restored.  [Dkt. # 33, Ex. 16].

A reasonable jury could not find that the events listed above are so severe or pervasive as to have altered "the conditions of [West's] employment".  Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 78 (1998) (internal quotation omitted).  Instead of putting forward evidence of the sort of extreme conduct necessary to support a hostile work environment claim, much of the evidence proffered merely shows that West was disciplined on several occasions in response to his repeated failure to follow USPS rules regarding leave and attendance.  The USPS's insistence that West abide by its policies and procedures for taking leave in no

way creates "an objectively hostile or abusive work environment." Id. at 81. Likewise, the single, fleeting incident of physical touching that West alleges is hardly so severe as to cause West's day-to-day workplace to be pervaded by intimidation or insult. See Park v. Howard Univ., 71 F.3d 904, 906 (D.C. Cir. 1995) ("casual or isolated manifestations of a discriminatory environment, such as a few ethnic or racial slurs, may not raise a cause of action") (quotation marks and citation omitted).

\*   \*   \*

Defendant's motion [27] for summary judgment is **granted as** to Counts II and IV. It appears from the record before me that Mr. West is a troubled and troublesome employee who walks through life with a chip on his shoulder. He will have difficulty convincing a jury that he has not brought his troubles upon himself. Because genuine issues of material fact remain as to claims stated in Counts I and III, however, summary judgment on those claims is **denied.** The Clerk is directed to set dates for a final pretrial conference and for trial. It is **SO ORDERED.**

JAMES ROBERTSON
United States District Judge