UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**KEVIN D. WEST,**                  )
                                    )
      Plaintiff,                 )
                                    )
      v.                         )   Civil Action No.  05-1339 (JR)
                                    )
**JOHN E. POTTER,**                 )
**POSTMASTER GENERAL**              )
**U.S. POSTAL SERVICE**             )
                                    )
      Defendant.                 )
_____)

## PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS FEES

### I.  SUMMARY OF THE CASE

Kevin West is an African-American man who has been employed by the U.S. Postal Service's Vehicle Maintenance Facility (VMF) as an automotive mechanic for nearly 18 years.  For the last eight of those years, he suffered numerous, adverse employment actions, at the hands of his Managers.  Because of the ongoing unlawful conduct, Mr. West filed several EEO complaints with the agency alleging race discrimination and retaliation for denial of permanent and temporary promotions, training, overtime, and disparate discipline and leave approval.  Direct and circumstantial evidence showed that Mr. West's race and complaints of discrimination were the motives behind these actions.

The VMF's former top manager, who was primarily responsible for the adverse actions, were Timothy Currie and his subordinate David Cook.  Mr. Currie openly regarded African-American postal employees as "lazy," "stupid," "stink" and vowed not to "stop until he gets [the VMF] lily white."  Other evidence demonstrated that Currie with

Cook's assistance, continuously refused Mr. West promotion and training, while affording promotions, training, leave and overtime to similarly-situated, employees who lacked the qualifications and seniority for the promotions. Mr. West's opposition to these unlawful actions in form of EEO complaints, resulted in Agency managers labeling him "problem" and a "troublemaker."

Hoping for expeditious relief, Mr. West elected an option available to federal employees by requesting a hearing before and Administrative Judge at the EEOC. This process encompassed extensive litigation, and culminated into 10 days of hearings. Notwithstanding the mountain of evidence of the agency officials' improper motives, the Administrative Judge rendered a finding of no discrimination or retaliation. Taking the next available option to obtain relief from his oppressive work environment, Mr. West timely filed a civil lawsuit in U.S. District Court for the District of Columbia. He alleged that the Postal Service violated Title VII's prohibition against race discrimination and retaliation. He further claimed that he suffered economic losses as well as emotional distress.

The Court conducted a week-long, jury trial from March 10-14, 2008. Evidence presented at trial showed that in June 2000, the Postal Service promoted Mr. Currie to Manager of its Vehicle Maintenance Facility in Washington D.C. and Maryland. This same Manager had previously been found to have retaliated against another employee in Illinois. Nonetheless, once Mr. Currie took over the Capitol District VMF, his superiors shared with him Mr. West's EEO history. The Manager then set up a face-to-face meeting with Mr. West and advised him that he had been told of his complaints, that he was specifically "brought to Washington D.C. to handle problems," and that Mr. West was a "problem." He asked Mr. West to resign, yet West refused. He also warned Mr. West

against filing EEO complaints as he had done previously. The manager then told West that he was banned from receiving any upward mobility opportunities (promotions) until the Manager decided otherwise. The Manager never lifted the ban.

Mr. West presented evidence at trial that continually thereafter, he was denied overtime, permanent promotion to Supervisor, temporary promotions to "Acting Supervisor," which were temporary, higher-paying assignments available to qualified mechanics to receive on-the-job training and supervisory work experience, which would better equip them to compete for permanent supervisor vacancies, when they become available. Mr. West also brought forth evidence that he was denied a promotion to Lead Automotive Technician, Level 8 position, which served as a working group leader over other automotive mechanics. Although Mr. West was well qualified for these promotional opportunities, Messrs. Currie and Cook precluded his advancement in reprisal for his complaints against the Agency.

On March 14, 2008, the jury found in favor of Kevin West on the basis of retaliation. Specifically, the jury found in favor of Mr. West on two claims: 1) retaliatory denial of 204B/Acting Supervisor temporary promotions; and 2) retaliatory failure to promote to Lead Automotive Mechanic, Level 8. The jury awarded Mr. West $90,000 in compensatory damages and based on that verdict, Judge Robertson entered a verdict against the Postal Service, accordingly with costs.

Hereafter, all references to this case intend to refer only to the retaliation claims upon which Mr. West prevailed. All of counsel's time reported herein relates directly to that claim and all time expended exclusively in support of the race discrimination claim has been excised.

## II. AVAILABILITY OF ATTORNEYS FEES

Under Title VII of the Civil Rights Act of 1964, as amended provides that in any action or proceeding under the statute, the court, in its discretion may allow the prevailing party "a reasonable attorney's fee" as part of costs. 42 U.S.C. § 2000e-5(k). Section 717(d) of the Act, makes the attorney fees provision applicable to civil actions, such as the instant action, brought by federal employees against an agency of the United States. 42 U.S.C. § 2000e-16(d).

Plaintiff has fully adjudicated his case before this Court and a jury has determined that he successfully proved two significant claims on the basis of retaliation, thus, Mr. West constitutes a prevailing party and should be awarded reasonable attorneys fees. According to Heard v. District of Columbia et al., No. Civ. A. 02-296 CCK, 2006 WL 2568013 at *6 (D.D.C. Sept. 5, 2006), for Mr. West qualifies as "a prevailing party" because he is "a civil rights plaintiff [who] obtain[ed] at least some relief on the merits of his claim." He has obtained an enforceable judgment against the Postal Service from whom attorneys' fees are sought. *Id*.

## III. THE COMPUTATION OF AN ATTORNEYS' FEE AWARD

The basic starting point for determining reasonable attorneys' fees is calculation of the "lodestar." See Henslev v. Eckerhart. 461 U.S. 424, 433 (1983). In arriving at a reasonable attorney fee, one must ascertain the number of hours reasonably expended by counsel and multiply it by a reasonable hourly rate. Covington v. District of Columbia, 57 F.3d 1101, 1107 (D.C. Cir. 1995).

After the lodestar calculation is performed, the resulting figure is presumptively reasonable and more than a mere "rough guess." "When . . . the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee" to which counsel is entitled. Blum v. Stetson. 465 U.S.

4

886, 897 (1984); see also City of Burlington v. Dague. 505 U.S. 557, 562 (1992) (there is a "strong presumption" that the lodestar represents a reasonable fee).

In figuring the value of attorneys' fees under civil rights fee shifting statutes such as this one, the actual amount of the damage award is not given substantial weight. See Furtado v. Bishop. 635 F.2d 915, 920 (1st Cir. 1980) (§ 1988 case). In providing for fee shifting under Title VII, the legislature determined to permit plaintiffs with "modest" cases the possibility of vindicating their rights - however "modest" their damages - to encourage such suits to be brought to enforce anti-discrimination laws for the public good.

### A.  Reasonable Hourly Rates

Reasonable hourly rates for the calculation of the lodestar are measured by prevailing market rates in the relevant community for attorneys of similar experience and skill. Save Our Cumberland Mountains v. Hodel. 857 F.2d 1516 (D.C. Cir. 1988) (en banc) ("SOCM"). The Circuit Court of Appeals in SOCM expressly embraced the matrix of "prevailing rates" adopted in 1983 by the district court in Laffey v. Northwest Airlines. 572 F.Supp. 354, 371 (D.D.C. 1983).  The Laffey matrix was instituted by United States Attorney's Office for the District of Columbia "as a concession by that office of what it will deem reasonable when a fee-shifting statute applies and its opponent prevails and seeks attorneys' fees . . . [which relieves] that office from having to litigate the market rate in the hundreds of fee-shifting cases that it defends. Adolph Coors Co. v. Truct Ins., Exch., 383 F.Supp.2d 93, 98 (D.D.C. 2005). See also, Pleasants v. Ridge. 424 F. Supp. 2d 67, 71 n.2 (D.D.C. 2006); Cobell v. Norton. 407 F. Supp. 2d 140, 170 (D.D.C. 2005); Muldrow v. Re-Direct. Inc.. 397 F. Supp. 1, 4 (D.D.C. 2005) ("Courts in this Circuit have often relied on the Laffey matrix, or an updated version thereof, to determine appropriate fee awards based on market rates, even where the Laffey rates are not the rates actually charged to the client") (citing cases); Falica v. Advance Tenant Servs., 384 F.

5

Supp. 2d 75, 78-79 (D.D.C. 2005).

The <u>Laffey</u> matrix is calculated for the twelve-month period beginning on June 1 and ending on May 31. An award of current rates is appropriate. <u>See, e.g.. Brown v. Pro Football. Inc..</u> 846 F. Supp. 108, 117 (D.D.C. 1994) (awarding current market rates to account for three-year delay), <u>rev'd on other grounds.</u> 50 F.3d 1041 (D.C. Cir. 1995); <u>see also Missouri v. Jenkins.</u> 491 U.S. 274, 283-84 (1989). Current rates are "appropriate" because "[payment today for services rendered long in the past deprives the eventual recipient of the value of the use of the money in the meantime." <u>Copeland v. Marshall.</u> 641 F.2d 880, 893 (D.C. Cir. 1980) (en banc); <u>accord </u>Pennsylvania v. Delaware Valley Citizen's Council for Clean Air. 483 U.S. 711,716(1987).

Here, the Defendant is an agency of the United States who is defended by the United States Attorneys Office. Thus, there can be no dispute that the Laffey Matrix applies and such rates are conceded by Defendant as reasonable. The rates are attached to this Motion as Exhibit ("Ex.") 1.

**B. Reasonable Hours Expended**

To compute the hours component of the lodestar, a fee applicant should reference contemporaneous time and expense records. <u>Webb v. Board of Educ..</u> 471 U.S. 234, 238 n.6 (1985); <u>Kaseman v. District of Columbia</u>, 329 F.Supp.2d 20, 26 (D.D.C. 2004). Counsel must, as undersigned counsel has, make a good-faith evaluation of the contemporaneous records and exclude hours which are excessive or unnecessary.

The determination whether time spent was "reasonably necessary" to the litigation "turns on so many subjective factors that it seldom should be the basis for reduction of an attorney's fee." <u>Jacouette v. Black Hawk County.</u> 710 F.2d 455, 460-462 (8th Cir. 1983). Accordingly, courts seek to avoid nit-picking disagreements, intransigence, and unreasonable

negotiating positions in construing fee petitions and accord deference to counsel's judgment on the amount of time they considered necessary to prepare and pursue the case. <u>Commonwealth of Puerto Rico v. Heckler.</u> 745 F.2d 709, 714 (D.C. Cir. 1984); <u>National Ass'n of Concerned Veterans v. Secretary of Defense.</u> 675 F.2d 1319, 1338 (D.C. Cir. 1982) (Tamm, J., concurring).

### IV. REASONABLE ATTORNEYS FEES INCURRED ON MR. WEST'S BEHALF

**A.   Plaintiff's Counsels' Reasonable Hourly Rates**

Plaintiff Kevin West was represented in this action by Teresa Murray, through immediately before and during trial when she was joined in by attorney N. Bernard Dorsey, Esq. to serve as co-counsel for the jury trial. At various times throughout the course of the case, the attorneys were assisted by paralegals, law clerks and first-year associate attorney.

As more thoroughly outlined in the declarations of Teresa Murray and N. Bernard Dorsey, both graduated from the George Washington University Law School in 1997 and have over 11 years of legal experience as practicing attorneys. See Declaration of Teresa W. Murray, Esq. attached as Ex. 2, and Declaration of N. Bernard Dorsey, Jr., Esq. attached as Ex. 3. Thus, according to the Laffey Matrix, the reasonable hourly rate for these attorneys is $410.00. A first-year associate, Donald Wine expended limited but necessary reasonable hours for Mr. West's cause and pursuant to the Laffey Matrix is computed at the reasonable hourly rate of $215.00. The paralegals and law clerk who assisted in the prosecution of Mr. West's case varied over the years; yet all contributed significant, professional work to advance Mr. West claims. Hence, under the Laffey Matrix, the reasonable hourly rate for their work is $130.00.

**B.   Reasonable Hours Expended on Mr. West's Behalf**

The numbers of hours claimed herein were reasonable and necessary to this litigation. The hours documented here began in early 2003; thus this case has been litigated for over five

years resulting a substantial number of reasonable attorney hours expended. For ease of presentation, Plaintiff has broken down the litigation into four phases: 1) Phase 1 – agency level processing of an EEO complaint in April and May 2003; 2) Phase II – all West claims at the EEOC Administrative level from May 2003 to August 2005; Phase III – civil action in this Court from September 2005 through the Judgment on March 14, 2008; and 4) Post-Judgment.

**Phase I**

Kevin West retained legal counsel in February 2003. At that time, Mr. West had several related EEO complaints, which had been investigated by his Defendant employer, U.S. Postal Service, that were pending before the U.S. Equal Employment Opportunity Commission. Phase I, however, encompasses another EEO complaint regarding similar claims against the Postal Service, including the denial of acting supervisor details and training, was in the Agency investigatory phase (referred to as "Charge 108"). During this phase, the following reasonable hours were expended:

Teresa W. Murray, Esq.                              _____ hours

**Phase II**

Once all of the claims were before the EEOC, it consolidated Mr. West's complaints into one case, for a hearing before an Administrative Judge. In the EEOC administrative process, there was far-reaching discovery and multiple motions filed principally due to the Agency's staunch refusal to produce relevant records pertaining to the detail assignments, work hours, higher-pay, supervisory training and attendance records of comparator employees. Mr. West was required to depose several witnesses due to the involvement of several managerial officials (Timothy Currie, his former subordinate and replacement Joseph King, David Cook, Diane Hatfield, and supervisors Greg Absher, Michael Scott, Frank Green, and John P. Miller). This proved the most prudent way to obtain information on reams of similarly-situated employees, rather than deposing each

8

employee individually. There were 10 days of hearings before the EEOC Administrative Judge: July 27,28, October 6-8, and November 15-19, 2004. The record, evidence, and witnesses were so extensive that the Administrative Judge Linda Kincaid, ordered multiple days of hearings. Virtually all of the complaints involved the improper conduct of Timothy Currie and David Cook. During this phase, the following reasonable hours were expended:

 Teresa W. Murray       _____ hours

 Paralegal          _____ hours

**Phase III**

Following the Judge's findings of no discrimination and the Postal Service's Final Agency Decision implementing the ALJ's decision, Mr. West filed the instant action in this Court. Due in large part to the massive work performed at the EEOC administrative level, significant discovery was not required in this part of the litigation. Defendant made an early attempt at dismissing this action under FRCP 12(b), however Plaintiff successfully opposed that motion. Limited discovery, with the Court's permission, was conducted and Defendant filed an extensive motion for summary judgment. Plaintiff filed a comprehensive opposition and appended voluminous exhibits in support. This resulted in the Court's denial of Defendant's motion for summary judgment on all claims, except Mr. West's hostile work environment claims. At trial, as lead counsel, I presented the opening statement and closing argument and examined the majority of the witnesses. All of the hours presented on billing sheets are accurate and all of the hours, after extensive reduction for claims upon Mr. West did not prevail, were reasonably necessary for the prosecution of his prevailing claims.

In addition, given the number of issues, complexity of , and volumes of witnesses and documents, I enlisted my colleague, N. Bernard Dorsey, Esq. to try the case with me. Mr. Dorsey had familiarity with Mr. West and his case, since he originally served as his counsel prior to my representation. Mr. Dorsey's trial-court experience and objectivity were vitally important for fashioning of strategy and completing all the legal work necessary for trying such an extensive Title VII case. His work was essential to the successful presentation of Mr. West's case at trial. During this phase, the following reasonable hours were expended:

  Teresa W. Murray, Esq.        _____ hours

  N. Bernard Dorsey, Esq.       _____ hours

  Donald Wine, Esq.             _____ hours

  Paralegals/Law Clerks         _____hours

**Post-Judgment**

After the entry of judgment, Plaintiff's counsel engaged in significant work to assess the appropriateness of filing post-trial motions and to prepare remedies proposals for possible agreement among the parties. To that end, the following reasonable hours have been expended during this final phase:[1]

  Teresa W. Murray, Esq.        _____ hours

  N. Bernard Dorsey, Esq.       _____ hours

---

[1] Plaintiff expressly reserves the right to amend this Motion and Bill of Costs as necessary to include attorneys fees and costs incurred in the post-judgment litigation of fees, costs and other related remedies.

## V.  TOTAL FEES REQUESTED

All of the attorneys' fees documented and claimed in the instant motion are based upon prevailing market rates in the relevant legal community and the hours reasonably expended. Plaintiffs counsel have actively attempted to excise any and all hours unrelated to the prevailing claims. In the light of the foregoing discussion, Plaintiff requests an award of fees as illustrated below:

**PHASE I:**

    Teresa W. Murray      _____ hours @ $410.00/hr      $_____

**PHASE II:**

    Teresa W. Murray      _____ hours @ $410.00/hr      $_____
    Paralegal      _____ hours @ $130.00/hour      $_____

**PHASE III:**

    Teresa W. Murray      _____ hours @ $410.00/hr      $_____

    N. Bernard Dorsey, Jr.      _____ hours @ $410.00/hr      $_____

    Donald Wine      _____hours @ $225.00/hr      $_____

    Paralegal      _____ hours @ $130.00/hour      $_____

**POST-JUDGMENT**

    Teresa W. Murray      _____ hours @ $410.00/hr      $_____

    N. Bernard Dorsey, Jr.      _____ hours @ $410.00/hr      $_____

**TOTAL**:      $_____

WHEREFORE, Plaintiff respectfully requests that the Court award attorneys fees in the amount of $_____.

Dated: July 11, 2008                                Respectfully submitted,

By:_____/s/_____
             Teresa W. Murray

THE LAW OFFICE OF T.W. MURRAY
7474 Greenway Center Dr, Suite 820
Greenbelt, MD 20770
Phone: 301 982-2005/Fax: 301 982-0004

By: _____/s/_____
             N. Bernard Dorsey Jr.

7474 Greenway Center Dr, Suite 820
Greenbelt, MD 20770
Phone: 301 982-2005/Fax: 301 982-0004

**Counsel for Plaintiff**

12