UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KEVIN D. WEST,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**JOHN E. POTTER,** )<br>**POSTMASTER GENERAL** )<br>**U.S. POSTAL SERVICE** )<br>)<br>Defendant. )<br>) | Civil Action No. 05-1339 (JR) |

### DECLARATION OF TERESA W. MURRAY, ESQ.

I, Teresa W. Murray, Esq., do solemnly declare as follows:

1. I am Teresa W. Murray, who served as lead counsel for Plaintiff Kevin West in the above-captioned case and served as sole counsel for Mr. West through the administrative phases of the case, prior to the case's adjudication in this Court.

2. I am licensed to practice law in the State of Maryland and the District of Columbia. In addition to the state courts in these jurisdictions, I hold memberships in the bars of several federal courts, including the U.S. Court of Appeals for the District of Columbia Circuit, U.S. Court of Appeals for the Fourth Circuit, U.S. District Court for the District of Columbia, and the U.S. District Court of Maryland. I am also a member of D.C. Bar Association and Maryland State Bar Association, and former member of the Federal Bar Association.

3. I earned my Bachelor of Arts degree in Political Science from Howard University and graduated with honors in 1994. I received my legal education from The George Washington

University Law School and obtained my Juris Doctor from George Washington Law School in 1997.

4. Upon law school graduation, I began working as an Associate attorney for the law firm of O'Donoghue & O'Donoghue. Prior to my becoming an Associate attorney, I served as a law clerk for O'Donoghue. I practiced as an attorney with this firm for over five years. My practice exclusively and intensively focused on labor and employment law. Much of my work involved federal claims, as most of the cases for which I was responsible centered on federal statues. I litigated cases under the Labor-Management Relations Act, Fair Labor Standards Act, Employee Retirement Income Security Act, and federal anti-discrimination statutes.

5. I served as legal counsel to several international and local labor organizations, multi-employer pension and welfare funds, and individual public and private sector workers. My representation of these clients primarily involved litigation in federal court and in public- and private-sector arbitrations.

6. A significant part of my practice then concerned, and now exclusively concerns, the advancement of employee rights and the protection of workers from unlawful employment discrimination.

7. From 1998 to 2002, I had the pleasure of serving among the leadership of the American Bar Association. ("ABA") Equal Employment Opportunity Committee. Through my work on this Committee, I participated in the planning of meetings and continuing legal education conferences for fellow experienced employment law practitioners. My work also included literary contributions to the ABA's well-regarded treatise, *Employment Discrimination Law*. I have also served as Contributing Editor to the ABA's *Employee*

*Benefits Law, Second Edition and 2002 Supplement,* as well as *Employment Discrimination Law, Second Supplement.*

8. I am a member of the Metropolitan Washington Employment Lawyers Association (MWELA) and have been for several years. I have also been a member of the National Employment Lawyers Association (NELA).

9. My public speaking experience consists, in part, of several presentations to lay persons as well as seasoned labor and employment attorneys, including:

- "What First-Time Managers Need to Know About Equal Employment Opportunity (EEO) Law", Federally Employed Women, DC Regional Training, November 2003, New Carrollton, Maryland

- "Reasonable Accommodation of Carpal Tunnel Syndrome and Other Repetitive Stress Disorders", Federally Employed Women, DC Regional Training, November 2003, New Carrollton, Maryland

- "Carpal Tunnel and Other Repetitive Motion Disorder Litigation under the ADA", ABA Annual Meeting, August 2002, Washington, D.C.

- "ADA Update" ABA EEO Cmte. Midwinter Meeting, March 2002, San Diego, CA

- Wage/Hour Issues Panel, ABA EEO Cmte. Midwinter Meeting, March 2001, Sanibel Island, FL

- EEO Basics Presentation "Case Intake, Administrative Processes, Drafting & Responding to Complaints", September 2000, Washington D.C.

- "Equal Employment Opportunity" Program, ABA Annual Meeting, July 2000, New York, NY

Also, as a service to the community, I volunteered my time to conduct workers rights seminars to low-income District of Columbia residents who were transitioning from welfare to work.

10. Because of my employment law expertise, The University of Maryland University College's Department of Law, Public Policy and International Business contracted me to teach Employment Law as an Adjunct Faculty member.

3

11. For the past five and half years, I have managed a solo law practice where I serve clients in all aspects of employee representation, from negotiation and mediation to federal sector EEOC administrative proceedings to federal court litigation. I have extensive experience litigating claims of race, gender, age, disability, pregnancy and national origin discrimination, involving wrongful discharge, unjust discipline, harassment, retaliation, failure to accommodate, and failure to promote.

12. My work on behalf of plaintiffs, for low-income workers, and in the labor and employment legal community has garnered me the reputation of an attorney committed to the eradication of employment discrimination through effective advocacy and public education.

13. Kevin West retained me as legal counsel in February 2003. At that time, Mr. West had several related EEO complaints, which had been investigated by his Defendant employer, U.S. Postal Service, that were pending before the U.S. Equal Employment Opportunity Commission. Another of Mr. West's EEO complaint regarding similar claims against the Postal Service, including the denial of acting supervisor details and training, was in the Agency investigatory phase. Virtually all of the complaints involved the improper conduct of Timothy Currie and David Cook.

14. The EEOC consolidated Mr. West's complaints into one case, including the last EEO complaint, once the Agency completed its investigation. In the EEOC administrative process, there was far-reaching discovery and multiple motions filed principally due to the Agency's staunch refusal to produce relevant records pertaining to the detail assignments, work hours, higher-pay, supervisory training and attendance records of comparator employees. Mr. West was required to conduct multiple depositions due to the involvement of several managerial officials (Timothy Currie, his former subordinate and replacement Joseph King, David Cook, Diane Hatfield, and supervisors Greg Absher, Michael Scott,

4

Frank Green, and John P. Miller). This proved the most prudent and efficient means to obtain relevant information on reams of similarly-situated employees, rather than deposing each employee individually. We defeated the Agency's Motion for Summary Judgment (with the exception of a permanent supervisor claim) and Plaintiff was granted a hearing before Administrative Judge Linda Kincaid ("ALJ"). There were 10 days of hearings before the EEOC Administrative Judge: July 27, 28, October 6-8, and November 15-19, 2004. The record, evidence, and witnesses were so extensive that the ALJ ordered multiple days of hearings.

15. After the close of the hearing, the ALJ found no discrimination or retaliation and the Postal Service implemented this determination as its Final Agency Decision. Mr. West then filed the instant action in this Court. Due in large part to the massive legal work performed at the EEOC administrative level, significant discovery was not required in the District Court. Defendant made an early attempt at dismissing this action under FRCP 12(b); however, Plaintiff successfully opposed that motion. Limited discovery, with the Court's permission, was conducted by Plaintiff. Defendant subsequently filed an lengthy motion for summary judgment, which Plaintiff opposed with a comprehensive opposition brief and voluminous exhibits in support. This resulted in the Court's denial of Defendant's motion for summary judgment on all claims, except Mr. West's hostile work environment claims.

16. Given the number of issues, complexity of facts, and volumes of witnesses and documents, N. Bernard Dorsey, Esq. was retained to try the case with me. Mr. Dorsey had familiarity with Mr. West and his case, since he originally served as his counsel prior to my representation. Mr. Dorsey's trial-court experience and objectivity were vitally important for fashioning strategy and completing all the legal work necessary for trying such an extensive

5

Title VII case. His expertise was essential to the successful presentation of Mr. West's case at trial.

17. As lead counsel at trial, I presented the opening statement and closing argument and examined the majority of the witnesses. All of the hours presented on my billing records are accurate and all of the hours, after extensive reduction for claims upon Mr. West did not prevail, were reasonably necessary for the prosecution of his prevailing claims. In Phase I, I have included my $250 consultation fee, as well.

18. Several costs grew out of the prosecution of Mr. West's case, including: Courier fees, totaling $564.81 during the EEOC Administrative phase and $150.00 during this court litigation; parking costs of $275.20 and mileage of $350.63 during the administrative segment of the case, and $72.00 in parking and $106.06 in mileage costs during the federal court segment of the case; photocopying costs included $849.60 at the EEOC level and $12.30 for exhibit copying and $456.75 for copying of other documents at the USDC level. Through my representation of Mr. West, costs and expenses were incurred that were in addition to those presented in Plaintiff's Bill of Costs. They include: $136.10 in postage costs, and $244.43 for the costs of my meals during trial and EEOC hearings. Post-judgment copying costs have totaled $25.65 and courier fees have amounted to $51.80.

19. Also crucially important to the advancement of Mr. West's prevailing claims were legal staff persons who performed invaluable, professional work. Our paralegals included LaToya Brown, Stacey Cheek, and Lavar Antoine in 2008, Juanita Williams in 2004 and Claudine Sassa in 2005. Ms. Brown and Ms. Antoine are college-educated assistants who utilized their business experience to prepare trial notebooks used by counsel and visual aids used during trial. Ms. Cheek has over 15 years experience in document production and organization and took the lead in the preparation of the trial notebooks relied on by counsel.

In 2004, Juanita Williams worked as my paralegal. Her prior paralegal experience in several private law firms and work history performing deposition and hearing transcript reviews and summaries were indispensable in the preparation of the Closing Argument at the EEOC administrative level. She reviewed and summarized over 11 volumes of hefty hearing transcripts. Her summary work was referenced extensively by counsel in Phase II, during trial preparation, as her summaries served as a critical factual reference and facilitated exhibit identification. In 2005, Claudine Sassa performed paralegal professional work on behalf of Mr. West. Ms. Sassa catalogued mass quantities of records, and indexed reams of information for easy retrieval by counsel. Ms. Sassa has multiple years of paralegal experience in private firms and possessed relevant pre-law, paralegal educational training in the area of employment law.

20. Mr. West's case was also advanced by the work of a law clerk/attorney Donald Wine. Mr. Wine is a graduate of Duke University and the University of Miami Law School. After working originally as a law clerk, he assisted in representing Mr. West as an attorney once he passed the bar and was licensed to practice in late 2007. Mr. Wine performed needed deposition transcript review and summary. The hours he expended on Mr. West's behalf were supervised by me and were necessary for the prosecution of Mr. West's case.

21. All legal staff and associate attorney hours are accurately reported in support of Plaintiff's Motion for an Attorneys Fees Award and related directly to Plaintiff's prevailing relation claims.

I declare under penalty of perjury under 28 U.S.C. § 1746 that the above statement is true and correct.

_____/s/_____        Date: July 11, 2008
Teresa W. Murray

7