UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KEVIN D. WEST,                              )
                                           )
        Plaintiff,                         )
                                           )          Civil Action No. 05-1339 (JR)
                v.                         )
                                           )
JOHN E. POTTER,                            )
POSTMASTER GENERAL,                        )

**RESPONSE TO PLAINTIFF'S MOTION FOR BACK PAY,
PREJUDGMENT AND POST-JUDGMENT INTEREST,
AND OTHER EQUITABLE REMEDIES**

Defendant respectfully submits this response to Plaintiff's Motion for Back Pay,

Prejudgment and Post-judgment Interest, And Other Equitable Remedies.

**Back Pay**

Plaintiff has requested back pay in the amount of $84,079 plus interest in the amount of

$14, 932 for a total award of $99, 011.   Defendant acknowledges that back pay should be  paid.

However, defendant disputes plaintiff's calculation of back pay and interest.

Defendant submits that the backpay calculation prepared by Thomas McGinnity, Postal

Service Accounting and Control Specialist Sr. accurately represents the back pay due to plaintiff.

See McGinnity Declaration.  Defendant's back pay calculations show the gross difference

between plaintiff's pay as a level 7 versus the pay of an automotive technician to be $5, 304.94

gross and $3, 533.15 net.  The gross difference between plaintiff's level 7 pay and the acting

supervisory pay was found to be $6,095.32 gross and $4,061.85 net.

**Defendant's Calculation of Difference Between Plaintiff's Level 7 Pay and That of Automotive Technician Level 8 (Increased to Level 9 Effective 2/16/08)**

The difference between plaintiff's level 7 pay and that of an automotive technician level 8 was calculated in the following manner.[1]

1.    Mr. McGinnity obtained plaintiff's annual base salary rates from his salary history record.   McGinnity Dec. at ¶4 and attachment at p.  1-5.   He identified by pay period, each time plaintiff got an increase in his annual  base salary rate.  *Id.*  He prepared a chart which showed for each increase the difference in dollar amount between  plaintiff's annual base salary level  7 rate and the annual base salary rate of the automotive technician -- level 8.   *Id.*  at ¶ 3,6 b and Automotive Tech chart, attachment page 6.

2.    Mr. McGinnity obtained from the Postal Service records plaintiff's work hour record and scheduled per pay period  the number of hours in each pay code, i.e. work hours, overtime hours, leave without pay (LWOP) hours and higher level pay hours.   *Id.* at ¶ 7  and Attachment t p.  7-14.

3.    Those hours per pay period were  transferred onto a chart used to calculate the appropriate increase to plaintiff's pay for each pay period.   *Id.*  at ¶ 9 and attachment at p. 17-32. This chart shows for each pay period the number of hours for each pay code and the rate of pay for each pay code.  *Id.*  The chart also shows for each pay period the annual base salary difference

---

[1]   Effective February 16, 2008, by agreement with the union, the automotive technician position was upgraded to a level 9.  However, that did not change the amount of the base pay. There was a similar upgrade to plaintiff's position with no change to the base pay.   McGinnity Dec. at ¶8.  For brevity, the positions will be referred to throughout this memorandum  as Level 7 for plaintiff's position and level 8 for the automotive technician position.

between the level 8 and the automotive technician level. *Id.* To determine the dollar difference

between the level 7 and the automotive technician pay for each pay period, the annual base salary

difference was divided by the number of work hours in a work year -- 2080 -- to obtain the

hourly rate differential. *Id*. at ¶9. The hourly rate differential  multiplied by the number of hours

in each respective rate code multiplied by the rate of pay for the rate code equals the gross

additional pay due for each work code hour. See calculation example *Id.* at ¶9:  Using pay period

1 in year 2004 as an example (attachment p. 17), the difference was calculated as follows:

- •    Since there are 2,080 work hours per year, the difference between the annual level 7 and level 8 salaries, i.e.  $1851  per year,  was divided by 2,080 to get the hourly rate for the difference ($1851/2080 = $0.8899 per hour).

- •    70 work hours were worked in pay period 1 at a 100% rate. (70 X $.8899 per hour X 1.00 = $62.2932) which rounded is $62.29.

- •    There was one hour of night work at a rate of 8% (1 X $.8899  X .08 = $ .0711) which rounded is $.07.

- •    There were 4 hours of overtime at a rate of 150% (4 X $.8899  X 1.50 = $5.339) which rounded is $5.34

- •    Thus, for pay period 1, Mr. West would have earned $67.70 gross more if he had been paid at level 8 rather than level 7.

Using the same method for each of the relevant pay periods, total additional gross pay

which Mr. West would have received, had he been paid at the automotive technician level rather

than at level 7 during that period, was calculated to be $5,304.92.  *Id*. at ¶ 9.

The applicable withholding deduction to the gross, -- taxes, FICA medicare, retirement

and TSP -- were calculated and subtracted from the gross salary differential to obtain the net pay

difference of $3, 533.15.  see *Id.* at ¶ ¶10 & 8.

3

**Defendant's Calculation of Difference Between Plaintiff's Level 7 Pay and
That of an Acting Supervisor, Level 17**

Pursuant to Postal Service Rules the employee's salary is increased by five percent (5 %) of the employee's base salary to obtain the amount of pay for a craft employee acting as a level 17 supervisor.   McGinnity Dec. at ¶¶6, 12, 15.  Mr. McGinnity calculated the difference between plaintiff's level 7 pay and that of an acting supervisor for the  period May 11, 2001 to December 12, 2003 in the following manner.

1.    Mr. McGinnity obtained plaintiff's annual base salary rates from his salary history record.  McGinnity Dec. at ¶ 4 and  attachment pages 1-5.   He identified by pay period, each time plaintiff got an increase in his annual base salary rate.  *Id.*   He prepared a chart which showed for each salary increase, the difference in dollar amount between the annual base salary rates at which plaintiff was paid and the supervisory 5% increase to his annual base level 7 salary.   *Id.*  at ¶6 and attachment p. 6, bottom chart.

2.    Mr. McGinnity  obtained from the Postal Service records plaintiff's actual work hour record;  he scheduled per pay period  plaintiff's  work hours, overtime hours, leave without pay (LWOP) hours and higher level pay hours.   *Id.* at ¶ 7 and attachment pages 7-14.

3.    Those hours per pay period were then transferred onto a chart used to calculate the appropriate increase to plaintiff's pay for each pay period.   *Id.*  at ¶ 12 and  attachment at pages 48-58.  For each pay period, Mr. McGinnity   inserted the dollar value of the 5% increase to plaintiff's annual base pay under the column titled  base salary.   *Id.*    That 5% difference figure was obtained from the Acting Supervisor chart at attachment page 6.

4.    To determine the gross dollar value of the increase for each pay period, Mr.

4

McGinnity first determined the hourly rate differential for  work hours in the pay period (and for higher level hours worked) by dividing the annual base salary differential  by the total number of work hours in a work year, i.e.  2080 hours.   McGinnity Dec. at ¶12 and 13 .  The hourly rate differentials  were then multiplied by the respective actual number of work hours and higher level hours plaintiff had each pay period, to ascertain the dollar value of the increase.  *Id.*  By adding the amount of the increases in each pay period, Mr. McGinnity calculated the total gross increase to plaintiff's salary to be $6, 095.32. *Id*. at ¶12.

5.   The applicable withholding deductions to the gross, -- taxes, FICA, medicare, retirement and TSP -- were calculated and subtracted from the gross salary differential to obtain the net pay difference of $4, 061.85.

**Plaintiff's calculations**

Defendant believes that there is such a large discrepancy between plaintiff's calculations and defendant's for the following reasons which defendant has been able to identify:

> **Plaintiff's Calculation of Difference between Plaintiff's level 7 pay and that of Automotive technician level 8 (increased to level 9 effective 2/16/08)**

Plaintiff's calculation of the difference between plaintiff's level 7 pay and that of an automotive technician level 8 is confusing, is not understood by defendant, and is incorrect. *See* Document 64-4 at p.  2.

Among other discrepancies, plaintiff divided the annual base pay for each relevant period by 365 days to come up with a daily rate.    Plaintiff then multiplied that number by a number of calendar days that total 365 days per year.   However, there are not 365 workdays in a work year; there are 260 days in a work year.   McGinnity Dec. at ¶ 5 (Postal service work  year has 26 pay

periods with 10 days in each pay period.).    Moreover, plaintiff did not work 365 days per year -- each calendar day in each period.

Plaintiff's calculation does not take into consideration the more than 3,970 higher level hours worked by plaintiff during the period in question. *See e.g.* higher level hours columns on attachment pages 10-14.   The higher level hours are hours in which plaintiff was paid at the level 8 rate or higher.  McGinnity Dec. at ¶ 7a.   Plaintiff is not entitled to any increase for hours during which he was paid at a level the same or higher than the automotive technician position. *Id*. at ¶ 7d.

Plaintiff's calculation improperly includes overtime work by Mr. Clark.  In calculating backpay,  plaintiff appears to have added in overtime for plaintiff based on overtime hours worked by Mr. Clark.   See Document 64-4 at p. 5.  However, the assumption that if plaintiff had been in the automotive technician position, plaintiff would have received the same amount of overtime as Mr. Clark,  is unfounded.  Under the applicable union agreements, selection for overtime is based on order of seniority.    Malone Declaration at ¶3.    Mr. Clark's seniority date is November 14, 1977,  while Mr. West's seniority date is June 16, 1990.  *Id*. at ¶2.  Thus, Mr. Clark would have been selected for overtime before Mr. West.  *Id*.  at ¶ 4.  Additionally, Mr. Clark was not transferred to Largo II when he was selected for the automotive technician position, Mr. Clark was at Largo II before his selection to the position. *Id*.  at ¶2. Therefore, he gained no seniority preference over plaintiff due to his selection.   Therefore, plaintiff's backpay calculation improperly includes overtime hours worked by Mr. Clark.

Plaintiff's calculation appears improperly to include hours on which plaintiff was on Leave Without Pay (LWOP) status.  *See* McGinnity Declaration at attachment 2 LWOP column.

6

Plaintiff's calculation does not include the appropriate deduction of taxes, FICA, medicare, retirement and TSP which would have been made to the increased salary amounts.

Plaintiff's calculations also include a 5% increase with no basis.

**Plaintiff's Calculation of Difference Between Plaintiff's Level 7 Pay and That of Automotive Technician Level 8 (increased to level 9 effective 2/16/08)**

The calculation of pay  at the acting supervisor level is incorrect.   Plaintiff's  calculation was done using plaintiff's actual gross pay, including overtime.   Document 64-4 at p.  2.   But, according to Postal Service Rules, 5% is added only to  the employee's **base** salary, in this case Level 7.  McGinnity Declaration at ¶ 6 b.

Plaintiff's calculation also appears improperly to include  hours on which plaintiff was on Leave Without Pay (LWOP) status.  *See* McGinnity Declaration at ¶ 7b.

**Interest**

Although the Back Pay Act  waives the government's immunity from prejudgment interest in certain matters, it does not do so for the discretionary promotions involved in this case. *Brown v. Secretary of Army*,  918 F.2d 214, 219-221 (D.C.Cir. 1990);  *Trout v. Garrett* ,  780 F.Supp. 1396, 1420 (D.D.C.1991).

Plaintiff has used the IRS Overpayment rate to calculate prejudgment interest.   But, 42 U.S.C. § 2000e-16(d) provides for the payment of interest by the government in Title VII cases: "the same interest to compensate for delay in payment shall be available as in cases involving nonpublic parties."    This Court has found the one-year Treasury Bill rate to be the appropriate rate of pre-judgment interest in a Title VII case.  *Hartman v. Duffey*, 8 F.Supp.2d 1, 3 (D.D.C.1998).   Therefore, that  rate should be applied in this matter for prejudgment interest.

Defendant has calculated post-judgment interest to August 29, 2008, to be $805.27 using the interest rate in compliance with 28 U.S.C. §1961, which provides for the interest calculations based on the Federal Judgment Interest Rate.   See Bland Dec.

**Lead   Automotive Technician Level 9 Back Pay Deductions and Benefits, Transfer**

Defendant has no objection to plaintiff's backpay withholding deductions and benefits as discussed in defendant's back pay calculations.   The only currently vacant Lead Automotive Technician Level 9 position is at the T Street facility in Washington, D.C. on tour 2.    Defendant has no objection to transferring plaintiff to that position.

**Assignment to Acting Supervisor/204B position**

Plaintiff has requested assignment to an Acting Supervisor position at the Largo I facility. There currently is no vacant acting supervisory position at Largo I.   Therefore, plaintiff's request should be denied.

**Supervisory Training**

Plaintiff has requested supervisory training customarily provided to 204B (acting supervisor) selectees.   There currently is no training program for vehicle maintenance 204B selectees.   The only program ever instituted was the informal program created by Mr. Currie, which no longer is  in effect.   As the record reflects, plaintiff refused to apply for that training program.   See summary judgment memorandum of points and authorities at p. 17-19.   Moreover, at trial plaintiff abandoned his claims of discrimination/retaliation concerning 204B training, and thus,  did not prevail on any claim concerning training.   Therefore, plaintiff's request should be denied.

**Criminal Prosecution and Termination of Mr. Currie and Mr. Cook**

The request should be denied.

**Restoration of Leave**

Plaintiff requests that 51 hours of leave used to attend court should be restored. Defendant submits that since plaintiff did not prevail on all of the claims presented at trial, it would be equitable to restore only a proportional percentage of the requested leave.

**Release from Debt**

By plaintiff's own admission, the $507.30 debt does not involve the claims on which he prevailed at trial, but pertains "to leave issues that occurred in the year 2002." Plaintiff's Motion at p. 5. Plaintiff abandoned his claims pertaining to leave at trial. Therefore, the request should be denied.

**Removal of Disciplinary Action**

Plaintiff requested that disciplinary actions issued on July 17 and August 24, 2001 be removed from plaintiff's file. These actions did not pertain to the facts of the claims on which plaintiff prevailed. Plaintiff abandoned his claims pertaining to disciplinary actions at trial. Therefore, the request should be denied.

For the above reasons, plaintiff's requests for equitable relief should be denied and/or modified as discussed above.

Respectfully submitted,

_____/s/ Jeffrey A. Taylor_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

_____/s/ Rudolph Contreras_____
RUDOLPH  CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

_____/s/ Rhonda C. Fields_____
RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970