## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                              )
**KEVIN D. WEST,**                       )
                                              )
       Plaintiff,               )
                                              )
       v.                           )     Civil Action No.  05-1339 (JR)
                                              )
**JOHN E. POTTER,**               )
**POSTMASTER GENERAL**   )
**U.S. POSTAL SERVICE**        )
                                              )
       Defendant.            )
_____)

## PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS FEES

### I.  SUMMARY OF THE CASE

Kevin West is an African-American man who has been employed by the U.S. Postal Service's Vehicle Maintenance Facility (VMF) as an automotive mechanic for nearly 18 years.  For the last eight of those years, he suffered numerous, adverse employment actions, at the hands of his Managers.  Because of the ongoing unlawful conduct, Mr. West filed several EEO complaints with the agency alleging race discrimination and retaliation for denial of permanent and temporary promotions, training, overtime, and disparate discipline and leave approval.

The VMF's top managers, who were primarily responsible for the adverse actions, were Timothy Currie and his subordinate David Cook.  Mr. Currie openly regarded African-American postal employees as "lazy," "stupid," "stink" and vowed not to "stop until he gets [the VMF] lily white."  Other evidence demonstrated that Currie with Cook's assistance, continuously refused Mr. West promotion and training, while affording promotions, training, leave and overtime to similarly-situated, employees who lacked the

qualifications and seniority for the promotions. Mr. West opposed these unlawful actions by filing EEO complaints that ultimately resulted in Agency managers labeling him a "problem" and a "troublemaker."

Hoping for expeditious relief after the Agency's investigation of his complaints, Mr. West elected an option available to federal employees by requesting a hearing before and Administrative Judge of the U.S. Equal Employment Opportunity Commission ("EEOC"). This administrative process encompassed extensive litigation, which culminated into 10 days of hearings. Notwithstanding the mountain of evidence of the agency officials' improper motives, the Administrative Judge rendered a finding of no discrimination or retaliation. Taking the next available option to obtain relief from his oppressive work environment, Mr. West filed a civil lawsuit in U.S. District Court for the District of Columbia. He alleged that the Postal Service violated Title VII's prohibition against race discrimination and retaliation. He further claimed that he suffered economic losses as well as emotional distress.

The Court conducted a week-long, jury trial from March 10-14, 2008. Evidence presented at trial showed that in June 2000, the Postal Service promoted Mr. Currie to Manager of its Vehicle Maintenance Facility in Washington D.C. and Maryland. This same Manager had previously been found to have retaliated against another employee in Illinois. Nonetheless, once Mr. Currie took over the Capitol District VMF, his superiors shared with him Mr. West's EEO history. In September 2000, Mr. Currie then set up a face-to-face meeting with Mr. West and advised him that he had been advised of his complaints, that he was specifically "brought to Washington D.C. to handle problems," and that Mr. West was a "problem." He asked Mr. West to resign, yet West refused. He also warned Mr. West against filing EEO complaints as he had done previously. Currie

then told West that he was banned from receiving any upward mobility opportunities (promotions) until he decided otherwise. Currie instructed David Cook, Mr. West's second-line supervisor to ban Mr. West from promotion.

Mr. West presented evidence at trial that ever since this September 2000 meeting, he was denied overtime, permanent promotion to Supervisor, temporary promotions to "Acting Supervisor," which were temporary, higher-paying assignments that afforded on-the-job training and supervisory work experience, which would better equip the selectee to compete for permanent supervisor vacancies, when they become available. Mr. West also brought forth evidence that he was denied a promotion to Lead Automotive Technician, Level 8. Lead Auto Techs serve as working group leader over other automotive mechanics. Although Mr. West was well qualified for these promotional opportunities, Messrs. Currie and Cook precluded his advancement in reprisal for his complaints against the Agency.

On March 14, 2008, the jury found in favor of Kevin West on the basis of retaliation. Specifically, the jury found in favor of Mr. West on two claims: 1) retaliatory denial of 204B/Acting Supervisor temporary promotions; and 2) retaliatory failure to promote to Lead Automotive Mechanic, Level 8. The jury awarded Mr. West $90,000 in compensatory damages. Based on that verdict, the Court entered a verdict against the Postal Service, accordingly with costs.

Having prevailed at trial, Plaintiff now seeks an award of attorneys fees. In this Motion, all references to this case intend to refer only to the retaliation claims upon which Mr. West prevailed. All of counsel's time reported herein relates directly to that claim, and facts and evidence in support. All time expended exclusively in support of the race discrimination claim has been excised.

## II. AVAILABILITY OF ATTORNEYS FEES

Title VII of the Civil Rights Act of 1964, as amended provides that in any action or proceeding under the statute, the court, in its discretion may allow the prevailing party "a reasonable attorney's fee" as part of costs. 42 U.S.C. § 2000e-5(k). Section 717(d) of the Act makes the attorney fees provision applicable to civil actions, such as the instant action, brought by federal employees against an agency of the United States. 42 U.S.C. § 2000e-16(d).

Plaintiff has fully adjudicated his case before this Court and a jury has determined that he successfully proved two significant claims on the basis of retaliation; thus, Mr. West constitutes a prevailing party and should be awarded reasonable attorneys fees. According to Heard v. District of Columbia et al., No. Civ. A. 02-296 CCK, 2006 WL 2568013 at *6 (D.D.C. Sept. 5, 2006), Mr. West qualifies as "a prevailing party" because he is "a civil rights plaintiff [who] obtain[ed] at least some relief on the merits of his claim." He has obtained an enforceable judgment against the Postal Service from whom attorneys' fees are sought. *Id.*

## III. THE COMPUTATION OF AN ATTORNEYS' FEE AWARD

The basic starting point for determining reasonable attorneys' fees is calculation of the "lodestar." See Hensley v. Eckerhart. 461 U.S. 424, 433 (1983). In arriving at a reasonable attorney fee, one must ascertain the number of hours reasonably expended by counsel and multiply the hours number by a reasonable hourly rate. Covington v. District of Columbia, 57 F.3d 1101, 1107 (D.C. Cir. 1995).

After the lodestar calculation is performed, the resulting figure is presumptively reasonable and more than a mere "rough guess." "When . . . the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee" to which counsel is entitled. Blum v. Stetson. 465 U.S. 886, 897 (1984); see also City of Burlington v. Dague. 505 U.S. 557, 562 (1992)

4

(there is a "strong presumption" that the lodestar represents a reasonable fee).

In figuring the value of attorneys' fees under civil rights fee shifting statutes such as Title VII, the actual amount of the damage award is not given substantial weight. See Furtado v. Bishop. 635 F.2d 915, 920 (1st Cir. 1980) (§ 1988 case). In providing for fee shifting under Title VII, the legislature determined to permit plaintiffs with "modest" cases the possibility of vindicating their rights - however "modest" their damages - to encourage such suits to be brought to enforce anti-discrimination laws for the public good.

### A. Reasonable Hourly Rates

Reasonable hourly rates for the calculation of the lodestar are measured by prevailing market rates in the relevant community for attorneys of similar experience and skill. Save Our Cumberland Mountains v. Hodel. 857 F.2d 1516 (D.C. Cir. 1988) (en banc) ("SOCM"). The Circuit Court of Appeals in SOCM expressly embraced the matrix of "prevailing rates" adopted in 1983 by this Court in Laffey v. Northwest Airlines. 572 F.Supp. 354, 371 (D.D.C. 1983). The Laffey matrix was instituted by the United States Attorney's Office for the District of Columbia "as a concession by that office of what it will deem reasonable when a fee-shifting statute applies and its opponent prevails and seeks attorneys' fees . . . [which relieves] that office from having to litigate the market rate in the hundreds of fee-shifting cases that it defends." Adolph Coors Co. v. Truct Ins., Exch., 383 F.Supp.2d 93, 98 (D.D.C. 2005). See also, Pleasants v. Ridge. 424 F. Supp. 2d 67, 71 n.2 (D.D.C. 2006); Cobell v. Norton. 407 F. Supp. 2d 140, 170 (D.D.C. 2005); Muldrow v. Re-Direct. Inc.. 397 F. Supp. 1, 4 (D.D.C. 2005) ("Courts in this Circuit have often relied on the Laffey matrix, or an updated version thereof, to determine appropriate fee awards based on market rates, even where the Laffey rates are not the rates actually charged to the client") (citing cases); Falica v. Advance Tenant Servs., 384 F. Supp. 2d 75, 78-79 (D.D.C. 2005).

An award of current <u>Laffey</u> matrix rates is appropriate. <u>See, e.g.. Brown v. Pro Football. Inc.</u> 846 F. Supp. 108, 117 (D.D.C. 1994) (awarding current market rates to account for three-year delay), <u>rev'd on other grounds.</u> 50 F.3d 1041 (D.C. Cir. 1995); <u>see also Missouri v. Jenkins.</u> 491 U.S. 274, 283-84 (1989). Current rates are "appropriate" because "[payment today for services rendered long in the past deprives the eventual recipient of the value of the use of the money in the meantime." <u>Copeland v. Marshall.</u> 641 F.2d 880, 893 (D.C. Cir. 1980) (en banc); <u>accord</u> Pennsylvania v. Delaware Valley Citizen's Council for Clean Air. 483 U.S. 711,716(1987).

Here, the Defendant is an agency of the United States who is defended by the United States Attorneys Office. Thus, there can be no dispute that the Laffey Matrix applies in this case, and such rates are constructively conceded by Defendant as reasonable. The most-recent Matrix is attached to this Motion as Exhibit ("Ex.") 1.

**B.  Reasonable Hours Expended**

To compute the hours component of the lodestar, a fee applicant should reference contemporaneous time and expense records. <u>Webb v. Board of Educ..</u> 471 U.S. 234, 238 n.6 (1985); <u>Kaseman v. District of Columbia</u>, 329 F.Supp.2d 20, 26 (D.D.C. 2004). Counsel must, as undersigned counsel has, make a good-faith evaluation of the contemporaneous records and exclude hours which are excessive or unnecessary.

The determination whether time spent was "reasonably necessary" to the litigation "turns on so many subjective factors that it seldom should be the basis for reduction of an attorney's fee." <u>Jacouette v. Black Hawk County.</u> 710 F.2d 455, 460-462 (8th Cir. 1983). Accordingly, courts seek to avoid nit-picking disagreements, intransigence, and unreasonable negotiating positions in construing fee petitions and accord deference to counsel's judgment on the amount of time they considered necessary to prepare and pursue the case. <u>Commonwealth</u>

of Puerto Rico v. Heckler. 745 F.2d 709, 714 (D.C. Cir. 1984); National Ass'n of Concerned Veterans v. Secretary of Defense. 675 F.2d 1319, 1338 (D.C. Cir. 1982) (Tamm, J., concurring).

IV.  REASONABLE ATTORNEYS FEES INCURRED ON MR. WEST'S BEHALF

A.    **Plaintiff's Counsels' Reasonable Hourly Rates**

Teresa W. Murray served as lead counsel in this matter and chiefly represented Plaintiff Kevin West in his litigation. Immediately before trial, attorney N. Bernard Dorsey, Esq. joined the representation of Mr. West. At various times throughout the course of the case, the attorneys were assisted by paralegals and law clerks, and on a very limited basis by a first-year associate attorney.

As more thoroughly outlined in the declarations of Teresa Murray and N. Bernard Dorsey, both graduated from the George Washington University Law School in 1997 and have over 11 years of legal experience as practicing attorneys. See Declaration of Teresa W. Murray, Esq. attached as Ex. 2, and Declaration of N. Bernard Dorsey, Jr., Esq. attached as Ex. 3. Thus, according to the Laffey Matrix, the reasonable hourly rate for these attorneys is $410.00. A first-year associate, Donald Wine expended a small number of necessary reasonable hours for Mr. West's cause and pursuant to the Laffey Matrix, should be calculated at the reasonable hourly rate of $215.00. The paralegals and law clerk who assisted in the prosecution of Mr. West's case varied over the years; yet all contributed significant, professional work to advance Mr. West's claims. Hence, under the Laffey Matrix, the reasonable hourly rate for their work is $130.00.

B.    **Reasonable Hours Expended on Mr. West's Behalf**

The numbers of hours claimed herein were reasonable and necessary to Mr. West's case. The hours documented here began in the year 2001, but litigation began in earnest in early 2003. Thus this case has been litigated for over five years resulting a substantial number of

7

reasonable attorney hours expended. For ease of presentation, Plaintiff has broken down the litigation into four phases: 1) Phase 1 – pre-litigation legal counsel and representation at the agency-level processing of an EEO complaint in April and May 2003; 2) Phase II – all West claims at the EEOC Administrative level from May 2003 to August 2005; Phase III – civil action in this Court from September 2005 through the Judgment on March 14, 2008; and 4) Post-Judgment.

**Phase I**

Kevin West initially consulted with N. Bernard Dorsey in August, 2001 regarding his claims of discrimination and retaliation against the United States Postal Service. Mr. Dorsey also performed follow-up meetings, overall case analysis, review and analysis of relevant documents, engaged in strategy for case development and for practical ways to deal with ongoing violations by Postal Service. Mr. Dorsey further provided advice on the litigation process from administrative phases through federal court. All meetings and analysis involve the precise claims on which Mr. West ultimately prevailed following the jury trial in *West v. Potter*. Attorney Dorsey's timekeeping records detailing his reasonable hours and fees are attached as Exhibit 4.

Kevin West retained Teresa Murray in February 2003. In 2003, Mr. West had several related EEO complaints, which had already been investigated by Defendant pending before the EEOC. Phase I, however, encompasses only one EEO complaint (referred to as "Charge 108") against the Postal Service that concerned, in part, the denial of acting supervisor details and training. Defendant was in the process of investigating this single complaint. Attorney Murray's timekeeping records detailing her Phase I reasonable hours and fees are attached as Exhibit 5.

During Phase I, the following reasonable hours were expended:

| | |
|---|---|
| N. Bernard Dorsey, Esq. | 16.9 hours |
| Teresa W. Murray, Esq. | 6.5 hours |

**Phase II**

Once all of Mr. West's EEO Complaints were before the EEOC, it consolidated all claims into one case, for a hearing before an Administrative Judge. In the EEOC administrative process, the parties engaged in far-reaching discovery and file multiple motions principally due to the Agency's staunch refusal to produce relevant records pertaining to the detail assignments, work hours, higher-pay, supervisory training and attendance records of comparator employees. Mr. West was required to depose several witnesses due to the involvement of multiple managerial officials (Timothy Currie, Currie's former subordinate and replacement Joseph King, David Cook, Diane Hatfield, and supervisors Greg Absher, Michael Scott, Frank Green, and John P. Miller). This proved the most prudent way to obtain information on reams of similarly-situated employees, rather than deposing each employee individually. The EEOC Administrative Judge held 10 days of hearings: July 27,28, October 6-8, and November 15-19, 2004. The record, evidence, and witnesses were so extensive that Administrative Judge Linda Kincaid ordered multiple days of hearings. Virtually all of the complaints involved the improper conduct of Timothy Currie and David Cook. Teresa Murray's billing records for reasonable hours expended during Phase II of this case are attached as Exhibit 6.

Also crucially important to the advancement of Mr. West's prevailing claims were legal staff persons who performed invaluable, professional work in Phases II and III of this litigation. During Phase II, Juanita Williams and Claudine Sassa provided indispensable professional paralegal assistance. In 2004, Juanita Williams worked as Teresa Murray's

9

paralegal. Her prior paralegal experience in several private law firms and work history performing deposition and hearing transcript reviews and summary were indispensable in the preparation of the Closing Argument at the EEOC administrative level. Attorneys extensively referenced her hearing-transcript summary work that summarized over 11 volumes and thousands of pages of hearing testimony. Counsel heavily relied on her summaries during trial preparation as they provided critical factual information and eased exhibit identification. In 2005, Claudine Sassa performed paralegal professional work on behalf of Mr. West. Ms. Sassa catalogued mass quantities of records, and indexed reams of information for easy retrieval by counsel. Ms. Sassa has multiple years of paralegal experience in private firms and had directly relevant pre-law, paralegal educational training in the area of employment law. See Ex. 2, Murray Declaration, ¶ 19. All reasonable hours expended by legal staff persons is attached as Exhibit 7.

During Phase II, the following reasonable hours were expended:

Teresa W. Murray                          568.3 hours

Paralegal                                 153.3 hours

**Phase III**

Following the Administrative Judge's findings of no discrimination and the Postal Service's Final Agency Decision implementing the ALJ's decision, Mr. West filed the instant action in this Court. Due in large part to the massive work performed at the EEOC administrative level, significant discovery was not required in this part of the litigation. Defendant made an early attempt to dismiss this action under FRCP 12(b); however, Plaintiff successfully opposed that motion. Plaintiff conducted limited discovery with the Court's permission. Defendant thereafter filed an extensive motion for summary judgment seeking dismissal of the case. Plaintiff filed a comprehensive opposition and appended

voluminous exhibits in support. This resulted in the Court's denial of Defendant's motion for summary judgment on all claims, except Mr. West's hostile work environment claims.

During the week-long trail before this Court, lead counsel Teresa Murray managed the prosecution of the case. She presented the opening statement and closing argument and examined the majority of the witnesses. Ms. Murray's billing records for reasonable hours expended during Phase III of this case are attached as Exhibit 8.

In addition, given the number of issues, complexity and volumes of witnesses and documents, Plaintiff retained N. Bernard Dorsey, Esq. to try the case with Ms. Murray. Mr. Dorsey had familiarity with Mr. West and his case, and possesses significant trial-court experience, which made him ideal for service of co-counsel. His work was essential to the successful presentation of Mr. West's case at trial. Mr. Dorsey's billing records for reasonable hours expended during Phase III of this case are attached as Exhibit 4.

All of the hours presented on Plaintiff's counsel's billing records are accurate and all of the hours, after reduction for claims upon Mr. West did not prevail, were reasonably necessary for the advancement of his prevailing claims.

In addition, essential legal staff personnel assisted counsel in preparing for and conducting trial. Paralegals LaToya Brown, Stacey Cheek, and Lavar Antoine proved indispensible in the management of information, records, and witnesses. Ms. Brown and Ms. Antoine are college-educated assistants who utilized their business experience to prepare trial notebooks used by counsel and visual aids used during trial. Ms. Cheek has over 15 years experience in document production and organization and took the lead in the preparation of the trial notebooks relied on by counsel. See Murray Declaration, Ex. 2, ¶ 19. The reasonable professional time expended by these paralegal during this segment of the litigation is attached as Exhibit 7.

Lastly, a first-year associate attorney, Donald Wine summarized deposition transcripts and spent limited and important hours during counsel's trial preparation. His hours are attached here at Exhibit 9. See also, Murray Declaration, Ex. 2, ¶ 20.

During Phase IIII, the following reasonable hours were expended:

| | |
|---|---|
| Teresa W. Murray, Esq. | 354.9 hours |
| N. Bernard Dorsey, Esq. | 186.8 hours |
| Donald Wine, Esq. | 8.3 hours |
| Paralegals/Law Clerks | 55.3 hours |

**Post-Judgment**

After the entry of judgment, Plaintiff's counsel engaged in significant work to assess the appropriateness of filing post-trial motions and to prepare remedies proposals for possible agreement among the parties. To that end, the following reasonable hours have been expended to date in this final phase:[1]

| | |
|---|---|
| Teresa W. Murray, Esq. | 84.4 hours |
| N. Bernard Dorsey, Esq. | 20.6 hours |

For ease of reference by the Court Teresa Murray has provided a summary of her attorney's fees in the form of a spreadsheet, which is attached to this Motion as Exhibit 10. Likewise, Bernard Dorsey has provided a summary of his hours, fees and representation that is attached here as Exhibit 11.

---

[1] Plaintiff expressly reserves the right to amend this Motion and Bill of Costs as necessary to include attorneys fees and costs incurred in the post-judgment litigation of fees, costs and other related remedies.

## V. TOTAL FEES REQUESTED

All of the attorneys' fees documented and claimed in the instant motion are based upon prevailing market rates in the relevant legal community and the hours reasonably expended. Plaintiffs counsel have actively attempted to excise any and all hours unrelated to the prevailing claims. In the light of the foregoing discussion, Plaintiff requests an award of attorneys fees as illustrated below:

**PHASE I:**

| | | |
|---|---|---|
| Teresa W. Murray | 6.5 hours @ $410.00/hr (includes $250 consultation) | $2,915.00 |
| N. Bernard Dorsey, Jr. | 16.9 hours @ $410.00/hr | $6,929.00 |

**PHASE II:**

| | | |
|---|---|---|
| Teresa W. Murray | 568.3 hours @ $410.00/hr | $233,003.00 |
| Paralegal | 153.3 hours @ $130.00/hour | $19,929.00 |

**PHASE III:**

| | | |
|---|---|---|
| Teresa W. Murray | 354.9 hours @ $410.00/hr | $145,509.00 |
| N. Bernard Dorsey, Jr. | 186.8 hours @ $410.00/hr | $76,588.00 |
| Donald Wine | 8.3 hours @ $225.00/hr | $1,867.25 |
| Paralegal | 55.3 hours @ $130.00/hour | $7,189.00 |

**POST-JUDGMENT (THRU DATE OF THIS MOTION)**

| | | |
|---|---|---|
| Teresa W. Murray | 84.4 hours @ $410.00/hr | $34,604.00 |
| N. Bernard Dorsey, Jr. | 20.6 hours @ $410.00/hr | $8,446.00 |
| **TOTAL**: | | **$536,979.25** |

WHEREFORE, Plaintiff respectfully requests that the Court award attorneys fees in the amount of $536,979.25.

Dated: July 11, 2008                                  Respectfully submitted,

By**:**_____/s/_____
Teresa W. Murray

THE LAW OFFICE OF T.W. MURRAY
7474 Greenway Center Dr, Suite 820
Greenbelt, MD 20770
Phone: 301 982-2005/Fax: 301 982-0004

By: _____**/s/**_____
N. Bernard Dorsey Jr.

7474 Greenway Center Dr, Suite 820
Greenbelt, MD 20770
Phone: 301 982-2005/Fax: 301 982-0004

**Counsel for Plaintiff**